the Food and Drug Administration.

The company said it believes the SEC is looking at whether it misled investors by failing to disclose enough about the progress of its Hemopure® blood substitute. The FDA has asked for more information about a trial completed three years ago of the product for use in voluntary orthopedic surgery. The company also disclosed Wednesday the FDA halted its plans for trial of its product in trauma cases because of safety concerns. The company said it hadn't disclosed that before because it felt the information "wasn't material."

The price of Biopure's shares is very important to the company because it has said it is running out of cash while trying to get federal approval to sell Hemopure®, made from refined cow's blood. It previously disclosed plans to raise up to $15 million through the sale of stock to continue operating through the end of 2004.

The lower the share price, the more stock Biopure will have to sell in order to reach that goal, and thus the greater the dilution to its current shareholders. The company now has 44 million shares outstanding, giving it a market capitalization of $106.5 million.

* * *

*According to SEC filings, Rausch has sold 246,074 shares this year for net proceeds of nearly $1.6 million. He first sold 30,000 shares in April at $3.13. Then, in June, when shares had jumped to around $6, he sold about 67,000 shares over six trading days.*

*In August, he sold 149,500 shares for about $1.1 million. Those sales, starting Aug. 5, came after Biopure said it had received a letter from the FDA requesting additional information on its application to sell Hemopure®. At the time, Biopure said that the letter indicated Hemopure® was a step closer to approval, as the FDA was not requesting additional clinical trials, and that it would respond to the request within two months.*

Biopure's shares shot up on the news and traded above $8 for part of August and September. But Oct. 30, the company said it would need until June 30, 2004, to respond to the FDA's questions, which were detailed in a letter of about 30 pages.

* * *

According to the company's proxy statement, Rausch in January was the company's fourth-largest shareholder, with control of just over 2 million shares.

39.     Also commenting on how Biopure's management had mislead the public concerning their communications with the FDA concerning Biopure and on Rausch's insider trading was an article appearing in *TheStreet.com* by Adam Feuerstein entitled "Biopure Gets SEC Wells Notice." The article stated in relevant part:

> Biopure has received a Wells notice from the Securities and Exchange Commission, informing the company that regulators may file civil endorsement proceedings relating to material disclosures made – and not made – about its experimental blood substitute, Hemopure.
>
> Tom Moore, Biopure's CEO, also received a Wells notice, as did Howard Richman, former vice president of regulatory affairs, who was fired by the company in October.
>
> ***Biopure issued a news release at 5:52 pm EST Dec. 24 disclosing the SEC action, although the company acknowledged receiving the actual Wells notices Monday. The company's curiously timed statement included its first public acknowledgment that the Food and Drug Administration had "safety concerns" about Hemopure® back in March, contrasting with Biopure's upbeat public pronouncements.***
>
> \* \* \*
>
> The SEC sends a Wells notice to a company or an individual after its staff has completed an investigation and determined that sufficient wrongdoing has occurred to warrant charges to be filed. As permitted under the Wells notice process, Biopure said it will respond to the SEC in writing before the agency's staff formally decides what action, if any, to take.
>
> At the center of the SEC's investigation is whether Biopure executives misled the public about its communications with the FDA. Biopure is seeking Hemopure's approval as an oxygen-carrying blood substitute for use in patients undergoing elective orthopedic surgery. Despite many delays and regulatory setbacks, Biopure's management insisted publicly that Hemopure was close to approval, until begrudgingly admitting otherwise in October. ***In the interim, Biopure and its executives sold millions of dollars in company stock.***
>
> \* \* \*
>
> Biopure's Christmas Eve news release revealed new and troubling information about the company's dealings with the FDA. ***Some of this information paints a much more negative picture about Hemopure and seems to contradict management's bullish pronouncements about the product's chances***

23

*for approval.*

*For the first time, Biopure disclosed Wednesday that in March it sought FDA permission to start a new clinical trial testing Hemopure in hospitalized trauma patients. But the FDA refused to allow the study because of "safety concerns" stemming from the company's Phase III orthopedic surgery trial.*

*This marks the first time Biopure has admitted safety problems with Hemopure.* However, *TheStreet.com* previously reported on serious safety problems associated with Hemopure for more than 2.5 years, citing data presented at medical meetings but not made widely available to investors, as well as information obtained from people involved in the Hemopure clinical study. These concerns included incidences of Hemopure-treated patients suffering from acute kidney failure, as well as relatively large numbers of deaths in Hemopure patients aged 75 or older.

