# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE BIOPURE CORPORATION | ) | Master Docket No. 1:04-cv-10177 (NG) |
| DERIVATIVE LITIGATION | ) | |
| | ) | |
| | ) | Assigned to Judge Nancy Gertner |
| | ) | |
| _____ | ) | Magistrate Judge Alexander |

### DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION TO DISMISS THE VERIFIED
### CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

TABLE OF CONTENTS

Page

I.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO COMPLY
      WITH THE PRE-SUIT DEMAND REQUIREMENTS OF RULE 23.1 ......................... 4

      A.    The Boilerplate Allegations Of Paragraph 65 -- Generalizing About The
            Defendants As A Whole -- Have Been Previously Rejected By Magistrate
            Judge Alexander As Insufficient To Excuse Demand Under Rule 23.1 ............... 7

      B.    The Complaint Fails To Allege With Particularity Facts That Establish A
            Reasonable Doubt That A Majority Of The Directors Are Disinterested
            And Independent ................................................................................................. 10

            1.    The Plaintiffs' Conclusory Allegations Of Potential Liability For
                  Securities Violations Provide No Facts That Could Demonstrate
                  "Substantial Likelihood" Of Personal Liability As Required .................. 10

            2.    Neither Can The Plaintiffs Establish A "Substantial Likelihood" Of
                  Personal Liability For A Majority Of The Board With Respect To
                  The Counts Of The Complaint -- Counts I-V Are Barred By
                  Biopure's Certificate Of Incorporation ................................................. 13

            3.    The Plaintiffs' Allegation Of A Single Director's Purported Insider
                  Selling Is Insufficient To Impugn the Independence Of The
                  Remaining Six Members Of The Board As A Matter Of Law ................ 14

            4.    The Plaintiffs' Conclusory Allegations Concerning Audit
                  Committee Membership Of Three Directors Fail To Excuse
                  Demand ................................................................................................. 15

            5.    The Plaintiffs' Allegations Of Social And Business Relationships
                  Among The Directors Fail To Raise A Reasonable Doubt As To
                  Independence ......................................................................................... 17

            6.    The Plaintiffs' Allegations That Two Directors Are Compensation
                  Committee Members Impairing The Board's Independence Fail ........... 19

            7.    Plaintiffs' Allegations Concerning A Hypothetical Exclusion In
                  Biopure's D&O Policy Fail To Satisfy Rule 23.1 ................................. 20

      C.    If Any Of The Directors Are Independent, They May Assume Control
            (And If They So Determine, Dismissal) Of The Litigation Via Formation
            Of A Special Litigation Committee ................................................................... 20

II.   EACH COUNT OF THE CONSOLIDATED AMENDED COMPLAINT FAILS
      TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ...................... 21

      A.    Counts I-V Of The Complaint Must Be Dismissed Pursuant To Rule
            12(b)(6) Because The Plaintiffs Have Failed To Allege Legally
            Cognizable Damages ......................................................................................... 21

TABLE OF CONTENTS
(continued)

Page

B.    Counts I-V Also Fail To State A Claim Because The Complaint Fails To
      Separately Allege The Individual Defendants' Participation In The
      Purported Wrongful Acts ........................................................................ 22

C.    Counts I-V Are Barred By Biopure's Certificate of Incorporation And
      Accordingly Fail To State A Claim ........................................................ 23

D.    Count IV (Waste) Also Fails To State A Claim Upon Which Relief May
      Be Granted ............................................................................................ 23

E.    Count V (Unjust Enrichment) Fails To State A Claim Upon Which Relief
      May Be Granted ..................................................................................... 24

F.    Count VI (Alleged Insider Trading Of Rausch) Must Be Dismissed
      Pursuant To Rule 9(b) And Rule 12(b)(6) ............................................ 24

CONCLUSION ...................................................................................................... 26

# TABLE OF AUTHORITIES

Page

**CASES**

*A.R. DeMarco Enterprises, Inc. v. Ocean Spray Cranberries, Inc.,*
 No. Civ. A. 19133-NC, 2002 WL. 31820970 (Del. Ch. Dec. 4, 2002) ...........................19

*Apple Computer, Inc. v. Exponential Tech., Inc.,*
No.16315, 1999 WL. 39547 (Del. Ch. Jan. 21, 1999).......................................................17

*Aronson v. Lewis,*
473 A.2d 805 (Del. 1984) ...........................................................6, 7, 18, 19, 21

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,*
845 A.2d 1040 (Del. 2004) ....................................................................9, 18, 19

*Brehm v. Eisner,*
746 A.2d 244 (Del. 1998) ................................................................................24

*Brophy v. Cities Serv. Co.,*
70 A.2d 5 (Del. Ch. 1949)...............................................................................25

*Cantor Fitzgerald, L.P. v. Cantor,*
724 A.2d 571 (Del. Ch. 1998).........................................................................24

*In re Caremark Int'l Derivative Litig.,*
698 A.2d 959 (Del Ch. 1996)................................................................11, 12, 13

*Chu v. Sabratek Corp.,*
100 F. Supp. 2d 827 (N.D. Ill. 2000) ..............................................................12

*Dollens v. Zionts,*
No. 01 *C02826*, 2002 WL 1632261 (N.D. Ill. July 22, 2002) ....................................21, 22

*Grobow v. Perot,*
526 A.2d 914 (Del. Ch. 1987)..................................................................7, 9,18

*Grossman v. Johnson,*
674 F.2d 115 (1st Cir. 1982)........................................................................5, 13

*Guttman v. Huang,*
823 A.2d 492 (Del. Ch. 2003).........................................6, 7, 10,14,15, 16, 25

*Haseotes v. Bentas,*
No. Civ. A. 19155 NC, 2002 WL. 31058540 (Del. Ch. Sept. 3, 2002)..............................6

TABLE OF AUTHORITIES
(continued)

Page

*In re Healthco Int'l, Inc.*,
208 B.R. 288 (Bankr. D. Mass. 1997) ............................................................23

*Heit v. Baird*,
567 F.2d 1157 (1st Cir. 1977) ...........................................................................5

*In re Kauffman Mut. Fund Actions*,
479 F.2d 257 (1st Cir. 1973) .............................................................................5

*LaSalle Nat'l Bank v. Perelman*,
82 F. Supp. 2d 279 (D. Del. 2000) ..................................................................24

*Landy v. D'Allesandro*,
316 F. Supp. 2d 49 (D. Mass. 2004) ...........................................................5, 15

*Levine v. Prudential Bache Properties, Inc.*,
855 F. Supp. 924 (N.D. Ill. 1994) .....................................................................9

*Lewis v. Fites*,
Civ. A. No. 12566, 1993 WL. 47842 (Del. Ch. Feb. 19, 1993).....................9, 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..........................................................23

*McMichael v. United States Filter Corp.*,
No. EDCV 99-182VAP (MCX) 2001 WL 418981 (C.D. Cal. Feb. 23, 2001).................14

*In re MedImmune, Inc. Sec. Litig.*,
873 F. Supp. 953 (D. Md. 1995) ......................................................................12

*Orman v. Cullman*,
794 A.2d 5 (Del. Ch. 2002).............................................................................18

*In re Paxson Communication Corp. Shareholders Litig.*,
No. Civ. A. 17568 2001 WL 812028 (Del. Ch. July 12, 2001) ...................17, 20

*Pogostin v. Rice*,
480 A.2d 619 (Del. 1984) ...............................................................................18

*Rales v. Balsband*,
634 A.2d 927 (Del. 1993) ............................................................................6, 7,

*Rattner v. Bidzos*,
No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Sep. 30, 2003)...............6, 9, 11, 13, 15

TABLE OF AUTHORITIES
(continued)

Page

*Seminaris v. Landa,*
662 A.2d 1350 (Del. Ch. 1995)..................................................................9, 10, 11

