**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN RE BIOPURE CORPORATION** | ) | **Master Docket No. 1:04-cv-10177 (NG)** |
| **DERIVATIVE LITIGATION** | ) | |
| | ) | |
| | ) | **Assigned to Judge Nancy Gertner** |
| | ) | |
| _____ ) | **Magistrate Judge Alexander** | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION TO DISMISS THE VERIFIED**
<u>**CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**</u>

Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

REPLY .......................................................................................................................................... 2

I.  THE PLAINTIFFS HAVE UTTERLY FAILED TO PLEAD WITH
    PARTICULARITY FACTS THAT COULD SHOW A "SUBSTANTIAL
    LIKELIHOOD" OF PERSONAL LIABILITY AS TO ANY DEFENDANTS ............... 2

    A.  Paragraphs 16 And 44 Of The Complaint Plead No Facts With
        Particularity Establishing A Substantial Likelihood Of Liability And The
        Plaintiffs' Presumption That They Are Excused From Rule 23.1 On This
        Point Is Without Merit .......................................................................................... 3

    B.  The Plaintiffs' Allegations That The Defendants Have Been Named As
        Defendants In Securities Actions And Have Received SEC Wells Notices
        Fail As A Matter Of Law To Show A Substantial Likelihood Of Personal
        Liability .................................................................................................................... 5

    C.  The Plaintiffs' Conclusory Allegations Charging The Audit Committee
        With The Novel Responsibility Of Monitoring FDA Communications
        (Without Any Facts In Support) Fail As A Matter Of Law .................................. 7

II. THE PLAINTIFFS MAY NOT RELY ON DISCOVERY TO CORRECT THEIR
    FAILURE TO ALLEGE PARTICULARIZED FACTS CONCERNING
    ALLEGED "PROFESSIONAL ENTANGLEMENTS" ..................................................... 9

III. EVEN IF *ARONSON* APPLIED (AND IT DOES NOT) THE PLAINTIFFS
    HAVE FAILED TO ALLEGE FACTS WITH PARTICULARITY WHICH
    COULD SHOW THAT THE BUSINESS JUDGMENT RULE DOES NOT
    APPLY ............................................................................................................................... 12

IV. THE PLAINTIFFS HAVE FAILED TO ALLEGE FACTS WITH
    PARTICULARITY TO PERMIT A CLAIM AGAINST, OR EXCUSE
    DEMAND WITH RESPECT TO, DEFENDANT RAUSCH FOR INSIDER
    TRADING .......................................................................................................................... 15

V.  THE COMPLAINT FAILS TO STATE CLAIMS FOR WHICH RELIEF MAY
    BE GRANTED ................................................................................................................... 17

    A.  Biopure's Certificate Of Incorporation Properly Bars This Action To The
        Extent That The Plaintiffs Fail To Plead A Non-Exculpated Claim—And
        They Fail To Do So Pursuant To Rule 9(b) ......................................................... 17

    B.  Even If Rule 12(b)(6) Applies, Plaintiffs Fail To Rehabilitate Their Claim
        For Breach Of Fiduciary Duty With Their Mistaken Assertion That The
        Defendants "Admitted" Knowledge Of Adverse Information ............................. 18

    C.  The Plaintiffs Have Not Pled Damages ............................................................... 19

    D.  The Plaintiffs' Arguments Fail To Save Their Claims For Unjust
        Enrichment And Waste ......................................................................................... 20

i

# TABLE OF AUTHORITIES

Page

**CASES**

*In re Abbott Laboratories Derivative Shareholder's Litigation*, 325 F.3d 795 (7th Cir. 2003) ...........................................................................................................12, 13

*Apple Computer, Inc. v. Exponential Tech., Inc.*, No. 16315, 1999 WL 39547 (Del. Ch. Jan. 21, 1999) .......................................................................................10

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)........................................................ 10, 12-14

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. Sept. 30, 2003) .................................................................................5

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004) ...........................................................................................................3, 9, 10, 11

*Bodkin v. Mercantile Stores Co., Inc.*, No. 13770, 1996 WL 652763 (Del. Ch. Nov. 1, 1996) ...............................................................................................10

*Geinko v. Padda,* No.00 C 5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ............15, 16

*In re Cendant Corp. Derivative Action Litigation*, 189 F.R.D. 117 (D.N.J. 1999) ...........19

*Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827 (N.D . Ill. 2000) .............................................4

*Decker v. Clausen,* Nos. Civ.  A. 10,684 & 10,685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) ................................................................................................ 7

*Demoulas v. Demoulas Super Markets, Inc.*, No. 033741BLS, 2004 WL 1895052 (Mass. Super. Aug. 2, 2004) ...............................................................................10

*Dollens v. Zionts*, No. 01 C02826, 2002 WL 1632261 (N.D. Ill. July 22, 2002)..............19

*Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001).................................................16, 18

*Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982) ............................................................3

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003).....................................................9, 13, 16, 17

*Kaltman v. Sidhu,* No. Civ. 3:03-CV-1057-H, 2004 WL 357861 (N.D. Tex. Feb. 26, 2004) ...........................................................................................................6

*Landy v. D'Alessandro*, 316 F. Supp. 2d 49 (D. Mass. 2004)........................................3, 14

*In re Lernout & Hauspie Securities Litigation*, 286 B.R. 33 (D. Mass. 2002)...................8

*Lewis v. Fites,* No. Civ. A. 12566, 1993 WL 47842 (Del. Ch. Feb. 19, 1993)............6, 13, 15

*Litt v. Wycoff,* No. Civ. A. 19083, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003)..............14

*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) ......................................................18

*In Re MedImmune, Inc. Securities Litigation*, 873 F. Supp. 953 (D. Md. 1995)................4

*Meyer v. Biopure Corp.*, 221 F. Supp. 2d 195 (D. Mass. 2002) ......................................4, 5

*In re Oxford Health Plans, Inc.*, 192 F.R.D. 111 (S.D.N.Y. 2000) ..............................3, 12

*In Re PEC Solutions Securities Litigation,* NO. 03-CV-331, 2004 WL 1854202 (E.D. Va. May 25, 2004)......................................................................16, 17

*In re Paxson Communication Corporation Shareholders Litigation,* No. Civ. A. 17568, 2001 WL 812028 (Del. Ch. July 12, 2001)................................................10, 11

*Rattner v. Bidzos*, No. 19700, 2003 WL 22284323 (Del. Ch. Nov. 8, 1999)...........6, 9, 13, 15-17

*SSDD Enterprises, Inc. v. Village of Lansing*, No. 95 C 6064, 1996 WL 238931 (N.D. Ill. May 3, 1996) ................................................................................15

*In re Sagent Technologies, Inc., Derivative Litigation*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003).......................................................................................11, 14, 17, 18

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. Ct. 1995).........................................4, 6, 12, 13

*In re Sonus Networks, Inc. Derivative Litigation*, No. 040753BLS, 2004 WL 2341395 (Mass. Super. Sept. 27, 2004) ................................................................3, 13

*Southland Sec. Corp. v. INSpire Insurance Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) ....................................................................................................16

