## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE BIOPURE CORPORATION    )     Master Docket No. 1:04-cv-10177-NG
DERIVATIVE LITIGATION       )     (Consolidated Derivative Action)
                           )
                           )     Assigned to: Judge J. Nancy Gertner
                           )
_____)     Magistrate Judge Alexander

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFFS' MOTION FOR LEAVE TO AMEND</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

I.    INTRODUCTION ............................................................................................1

II.   PROCEDURAL BACKGROUND.....................................................................1

III.  NATURE OF THE AMENDMENT ................................................................2

IV.   ARGUMENT ....................................................................................................5

      A.    The Court Should Grant Plaintiffs' Leave to Amend................................5

            1.    Leave to Amend Is Liberally Granted .......................................5

            2.    None of the *Foman* Factors for Denying Leave to Amend Are
                  Present................................................................................6

V.    CONCLUSION..................................................................................................7

# TABLE OF AUTHORITIES

## CASES

*Federal Deposit Ins. Corp. v. Consol Mortgage & Fin. Corp.*,
    805 F.2d 14, 16 (1st Cir. 1986) ........................................................................ 6

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................... 5, 6, 7

*Gonzalez-Perez v. Hosp. Interamericano de Medicina Avanzada*,
    355 F.3d 1 (1st Cir. 2004) ............................................................................... 6

*Nasson v. Van Winkle*,
    Civ. A. No. 91-11823-WF, 1994 WL 175049 (D. Mass. April 19, 1994) ......................... 7

*Nebraska v. Wyoming*,
    515 U.S. 1, 8 (1995) ..................................................................................... 6

*Picker Int'l. Inc. v. Leavitt*,
    128 F.R.D. 3 (D. Mass. 1989) ......................................................................... 7

*Tingley Sys. Inc. v. CSC Consulting, Inc.*,
    152 F. Supp. 2d 95, 116 (D. Mass. 2001) ....................................................... 6, 7

*Vargas v. McNamara*,
    608 F.2d 15 (1st Cir. 1979) ............................................................................. 6

## RULES

Fed. R. Civ. P.

    15(a) ................................................................................................. 1, 5, 6

    16(b)(1) .................................................................................................. 7

## I.    INTRODUCTION

Plaintiffs have moved the Court, pursuant to Fed. R. Civ. P. 15(a), for an order allowing them to amend their pleadings and to file their Second Amended Shareholder Derivative Complaint for Breach of Fiduciary Duties, Abuse of Control, Gross Mismanagement, Waste of Corporate Assets, Unjust Enrichment and for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information ("Second Amended Complaint'). The Second Amended Complaint which Plaintiffs seek leave to file is attached as Exhibit A hereto.

As detailed below, the well-settled rule is that leave to amend is liberally granted under Fed. R. Civ. P. 15(a). Because the defendants cannot show prejudice, undue delay, futility or other factors weighing against an amendment, leave to file the Second Amended Complaint should be granted.

## II.    PROCEDURAL BACKGROUND

On May 14, 2004, this Court entered an order, *inter alia*, consolidating two related shareholder derivative actions, establishing a master docket and setting forth the scheduling for the filing of a consolidated derivative complaint and the time for defendants to respond (Docket Entry No. 13). Pursuant to a subsequent stipulation (Docket Entry No. 14), Plaintiffs filed their amended consolidated complaint on July 14, 2004 (Docket Entry No. 15). Pursuant to an order granting an assented to motion (Docket Entry No. 16), Defendants filed a motion to dismiss the consolidated amended complaint on September 27, 2004 (Docket Entry No. 20). Plaintiffs filed their opposition to the motion to dismiss on November 11, 2004 (Docket Entry No. 25) and defendants filed a reply on December 20, 2004 (Docket Entry No. 28).

No decision has been rendered on the defendants' motion to dismiss nor have there been any other proceedings in the consolidated action.

**III.     NATURE OF THE AMENDMENT**

The proposed additions and refinements to the prior complaint concern new facts discovered by Plaintiffs after a civil lawsuit filed in this District by the Securities and Exchange Commission ("SEC") against Biopure Corporation ("Biopure" or the "Company") and certain of its current and former officers/director.  The majority of the new additions provide further detail and specificity to the allegations contained in the previous complaint.   This recently uncovered information strengthens Plaintiffs' claims that Biopure's Board of Directors ("Board") and certain of its current and/or former officers breached their fiduciary duties and committed other violations of law and narrows the breadth of litigation by using more specific allegations.