Also Wednesday, Biopure said it submitted more information to the FDA in May, in an attempt to get the agency to lift the"clinical hold" on the trauma trial. The FDA refused twice, and even asked Biopure to conduct three additional animal studies of Hemopure. The last FDA rejection came July 30, the company said. Biopure has now given up seeking permission for the trauma study, although the company said it is still pursuing a trauma program.

Biopure said Wednesday that it hadn't previously disclosed anything about its trauma study publicly because the company didn't consider the information material, since the study was never started. *However, Biopure executives weren't shy about discussing Hemopure when they could put a positive spin on events.*

As the FDA was blocking the Hemopure trauma program, Biopure was still trying to get the blood substitute approved for use in orthopedic surgery. On Aug. 1, the FDA told Biopure that the Hemopure review was completed but that the product could not be approved until additional data and information were submitted. At that time, Biopure executives expressed confidence in press releases and a conference call that the FDA was eager to approve Hemopure and that it would happen soon.

*Throughout the spring and summer, Biopure management talked repeatedly about how well its communications with the FDA were progressing over Hemopure's eventual approval. This bullish talk helped boost Biopure's stock price. On Aug. 1, the day Biopure disclosed the FDA letter, Biopure's stock jumped 22% to $7.30 on heavy volume. By the end of August, Biopure was trading above $8 per share.*

*Biopure insiders then sold company stock. The biggest seller, by far, has been Carl Rausch, Biopure's co-founder and former chief executive. During the months of June and August, Rausch, whose current title is chief technology*

24

*officer, sold company stock worth about $1.5 million.*

\* \* \*

In late July, Biopure also raised $17.2 million through the private placement sale of its own common stock to unnamed investors.

***Eventually, Biopure management couldn't hide the fact that the FDA was nowhere close to approving Hemopure. In October, the company acknowledged that it would take almost a year for the company to compile and resubmit the information requested by the agency. Biopure's stock sunk below $3 per share.***

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

40. Plaintiffs bring this action derivatively in the right and for the benefit of Biopure to redress injuries suffered, and to be suffered, by Biopure as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Biopure is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

41. Plaintiffs will adequately and fairly represent the interests of Biopure in enforcing and prosecuting its rights.

42. Plaintiffs are and were owners of the stock of Biopure during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remain shareholders of the Company.

43. The current Board of Directors of Biopure consists of the following individuals: Individual Defendants Moore, Rausch, Judelson, Sanders, Koop, Harrington and Crout. Plaintiffs have not made any demand on the present Board of Directors of Biopure to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the

following reasons:

    a.    As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the Individual Defendants knew the adverse non-public information regarding Hemopure® and the Company's discussions with the FDA. While in possession of this material adverse non-public information regarding the Company, the following current members of the Biopure Board participated in the illegal insider selling:

    (i)    During the Relevant Period, Rausch sold 246,574 shares of Biopure stock for proceeds of $1,596,900. Because this defendant received a personal financial benefit from the challenged insider trading transactions, this defendant is interested and any demand upon him is futile;

    b.    The Compensation Committee of the Board determines, after consulting with the CEO, establishes, authorizes and administers Biopure's compensation policies, practices and plans for Biopure's directors, executive officers and other key personnel. The Compensation Committee is comprised of defendants Sanders and Judelson. As the members of the Compensation Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants Sanders and Judelson. To do so would jeopardize each defendant's personal financial compensation. Thus, demand on defendants Moore, Rausch, Koop, Harrington and Crout is futile;

    c.    The principal professional occupation of defendants Moore and Rausch are their employment with Biopure, pursuant to which they received and continue to receive substantial monetary compensations and other benefits. Specifically, for FY:03 Moore will

receive an annual base salary of not less than $350,000. Rausch will also receive a salary for FY:03 of nearly $350,000. In addition, both Moore and Rausch are granted options to purchase Biopure stock and are entitled to bonuses. Accordingly, defendants Moore and Rausch lack independence from defendants Sanders and Judelson, who exert influence over defendant Moore and Rausch's compensation by virtue of their position as members of the Compensation Committee. This lack of independence renders defendants Moore and Rausch incapable of impartially considering a demand to commence and vigorously prosecute this action;