*Shields on Behalf of Sundstrand Corp. v. Erickson,*
710 F. Supp. 686 (N.D. Ill. 1989) ..........................................................................9

*Spiegel v. Buntrock,*
571 A.2d 767 (Del. 1990) ................................................................................4, 21

*In re Stratus Computer, Inc. Sec. Litig.,*
Civ.A. 89-2075-Z 1992 WL 73555 (D. Mass. March 27, 1992) ......................5, 7,8, 9, 22

*In re Symbol Technologies Sec. Litig.,*
762 F. Supp. 510 (E.D.N.Y. 1991) ......................................................................21

*In re United Telecommunications, Inc., Sec. Litig.,*
No. 90-2251-EEO 1993 WL 100202 (D. Kan. March 4, 1993) ......................................21

*In re Westinghouse Sec. Litig.,*
832 F. Supp. 989 (W.D. Pa. 1993)........................................................................11

*In re Wheelabrator Technologies Inc. Shareholders Litig.,*
C.A. No. 11495 1992 WL 212595 (Del. Ch. Sept. 1, 1992)............................................14

*White v. Panic,*
783 A.2d 543 (Del. 2001) ..................................................................................24

## STATUTES

Fed. R. Civ. P. 9(b), 12(b)(6)..........................................................................1

Fed. R. Civ. P. 23.1 ....................................................................................3, 4

DEL. CORP. CODE ANN. tit 8, § 102(b)(7) ................................................................13, 14

Defendants Thomas A. Moore, Carl W. Rausch, David N. Judelson, Charles A. Sanders, M.D., C. Everett Koop, M.D., Daniel P. Harrington, J. Richard Crout, M.D., Jane Kober and Nominal Defendant Biopure Corporation (collectively, the "Defendants") respectfully submit this Memorandum of Law In Support of their Motion To Dismiss the Verified Consolidated Amended Shareholder Derivative Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6) and 23.1.

**Preliminary Statement**

This derivative action is a companion case to a securities class action pending before this Court. The Plaintiffs bring this action, purportedly on behalf of Biopure Corporation ("Biopure" or the "Company"), against current and former members of Biopure's Board of Directors (the "Board" or the "Director Defendants") and Biopure's General Counsel. Five out of six of the asserted claims (breach of fiduciary duty, abuse of control, waste, gross mismanagement and unjust enrichment) arise out of the same allegations. A sixth claim arises out of the stock sales of a single Director, Carl W. Rausch. None of the six claims meets the requisite pleading burdens or states a claim as a matter of law and they all must be dismissed.

**Background**

Biopure is a publicly traded biotechnology company, incorporated in Delaware and based in Cambridge, Massachusetts. Compl. ¶¶ 1, 21. Biopure is in the process of seeking Food and Drug Administration ("FDA") approval of its principal product, Hemopure, a biologic intended to be used as an oxygen therapeutic (a "blood substitute") to meet the body's need for oxygen in a variety of circumstances. Compl. ¶¶ 2-4. Hemopure is manufactured and purified from cow's blood and acts as an oxygen delivery agent, similar to human donated blood. Hemopure has certain characteristics that may be beneficial when compared to human donated blood. It is manufactured and purified, eliminating blood-borne diseases. It need not be matched to an individual's blood-type. Compl. ¶ 2. It need not be refrigerated as human donated blood must and it has a longer shelf life than human donated blood. It has a smaller molecular size than human red blood cells and may reach tissue that transfused red blood cells cannot.

1

There are two different possible indications for Hemopure relevant to the allegations before the Court here.  On July 31, 2002, Biopure submitted a Biologic License Application ("BLA") to the FDA seeking regulatory approval to market Hemopure in the United States for use in orthopedic surgery.  Compl. ¶ 4.  The filing of the BLA was the culmination of years of data gathering and analysis.

While the BLA was under consideration by the FDA, Biopure filed a proposed protocol to begin a new clinical trial of Hemopure in a different indication than the orthopedic surgery indication of the BLA.  Compl. ¶¶ 33, 42-43.  Specifically, the new protocol, first submitted to the FDA in March 2003, proposed a new clinical trial of Hemopure in trauma patients in a hospital setting, using a higher dose of Hemopure than had been used in earlier trials.  Compl. ¶ 7.  Within thirty days of the submission of the new, proposed protocol, the FDA put the trauma protocol on clinical hold.  *Id.*  The FDA's review of the pending BLA continued.  Compl. ¶¶ 42, 43.  Later, on July 30, 2003, the FDA wrote Biopure a letter stating that the FDA had completed its review of the BLA and asking questions and seeking further explanations about the BLA.  *Id.*

According to the Plaintiffs, Biopure failed to disclose that the FDA placed on hold the proposed clinical trial for Hemopure for the trauma indication, failed adequately to disclose FDA communications concerning the BLA, especially the July 30, 2003 BLA letter (Compl. ¶ 7), and otherwise failed to report accurately the Company's financial condition (Compl. ¶¶ 22-28).  The Plaintiffs offer *no* details of these purported failures or financial statement inaccuracies.

The catalyst for this lawsuit and the companion securities class action was a press release issued by the Company on December 24, 2003.  That day, the Company announced that the Company and two individuals had received "Wells Notices" from the United States Securities and Exchange Commission ("SEC").  Compl. ¶¶ 7, 16.  The press release stated that the SEC had made a preliminary decision to recommend a civil injunctive proceeding against the Company and the two individuals.  (To date, the SEC has *not* brought such a proceeding.)  The Company reported that it believed the Notices concerned the clinical hold on the proposed trauma protocol, which had not been disclosed previously, and the Company's disclosure concerning the letter it

received on July 30, 2003, from the FDA regarding the BLA.  Using the press release, the Plaintiffs filed this action and the companion securities action.

## Summary Grounds For Dismissal

In this case, the Plaintiffs claim that the Company has been injured by incurring defense costs related to the SEC review and a loss of good will and reputation.  Compl. ¶¶ 68, 69.  In addition, the Plaintiffs complain that a single director, Carl Rausch, sold stock over a year and a half, purportedly on the basis of insider information (knowledge of the undisclosed FDA communications).  Compl. ¶ 23.  The Plaintiffs accordingly allege that Rausch is subject to civil liability for common law insider trading violations.

The Complaint is admittedly *derivative* in nature -- brought by two (of many thousands) of shareholders of Biopure, purportedly on behalf of the Company, challenging the alleged inaction of the Board regarding the conduct of the Company's agents concerning the disclosure of the FDA communications.  Such a claim, if there is one, is the Company's claim.  Critically, the question of whether to bring litigation on behalf of Biopure -- like any other business decision -- is not one to be resolved by the shareholders.  Rather, that decision is one reserved for the Company's Board.

Indeed, the decision to sue is so fundamentally the prerogative of the board of directors that the Federal Rules of Civil Procedure have effectively codified the business judgment rule, requiring that any shareholder who wishes to bring claims on behalf of the corporation must first make a pre-suit demand to do so on the company's board of directors.  Consistent with the protection of the business judgment rule, the Federal Rules of Civil Procedure and the law of the First Circuit *require dismissal* of any derivative complaint that fails either (i) to allege that a pre-suit demand has been made on the board and refused or (ii) to allege "with particularity" the reasons why such a demand has not been made, *i.e.*, is futile.  Fed. R. Civ. P. 23.1.

The Complaint here admittedly has been brought without first making the requisite pre-suit demand.  Instead, in a wholly conclusory fashion, the Plaintiffs allege that demand in this case was futile because a majority of the seven-person Board was not independent.  The

Complaint is replete with generic, conclusory allegations that could be levied at virtually every board of directors in corporate America, but is *entirely lacking* the particularized factual allegations necessary to allow these shareholders to usurp the authority of *this* Board by bringing suit. Without the factual particularity required by Rule 23.1 -- vigorously enforced in the First Circuit -- the Complaint must be dismissed.