*Spector v. Sidhu,* No. Civ. 3:03-CV-0841-H, 2004 WL 350682 (Jan. 26, 2004 N.D. Tex.) ..............................................................................................4, 7, 13

*Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994).................................................7

*Stepak v. Dean*, 434 A.2d 388 (Del. Ch. July 8, 1981).......................................5

iii

*In re Stratus Computer, Inc. Sec. Litigation,* Civ.A. 89-2075-Z, 1992 WL 73555
(D. Mass. March 27, 1992) ...................................................................................18, 19

*In re Symbol Technologies Sec. Litigation*, 762 F. Supp. 510 (E.D.N.Y. 1991*)* ..............19

*In re Vantive Corp. Sec. Litigation*, 283 F.3d 1079 (9th Cir. 2002) ..................................16

*White v. Panic*, 793 A.2d 356 (Del. Ch. 2000) ............................................................10, 11

*In re WorldCom, Inc. Sec. Litigation*, No. 02 CIV. 3288, 2003 WL 23022035
(S.D.N.Y. Dec. 1, 2003)...............................................................................................8, 9

*In re Xcel Energy, Inc.*, 222 F.R.D. 603 (D. Minn. 2004) ..........................................12, 13

**STATUTES**

Del. Corp. Code § 102(b)(7) ...............................................................................................18

iv

## PRELIMINARY STATEMENT

The Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Dismiss ("Plaintiffs' Opposition" or "Opp.") only further demonstrates that the Complaint must be dismissed because the Plaintiffs were required to make pre-suit demand upon Biopure's Board of Directors.  For instance, the Plaintiffs' argue that they have alleged facts demonstrating that the Director Defendants have a "substantial likelihood" of personal liability for securities law violations sufficient to excuse demand.  However, the Opposition reveals that in reality, the Plaintiffs' assertion is based on a belief that they are *excused* from Rule 23.1's particularity requirements—*i.e.* they "do not need" to plead facts showing the required element of *scienter* (or any other level of knowing misfeasance) to show a substantial likelihood of liability for their securities based or common law claims.  The Plaintiffs assert that the reason Rule 23.1 does not apply to the Plaintiffs is because the Complaint alleges a failure to disclose "safety concerns" communicated to Biopure by the FDA, regarding an early stage protocol for its product Hemopure, in an indication separate and distinct from the Company's core business Biologics License Application ("BLA").  The Plaintiffs cite no authority for the position, except for a selective excerpt from *dicta* in an earlier decision dismissing a securities suit against Biopure. The portions of the court's reasoning omitted by the Plaintiffs, however, actually defeat the Plaintiffs' misguided attempt to circumvent Rule 23.1.

Similarly, the Plaintiffs assert that they have pled with particularity sufficient facts showing "professional entanglements" among Biopure's Board to raise a reasonable doubt as to the Director Defendants' independence.  In the same breath, however, the Plaintiffs admit that the revelation of facts demonstrating professional entanglements must actually await discovery (if at all).  The Plaintiffs fail to recognize that, as a matter of law, derivative plaintiffs are not

1

entitled to discovery to support demand futility allegations. Their assertion amounts to an implied admission that the Complaint is deficient in this regard.

Following form, the Plaintiffs "clarify" in their Opposition that they have pled intentional—*i.e.* fraud-based—claims against the Defendants that pass scrutiny on a Rule 12(b)(6) motion. The Plaintiffs' clarification is fatal, however, as Magistrate Judge Alexander has held in a similar context that derivative claims sounding in fraud are subject to Rule 9(b) and the Complaint cannot satisfy Rule 9(b)'s strict requirements. Moreover, to the extent the Complaint does not sound in fraud, it is barred by Biopure's Certificate of Incorporation, as numerous courts have held on Rule 12(b)(6) motions.

For these and other reasons, as more fully set forth below, the Complaint must be dismissed, with prejudice.

## **REPLY**

## I.  **THE PLAINTIFFS HAVE UTTERLY FAILED TO PLEAD WITH PARTICULARITY FACTS THAT COULD SHOW A "SUBSTANTIAL LIKELIHOOD" OF PERSONAL LIABILITY AS TO ANY DEFENDANTS**

In their Opposition, the Plaintiffs assert that they have pled with particularity facts that establish that a majority of inside and outside directors have a "substantial likelihood" of personal liability, and so say the Plaintiffs, demand would be futile. Opp. at 14-17. In support, the Plaintiffs rest on three contentions: (i) Paragraphs 16 and 44 of the Complaint "plead with particularity the basis of personal liability for the director defendants as each director defendant caused Biopure to disseminate false and misleading statements;" (ii) some of the Director Defendants have received SEC Wells notices or have been named as defendants in securities actions; and (iii) three director defendants were members of Biopure's Audit Committee. *Id.*

CTDOCS/1609774.1

Each contention is without merit.[1]

A.    **Paragraphs 16 And 44 Of The Complaint Plead No Facts With Particularity Establishing A Substantial Likelihood Of Liability And The Plaintiffs' Presumption That They Are Excused From Rule 23.1 On This Point Is Without Merit**

Paragraph 16 of the Complaint ("Compl.") alleges nothing more than that the Company and its directors have been exposed to liability in securities actions and an SEC investigation. Compl. ¶ 16.  Paragraph 44 alleges in the most conclusory terms that the Defendants as a whole failed to disclose a new indication for Hemopure, separate from the BLA, and FDA communications concerning it.  Compl. ¶ 44.  These unparticularized allegations, addressed to the group of defendants as a whole without any articulation of facts that could establish, among other things, *scienter*, are textbook examples of conclusory pleading that fail as a matter of law to establish demand futility in the First Circuit or Delaware.  *See In re Sonus Networks, Inc. Derivative Litig.*, No. 040753BLS, 2004 WL 2341395, at *4 (Mass. Super. Sept. 27, 2004) (Van Gestel, J.) (applying Delaware law, dismissing derivative suit alleging, *inter alia*, director defendants permitted misleading financial statements; "There are no particularized allegations as to any specific act by any particular board member individually or by the board as a whole."); *Grossman v. Johnson*, 674 F.2d 115, 123 (1st Cir. 1982) (requiring "particularized allegations and specific facts"); *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 59-60 (D. Mass. 2004) (mere conclusions are ignored); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) ("Conclusory allegations are not considered.").[2]

In the place of factual, particularized allegations, the Plaintiffs instead appear to rest on a theory that *any* alleged failure by the Company to disclose *any* FDA communication about "safety concerns"—irrespective of context—somehow establishes a "substantial likelihood" of

---

[1]  The Plaintiffs complain that the Defendants "divide and conquer" approach – i.e. addressing the Plaintiffs' allegations one at a time – is "improper" because the Court must look to the "totality of the circumstances" and accordingly the failure of one allegation does not render demand required.  Opp. at 10, n.6.  No case cited by the Plaintiffs holds it "improper" to address each allegation separately as a means to establish that, in totality, the Complaint fails to plead any basis for demand excusal.