This derivative action arises from defendants causing Biopure to file false financial statements and to issue misleading statements and conceal material facts from investors and the public concerning Hemopure®, one of the Company's primary products, between March 17, 2003 and the Present (the "Relevant Period").  ¶1.[1]  As a biotechnology company, Biopure's value is mainly determined by the prospects of its getting approval of Hemopure® for human use. Because Hemopure® is the Company's flagship product, investors rely on and consider material all information and communications concerning Hemopure® between Biopure and the U.S. Food and Drug Administration ("FDA").  ¶3.

The Second Amended Complaint adds additional and specific detailed information of exactly how and when the defendants received negative material information from the FDA concerning Hemopure® which was continuously withheld from the investing public while defendants issued numerous false and misleading financial statements and press releases without disclosing this

---

[1]  All "¶" references are to a paragraph in the Proposed Second Amended Complaint attached hereto as Exhibit A.

material information.  These particularized allegations are set forth in the Second Amended Complaint in paragraphs 35 through 108 and are summarized as follows.

In April 2003, the defendants began receiving negative information from the FDA. Specifically, on or about April 9, 2003, the FDA imposed a clinical hold barring the company from conducting clinical trials of Hemopure® on trauma victims because of "safety concerns" arising out of the FDA's preliminary assessment of Biopure's Biologic License Application ("BLA"). ¶¶7, 48-49.  On or about May 30, 2003 the defendants were informed that the FDA had denied the Company's request to lift the clinical hold. ¶¶7, 63.  Then, on or about July 30, 2003, the defendants received two lengthy and detailed letters from the FDA. ¶¶7, 83-87.  In one letter, the FDA again refused to allow the clinical trials because of "an unreasonable and significant risk of illness or injury" to human subjects. ¶¶7, 86.  The other letter was the FDA's complete response letter to the BLA in which the FDA informed the Company and defendants that it was not approving Biopure's BLA at that time because of extensive and significant deficiencies in Biopure's application and because of concerns about the lack of safety and efficacy of Hemopure®. ¶¶7, 84-85.  Receipt of the complete response letter meant that the FDA had completed its review of the BLA and would have an additional six months to review a resubmission by the Company, if and when the Company addressed all deficiencies identified by the FDA. ¶7. One year later, the defendants still had not addressed all deficiencies raised in the complete response letter and decided instead to shift the Company's focus to developing Hemopure® for a different application. ¶7.

For more than eight months, from April 9 until December 24, 2003, the defendants concealed the clinical hold from investors while touting a potential use of Hemopure® by trauma victims in multiple securities offerings, public filings, press releases and investors conference calls. ¶¶50-51, 54, 57-59, 61-62, 66, 69-70, 72-75, 78, 80, 82, 90, 94, 96-97, 99, 103, 106, 108.  All of these filings

and/or statements were materially false and misleading because, *inter alia*, defendants concealed the negative information received from the FDA concerning Hemopure® and the fact that the FDA had barred the Company from conducting clinical trials of Hemopure® on trauma victims for safety reasons and they misrepresented the status and/or communications with the FDA concerning Hemopure®.  ¶¶52, 55, 60, 67, 71, 76, 79, 81, 92, 95, 98, 100-101, 104, 107, 109.   Many of these materially false and misleading financial statements were securities offerings which were signed by the entire Board of Biopure. ¶¶50, 74, 92.

Moreover, on August 1, 2003, two days after receiving the complete response letter from the FDA, defendants caused or allowed Biopure to issue a false and misleading press release that gave the impression that the company had received positive news from the FDA.  ¶¶8, 90. Following the issuance of this press release, Biopure's stock price rose 22.27%, from a closing price of $5.97 on July 31, 2003 to a closing price of $7.30 on August 1, 2003. ¶¶8, 91.  In the days following this positive – but false – release, defendant Carl W. Rausch, a co-founder of the Company and a former board member and a former Vice Chairman, Chief Technical Officer, disposed of thousands of shares of his personally held Biopure stock reaping over $1.6 million dollars in proceeds. ¶¶17, 26, 115.