    d. According to Biopure's Proxy Statements filed with the SEC, Individual Defendants Harrington, Sanders and Crout served on the Audit Committee during the Relevant Period. The Audit Committee is responsible for reviewing the activities of Biopure's internal auditors and independent accountants. The Audit Committee evaluates Biopure's organization and its internal controls, policies, procedures and practices to determine whether they are reasonably designed to: provide for the safekeeping of Biopure's assets; assure the accuracy and adequacy of Biopure's records and financial statements; reviews Biopure's financial statements and reports; monitors compliance with Biopure's internal controls, policies, procedures and practices; and receives direct compliance reports from Biopure's internal auditors and General Counsel and from the independent accountants. Nonetheless, the Audit Committee, with full knowledge of the Company's communication with the FDA concerning Hemopure®, recommended that the Board of Directors include the improper audited financial statements in Biopure's filings with the SEC during the Relevant Period without disclosing this material information. By such actions, these defendants breached their duties by causing or allowing the improper financials described above. As a result of these defendants' breach of their duties, any demand upon them is futile;

e.  The entire Biopure Board of Directors and senior management participated in the wrongs complained of herein. Biopure's directors are not disinterested or independent due to the following: Individual Defendants Moore, Rausch, Judelson, Sanders, Koop, Harrington and Crout served on the Biopure Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above-referenced defendants breached the fiduciary duties that they owed to Biopure and its shareholders in that they failed to reveal to the public the Company's communications with the FDA concerning Hemopure® despite admittedly having such knowledge. Thus, the Biopure Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected Biopure to millions of dollars in liability for possible violations of applicable securities laws;

f.  The Individual Defendants of Biopure, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Biopure's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

g.  As detailed herein at ¶¶15-21, in order to bring this suit, all of the directors of Biopure would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand. As set forth in particularity in ¶¶15-21 because a majority of the Individual Defendants have long-term personal, professional and financial relationships with each other and other board members, a

28

majority of the Current Individual Defendants could not have adequately considered a demand to bring the allegations made herein rendering any such demand futile;

      h.     The acts complained of constitute knowing violations of the fiduciary duties owed by Biopure's officers and directors and these acts are incapable of ratification;

      i.     Each of the Individual Defendants authorized and/or permitted the improper statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the improper statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

      j.     Any suit by the Individual Defendants to remedy these wrongs would likely expose the Individual Defendants and Biopure to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants; thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

      k.     Biopure has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Biopure any part of the damages Biopure suffered and will suffer thereby;

      l.     If the Individual Defendants were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of

their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

      m.    If Biopure's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Biopure. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, plaintiffs assert, upon information and belief, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Biopure against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Biopure, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause Biopure to sue them, since they will face a large uninsured liability.

44.    Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiffs, the current Board of Directors has failed and refused to seek to recover for Biopure for any of the wrongdoing alleged by plaintiffs herein.

45.    Plaintiffs have not made any demand on shareholders of Biopure to institute this

action since such demand would be a futile and useless act for the following reasons:

1.	Biopure is a publicly held company with approximately 44.38 million shares outstanding, and tens of thousands of shareholders;

2.	Making demand on such a number of shareholders would be impossible for plaintiffs who have no way of finding out the names, addresses or phone numbers of shareholders; and

3.	Making demand on all shareholders would force plaintiffs to incur huge expenses, assuming all shareholders could be individually identified.

## DAMAGES TO BIOPURE

46.	As a direct result of the Individual Defendants' breaches of their fiduciary duties and other violations of law, the Company has been severely damaged. The Individual Defendants' nondisclosures concerning the Company's communications with the FDA concerning Hemopure® have caused severe, irreparable, injury and damage to the company's reputation and goodwill in the investment and business communities and threaten to virtually destroy this once valuable franchise. For at least the foreseeable future, the Company will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled securities analysts and the investing public, such that Biopure's ability to raise capital – on favorable terms – will be impaired in the future. Indeed, the Company's market capitalization has already been severely damaged with over $266 million erased, or 75% of the Company's market value during the Relevant Period, and severely reducing the Company's financing options.