Apart from Plaintiffs' failure to make factual allegations sufficient to satisfy Rule 23.1, the Complaint must be dismissed as a matter of law for failure to state a claim. First, the Plaintiffs have failed to allege any legally cognizable theory of damages. As several courts have held, a derivative action must be dismissed where -- as here -- the alleged damage amounts to defense costs for collateral actions and an injury to business reputation. Even if damages were adequately alleged (and they are not), the Complaint nonetheless fails with respect to Counts I-V, which Counts are *barred* by Biopure's Certificate of Incorporation under Delaware law. Count VI (insider trading) fails as well, both for failing to satisfy the applicable strict pleading requirements of Rule 9(b) and for failing to plead the elements of the claim with respect to the sole accused defendant.

In sum, the Plaintiffs may not displace the Board and proceed with this action. They have not satisfied Rule 23.1. In addition, Rule 23.1 aside, the Plaintiffs have failed to plead any legally cognizable claim. The Complaint must be dismissed.

## ARGUMENT

## I.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE PRE-SUIT DEMAND REQUIREMENTS OF RULE 23.1

As required by Fed. R. Civ. P. 23.1, a complaint in a shareholder derivative action *must* "*allege with particularity* the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . *and the reasons for his failure to obtain the action or for not making the effort*." *Id.* (emphasis added). The demand requirement embodied in Rule 23.1 safeguards a fundamental tenet of corporate governance: "directors, rather than shareholders, manage the business and affairs of the corporation." *Spiegel v. Buntrock*, 571 A.2d 767, 772-73

(Del. 1990). "The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation. Consequently, such decisions are part of the responsibility of the board of directors." *Id*. at 773. As the First Circuit has explained:

> The purpose of the demand requirement is, of course, to require resort to the body legally charged with conduct of the company's affairs before licensing suit in the company's name by persons not so charged. Given the expense of litigation and the normal presumptions running in favor of those acting for the company, this seems only reasonable.

*Heit v. Baird*, 567 F.2d 1157, 1162 n.6 (1st Cir. 1977). Acknowledging that the pre-suit demand requirement protects core principles of corporate governance, the First Circuit recognizes that Rule 23.1 "is not a technical rule of pleading, but one of substantive right." *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973).

Failure to comply with Rule 23.1 requires dismissal, and in the First Circuit, Rule 23.1 is "vigorously enforced." *Landy v. D'Allesandro*, 316 F. Supp. 2d 49, 58 (D. Mass. 2004) (citing *Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977)). Accordingly, where a derivative plaintiff has brought suit without first making a demand on the board, the complaint is scrutinized for strict compliance with Rule 23.1: "Not only must any reasons excusing demand satisfy the substantive state law, but Rule 23.1 imposes an independent federal requirement that such reasons be *pled with particularity." In re Stratus Computer, Inc. Sec. Litig.*, 1992 WL 73555, at *9 (D. Mass. Mar 27, 1992) (emphasis added).[1] To meet the strict pleading standards imposed by Federal Rule 23.1, specific facts must be pled --conclusory allegations are insufficient.

---

[1] All unreported cases are submitted herewith in the Compendium of Unreported Authorities Cited in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Verified Consolidated Amended Shareholder Derivative Complaint.

*Grossman v. Johnson*, 674 F.2d 115, 123 (1st Cir. 1982) (requiring "particularized allegations and specific facts"); *Landy*, 316 F. Supp. 2d at 59-60 (mere conclusions are ignored).

Here, because Biopure is a Delaware corporation, the controlling substantive law is the law of Delaware.   Under the law of Delaware, for the purposes of Rule 23.1 analysis, "[w]here . . . no Board decision is being challenged . . . the rule articulated in *Rales v. Blasband,* 634 A.2d 927 (Del. 1993), is the appropriate standard for determining whether demand is excused." *Haseotes v. Bentas*, No. Civ. A. 19155 NC, 2002 WL 31058540, at *4 (Del. Ch. Sept. 3, 2002).   The *Rales* standard requires the Plaintiffs to allege particularized facts that create a reasonable doubt as to whether the board (as existing at the time the complaint was filed)[2] could exercise independent and disinterested business judgment in responding to the demand:

> [I]t is appropriate in these situations to examine whether the board that would be addressing the demand can impartially consider the merits without being influenced by improper considerations. Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its *independent and disinterested business judgment* in responding to the demand.  If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Rales*, 634 A.2d at 934.[3]   The Delaware Supreme Court teaches that a director is interested "whenever divided loyalties are present, or a director has received, or is entitled to receive, a

---

[2] "[F]or purposes of determining demand futility, the Individual Defendants who are not Director Defendants are largely irrelevant." *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *9, n.47 (Del. Ch. Sep 30, 2003).  Accordingly, the allegations concerning non-director defendant Jane Kober are irrelevant.

[3] Alternatively, "[w]here the [derivative] lawsuit attacks *a decision* made by the board, the appropriate futility standard is that articulated in *Aronson v. Lewis*." *Haseotes*, 2002 WL 31058540, at *4 (emphasis added).  In *Aronson*, the Delaware Supreme Court articulated a two-part test for demand excusal: "demand is excused where the complaint alleges, with particularity, facts that establish a reasonable doubt as to whether (a) the directors are disinterested and independent, or (b) the challenged transaction is otherwise the product of a valid exercise of the directors' business judgment." 473 A.2d 805, 814 (Del. 1984).  "The essential predicate for the *Aronson* test is the fact that *a decision* of the board of directors is being challenged in the derivative suit."  *Rales*, 634 A.2d at 933.  Accordingly, the

personal benefit from the challenged transaction which is not equally shared by the stockholders." *Id.* at 933. A director is independent if his or her "decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Id.* at 936 (quoting *Aronson v. Lewis,* 473 A.2d 805, 816 (Del. 1984)).

The Plaintiffs here do not allege that a demand has been made on the Board, but rather attempt to comply with Rule 23.1 by alleging that demand is excused because it would have been "futile." *E.g.*, Compl. ¶¶ 62-67. The conclusory allegations of the Complaint, however, fail to satisfy either the substantive law of Delaware under *Rales* or the strict pleading requirements imposed by Rule 23.1 and the First Circuit. The Complaint must be dismissed.

### A.    The Boilerplate Allegations Of Paragraph 65 -- Generalizing About The Defendants As A Whole -- Have Been Previously Rejected By Magistrate Judge Alexander As Insufficient To Excuse Demand Under Rule 23.1

The bulk of the Plaintiffs' demand futility allegations made in paragraph 65 of the Complaint plead conclusions, generalized to all the inside and outside Director Defendants. *E.g.*, Compl. ¶¶ 65(e)-(l). That alone is improper pleading. As outside directors, Defendants Judelson, Sanders, Koop, Harrington, and Crout -- a majority of the Board -- are presumed

---

Delaware courts have held that *Rales*, and not *Aronson*, supplies the governing law when, as is the case here, the derivative plaintiff challenges alleged insider trading and misrepresentations in public statements, but does *not* allege that she is challenging a decision by the Board. S*ee Guttman v. Huang*, 823 A.2d 492, 500-01 (Del. Ch. 2003) (*Rales* applied to allegations of insider trading and false financial statements); *Rattner*, 2003 WL 22284323 (same). Here, the Plaintiffs fail to allege any *board decision* as a basis for the suit. Rather, the Complaint appears to attack the alleged insider trading of one defendant, and alleged omissions or misstatements in the Company's public disclosures. *E.g.*, Compl. ¶¶ 1, 93-97. "The absence of board action . . . makes it impossible to perform the essential inquiry contemplated by *Aronson* -- whether the directors have acted in conformity with the business judgment rule [in consciously deciding to act or refrain from acting]." *Rales*, 634 A.2d at 933. As in *Guttman* and *Rattner*, the *Rales* test applies.