[2]  All unreported cases are submitted herewith in the Compendium of Unreported Authorities Cited in Defendants' Reply Memorandum of Law in Support of their Motion to Dismiss the Consolidated Amended Complaint.

3

personal liability for securities violations for each Defendant as a matter of law. The Plaintiffs quote *dicta* in *Meyer v. Biopure Corp.*, 221 F. Supp. 2d 195 (D. Mass. 2002) concerning allegedly "missing" data from the Company's BLA (claims that were dismissed). Judge Harrington suggested that, if the "missing" data showed that Hemopure was unsafe, and that information was not disclosed, such omission could give rise to a strong inference of *scienter*. Opp. at 16, n.12. Apparently, the Plaintiffs believe that the Company's nondisclosure of FDA communications about "safety concerns" here somehow excuses them from Rule 23.1's requirement to allege particularized facts showing a substantial likelihood of personal liability for each Director Defendant. In particular, the Plaintiffs assert that the nondisclosure of "safety concerns" *ipso facto* establishes a substantial likelihood of personal liability and accordingly they "do not need" to plead facts showing *scienter*. *See* Opp. at 15-16, n.13[3] The Plaintiffs cite no case for this novel assertion, because there is none.[4]

In any event, the *full* text of the *dicta* in *Meyer,* from which the Plaintiffs selectively excerpt, militates *against* the Plaintiffs' contention in this case. As alleged here, the Company (not the Board) reported that it did not disclose FDA communications about its new and separate indication for Hemopure because it did "not believe communications about proposed clinical trials are material prior to the initiation of the trial." *See* Compl. ¶ 43. In other words, the Company made a judgment call about not disclosing FDA communications regarding an early stage, new protocol, separate from the BLA. The Court's ultimate conclusion in the *dicta* in *Meyer*, omitted from the Plaintiffs' brief, establishes that the Plaintiffs here have pled themselves

---

[3] Tellingly, the Plaintiffs entirely ignore those cases cited in the Defendants' moving brief ("Def. Br.") showing that there simply is no duty to disclose such routine FDA communications. *See* Def. Br. at 12 citing *In Re MedImmune, Inc. Sec. Litig.*, 873 F .Supp 953, 966 (D. Md. 1995) ("Defendants, as a general proposition, ha[ve] no duty to report [their] ongoing discussions with FDA during the review process."); *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 834 (N.D . Ill. 2000) ("[S]imply receiving a number of letters from the FDA listing regulatory shortcomings does not portend ultimate FDA denial of the recipient's application.").

[4] In any event, the test is *not* whether the Complaint merely states a claim. "Although a short and plain statement showing that the pleader is entitled to relief is normally sufficient to state a claim, it does not satisfy the *requirement of pleading more than a mere threat of liability*" in the Rule 23.1 context. *In re Baxter Intern., Inc. Shareholders Litigation*, 654 A.2d 1268, 1629 (Del. Ch. 1995) (emphasis added). Rather, the Complaint must demonstrate a "substantial likelihood" of personal liability. *Seminaris*, 662 A.2d at 1353.

4

out of court: "[t]o state a valid claim for fraud, the plaintiffs would have to plead facts giving rise to a strong inference that *this omission was not merely a judgment call* about the detail in which the release should describe the medical data." 221 F. Supp. 2d at 207 (emphasis added). The *only* facts pled here regarding any decision concerning disclosure (albeit a decision of the Company and not the Board) show the opposite—the Company made a judgment call about whether FDA communications concerning "proposed clinical trials are material prior to the initiation of the trial." *See* Compl. ¶ 43. If anything, *Meyer* militates against an inference of *scienter* here, and with it the Plaintiffs' contention that their mere allegation of nondisclosure establish a "substantial likelihood" of personal liability.[5]

> **B.    The Plaintiffs' Allegations That The Defendants Have Been Named As Defendants In Securities Actions And Have Received SEC Wells Notices Fail As A Matter Of Law To Show A Substantial Likelihood Of Personal Liability**

The Plaintiffs argue additionally that they have pled a substantial likelihood of liability because they have alleged that Director Defendants Moore, Sanders, Crout and Rausch have received Wells Notices from the SEC, and because the same Director Defendants have been named in securities class actions. Opp. at 14-15. The Defendants pointed out initially that only two directors were allegedly named in the securities actions, and accordingly a supermajority of the Board allegedly faced no potential liability in those actions. Def. Br. at 10. The Plaintiffs deemed this to be "nonsense," because two additional directors were named as defendants in the securities actions after the amended derivative complaint was filed in this action. Opp. at 16. The Plaintiffs have overlooked, however, that "the futility of making the demand required by Rule 23.1 must be gauged *at the time the derivative action is commenced,* not afterward with the benefit of hindsight." *Stepak v. Dean*, 434 A.2d 388, 390 (Del. Ch. July 8, 1981) (emphasis added).[6] Importantly, facts intervening between the filing of the original complaint and the filing

---

[5] The dicata in *Meyer* is also inapposite here because in *Meyer*, the disclosures concerned the Company's centrally important BLA. Here, the gravamen of the Plaintiffs' Complaint is addressed to a new, early stage protocol separate from the BLA.

[6] *See, e.g., Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 976 (Del. Ch. Sept. 30, 2003) ("The Court's task is to evaluate whether the particularized allegations 'create a reasonable doubt that, *as of*

of an amended complaint (let alone facts arising *after* the filing of an amended complaint, *i.e.* directors being named in the securities actions here) are *irrelevant* to the analysis. *See Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *8 (Del. Ch. Sept. 30, 2003) ("demand is excused if the particularized facts of the Amended Complaint create a reasonable doubt that, *at the time the original complaint was filed,* a majority of the Board could have exercised disinterested and independent business judgment in responding to [the] demand"). At the time these consolidated complaints were originally commenced (December 30, 2003 and January 26, 2004), *only Moore had allegedly received a Wells notice, and only Moore and Rausch were allegedly named in the securities actions. See Parrott, et al v. Moore, et al*, 04-10177 NG at ¶ 6; *Greene v. Biopure, et al*, 03-12628 NG at ¶¶ 8, 9. Accordingly, five of the seven Director Defendants were subject to no alleged potential liability whatsoever based upon other litigation—*i.e.* a supermajority of the Board. That alone defeats the Plaintiffs' demand futility allegations based upon other pending litigation.

But even if the after-the-fact involvement of certain of the Director Defendants in the securities litigation or SEC investigation could be considered (and it cannot), applicable Delaware law (cited by Defendants but ignored by the Plaintiffs) holds that virtually identical allegations fail to establish a "substantial likelihood" of personal liability sufficient to excuse demand. *See Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. Ct. 1995) (rejecting arguments that demand was excused because the director defendants, who allegedly caused the company to make material misrepresentations, were sued in securities class actions and investigated by the SEC; "Plaintiff is merely uttering a slightly altered version of the discredited refrain—'you can't expect directors to sue themselves.'"); *Lewis v. Fites*, No. Civ. A. 12566, 1993 WL 47842 (Del. Ch. Feb. 19, 1993) (dismissing derivative action based upon allegedly false and misleading disclosures despite the fact that the company had entered into a consent decree with the SEC and the company's management had been sued in securities class actions); *see also Kaltman v. Sidhu*,

---

*the time the complaint [was] filed,* the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'") (emphasis added).