For four additional months, from August until December 11, 2003, defendants caused or allowed Biopure to continue to conceal that it had received a complete response letter from the FDA, to continue to make false statements about its dealings with the FDA and to fail to disclose the true scope and nature of the deficiencies with the BLA identified by the FDA.  ¶¶8, 94, 96-97, 99, 103, 106, 108.  Indeed on one occasion in September 2003, defendants caused or allowed Biopure to disclose in a prospectus filed with the SEC, that the July 30 letter it received was a complete response letter. ¶¶8, 103. When Biopure's stock price dropped on heavy trading, defendants caused

or allowed Biopure to issue statements to investors that the ***reference to the letter as a complete response letter was a "mistake" by a "junior lawyer at a law firm" retained by the Company.*** ¶¶8, 104.  The disclosure was quickly "fixed" with the filing of an amended prospectus that omitted the reference to the letter as a "complete response letter."  ¶¶8, 105.

Finally, under the threat of civil litigation by the SEC, on December 24, 2003, ***after the close of the market on Christmas Eve***, the truth was finally revealed as the defendants were forced to announce a potential SEC inquiry for securities fraud, and for the first time, disclose material problems with their Hemopure® product and the FDA approval process.  ¶¶9, 110.  As a result of defendants breaches of fiduciary duties and other violations of law, the Company has been severely damaged. Damages include being subjected to multiple securities fraud lawsuits, having its market capitalization decimated, and being subjected to a suit by the SEC seeking a civil penalty against the Company which will cost the Company thousands to defend and potentially hundreds of thousands to resolve in fines.  ¶¶1, 137.

## IV.    ARGUMENT

### A.    The Court Should Grant Plaintiffs' Leave to Amend

#### 1.    Leave to Amend Is Liberally Granted

Pursuant to Fed. R. Civ. P. 15(a), leave to amend the pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  As the Supreme Court held in *Foman v. Davis*, 371 U.S. 178 (1962):

> ***[T]his mandate is to be heeded***.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  ***In the absence of any apparent or declared reason***, such as an undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., ***the leave sought should, as the rules require, be "freely given.***"  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but ***outright refusal to grant the leave without any***

> ***justifying reason appearing for the denial is not an exercise of discretion; it is
> merely abuse of that discretion and inconsistent with the spirit of the Federal
> Rules.***

*Id.* at 182 (emphasis added) (citations omitted).

The *Foman* policy in support of liberal amendment continues to be the prevailing rule, as the Supreme Court confirmed in *Nebraska v. Wyoming,* 515 U.S. 1, 8 (1995) (recognizing that the "solicitude for liberal amendment of pleadings" animates Rule 15 of the Federal Rules of Civil Procedure). Likewise, in this Circuit, motions to amend should be liberally granted. *Fed. Deposit Ins. Corp. v. Consol. Mortgage & Fin. Corp.*, 805 F.2d 14, 16 (1st Cir. 1986). Indeed, this Circuit had repeatedly followed the *Foman* test and most recently in *Gonzalez-Perez v. Hosp. Interamericano de Medicina Avanzada*, 355 F.3d 1 (1st Cir. 2004), held that:

> Rule 15(a) instructs that "leave [to amend the pleadings] shall be freely given when
> justice so requires." Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared
> reason – such as undue delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of the amendment, futility of
> the amendment, etc. – ***the leave sought should, as the rules require, be 'freely
> given.'***"

*Id.* at 6 (quoting *Foman*, 371 U.S. at 182) (quoting Fed. R. Civ. P. 15(a) (emphasis added)). This Court has further noted that absent the *Foman* factors for denying leave to amend, "Rule 15(a) generally requires allowance of amendments." *Tingley Sys. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 116 (D. Mass. 2001) (citing *Vargas v. McNamara*, 608 F.2d 15, 18 (1st Cir. 1979)).