47.	In addition, significant Company money will have to be spent defending the Company in the numerous securities fraud lawsuits brought against the Company as a direct

31

result of the conduct of the Individual Defendants. These lawsuits will costs hundreds of thousands to defend and possibly millions if not tens of millions to resolve. In addition, significant Company funds will have to be expended defending the Company against the SEC pursuant to charges outlined in the Wells notices. Moreover, management will have to expend significant time answering these charges instead of being able to focus on the Company's core business. Moreover, the Company will have to spend addition Company funds employing independent outside counsel.

## VI.

## CAUSES OF ACTION

### COUNT I

**Against All Individual Defendants for Breach of Fiduciary Duty**

48. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

49. The Individual Defendants owed and owe Biopure fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Biopure the highest obligation of good faith, fair dealing, loyalty and due care.

50. The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

51. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

32

52.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Biopure has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

53.     Plaintiffs on behalf of Biopure have no adequate remedy at law.

### COUNT III

### Against All Individual Defendants for Abuse of Control

54.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

55.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Biopure, for which they are legally responsible.

56.     As a direct and proximate result of the Individual Defendants' abuse of control, Biopure has sustained significant damages.

57.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

58.     Plaintiffs on behalf of Biopure have no adequate remedy at law.

### COUNT IV

### Against All Individual Defendants for Gross Mismanagement

59.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

60.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Biopure in a manner consistent with the operations of a publicly held corporation.

61.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Biopure has sustained significant damages in excess of tens of millions of dollars.

62.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

63.     Plaintiffs on behalf of Biopure have no adequate remedy at law.

## COUNT V

### Against All Individual Defendants for Waste of Corporate Assets

64.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

65.     As a result of the improper statements and nondisclosures, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused Biopure to waste valuable corporate assets by paying incentive based bonuses and stock options to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions including responding the SEC's allegations and securities fraud actions.

66.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

67.     Plaintiffs on behalf of Biopure have no adequate remedy at law.

## COUNT VI

### Against All Defendants for Unjust Enrichment

68.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

69. By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of Biopure.

70. Plaintiffs, as shareholders and representatives of Biopure, seek restitution from these defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT VII

### Against Defendant Rausch for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

71. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

72. At the time of the stock sales set forth herein, the defendant Rausch knew the information described above, and sold Biopure common stock on the basis of such information.

73. The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which defendant Rausch used for his own benefit when he sold Biopure common stock.

74. At the time of his stock sales, defendant Rausch knew of the undisclosed adverse information concerning the Company's communications with the FDA concerning Hemopure®. Defendant Rausch's sales of Biopure common stock while in possession and control of this material adverse non-public information was a breach of his fiduciary duties of loyalty and good faith.

75. Since the use of the Company's proprietary information for their own gain

35

constitutes a breach of defendant Rausch's fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits Rausch obtained thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment as follows:

A.  Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.  Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiffs on behalf of Biopure have an effective remedy;

C.  Awarding to Biopure restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants including all illegal proceeds from insider selling;

D.  Awarding to plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

Dated: January 26, 2004

*/s/ Mary T. S/*

MARY T. SULLIVAN BBO#487130
SEGAL ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA 02108
Telephone: 617/742-0208
Facsimile: 617/742-2187

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
217 Second Avenue, North
Nashville, TN 37201
Telephone: 615/244-2202
Facsimile: 615/252-3798

BRANSTETTER KILGORE STRANCH &
JENNINGS
JAMES G. STRANCH
227 Second Avenue, North
Nashville, TN 37201
Telephone: 615/254-8801
Facsimile: 615/255-5419

Attorneys for Plaintiffs

## VERIFICATION

I, Laurie Parrott, hereby declare as follows:

I am a shareholder of Biopure Corporation and have been during the relevant times pertinent hereto. I certify under penalty of perjury that I have reviewed the foregoing Derivative Complaint and authorized its filing and that the contents in the Derivative Complaint are true to the best of my knowledge, information and belief.

Dated: January 21st, 2004.

_[signature]_
LAURIE PARROTT

## VERIFICATION

I, John Parrott, hereby declare as follows:

I am a shareholder of Biopure Corporation and have been during the relevant times pertinent hereto. I certify under penalty of perjury that I have reviewed the foregoing Derivative Complaint and authorized its filing and that the contents in the Derivative Complaint are true to the best of my knowledge, information and belief.

Dated: January 22, 2004.

_____
JOHN PARROTT