Even if *Aronson* somehow applied, however, the Complaint could not pass muster. At minimum, the Plaintiffs must allege a *business decision* made by the Board to be measured by the good faith, disinterested and informed basis factors of the business judgment rule. Nowhere does the Complaint allege any such "decision," let alone with the particularity required by Rule 23.1. In any event, the Delaware courts have recognized that "the differences between the *Rales* and the *Aronson* tests in the circumstances of this case are only subtly different" in application, *Guttman*, 833 A.2d at 500, with *Aronson* requiring that the elements of the claims with respect to a majority of the board be pled "with particularity," and *Rales* requiring that the complaint establish a "substantial likelihood" of personal liability for the majority of the board. *Id.* at 500-01. Here the Plaintiffs have satisfied neither test.

independent. *See Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987) ("[O]utside directors ... [a]re presumptively independent."). Thus, five of the seven Director Defendants are presumed independent.

Furthermore, virtually all of these conclusory, boilerplate allegations were addressed and rejected in an opinion by Magistrate Judge Alexander and adopted by Judge Zobel in *Stratus*, dismissing a derivative suit:

| Plaintiffs' Allegations: Compl. ¶ 65 | Virtually Identical Allegations Dismissed in *Stratus* |
|---|---|
| (a) The directors *violated securities laws and their fiduciary duties* (actions *not capable of ratification*). Compl. ¶ 65 (h), (i), (j), (l); | "(a) The acts complained of herein constitute *violations of the federal securities* and other federal laws and *fiduciary duties* owed by directors and officers and these acts are *incapable of ratification*;" |
| (b) The directors are *implicated in the dissemination of false or misleading information.* Compl. ¶ 65 (h), (i); | "(b) Each of the directors is *implicated in the dissemination of the false and misleading statements and omissions* alleged herein;" |
| (c) The Directors had *access to internal corporate information* and accordingly "each of the Director Defendants knew the adverse non-public information regarding Hemopure and the Company's discussions with the FDA." Compl. ¶ 65(a). *See also*, Compl. ¶ 65(d) (members of the Audit Committee must have had knowledge of undisclosed information); Compl. ¶ 65(e) (each director was charged with management of the Company and accordingly knew of the undisclosed information); | "(c) Each member of the Board of Directors had *access to confidential financial information* indicating Stratus' true and [sic] financial condition and prospects." |
| (d) The directors have *interrelated social and business relationships and are friends, causing conflicts of interest.* Compl. ¶ 65(g); | "(d) *Social, business and other relationships* tie the officers and directors of Stratus to one another, and any legitimate 'independent' action by Stratus against any of the individual defendants would be impossible;" |
| (e) The directors "*participated in the wrongs*" Compl. ¶ 65(e), (f), (i); | "(e) Each of the current directors *participated in, knew of, and was on notice of* the wrongful and illegal conduct alleged herein; . . ."[4] |

---

[4] *In re Stratus* 1992 WL 73555, at *9-10 (emphasis added).

Faced with the same boilerplate allegations as those grafted into the Complaint here, Magistrate Judge Alexander in *Stratus* dismissed a complaint for failure to comply with Rule 23.1. In a decision that could have been written about the Complaint here, the Court explained:

> Item (a) is . . . suspect as this complaint *fails to allege particular conduct that would violate federal securities laws*. . . . [A]llowing a complaint to circumvent the demand requirement through allegations as vague and conclusory as items (b) through (e) would render the demand requirement nugatory. *These items, in light of the factual allegations of the complaint, cannot be understood to allege particular misconduct by the individual directors nor particular circumstances specific to each director.* "[S]tripped of these conclusory allegations, the facts set forth in the complaint" fail to "make out with sufficient particularity misconduct that would excuse a demand on directors."

*Id*. at *10 (emphasis added).[5]

As in *Stratus*, the Plaintiffs' generic, one-size-fits-all allegations in paragraph 65 fail "to allege particular misconduct by the individual directors nor particular circumstances specific to each director," and therefore are insufficient under Rule 23.1.

---

[5] Judge Alexander's conclusions, fully applicable here, wholly comport with Delaware law. *See Grobow*, 526 A.2d at 924-25 (allegations of securities law violations held insufficient to excuse demand); *Levine v. Prudential Bache Properties, Inc.*, 855 F. Supp. 924, 941 (N.D. Ill. 1994) (same, applying Delaware law); *Seminaris v. Landa*, 662 A.2d 1350, 1354-54 (Del. Ch. Ct. 1995) (mere threat of personal liability of directors if suit is brought is insufficient); *Rattner*, 2003 WL 22284323, at *10 n.53 (holding allegation that "Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information" was insufficient); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1051 (Del. 2004) (general allegations of social and business relationships insufficient); *Lewis v. Fites*, Civ. A. No. 12566,1993 WL 47842, at *2 (Del. Ch. Feb 19, 1993) (allegations that directors "participated in and approved the alleged wrongs and would have to sue themselves. . . . have been rejected repeatedly"); *see generally Shields on Behalf of Sundstrand Corp. v. Erickson*, 710 F. Supp. 686, (N.D. Ill. 1989) (complaint alleging that directors had participated in the wrongs, that wrongdoers dominated and controlled board, that directors failed to act against those responsible for illegal conduct, even though the corporation was forced to pay over $127,000,000 to federal government, that challenged acts were illegal and fraudulent and could not be ratified, that most of the directors were officers of corporation and beholden to other officers, that the directors received benefits for service on board, and that directors amended certificate of incorporation to limit their liability for negligence; shareholders' derivative action inadequately alleged futility of demand upon directors under federal or Delaware law.)

**B.    The Complaint Fails To Allege With Particularity Facts That Establish A Reasonable Doubt That A Majority Of The Directors Are Disinterested And Independent**

In addition to the largely generic conclusions offered in paragraph 65, the Plaintiffs offer allegations concerning each individual Director Defendant in paragraphs 22-28, and in sub-paragraphs 65(a)-(d).   These allegations are again conclusory, devoid of the "specific facts" requisite to a showing that the Board should be stripped of its right to manage the affairs of the Company.

**1.    The Plaintiffs' Conclusory Allegations Of Potential Liability For Securities Violations Provide No Facts That Could Demonstrate The Requisite "Substantial Likelihood" Of Personal Liability**

The Plaintiffs allege that demand would be futile because some of the defendants are also defendants in securities class actions and (some of them) are the subjects of an SEC investigation.  Compl. ¶¶ 22-28.   Accordingly, say the Plaintiffs, they are subject to potential liability for securities violations and breaches of fiduciary duty based on the wrongs alleged, and their independence or disinterest is compromised with respect to a decision to bring suit.  Compl. ¶¶65(h)-(l).   Where, as here, plaintiffs assert directorial interest based on potential liability arising from alleged securities violations, the plaintiffs must plead particularized facts demonstrating that a majority of the directors face a "*substantial likelihood*" of liability for the challenged conduct.  *See Guttman,* 823 A.2d at 500-01; *Rattner*, 2003 WL 22284323, at *12; *Seminaris,* 662 A.2d at 1354.   The Complaint, however, utterly fails to plead any facts with particularity concerning each individual director's potential for liability in either the securities suits or the SEC investigation.

In fact, of the seven Directors named as Defendants here, *only two* are allegedly named as defendants in the securities class actions.  Compl. ¶7.   Accordingly, a super-majority of the Board faces *no* potential for liability in the securities class actions.  Further, only four Director Defendants are alleged to have received Wells Notices from the SEC.  Compl. ¶13.  (The SEC has not filed a civil proceeding as to any of them.)  The Plaintiffs are thus left to speculate about the possibility that the SEC will both bring civil injunctive proceedings against *all* of the four

directors who have received Wells Notices, and additionally, that those proceedings would be pursued through adverse judgment or admission of liability.  *See Lewis,* 1993 WL 47842, at *3 (holding demand not excused based on entry of consent order with SEC where no admission of liability was made). As of this date, the SEC has not even brought such an action, and even if it had, the requisite "substantial likelihood" of personal liability necessary to excuse demand cannot be predicated on such remote speculation.