No. Civ. 3:03-CV-1057-H, 2004 WL 357861, at *5 (N.D. Tex. Feb. 26, 2004) (applying Delaware law, rejecting allegations that directors would not pursue derivative claims because one of the director defendants was also named in a securities suit); *Decker v. Clausen,* Nos. Civ. A. 10,684, & 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (dismissing derivative action: "[T]he suggestion that demand is excused because the directors . . . are defending related litigation is without merit.").[7]

C.    **The Plaintiffs' Conclusory Allegations Charging The Audit Committee With The Novel Responsibility Of Monitoring FDA Communications (Without Any Facts In Support) Fail As A Matter Of Law**

The Plaintiffs argue that "as the Complaint alleges," Directors Sanders, Harrington and Crout were members of the Audit Committee, "charged with ensuring that the Company's financial statements and corresponding press releases included all material information including the Company's communications with the FDA concerning Hemopure." Opp. at 16. Accordingly, the argument goes, those Defendants have a substantial likelihood of personal liability due to their presumed knowledge of FDA communications and their approval of allegedly misleading disclosures. *Id.* The only allegations (albeit conclusory) concerning the role and responsibility of the audit committee appear at Paragraph 65(d), which asserts that, as disclosed in Biopure's proxy statements, the audit committee is responsible for monitoring the Company's internal and independent accountants concerning accounting and financial issues. Compl. ¶65(d). There is *no factual allegation* concerning any proxy disclosure, policy, protocol, charter, Board resolution or other source which "charges the audit committee" with the

---

[7]  The Plaintiffs also half-heartedly assert "because director defendants' liability coverage will not protect the director defendants in this derivative suit" the Defendants are conflicted and lack independence. Opp. at 16, n.14. This reiteration of the "insured v. insured" exclusion allegation at Paragraph 65(m) has been soundly rejected. *See Spector v. Sidhu*, No. Civ. 3:03-CV-0841-H, 2004 WL 350682, at *5 (Jan. 26, 2004 N.D. Tex.) (applying Delaware law; "Many courts have found the existence of this clause, without more, to be insufficient to excuse demand."); *Decker*, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (allegation that liability insurance would not cover an action brought by the company against its own directors is "variation [ ] on the 'directors suing themselves' and 'participating in the wrongs' refrain."); *Stepak v. Addison*, 20 F.3d 398,411 (11th Cir. 1994) (same).

responsibility to monitor "the Company's communications with the FDA concerning Hemopure." Opp. at 16.

In fact, the only reference in the Complaint concerning a purported audit committee role in monitoring FDA communications appears in conclusory fashion at Paragraphs 25-28; "as a member of its Audit Committee, [the defendant is responsible] for ensuring that the Company's financial statements and corresponding press releases included all material information including the Company's communications with the FDA concerning Hemopure." Compl. ¶¶ 25-28. That bare conclusion, patently deficient for Rule 23.1 purposes, is even more problematic in light of the unusually broad oversight responsibilities the Plaintiffs seek to impute to Biopure's audit committee. As explained in *In re Lernout & Hauspie Securities Litigation*, 286 B.R. 33 (D. Mass. 2002) cited in Plaintiffs' Opposition on this point, "[t]he SEC has stated that Audit Committees play a critical role in 'overseeing and monitoring management's and the independent auditor's participation in the *financial reporting* process.'" *Id.* at 38 (emphasis added). The Plaintiffs cite no case for the novel proposition that monitoring FDA communications is part and parcel to the audit committee's role in supervising the financial reporting process, and the Complaint is devoid of any factual allegation ascribing to the audit committee that unusual responsibility.

The dismissal of securities claims against an audit committee in *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV. 3288, 2003 WL 23022035 (S.D.N.Y. Dec. 1, 2003) is instructive here. In *WorldCom*, the plaintiffs argued that they adequately alleged the scienter of the audit committee defendants by (i) the audit committee defendants' alleged failure to communicate effectively with the internal audit personnel; and (ii) the audit committee defendants failure to communicate with WorldCom's independent auditor, each of which would have revealed

8

massive accounting fraud. *Id.* at *3-4. Despite the audit committee's typical role in supervising the financial reporting process, the court dismissed the complaint because, in part, the plaintiffs had failed to identify specific duties of the audit committee relating to these financial reporting tasks. *Id.* Standing next to *Worldcom*, the Plaintiffs' unsupported argument that the audit committee here was charged with monitoring FDA communications is not even colorable.

In a word, the Plaintiffs' bare conclusions cannot substitute for requisite, particularized facts showing the specific acts taken by *each* audit committee member. The ruling in *Guttman v. Huang* applies fully here. 832 A.2d 492 (Del. Ch. 2003) (dismissing derivative action, in part because plaintiffs failed to plead with particularity about the specific role and functioning of the audit committee, when they met, who advised the committee, and whether the committee discussed and approved allegedly improper accounting practices).[8]

## II.   THE PLAINTIFFS MAY NOT RELY ON DISCOVERY TO CORRECT THEIR FAILURE TO ALLEGE PARTICULARIZED FACTS CONCERNING ALLEGED "PROFESSIONAL ENTANGLEMENTS"

The Plaintiffs have virtually conceded that the Complaint does not contain the particularized facts necessary to impugn the independence and disinterestedness of the Board due to "professional entanglements." The Plaintiffs assert that defendants Sanders, Rausch, Judelson, Moore, Koop, Harrington and Crout have "professional entanglements" sufficient to excuse demand, but only "*as further discovery and factual development will further reveal the nature of these disabling relationships.*" Opp. at 19, n.19 (emphasis added). Of course, the Plaintiffs' speculation about "further discovery and factual development" is entirely irrelevant to whether they have pleaded sufficient facts with particularity *in the Complaint* as required. "In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand

---

[8]   The Plaintiffs' attempt to distinguish *Rattner* and *Guttman* because they "are insider trading cases" (Opp. at 17 n.15) is unavailing. In each case, as in this case, there were claims of false financial statements as well as insider trading.

CTDOCS/1609774.1

futility." *Beam*, 845 A.2d at 1055. The Plaintiffs' attempt to overcome the demand requirement based on conjectural assertions of what *may* be revealed in discovery is fatal.