## 2.    None of the *Foman* Factors for Denying Leave to Amend Are Present

Under the *Foman* reasoning, as followed in this Circuit in *Gonzalez-Perez* and numerous other decisions, plaintiffs have a right under Fed. R. Civ. P. 15(a) to amend the complaint. None of the bases in *Foman* for denying leave to re-plead are present here. There has been no undue delay, bad faith or dilatory motive by plaintiffs that would prejudice defendants. The additional allegations contained in the Second Amended Complaint only came to light after a civil complaint was filed by

the SEC against Biopure and certain of its officers and/or directors on September 14, 2005 and plaintiffs have promptly moved to amend. This Court has repeatedly allowed amendments to add additional facts obtained during discovery. *Tingley Systems*, 152 F. Supp. 2d 95 at 116-17; *Picker Int'l, v. Leavitt*, 128 F.R.D. 3, 9 (D. Mass. 1989) (allowing motion to amend complaint where motion filed promptly after new facts learned through discovery).    Here, defendants clearly will not be prejudiced by the amendment because discovery in this action has not even begun. *Nasson v. Van Winkle*, Civ. A. No. 91-11823-WF, 1994 WL 175049, at *1 (D. Mass. April 19, 1994) (no undue prejudice to defendants in allowing plaintiff to amend where discovery had not begun).  In fact, given the procedural posture of this case, there could be no claim of undue delay given that the Court has yet to enter a scheduling order under Fed. R. Civ. P. 16(b)(1) limiting the time to amend the pleadings. Also, there have been no repeated failures to cure deficiencies by previous amendments. In fact, no determination of the sufficiency of plaintiffs' pleadings has yet to be made by this Court.

Finally, the amendment will not be futile given the additional, extensive and particularized allegations set forth in the Second Amended Complaint as summarized above.  These additional allegations, along with the particularized reasons set forth in the prior complaint, clearly demonstrate that the defendants committed egregious breaches of their fiduciary duties and committed other violations of law and show that any demand on the faithless Biopure Board would clearly have been a futile and useless act and thus was not required.

Given that none of the justifications for denying leave to amend are present here, the Court should allow the amendment and the filing of the Second Amended Complaint so that as the Supreme Court instructed, Plaintiffs may "test [their] claim on the merits." *Foman*, 371 U.S. at 182.

V.    **CONCLUSION**

Based on the foregoing, plaintiffs respectfully urge the Court to grant their motion and allow the filing of their Second Amended Complaint attached hereto as Exhibit A.

DATED: October 12, 2005.                    Respectfully submitted,


                                            /s/ Timothy L. Miles
                                            By:     Timothy L. Miles

                                            Douglas S. Johnston, Jr. (*pro hac vice*)
                                            George E. Barrett (*pro hac vice*)
                                            Timothy L. Miles (*pro hac vice*)
                                            BARRETT, JOHNSTON & PARSLEY
                                            217 Second Avenue, North
                                            Nashville, TN 37201
                                            Telephone: 615/244-2202
                                            Facsimile: 615/252-3798
                                            djohnston@barrettjohnston.com
                                            gbarrett@barrettjohnston.com
                                            tmiles@barrettjohnston.com

                                            Brian J. Robbins
                                            Jeffrey P. Fink
                                            ROBBINS UMEDA & FINK, LLP
                                            1010 Second Avenue, Suite 2360
                                            San Diego, CA 92101
                                            Telephone: 619/525-3990
                                            Facsimile: 619/525-3991

                                            Plaintiffs' Co-Lead Counsel

                                            Mary T. Sullivan, BBO #487130
                                            SEGAL ROITMAN & COLEMAN
                                            11 Beacon Street, Suite 500
                                            Boston, MA 02108
                                            Telephone: 617/742-0208
                                            Facsimile: 617/742-2187

                                            Plaintiffs' Liaison Counsel

                                            James G. Stranch
                                            BRANSTETTER, KILGORE, STRANCH &
                                            JENNINGS
                                            227 Second Avenue North
                                            Nashville, TN 37201
                                            Telephone: 615/254-8801
                                            Facsimile: 615/255-5419

                                            Plaintiffs' Counsel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a true and exact copy of the foregoing has been served on all Filing Users through the Court's Electronic Filing System on this the 12th day of October, 2005.


/s/ Timothy L. Miles
Timothy L. Miles

F:\GEORGE\Biopure\Memorandum in Supp  Mot  to Amend.doc

9