In *Seminaris*, the shareholder plaintiff alleged that demand would be futile regarding his claims arising from the company's dissemination of false and misleading information, in part because the directors faced "potential personal liability and criminal sanctions" arising from securities fraud claims and an SEC investigation of the company.  662 A.2d at 1354.  The court held:

> I cannot agree with plaintiff that the threat of liability in the related actions has a greater impact on the directors' discretion than the threat of liability in this derivative action.  *Plaintiff is merely uttering a slightly altered version of the discredited refrain -- "you can't expect directors to sue themselves."*

*Id.* at 1355 (citation omitted) (emphasis added).  *See also In re Westinghouse Sec. Litig.*, 832 F. Supp. 989, 998 (W.D. Pa. 1993) ("plaintiffs' conclusory statements . . . that the individual defendants are liable to the corporation for contribution in connection with the purchaser class action, besides lacking ripeness, are not accompanied by particularized facts supporting demand futility.").

Similarly, in *Rattner*, the plaintiff alleged that the defendants had failed to "exercise their oversight responsibilities to ensure that [the company] complied with Federal and State Laws, rules and regulations and to ensure the integrity of its financial reporting."  2003 WL 22284323, at *6.  As is this case, the plaintiff in *Rattner* alleged that as a result of the director's misdeeds, the company's "integrity in the market [had] been impugned" and that the company was injured by the costs and "potential liability" resulting from pending securities class actions.  *Id.*  The court recognized that the complaint alleged what is known as a "*Caremark*" claim, based on accounting oversight, "one of, if not the, most difficult theories upon which to prevail."  *Id.* at

*12 (citing *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996)).  To establish liability, the plaintiff would have to prove gross negligence.  *Id.*  Noting that the complaint failed to plead any particularized facts concerning the company's internal controls, actions or practices of the audit committee, or the board's involvement in financial recording and reporting, the court held that no "substantial likelihood" of liability was established.  *Id.*

    Aside from cryptic allegations that the Director Defendants "approved many of the wrongful acts" and "participat[ed] in the underlying misconduct" (with the factual predicate of such "approval" and "participation" left to conjecture), or "caus[ed] Biopure to file false financial statements" (Compl. ¶¶ 22-28) (again the Plaintiffs reveal no facts), the Complaint here contains *no* particulars relating to the personal liability of each defendant.  There is no allegation as to how the Defendants came to know of the FDA communications, *i.e.* whether they were even presented to the Board.  The Complaint also fails to allege with any specificity *which* Defendants purportedly made or caused to be made misleading statements, each Defendant's specific involvement in making them, and perhaps most dispositively, *fails to plead a single fact that could show that any Defendant had the requisite scienter to sustain the securities fraud actions (alleged in paragraph 16).*[6]

    Even if the Plaintiffs did plead such basic information, there is nothing in the Complaint that could show that the Defendants had any duty to disclose the FDA communications.  Notably, courts have held that there simply is no duty to disclose FDA questions raised during the review process.  *In Re MedImmune, Inc. Sec. Litig.*, 873 F .Supp 953, 966 (D. Md. 1995) ("Defendants, as a general proposition, ha[ve] no duty to report [their] ongoing discussions with FDA during the review process."); *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 834 (N.D . Ill. 2000) ("[s]imply receiving a number of letters from the FDA listing regulatory shortcomings *does not portend ultimate FDA denial of the recipient's application.*") (emphasis added).

---

[6] The Complaint does allege that one defendant sold stock based on insider information which in some circumstances could establish scienter, however, as shown in Part II.F, those allegations are patently insufficient here.

To the extent that the Plaintiffs claim that the Defendants failed to exercise proper oversight regarding financial disclosures (*i.e.*, a *Caremark* claim, *see* Compl. ¶¶ 72, 73), the Complaint is altogether lacking. There are no allegations concerning just how the Director-Defendants were "grossly negligent" in approving disclosures, including the extent of their knowledge regarding FDA communications, the impact of the FDA communications on the Company's then-current financial statements or the extent to which such communications were material. As in *Rattner*,

> The only information one can snare from the Amended Complaint is that there exists a body of rules regarding the accuracy of recording and reporting financial information which may have been violated. [One cannot], from the face of the Amended Complaint, [] determine what role, if any, the Board or its members played in the internal processes of collecting and disseminating financial information. The most I can safely admit knowledge of is that [certain directors] were members of the Audit Committee during the Relevant Period and, thus, that the Company had an Audit Committee.

2003 WL 22284323, at *13 (alterations in original).

It has long been the case that "[b]are allegations of 'wrongful participation' or 'acquiescence' are not enough in this circuit" to excuse demand. *Grossman,* 674 F.2d at 124. *Yet that is all the Plaintiffs offer.* There is nothing in the Complaint that could establish a "substantial likelihood" that any one of the Director Defendants will be subject to liability, let alone a majority of them, and the Complaint should be dismissed.

### 2.    The Company's Certificate of Incorporation Also Precludes A "Substantial Likelihood" of Personal Liability

Moreover, "substantial likelihood" of liability respecting a majority of the Directors can not be inferred from the Complaint because, excepting Count VI for the alleged insider trading of one defendant, each claim in the Complaint is barred by the Company's Certificate of Incorporation and Delaware law. As permitted by DEL. CORP. CODE ANN. tit. 8, § 102,[7]

---

[7] Delaware law allows corporations to limit directors' personal liability for non-intentional conduct committed in good faith and not for improper personal benefit. A corporation may adopt in its Certificate of Incorporation:

Biopure's Certificate of Incorporation exculpates the Board from liability for breaches of fiduciary duty, excepting claims of breach of the duty of loyalty and intentional misconduct. *See* Restated Certificate Of Incorporation Of Biopure Corporation, Article Ten, (relevant excerpts attached hereto at Ex. A).[8]  Delaware recognizes that, when such a provision exists within a charter, "a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors, based upon particularized facts." *Guttman*, 823 A.2d at 501 (refusing to find demand excused where charter contained exculpatory clause and plaintiff failed to plead particular facts of potential liability outside clause).  Counts I-V sound in negligence, are exculpated, and accordingly cannot support a claim of demand futility.[9]

### 3.    The Plaintiffs' Allegation Of A Single Director's Purported Insider Selling Is Insufficient To Impugn The Independence Of The Remaining Six Members Of The Board As A Matter Of Law

The Plaintiffs also allege that demand is futile because a single Director, Defendant Rausch, sold stock during the "relevant period."  Compl. ¶¶ 15, 23, 46, 65(a)(i).  The alleged sale of stock by a *single director* cannot establish the lack of independence or disinterestedness of the

---

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) for any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law;  (iii) under § 174 of this title;  or (iv) for any transaction from which the director derived an improper personal benefit.   No such provision shall eliminate or limit the liability of a director for any act or omission occurring prior to the date when such provision becomes effective.

DEL. CORP. CODE ANN. tit 8, § 102(b)(7).

[8] This Court can take judicial notice of Biopure's Certificate of Incorporation as it is a publicly filed document. *McMichael v. United States Filter Corp.*, No. EDCV 99-182VAP (MCX), 2001 WL 418981, at *8 (C.D. Cal. Feb. 23, 2001) ("The certificate of incorporation of a Delaware corporation is a publicly filed document, and as such, can be judicially noticed").  *See also In re Wheelabrator Technologies, Inc. Shareholders Litig.,* No. Civ. A. 11495, 1992 WL 212595, at *11, (Del. Ch. Sept. 1, 1992) (taking judicial notice of exculpatory clause in certificate of incorporation as the certificate is filed with the office of the Secretary of State of Delaware, a source "whose accuracy cannot reasonably be questioned.").