That aside, the Plaintiffs' contentions about their "professional entanglement" allegations, set out in the Opposition at 19-20, fail to rehabilitate the deficiencies of the Complaint:

| "Professional Entanglements" Argument, Opp. at 19-20 | Legal Authority Holding Allegations Deficient |
|---|---|
| "First, defendant Rausch co-founded Biopure with his close friend and confidant, defendant Judelson in 1984." | As the Chancery Court held in *Apple Computer, Inc. v. Exponential Tech., Inc.*, No. 16315, 1999 WL 39547, at *12 (Del. Ch. Jan. 21, 1999), the "factual predicate, that [directors] are cofounders, falls far short of raising a reasonable doubt as to [the director's] disinterestedness." |
| "Second, defendants Judelson and Rausch appointed defendant Moore as CEO in 2002." | "Of course, the law is well-settled that [an interested director's] involvement in selecting each of the directors is insufficient to create a reasonable doubt about their independence." *White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000) (dismissing because demand not excused where interested director appointed the rest of the board). |
| "Third, defendants Judelson and Rausch appointed defendant Sanders as Chairman in 2002." | *Id. See also Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) (holding appointment of directors insufficient: "it is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director."); *Demoulas v. Demoulas Super Markets, Inc.*, No. 033741BLS, 2004 WL 1895052, at *15 (Mass. Super. Aug. 2, 2004) (Van Gestel, J.) ("The mere fact that directors were selected, nominated and elected by a particular shareholder has long been rejected as insufficient to establish a director's lack of independence or disinterestedness") |
| "Defendant Sanders served as the General Director of Massachusetts General Hospital and Professor of Medicine at Harvard Medical School, along with Douglas M. Hansell, M.D. who currently serves as Biopure's Vice President of Medical Affairs and served with Saunders at Massachusetts General Hospital and at Harvard." | "In order to show lack of independence, the complaint of a stockholder-plaintiff must create a reasonable doubt that a director is not so *'beholden' to an interested director . . . that his or her 'discretion would be sterilized.'*" *Beam*, 845 A.2d at 1050 (affirming dismissal) (emphasis added). Doug Hansell is neither a defendant nor alleged to be a director. The allegation is entirely insufficient. *Bodkin v. Mercantile Stores Co., Inc.*, No. 13770, 1996 WL 652763, at *4 (Del. Ch. Nov. 1, 1996) ("Without [a] link to an interested party, plaintiffs' allegations fail to raise a reasonable doubt that the Board as a whole is disinterested."). |
| "Fourth, defendant Moore has long-term personal, professional and financial relationships with other Board members by | *See In re Paxson Comm. Corp. Shareholders Litig.*, No. Civ. A. 17568, 2001 WL 812028 (Del. Ch. July 12, 2001) (holding allegation that "[t]he Board members also have close personal |

10

| | |
|---|---|
| virtue of his former executive positions at Biopure."[9] | and business ties with each other," along with numerous other allegations, is hopelessly vague and inadequate under Rule 23.1).[10]  Indeed, the Delaware Supreme Court has held that far more detailed allegations, including moving in the same social circles, attending the same weddings, developing business relationships before joining the board, and describing each other as "friends," even when coupled with 94% voting power of an interested director, were insufficient. *Beam*, 845 A.2d at 1051. |
| "Fifth, defendant Koop speaks as a consultant for Biopure and other pharmaceutical companies in front of regulatory bodies.  Also, prior to joining the Biopure Board, Koop was hired as Chairman of Biopure's Scientific Advisory Committee." | Plaintiffs cite no case supporting the proposition that a director is not independent simply because he speaks as a consultant on behalf of the company or serves on a committee, likely because there is none.  *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (applying Delaware law, mere fact that director was also a consultant held insufficient). To the contrary, such allegations fail absent particularized facts showing that the director receives substantial compensation and that the compensation paid is material to that director, *White*, 793 A.2d at 366, facts that are absent from the Complaint. |
| "Sixth, defendant Harrington has served as President of HTV Industries, Inc. ("HTV"), one of Biopure's venture capitalist, [sic] since 1991.  Harrington owns 1,560,089 shares of Biopure or 4.7% of the Company's outstanding common stock which includes 1,498,219 shares and warrants to purchase 11,111 shares owned by HTV." | "A director who is also a shareholder of his corporation is more likely to have interests that are aligned with the other shareholders." *Orman v. Cullman*, 794 A.2d 5, 26 n.56 (Del. Ch. 2002).  Accordingly, Plaintiffs' allegation of Harrington's stock ownership defeats demand futility.  *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342 (Del. Ch. 1998) (director's substantial share ownership aligned his interest with the shareholders, demand not excused) *rev'd and remanded on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). |
| "Seventh, defendant Crout is a pharmaceutical industry consultant and owns Crout Consulting which provides regulatory and drug development advice to pharmaceutical and biotechnology companies, such as Biopure. " | Acting as a consultant to the company, on its own, is not a disqualifying interest as a matter of law.  *In re Sagent*, 278 F. Supp. 2d at 1089 (applying Delaware law, mere fact that director was also a consultant held insufficient).  To plead demand futility on these grounds, the Plaintiffs must also allege with particularity both substantial remuneration and facts demonstrating that the remuneration at stake is material to the director.  *White*, 793 A.2d at 366.  Nothing of the sort is alleged in the Complaint. |
| "Defendant Crout has also long served on the Trimeris board of directors with | Standing alone, such an allegation is plainly insufficient. *Zimmerman ex rel. Priceline.com, Inc. v. Braddock*, No. Civ. A. |

---

[9]  As the Plaintiffs fail to allege that Moore ever held more than one position Biopure, the reference to "executive positions" in the plural is mistaken.

[10]  The Plaintiffs' attempt to distinguish *Paxson* at page 21 of their brief requires attention.  The Plaintiffs assert that the "*Paxson* plaintiffs . . . merely alleged that the 'Board members also have close personal and business ties with each other'" and by contrast, the Plaintiffs here have alleged "more particularity concerning the entangling business, personal and professional relationships" of the defendants.  Opp. at 21.  To the contrary, in *Paxson*, the plaintiffs also alleged that the defendants "enjoy[ed] certain 'emoluments of office' that they seek to retain" and that they "receive 'substantial salaries, bonuses, payments, benefits, and/or other emoluments'" and the court expressly acknowledged that "[t]his short list of information the plaintiffs may have pled to support their claims is merely illustrative and is in no way to be construed as exhaustive . . . ." *In re Paxson Comm. Corp. Shareholders Litig.*, No. Civ. A. 17568, 2001 WL 812028, at *9-10 (Del. Ch. July 12, 2001).  The Plaintiffs' argument here only serves to distract from the fundamental point:  they have pled nothing by way of facts concerning personal and business relationships that could approach excusing demand, as is made clear in *Beam* discussed above.

| | |
|---|---|
| Defendant Sanders." | 18473-NC 2002 WL 31926608, *12 (Del. Ch. Dec. 20, 2002) (holding that two defendant directors' serving together on board of different corporation (Xerox) insufficient). |

In sum, the Plaintiffs' allegations of "professional entanglements" are woefully deficient, and they may not attempt to rely upon discovery to correct them.