[9] Further, as explained in Part II, each count of the Complaint fails to state a claim.

*seven-person board* as a matter of law. *See Rattner*, 2003 WL 22284323, at *10 (holding in case where 4 of 8 directors did not trade, "were Rattner's attack upon any of the four directors [] unsuccessful, a 'majority' of the Board would not be implicated and demand would not be excused"); *Landy*, 316 F. Supp. 2d at 73 ("One purchase by one director . . . does not create inappropriate interest on the part of the entire board").

In any event, the allegations here do not even approach impugning *Rausch's* independence. To satisfy Rule 23.1 based on insider trading, the Plaintiffs must allege such pertinent facts as to the insider's prior selling history or retention of stock (or lack thereof) showing that the sales were suspicious, and allege details regarding the Director's role in the company specifically showing how he came into possession of material, non-public information. *Guttman*, 823 A.2d at 503-04 (demand not excused based on insider trading when no allegations of trading history or demonstration of how directors obtained inside information). The plaintiff must also allege particularized facts to show that the sale was made based on and because of the insider information. *Rattner*, 2003 WL 22284323, at * 11 (demand not excused based on allegations of trades where no allegations of percentage retained: "it must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information.").

*Nowhere* do the Plaintiffs allege the most basic information concerning Rausch's stock sales, including the dates of the sales, the portion of holdings sold, the portion retained, whether and how Rausch obtained insider information, or facts to show that the sales were made "based upon and because of" insider information. *Id.* at *12. (Indeed, Mr. Rausch made a large sale of stock *to another director*, Mr. Judelson. Compl. ¶¶ 23, 24. Thus, one director was a *buyer* of Rausch's shares.)

### 4. The Plaintiffs' Conclusory Allegations Concerning Audit Committee Membership Of Three Directors Fail To Excuse Demand

The Plaintiffs allege that Directors Sanders, Harrington and Crout, as members of the Audit Committee, "approved the Company's financial statements without including the adverse

material information concerning the Company's communications with the FDA."  (Compl. ¶¶ 25, 27, 28).  Accordingly, the Plaintiffs allege, these directors were "direct participants in the wrongs alleged."  *Id.*  The Plaintiffs' leap of illogic cannot substitute for particularized facts to establish the Audit Committee members' "substantial likelihood" of personal liability.  To satisfy their burden, the Plaintiffs would at minimum need to plead particularized facts concerning the operations, practices, and actions of the audit committee sufficient to demonstrate that management directly supplied it with complete information, including the FDA communications and the impact of those communications, if any, on the Company's then-current financial statements.  But where facts are necessary, the Complaint is silent.  Rejecting a similar argument in *Guttman*, the court ruled that demand was not excused, with reasoning fully applicable here:

> From the complaint, it is impossible to tell anything about the financial compliance systems in place at NVIDIA during the Contested Period. . . . For all I know, the NVIDIA audit committee met six times a year for half-day sessions, was comprised entirely of independent directors, had retained a qualified and independent audit firm that performed no other services for the company, was given no notice of the alleged irregularities by either management or the audit firm, had paid its audit firm to perform professionally credible random tests of management's integrity in recording revenue and other important financial data, and could not have been expected to discover the accounting irregularities, even when exercising a good faith effort, because discovery required disclosure by management or uncovering by the auditors of conduct deep below the surface of the financial statements.

823 A.2d at 506.

Furthermore, the Plaintiffs have failed to allege at all, let alone with particularity, *any* accounting irregularities.  Whatever it is that the Plaintiffs envision is misleading about the Company's financial reporting, they do not allege that the Company violated Generally Accepted Accounting Principles ("GAAP"), nor that the Company's internal controls were insufficient, nor that the Company improperly recognized revenue.  In short, they allege *nothing* improper about the Company's reported financial results.  As a result, there is nothing alleged in the Complaint

that as much as raises an eyebrow about the potential for personal liability of the Company's Audit Committee causing reasonable doubt about its members' disinterest.

### 5. The Plaintiffs' Allegations Of Social And Business Relationships Among The Directors Fail To Raise A Reasonable Doubt As To Independence

Paragraph 65(g) conclusorily alleges that the Director Defendants have had long-standing business, financial and social "entanglements" with each other, and accordingly are not sufficiently independent to consider a demand to bring suit. The Plaintiffs merely plead the following conclusions, devoid of factual content:

- Paragraph 22 alleges only that Moore had "long term personal, professional and financial relationships with Charles A. Sanders, Rausch, David N. Judelson and the other members of the Biopure Board" -- nothing more, and certainly nothing that could satisfy Rule 23.1's particularity requirements. *See In re Paxson Comm. Corp. Shareholders Litig.*, No. CIV. A. 17568, 2001 WL 812028 (Del. Ch. July 12, 2001) (holding allegation that "[t]he Board members also have close personal and business ties with each other" is hopelessly vague and inadequate under Rule 23.1).

- Paragraph 23 alleges "In 1984, Rausch co-founded Biopure with defendant Judelson. Rausch and Judelson are close friends and confidants," "Rausch sold some of his personally held Biopure stock to Judelson" and "Rausch and Judelson appointed Sanders as Chairman and Moore CEO, President and as a director in 2002." As the Chancery Court held in *Apple Computer, Inc. v. Exponential Tech., Inc.*, No. 16315, 1999 WL 39547, at *12 (Del. Ch. Jan. 21, 1999), the "factual predicate, that [directors] are cofounders, falls far short of raising a reasonable doubt as to [the director's] disinterestedness." Further, even if it is alleged that a director has the power to appoint the other directors, that alone is not sufficient to demonstrate that the directors are "beholden" to others and lack independence. *Paxson*, 2001 WL 812028, at * 9.

- Likewise, Paragraph 24 alleges that Judelson bought stock from Rausch. At most, the Complaint alleges a single business transaction and a business relationship (along with the mere conclusion that the two are friends) -- *but no facts* that show that either of the directors' independence was compromised because of these vague relationships. These are not allegations that satisfy Rule 23.1.

   Furthermore, that Mr. Judelson was a buyer when Mr. Rausch was a seller entirely undercuts Plaintiffs' contention that Mr. Rausch was "selling" on the basis of undisclosed, material, adverse information. Why would a director, who allegedly has the same information, be a buyer? It demonstrates the fallacy in the Plaintiffs' contentions about Mr. Rausch's insider selling.

- Paragraph 25 alleges vaguely that Sanders had "extensive and long-term personal, professional and financial relationships with Moore, Rausch and Judelson" -- allegations that fail for the same reasons as noted above.

- Paragraph 26 alleges conclusions -- not facts -- that Koop had "long-term personal, professional and financial relationships with Moore, Rausch, Sanders and Judelson" -- nothing more.

- Paragraph 27 alleges that Harrington owns less than 5% of Biopure's stock -- facts that actually align his interests with the shareholders of the Company. "Directorial interest exists when . . . a director either has received, or is entitled to receive, a personal financial benefit from the challenged transaction *which is not equally shared by the stockholders.*" *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984) (citing *Aronson*, 473 A.2d at 812) (emphasis added). The allegation cannot establish interest. *Orman v. Cullman*, 794 A.2d 5, 26 n.56 (Del. Ch. 2002) ("A director who is also a shareholder of his corporation is more likely to have interests that are aligned with the other shareholders."). Paragraph 27 also alleges that Harrington has "close personal, professional and financial relationships with Rausch, Judelson, Sanders and Moore and the other members of the Biopure Board," another inadequate conclusion.

- Paragraph 28 alleges that Crout served on another company's board with Sanders, and alleges the conclusion that he has "long-term personal, professional and financial relationships with Rausch, Moore, Sanders and Judelson" -- again, no particularized allegations showing a lack of independence or disinterest.