## III.  EVEN IF *ARONSON* APPLIED (AND IT DOES NOT) THE PLAINTIFFS HAVE FAILED TO ALLEGE FACTS WITH PARTICULARITY WHICH COULD SHOW THAT THE BUSINESS JUDGMENT RULE DOES NOT APPLY

The Plaintiffs assert (mistakenly) that the two-part demand futility test of *Aronson*, applicable only "[w]here the [derivative] lawsuit attacks a decision made by the board" *Haseotes*, 2002 WL 31058540, at *4, applies here because "Plaintiffs clearly challenge the Defendants' decision to not publicly disclose adverse, material information from the FDA concerning Hemopure which they knew, but deemed 'immaterial.'"  Opp. at 9.  *Seminaris v. Landa*, relied upon by the Plaintiffs at page 10 of their Opposition for the proposition that "the applicable demand futility analysis is the two-pronged *Aronson* test," actually held that a derivative complaint alleging failure to disclose material information, as is alleged here, was subject to the *Rales* test—not *Aronson*:

> The familiar two step *Aronson* test applies to derivative claims that attack a business judgment of the board. . . .  [P]laintiff does not challenge a decision of Fidelity Medical's board of directors.  Plaintiff alleges that the board failed to prevent Landa from misrepresenting the corporation's financial condition.  *The complaint also alleges that certain board members signed misleading statements on behalf of the corporation, and that all of the defendants conspired with Landa to misrepresent the value of the corporation's stock.  However, plaintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings.*  Therefore, plaintiff must satisfy the one step test announced in *Rales* to demonstrate that he was excused from making a demand.

662 A.2d 1350, 1353-54 (Del. Ch. 1995)(emphasis added);[11] *see also In re Xcel Energy, Inc.*, 222 F.R.D. 603, 607 (D. Minn. 2004) (dismissing derivative action and holding that *Rales*, not *Aronson*, applies to allegations of defendants acting affirmatively in making misstatements in

---

[11]  Moreover *In re Oxford Health Plans, Inc.*, 192 F.R.D. 111 (S.D.N.Y. 2000), cited throughout the Plaintiffs' Opposition, similarly held that a derivative complaint alleging knowing or reckless dissemination of misleading information alleged "nonfeasance, and thus is subject to the *Rales* standard." *Id.* at 114.

12

SEC filings and press releases).  Plaintiffs cite no apposite case to the contrary.[12]

But even if *Aronson* somehow applied (and it does not), the Plaintiffs have failed to plead facts with particularity that could overcome the presumption of the business judgment rule.  The Plaintiffs acknowledge in their Opposition that to plead a violation of the business judgment rule, they must allege that the Board failed to act on an informed basis, in good faith, with due care.  *See* Opp. at 22;  *see also Aronson,* 473 A.2d at 814-15.  The Plaintiffs have alleged in only the most conclusory fashion that the "director defendants consciously refrained from causing Biopure to disclose" the alleged "inside information demonstrating that safety concerns existed with Hemopure."  Opp. at 23 (citing paragraphs 16 and 44 of the Complaint).[13]  In essence, the Plaintiffs assert that the Board's assumed (not alleged) "decision" to refrain from disclosing facts transgressed the business judgment rule because it violated the law.[14]

---

[12]  Plaintiffs' reliance on *In re Abbott Labs. Derivative S'Holder's Litig.* 325 F.3d 795 (7th Cir. 2003) is misguided. In *Abbott Labs.*, the Seventh Circuit held that *Aronson* applied to the derivative complaint which alleged with the requisite particularity that the board had knowledge of six years of FDA violations resulting in the largest fine in FDA regulatory history.  *Id.* at 801.  Indeed, in *Abbott Labs.*, the plaintiffs alleged that FDA warning letters concerning the violations were copied to particular board members, that the regulatory problems were public knowledge over the period and that SEC disclosures acknowledging the regulatory noncompliance imputed knowledge to the directors.  *Id.* at 806.  Accordingly, the specific *facts* pled by the *Abbott Labs.* plaintiffs demonstrated that the board made a *decision* not to do anything about longstanding, publicly known problems.

[13]  Curiously, the Plaintiffs do not cite to the sole allegation in the Complaint supporting an inference that *somebody* —albeit not the Board—made a decision not to disclose FDA communications about the proposed trauma protocol. Compl. ¶ 42 (Biopure's December 24, 2003 press release stating that "the company" did not publicly disclose the FDA communications because "it did not believe communications about proposed clinical trials are material prior to the initiation of the trial.")  While it is clearly alleged that the Company made this decision, the Complaint is devoid of any allegation of fact ascribing the decision to the Board.  In any event, even this allegation provides no facts concerning matters pertinent to the business judgment rule analysis—*i.e.* information considered, good faith and due care.

[14]  Elsewhere in their Opposition, the Plaintiffs quote *In re Oxford Health Plans, Inc.* for the proposition that the "*Aronson* case teaches violations of the law concerning the dissemination of false and misleading financial statements cannot be the product of a valid exercise of business judgment and therefore protected from a demand futility allegation by case law."  Opp. at 17.  With all due respect, while the Plaintiffs' quote from *Oxford* is accurate, the *Oxford* court's characterization of *Aronson* is most certainly not.  *Aronson* in no way even involved false financial statements, and the legion of cases following *Aronson* and dismissing derivative actions involving allegedly false financial statements because demand was not futile, unequivocally demonstrates that the *Oxford* court is wrong.  *E.g.*, *Seminaris*, 662 A.2d at 1355 (dismissing derivative action based on alleged false statements because demand was not futile); *Lewis*, 1993 WL 47842 (same); *Rattner*, 2003 WL 22284323 (same); *Guttman*, 823 A.2d 492 (same); *In re Sonus Networks*, 2004 WL 2341395 (same); *In re Xcel Energy, Inc.*, 222 F.R.D. 603 (D.

Similar allegations have been rejected by this Court as insufficient while applying *Aronson* to dismiss derivative allegations. In *Landy*, for instance, Judge Keeton rejected allegations that a board violated the law as a basis for excusing demand under *Aronson*. 316 F. Supp. 2d. at 65. Judge Keeton aptly noted:

> One can reasonably conceive of numerous situations in which directors might act on an informed basis, in good faith and in the honest belief that an action taken is in the best interests of the company and yet approve a transaction that, in the end, proves to be unlawful.

*Id.* at 64. That observation bears heavily on the Plaintiffs' allegations here that the Company failed to disclose FDA communications concerning an indication for Hemopure that was separate from the company's BLA. As noted in Defendants' moving brief, (and not even addressed by the Plaintiffs), courts have held that there simply is no duty to disclose FDA questions raised during the review process. *See* Def. Br. at 12.