In short, the Complaint is devoid of factual allegations concerning the personal and financial relations among the Directors, failing to offer anything that could impugn independence. Complaints containing far more information than that alleged here have been held deficient. For instance, in *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004) the Delaware Supreme Court held that the plaintiff's factual allegations regarding the corporation's founder's friendship with other directors -- allegations that were far more detailed than those made here -- were inadequate to raise a reasonable doubt of director's independence:

> Allegations that Stewart and the other directors moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as "friends," even when coupled with Stewart's 94% voting power, are insufficient, without more, to rebut the presumption of independence. They do not provide a sufficient basis from which reasonably to infer that Martinez, Moore and Seligman

may have been beholden to Stewart. Whether they arise before board membership or later as a result of collegial relationships among the board of directors, such affinities--standing alone--will not render pre-suit demand futile.

*Id.*

### 6. The Plaintiffs' Allegations That Two Directors Are Compensation Committee Members Impairing The Board's Independence Fail

The Plaintiffs allege that Judelson and Sanders are members of the Company's compensation committee (Compl. ¶¶ 24, 25), which "establishes, authorizes and administers Biopure's compensation policies, practices and plans for Biopure's directors." Compl. ¶ 65(b). So say the Plaintiffs, the other Directors cannot exercise independence of judgment due to potential ramifications regarding their compensation. However, "[i]t is well established in Delaware law that ordinary director compensation alone is not enough to show demand futility," *see A.R. DeMarco Enterprises, Inc. v. Ocean Spray Cranberries, Inc.*, No. Civ. A. 19133-NC, 2002 WL 31820970, *5 (Del. Ch. Dec. 4, 2002) (citing *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988)), and nothing alleged here approaches showing that the Directors' compensation is extraordinary. Further, the allegations do not include any facts to show that a majority of the Board is overly reliant upon their compensation from Biopure, *i.e,* that they engage in no other employment and that they are otherwise not financially secure. *Cf. Aronson*, (whether a director is interested is determined "in the context of the director's economic circumstances," evaluating whether it is "improbable that the director could perform her fiduciary duties to the ... shareholders without being influenced by her overriding personal interest."). Indeed, the Complaint only asserts (conclusorily) that Moore and Rausch are primarily financially dependent on their positions with Biopure, Compl. ¶65(c), and the *Complaint itself actually alleges facts that show that 5 out of 7 of the Directors -- i.e. a majority -- are financially independent of their positions at Biopure,* based on their vocations in other capacities.[10]

---

[10] *See* Compl. ¶¶ 25 & 28 ("Sanders previously served as General Director of Massachusetts General Hospital and Professor of Medicine at Harvard Medical School," Crout and Sanders have long served together on the Trimeris board of directors."); Compl. ¶26 ("Koop is a consultant for other

The absence of sufficient allegations of financial dependence renders the Complaint deficient in this respect. In *Beam*, for instance, though the founder of the corporation allegedly had the ability to remove all of the corporation's directors (through her 94% stock ownership), the plaintiff failed to plead additional sufficient facts to raise a reasonable doubt concerning the independence of the directors -- it was not obvious that the directors' compensation was sufficient to entice outside directors to ignore their fiduciary duties. 845 A.2d at 1051; *see also Landry*, 316 F. Supp. 2d at 63 (allegation that director stated his compensation was at CEO's discretion insufficient; allegation did not establish that director's "compensation was in fact at the discretion"); *Paxson*, 2001 WL 812028, at * 9-10 (allegations that directors maintained friendship with and were appointed by other director that was majority stock owner insufficient).

### 7. Plaintiffs' Allegations Concerning A Hypothetical Exclusion In Biopure's D&O Policy Fail To Satisfy Rule 23.1

The Plaintiffs also contend that Biopure's Director and Officer ("D&O") liability policy *"may"* exclude coverage in an action by one insured against another, thereby incenting the Defendants not to bring suit based on a hypothetical potential of lack of coverage. Compl. ¶ 65(m). Allegations of a theoretical possibility that insurance coverage for the directors may be denied under a hypothetical "insured v. insured" exclusion in Biopure's D&O policy plainly cannot satisfy Rule 23.1's requirements of pleading particularized *facts*.

### C. If *Any* Of The Directors Are Independent, They May Assume Control (And If They So Determine, Dismissal) Of The Litigation Via Formation Of A Special Litigation Committee

Even if the Complaint somehow established a reasonable doubt as to the disinterest and independence of a majority of the Directors (and it does not), the Board may appoint the remaining independent directors to assume control of the litigation through the formation of an

---

companies in the pharmaceutical industry such as Biopure, regularly speaking on their behalf in front on regulatory bodies"); Compl. ¶ 27 ("Harrington has served as President of HTV Industries, Inc."); Compl. ¶28 ("Crout owns Crout Consulting and is a pharmaceutical industry consultant, and his vocation is providing regulatory and drug development advice to pharmaceutical and biotechnology companies. Similarly, Crout and Sanders have long served together on the Trimeris board of directors."). Mr. Judelson is the former Chief Executive Officer of Paramount Communications and is extremely successful and financially independent, apart from Biopure.

independent special litigation committee. As noted, three of the Director Defendants have neither received Wells Notices nor been named in the securities class actions. To the extent that the Plaintiffs somehow impugned the independence of a majority of the Board, the Board may nonetheless delegate control of the litigation to an independent committee, which may then if it deems appropriate dismiss the suit, reviewed under the presumptions of the business judgment rule. *E.g., Spiegel*, 571 A.2d at 778 (citing *Aronson*, 473 A.2d at 813-14; *Zapata Corp. v. Maldonado*, 430 A.2d at 787).

## II. EACH COUNT OF THE CONSOLIDATED AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Counts I-V Of The Complaint Must Be Dismissed Pursuant To Rule 12(b)(6) Because The Plaintiffs Have Failed To Allege Legally Cognizable Damages

Counts I-V of the Complaint assert that the Company has been damaged by the acts of the Defendants because: (i) the revelation of the Company's failure to disclose FDA communications has caused damage "to the company's reputation and goodwill"; and (ii) as a result of the pending securities class actions and SEC investigation, the Company will incur both defense costs and the cost of resolving the suits. Compl. ¶¶ 68-69. These alleged damages are speculative, contingent on future events and, accordingly, not legally cognizable.

Indeed, the Northern District of Illinois addressed virtually identical damages claims in a shareholder derivative suit, and held that such claims must be dismissed. In *Dollens v. Zionts*, the plaintiff brought a two-count derivative complaint alleging insider trading and breaches of fiduciary duty. For the latter claim, the plaintiff alleged that the company had been damaged because shareholder class actions had been filed as a result of the alleged breach of fiduciary duties, and as the Plaintiffs allege here, the company's reputation was injured and the company was required to expend resources in defense of the actions. The court dismissed the claim insofar as it was predicated on these alleged damages:

> With respect to plaintiffs' claim for damages based on Westell's exposure to defending class actions, plaintiffs cannot bring a derivative action to recover expenses from a pending securities action involving Westell until the case has proceeded to final judgment or settlement. Thus, this claim

> for damages is premature and must be dismissed. Moreover, with respect to plaintiffs' claim for damages based on Westell's "integrity in the market" and "loss of goodwill," this claim is conclusional and insufficient because plaintiffs do not apprise defendants of the basis and extent of the alleged damages. Therefore, this claim is dismissed.

No. 01 C02826, 2002 WL 1632261, at *8 (N.D. Ill. July 22, 2002) (citations omitted); *see also In re Symbol Technologies Sec. Litig.*, 762 F. Supp. 510, 517 (E.D.N.Y. 1991) (dismissing derivative suit, rejecting an injury in the marketplace theory and stating "damages must be shown to directly flow from the wrongful acts of defendants, and *not the mere commencement of legal proceedings against the corporation*") (emphasis added); *In re United Telecommunications, Inc., Sec. Litig.*, 1993 WL 100202, (D. Kan. March 4, 1993) (dismissing derivative case in light of pending securities case because "[w]here, as here, the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed.").