Like in *Landy*, and ignoring for the moment that the Complaint alleges no facts whatsoever to show that there ever was any Board "decision" subject to *Aronson* review, the Plaintiffs here do not allege facts to show that the Board "acted" without sufficient information, in bad faith or without due care. In fact, there are no factual allegations whatsoever concerning any purported decision about disclosure—*i.e.* Board meeting minutes to show what information the Board possessed, the nature of the Board's deliberations, or whether the Board reasonably relied on legal counsel's advice. *See, e.g., Litt v. Wycoff*, No. Civ. A. 19083, 2003 WL 1794724, at *6 (Del. Ch. Mar. 28, 2003) (dismissing derivative complaint under *Aronson* test because it did "not allege any particularized facts regarding the process by which the Board initiated or approved the challenged actions . . . [or] allege that the Board failed to obtain appropriate legal advice"). Indeed, virtually the only fact alleged pertinent to the business judgment rule analysis

---

Minn. 2004) (same); *Spector*, 2004 WL 350682 (Jan. 26, 2004 N.D. Tex.) (same); *In re Sagent.*, 278 F. Supp. 2d 1079 (same).

here—that the Company's general counsel "reviewed and approved the Company's false and misleading financial statements and press releases" (Compl. ¶ 29)—actually militates *against* an inference that the business judgment rule is inapplicable. *Lewis*, 1993 WL 47842, at *4 (pre-*Rales* decision dismissing derivative complaint based on misleading disclosures under *Aronson* because, in part, facts showed reliance on company's general counsel's review of statements).[15]

## IV. THE PLAINTIFFS HAVE FAILED TO ALLEGE FACTS WITH PARTICULARITY TO PERMIT A CLAIM AGAINST, OR EXCUSE DEMAND WITH RESPECT TO, DEFENDANT RAUSCH FOR INSIDER TRADING

The Plaintiffs contend that they have sufficiently alleged that Defendant Rausch engaged in impermissible insider trading, both for purposes of demonstrating demand futility and to state a claim independent of the futility analysis. Opp. at 11-13, 28-30. They have not.

Preliminarily, the Plaintiffs claim in their Opposition that they have alleged with particularity facts sufficient to establish Rausch's alleged insider trading, citing Paragraphs 23, 47, 48 and 65(a)(i). Opp. at 12-13. Paragraph 23 alleges that Rausch sold 246,574 shares for nearly $1.6 million "during the Relevant Period." Paragraphs 47 and 48 allege that news articles published in the *Boston Globe* and on the *TheStreet.com* report that Rausch sold specified numbers of shares during April, June and August of 2003, and that he had owned 2 million shares in January of 2003 (for Rule 11 pleading purposes, only the fact that the articles so reported is accepted).[16] Paragraph 65(a)(i) reiterates the allegations of Paragraph 23.

---

[15] The Plaintiffs further assert that "demand is futile where a majority of the Board has been charged with wrongdoing." Opp. at 23. A similar argument was rejected in *Rattner*, 2003 WL 22284323, at *13 n.78, because, like here, "the Amended Complaint does not allege with particularity facts that at all show knowing participation by any of the Director Defendants." *Id.*

[16] To the extent the Plaintiffs intend to adopt the reports in the news articles as allegations of their own, they have failed to make that clear, likely because such a practice does not withstand Rule 11. Indeed, in *Geinko v. Padda*, No. 00 C 5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002) the court rejected as insufficient under Rule 11 the plaintiff's incorporation by reference of the allegations in complaints filed by the SEC and other parties. The court's reasoning is applicable here:

> The pervasive defect in the Amended Complaint in this case, however, is that it does not make clear what Plaintiffs directly allege as fact, and what Plaintiffs merely are asserting that someone else has alleged. *In other words, Plaintiffs' attorneys cannot shirk their Rule 11 obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances by merely stating that "the SEC alleges" certain individual facts.*

To state a common law insider trading claim, for demand futility purposes or otherwise, far more need be alleged under applicable Delaware law. It is not enough to assert that in January 2003 Rausch owned two million shares and then sold 12% over three months. Rather, "it must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Guttman*, 823 A.2d at 505. The Plaintiffs simply do not particularly allege the dates of the trades (as reported in the newspapers cited, they occurred on unspecified dates over three months in 2003),[17] and their argument that the trades were made based upon adverse, material non-public information (Opp. at 13) is not supported by any particularized allegation in the Complaint. At most, the Complaint alleges that Rausch had insider information based upon "access to and review of internal corporate documents" (which ones? we are not told) "conversations and connections with other corporate officers" (when? who? about what? we are left to guess) and "attendance at management Board meetings" (when? discussing what? the Complaint is silent). *See* Opp. at 13 (*quoting* Compl. ¶ 65(a)); *Rattner*, 2003 WL 22284323, at *10 (rejecting insider trading allegations because of absence of precise roles that defendants played at the company and how material inside information would become available). In any event, courts in the securities context have rejected insider selling allegations involving far more than the 12% allegedly sold by Defendant Rausch here, and have held that sales in similar amounts simply are not suspicious. *E.g.*, *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 368 (5th Cir. 2004) (insiders' sales of 26.40, 26.62 and 33.27 % of their holdings on one day of secondary public offering did not raise strong inference of scienter); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1094 (9th Cir. 2002) (finding sale of 13 % not suspicious); *In Re PEC Solutions Sec. Litig.*, NO. 03-CV-331, 2004 WL 1854202, at *15 (E.D. Va. May 25, 2004) (13 % "not of the sort

---

*Id.* at *6 (emphasis added). The court then cited with approval *SSDD Enterprises, Inc. v. Village of Lansing*, No. 95 C 6064, 1996 WL 238931 (N.D. Ill. May 3, 1996), which held that allegations based on newspaper articles—such as the majority of the Complaint here—are hearsay and must be disregarded under Rule 11. *Id.* at *2, n.7. The same reasoning and result applies to the Complaint's Paragraphs 47 and 48 (among many others) here.

[17] *See Rattner*, 2003 WL 22284323, at *11 (rejecting allegations of trades over a one month time frame due to failure to "pinpoint the timing of the challenged sales").

16

usually considered suspicious by courts").

Two other points raised by the Plaintiffs warrant attention.  First, the Plaintiffs argue that *Rattner* and *Guttman*, holding that unspecific allegations of insider trading are insufficient for demand futility purposes, are inapposite because those cases "distinguished between nonmanagement director defendants and management director defendants as to insider selling." Opp. at 13-14, n.11.  The courts, however, did not "assume . . . that the insider selling director defendants" were interested (*id.*), but rather noted that, "even *somehow* assuming" interestedness of one insider director, seven out of eight directors were not shown to be interested.   *Rattner*, 2003 WL 22284323, at *11 (emphasis added).  *Guttman* made the substantially same *arguendo* observation.  823 A.2d at 503.  Given that courts regularly hold that demand futility has not been established even with respect to insider director selling defendants, *In re Sagent*, 278 F. Supp. 2d at 1088-89 (applying Delaware law, holding that demand futility not established for insider director selling defendant due to lack of specificity of allegations of sales), the Plaintiffs' "distinction" is without a difference.

Second, the Plaintiffs assert that, even if demand futility has not been established, at minimum the Plaintiffs have stated a claim that passes Rule 12(b)(6) as the pleading standard is less ominous than under Rule 23.1.  Opp. at 28-30.  The Plaintiffs do not substantively address the applicability of Rule 9(b) to insider trading as alluded to in *Guttman*, (Def. Br. at 25), and cases cited by Plaintiffs in support of their Rule 12(b)(6) argument were decided before *Guttman*.  In any event, if the Plaintiffs have not established demand futility, they have no standing to pursue any of their claims.