The same holds true here. As in the preceding cases, this case too should be dismissed.

**B.      Counts I-V Also Fail To State A Claim Because The Complaint Fails To Allege Separately The Individual Defendants' Participation In The Purported Wrongful Acts**

Counts I-V fail to allege separately each individual defendant's participation in the alleged wrongful acts, instead asserting liability of the defendants as a group solely because of their capacity as Directors (or Counsel with respect to Jane Kober). The *Stratus* complaint, similarly contained only "vague allegations of participation, implication, knowledge and dissemination [with] no reference to adverse circumstances that would provide a foundation upon which to build these charges." 1992 WL 73555, at *8. The court granted the defendants' Rule 12(b)(6) motion, holding that the failure to separately identify each director's role in the alleged conduct was fatal:

> Nowhere does Count IV charge the outside directors with any specific wrongdoing. Rather, Count IV seems to implicate them only because of their status as directors. That tenuous connection, however, is an insufficient basis for alleging a cause of action. . . . *[W]here a complaint alleges "violation of . . . fiduciary duties" without "attempt[ing] to delineate among the defendants their participation or responsibilities in*

> *the activities which are the subject of th[e] suit," it does not give the*
> *defendants the notice required . . . .*

*Id.*  (citations omitted) (emphasis added).

### C.    Counts I-V Are Barred By Biopure's Certificate of Incorporation And Accordingly Fail To State A Claim

The allegations of Counts I-V of the Complaint purport to state claims grounded in negligence[11] -- *i.e.,* the Defendants failed to correct disclosures (Count I), abused their control of the Company by doing the same (Count II),[12] grossly mismanaged the Company, by definition, a negligence claim (Count III), wasted corporate assets by failing to conduct proper supervision (Count IV) and were purportedly unjustly enriched based on the foregoing (Count V).  As noted above at Part I.B.2, pursuant to the exculpatory provision for directorial liability in Biopure's Certificate of Incorporation, none of these claims may proceed.  *E.g., In re Healthco Int'l, Inc.*, 208 B.R. 288, 308 (Bankr. D. Mass. 1997) (defendant directors were immune from liability for their breach of their duty of care); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277-78 (N.D. Cal. 2000) (dismissing derivative claims that at most, implicated only the duty of care based on exculpatory clause in company's articles and Section 102(b)(7)).

### D.    Count IV (Waste) Also Fails To State A Claim Upon Which Relief May Be Granted

In Count IV, the Plaintiffs allege that "the Defendants have caused Biopure to waste valuable corporate assets by paying incentive based bonuses and stock options to certain of its executive officers . . . ."  (Compl. 87).  To plead a claim for waste, however, "a stockholder plaintiff must generally show that the board 'irrationally squander[ed]' corporate assets -- for example, where the challenged transaction served no corporate purpose or where the corporation

---

[11]  While Count I alleges that the defendants breached their duty of loyalty, no facts are alleged to support the conclusion.

[12]  Count II also fails to state a legally cognizable claim in its own right.  "Abuse of control," at most, appears to be another name for "breach of duty," and in this case Count II is no more than a reiteration of either Count I, III or IV.

received no consideration at all." *White v. Panic*, 783 A.2d 543, 554 (Del. 2001).[13]   The Plaintiffs fail to allege *any* facts to establish that the defendants "irrationally squandered" corporate assets in "paying incentive based bonuses and stock options to certain of its executive officers."   Indeed, virtually *nothing* is pled regarding *any* of the purportedly "wasteful" compensation.  Count IV must be dismissed.[14]

### E.   Count V (Unjust Enrichment) Fails To State A Claim Upon Which Relief May Be Granted

Under Delaware law, the elements of unjust enrichment are: 1) enrichment, 2) an impoverishment, 3) a relation between enrichment and impoverishment, 4) absence of justification and 5) absence of remedy provided by law.  *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279 (D. Del. 2000); *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998).  The Plaintiffs here allege only that "[b]y their the acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Biopure." (Compl. ¶ 91.)  The Plaintiffs do not allege facts establishing how the Defendants were *enriched* (there are no allegations, for instance, that 7 out of 8 defendants sold stock or otherwise received any tangible or intangible benefit), much less facts establishing Biopure's "impoverishment" or a relationship between the two.  Count V should be dismissed for failure to state a claim.

### F.   Count VI (Alleged Insider Trading Of Rausch) Must Be Dismissed Pursuant To Rule 9(b) And Rule 12(b)(6)

Count VI purports to plead a claim for insider trading against defendant Rausch.  In support of the claim, the Plaintiffs allege that Rausch possessed non-public information regarding FDA communications, that the information was proprietary to Biopure, and that Rausch sold stock while in possession of the information.  Compl. ¶¶ 93-97.

---

[13]  A claim of waste based upon executive compensation is particularly difficult to plead.  *See Brehm v. Eisner*, 746 A.2d 244, 262, n.56 (Del. 1998). ("To be sure, directors have the power, authority and *wide discretion* to make decisions on executive compensation.") (emphasis added).

[14]  To the extent the Count for waste is based on expenses incurred in defending the securities actions, those damages are speculative and cannot sustain the claim.  *See* Part II.B.1, above.

Delaware law recognizes a common law cause of action for insider trading where directors misuse company information to profit at the expense of innocent buyers of their stock. *See Brophy v. Cities Serv. Co.*, 70 A.2d 5 (Del. Ch. 1949). This doctrine, however, "is not designed to punish inadvertence, but to police intentional misconduct." *Guttman*, 823 A.2d at 505. To plead a claim for insider trading, "it must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Id.* Accordingly, "Delaware case law makes the same policy judgment as federal law does, which is that insider trading claims depend importantly on proof that the selling defendants acted with *scienter*." *Id.* Logically then, under Delaware law an insider trading claim "sounds in fraud" and must be pled with the particularity required by Rule 9(b). *Id.* at 505 n.31 (referencing federal standard of particularity applicable to insider trading and holding "that the plaintiffs did not, under Delaware law, plead particularized facts supporting an [insider trading] claim").

The Plaintiffs plead no particularized facts that could state a claim for insider trading under Delaware law. All that is alleged regarding Rausch's stock sales is that "[d]uring the Relevant Period [March 2003 to the present], Rausch engaged in massive insider trading . . . ." Compl. ¶23 (246,574 shares with proceeds of $1,596,900). No particularized facts are alleged about the dates of the trades within this more-than-one-year period, nor are any facts alleged to show that "each sale . . . was entered into and completed on the basis of, and because of, adverse material non-public information." *Id.* at 505. Under both Rule 12(b)(6) and Rule 9(b), the claim must be dismissed.

Furthermore, one of the facts Plaintiffs do allege, that Mr. Rausch sold shares to Mr. Judelson, entirely undercuts the contention that Mr. Rausch sold as a director on the basis of undisclosed, material, adverse information. Compl. ¶¶ 23, 24. Mr. Judelson is also a director and a buyer. If the Director Defendants knew material, adverse information, why would one Director buy from another Director?

## CONCLUSION

For the forgoing reasons, the Defendants respectfully submit that the Complaint must be dismissed in its entirety, with prejudice.

Respectfully submitted,

**THOMAS A. MOORE, CARL W. RAUSCH, DAVID N. JUDELSON, CHARLES A. SANDERS, M.D., C. EVERETT KOOP, M.D., DANIEL P. HARRINGTON, J. RICHARD CROUT, M.D, JANE KOBER. AND BIOPURE CORPORATION**

By their attorneys,

Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO#636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated:  September 27, 2004

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by regular mail, on September 27, 2004.

/s/ Michael D. Blanchard
Michael D. Blanchard