## V.    THE COMPLAINTS FAILS TO STATE CLAIMS FOR WHICH RELIEF MAY BE GRANTED

### A.    Biopure's Certificate Of Incorporation Properly Bars This Action To The Extent That The Plaintiffs Fail To Plead A Non-Exculpated Claim—And They Fail To Do So Pursuant To Rule 9(b)

The Plaintiffs argue that Biopure's Certificate of Incorporation's exculpatory provision for breaches of the duty of care cannot be applied on a Rule 12(b)(6) motion because they allege

breaches of the duty of loyalty, a non-exculpated claim. Opp. at 32-35. To the contrary, governing case law holds that, to the extent Plaintiffs fail to plead a non-exculpated claim, the Complaint may be dismissed at the pleading stage. *See Emerald Partners v. Berlin*, 787 A.2d 85, 91-92 (Del. 2001) ("The Section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss"); *In re Sagent*, 278 F. Supp. 2d at 1095 n.9 (holding exculpatory clause is properly considered on a motion to dismiss").[18]

Importantly, in arguing that Biopure's exculpatory provision in its Certificate of Incorporation does not preclude the Plaintiffs' claims for breaches of fiduciary duty, the Plaintiffs assert that they "clearly plead intentional acts of wrongdoing and bad faith in the complaint." Opp. at 34. As Magistrate Judge Alexander held in *In re Stratus Computer, Inc. Sec. Litig.*, Civ.A. 89-2075-Z, 1992 WL 73555 (D. Mass. March 27, 1992), such intentional breach of fiduciary duty claims "sound in fraud" and are accordingly subject to Rule 9(b). *Id.* at *7 (holding that derivative breach of fiduciary duty claims based on allegedly false and misleading statements was subject to Rule 9(b)). The Complaint does not satisfy Rule 9(b). As in *Stratus*, the Complaint here "only discusses the defendants in collective terminology, making no reference to any particular act of any individual defendant." *Id.* The Complaint must be dismissed.

**B.    Even If Rule 12(b)(6) Applies, Plaintiffs Fail To Rehabilitate Their Claim For Breach Of Fiduciary Duty With Their Mistaken Assertion That The Defendants "Admitted" Knowledge Of Adverse Information**

Plaintiffs argue that they have stated a claim for breach of fiduciary duty because the Defendants "admitted" knowledge of adverse information that was not disclosed, citing Paragraph 42 of the Complaint. Opp. at 27. Paragraph 42 contains no such admission, but rather recites the Company's disclosure of the SEC's Wells notices and how the Company did not

---

[18] The Plaintiffs have overreached in arguing that, based on *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), Del. Corp. Code § 102(b)(7) does not apply to their duty of loyalty claims. Opp. at 32-33. *Malone* did not even involve such a charter provision, but rather holds only that dissemination of false information is a breach of the duty of loyalty. The Plaintiffs overlook that such a claim may be based on negligent or intentional acts, and to the extent it is negligent, Del. Corp. Code § 102(b)(7) bars the claim. *See In re Sagent Tech.*, 278 F. Supp. 2d at 1095 n.9 ("to the extent that the complaint alleges any *negligent* breach of 'fiduciary duty, such a claim is precluded by the exculpatory clause in Sagent's articles of incorporation.")

18

disclose its trauma protocol because the Company did not deem communications about proposed clinical trials material prior to the initiation of the trials.  Compl. ¶ 42.  Apparently, the Plaintiffs contend that the "Company's" disclosure imputes to each individual director defendant an admission sufficient to sustain a claim for breach of fiduciary duty.  Similar allegations were rejected on a Rule 12(b)(6) motion by Magistrate Judge Alexander for reasons applicable here. *See In re Stratus*, 1992 WL  73555 *8  (cited in Def. Br. at 22) ("where a complaint alleges 'violation of . . . fiduciary duties' without 'attempt[ing] to delineate among the defendants their participation or responsibilities in the activities which are the subject of th[e] suit,' it does not give the defendants the notice required").

### C.    The Plaintiffs Have Not Pled Damages

The Plaintiffs argue  that *Dollens v. Zionts,* No. 01 C02826, 2002 WL 1632261, at *8 (N.D. Ill. July 22, 2002) and *In re Symbol Technologies Sec. Litig.,* 762 F. Supp. 510, 517 (E.D.N.Y. 1991*)* support their theory of having adequately pled damages for loss of goodwill and integrity in the marketplace.  Opp. at 25.[19]  Suffice to say that the holdings of each case, dismissing claims based upon allegations virtually identical to those advanced here, teach otherwise.[20]

### D.    The Plaintiffs' Arguments Fail To Save Their Claims For Unjust Enrichment And Waste

The Plaintiffs assert that they have pled a claim for unjust enrichment and waste based on their allegations of Rausch's alleged insider trading and the salaries and bonuses received by the Defendants.  "There are only two ways for a waste claim to survive a motion to dismiss:  . . . the

---

[19]  The Plaintiffs' contentions about how insider trading profits are legally cognizable damages is a straw man argument—the Defendants do not challenge the adequacy of damages pled for insider trading.  *See* Def. Br. at 21.

[20]  Plaintiffs' citation to Paragraphs 1, 14, 45, 56 and 68 as support for their assertion that they have adequately pled damages, concerns only allegations of loss of market capitalization allegedly due to the announcement of the SEC investigation, allegations which fail as a matter of law  *See In re Symbol Tech.*, 762 F. Supp. at 517 ("damages must be shown to directly flow from the wrongful acts of defendants, and not the mere commencement of legal proceedings against the corporation").  Plaintiffs' citation to *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117 (D.N.J. 1999) is unavailing because there, the company had *already incurred* legal expenses and issued almost $350 million in securities to settle litigation and incurred costs from an internal investigation.  *Id.* at 135. Here, the Plaintiffs only allege the anticipation of such expenses.

corporation received no consideration, or that a transfer of corporate assets served no corporate purpose." *Official Comm. of Unsecured Creditors of Integrated Health Services, Inc., v. Elkins, et al*, No.Civ.A. 20228, 2004 WL 1949290, at * 17.  The Plaintiffs fail to allege that Biopure received no consideration or that the transfer served no corporate purpose.  Moreover, because the Plaintiffs have not adequately pled an insider trading claim (*see supra* Part IV.) nor the predicate claim of breach of fiduciary duty to support their waste theory (*see supra* Part V.), so too must their claims for unjust enrichment and waste fail.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed.  Further, because this is the Plaintiffs' second complaint, filed after an additional six months' time to develop sufficient allegations to support their claim of demand futility, but having failed to do so, the Complaint should be dismissed with prejudice.

Respectfully submitted,

**THOMAS A. MOORE, CARL W. RAUSCH, DAVID N. JUDELSON, CHARLES A. SANDERS, M.D., C. EVERETT KOOP, M.D., DANIEL P. HARRINGTON, J. RICHARD CROUT, M.D, JANE KOBER. AND BIOPURE CORPORATION**

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO#636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

20

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on December 20, 2004.

/s/ Michael D. Blanchard
Michael D. Blanchard

21