**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN RE BIOPURE CORPORATION** | ) | **Master Docket No. 1:04-cv-10177 (NG)** |
| **DERIVATIVE LITIGATION** | ) | |
| | ) | |
| | ) | **Assigned to Judge Nancy Gertner** |
| | ) | |
| _____ | ) | **Magistrate Judge Alexander** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION OF ISSUES
FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292**

Robert A. Buhlman, BBO #554393
Donald J. Savery, BBO #564975
Michael D. Blanchard, BBO #636860
Lawrence T. Stanley, Jr. BBO # 657381
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

# TABLE OF CONTENTS

**PAGE**

I.  THE ORDER IMPERMISSIBLY RELIES UPON AN INFERENCE THAT THE OUTSIDE DIRECTORS HAD KNOWLEDGE OF THE CLINICAL HOLD AND BREACHED THEIR DUTIES WHILE IN POSSESSION OF THAT KNOWLEDGE ...................................................................................................... 4

    A.  Director Knowledge May Not Be Inferred From Corporate Positions For Demand Futility Purposes Absent Particularized Allegations Of Fact Demonstrating The Means By Which Such Knowledge Is Acquired ................... 4

    B.  The "Core Business" Doctrine Has No Applicability To Outside Directors ....... 10

    C.  A Clinical Hold On A Single Proposed Clinical Trial Is Not Part Of The Company's "Core Business." ............................................................................. 12

II.  DETERMINING WHETHER THE OUTSIDE DIRECTORS WERE "INSIDE" FOR RULE 23.1 PURPOSES MUST BE MADE *NOW* BASED ON THE COMPLAINT -- NO DISCOVERY CAN CORRECT THE DEFICIENCIES ............. 13

III.  THE LAW OF DELAWARE DICTATES THAT *RALES* APPLIES -- *MCSPARRAN* DOES NOT EVEN ADDRESS THE ISSUE ......................................... 14

IV.  THE MERE "POTENTIAL FOR PERSONAL LIABILITY" RELIED UPON BY THIS COURT IS REJECTED BY A WALL OF DELAWARE AUTHORITY ........... 15

V.  THE SUPREME COURT PRECLUDES CONSIDERATION OF CUT-AND-PASTE ALLEGATIONS FROM THE SEC'S COMPLAINT ................................................... 16

i

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*In re Abbott Laboratories Derivative Shareholders Litigation*,
325 F.3d 795 (7th Cir. 2003) .............................................14

*In re Aetna Sec. Litigation*, 34 F. Supp. 2d 935 (E.D. Pa. 1999).......................................12

*In re Ancor Communications, Inc., Sec. Litigation*,
22 F. Supp. 2d 999 (D. Minn. 1998)...................................12

*Angres v. Smallworldwide PLC*, 94 F. Supp. 2d 1167 (D. Colo. 2000) ............................12

*In re Bio-Technology General Corp. Sec. Litigation*,
380 F. Supp. 2d 574 (D.N.J. 2005) .....................................6

*Caviness v. Evans*, 229 F.R.D. 354 (D. Mass. 2005)....................................8, 14

*In re Century Business Services Sec. Litigation*, No. 1:99CV02200
2002 WL 32254513 (N.D. Ohio June 27, 2002).....................12

*Davis v. Lehane*, 89 F. Supp. 2d 142 (D. Mass. 2000) ........................................3

*Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998) ...........................................12

*Fink v. Weill*, No. 02 Civ. 10250, 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) ............15

*Gonzalez Turul v. Rogatol Distributors, Inc.*, 951 F.2d 1 (1st Cir. 1991) ....................1, 14

*Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31 (1st Cir. 2005)......................................17

*Heit v. Baird*, 567 F.2d 1157 (1st Cir. 1977) ................................................5, 13

*Johnson v. Burken*, 930 F.2d 1202 (7th Cir. 1991)............................................4

*Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991) .........................................5

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974),
cert. denied 419 U.S. 885 (1974) ........................................4

*In Re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir. 1973).........................13, 14

*In re Keyspan Corp. Sec. Litigation*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................11

*Landy v. D'Alessandro*, 316 F. Supp. 2d 49 (D. Mass. 2004)............................................15

CTDOCS/1657286.2

*In re Lupron Marketing & Sales Practices Litigation*,
313 F. Supp. 2d 8 (D. Mass. 2004) ........................................................................4

*McSparran v. Larson*, No. 04 C 0041, 04 C 4778, 2006 WL 250698
(N.D. Ill. Jan. 27, 2006) ...................................................................................5, 14

*In re Mutual Funds Investment Litigation*, 384 F. Supp. 2d 873 (D. Md. 2005)..............15

*Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989) ..................3, 17

*Sachs v. Sprague*, 401 F. Supp. 2d 159 (D. Mass. 2005)......................................2

*In re Splash Technology Holdings, Inc. Sec. Litigation, No. C 99-00109 (SBA)*,
2000 WL 1727405 (N.D. Cal. Sept. 20, 2000) ....................................................12

*In re Stratus Computer, Inc., Civ. A. 89-2075-Z*, 1992 WL 73555
(D. Mass. March 27, 1992) ................................................................................2

*In re Xcel Energy, Inc.*, 222 F.R.D. 603 (D. Minn. 2004) ...................................8

### STATE CASES

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) .....................................................16

*In re Baxter International Shareholders Litigation*,
654 A.2d 1268 (Del Ch. 1995).......................................................................8, 16

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
845 A.2d 1040 (Del. Supr. 2004)...................................................................7, 13

*Benerofe v. Cha*, C.A. No. 14614, 1996 WL 535405 (Del. Ch. Sept. 12, 1996)...............16

*Cahall v. Lofland*, 114 A. 224 (Del. Ch. 1921), *aff'd* 118 A. 1 (Del. 1922) ....................10

*Canal Capital Corp. v. French*, C.A. No. 11764 (Del. Ch. July 2, 1992) ........................10

*In re Caremark International Inc. Derivative Litigation*,
698 A.2d 959 (Del. Ch. 1996)..........................................................................10

*David B. Shaev Profit Sharing Account v. Armstrong, No. Civ. A. 1449-N*,
2006 WL 391931 (Del. Ch. Feb. 13, 2006) ......................................................16

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003)................................................7, 15, 16

CTDOCS/1657286.2

*Levine v. Smith*, 591 A.2d 194 (Del. 1991)........................................................................13

*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) ........................................................................8

*Metropolitan Communications Corp. BVI v. Advanced MobileComm
Technologies, Inc.*, 854 A.2d 121 (Del. Ch. 2004) ...........................................................5, 9

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ............................................................13, 16

*Rattner v. Bidzos, No. Civ. A. 19700*, 2003 WL 22284323
(Del. Ch. Sept. 30, 2003) .........................................................................5, 7, 9, 11, 16

*Rosenblatt v. Getty Oil Co.*, 493 A.2d 929 (Del. 1985)....................................................11

*Scattered Corp. v. Chicago Stock Exchange, Inc.*, 701 A.2d 70 (Del. 1997)...................13

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. May 2, 1995) ......................................15, 16

*In re Sonus Networks, Inc. Derivative Litig.*, No. 040753BLS, 2004 WL 2341395
(Mass. Super. Sept. 27, 2004) .........................................................................................8

*South Shore Gastroninterology v. Selden*, No. 032630BLS,
2004 WL 1431059 (Mass. Super. May 7, 2004).................................................................9

*Stotland v. GAF Corp.*, Civ. A. No. 6876, 1983 WL 21371
(Del. Ch. Sept. 1, 1983) ..................................................................................................13

*White v. Panic*, 783 A.2d 543 (Del. 2001)....................................................................7, 8

## FEDERAL STATUTES

28 U.S.C. § 1292(b) ........................................................................................................1, 4

Fed. R. Civ. P. 23.1 .................................................................................................. passim

## STATE STATUTES

8 Del. C. § 141(a)........................................................................................................10, 11

Del. Code Ann. tit. 8, § 220 ...............................................................................................7

## MISCELLANEOUS

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
Federal Practice and Procedure, § 4478 (1981) .................................................................3

iv

**<u>Preliminary Statement</u>**

Defendants respectfully request that this Court either reconsider its March 28, 2006 order, ("Order") insofar as it denies Defendants' motion to dismiss and grants the Plaintiffs' motion for leave to amend, or amend the Order and certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The Order, with all due respect, applies clearly erroneous legal standards to the threshold issue of whether the Plaintiffs have pled demand futility and the application of the correct standards dictates dismissal for failure to satisfy Rule 23.1.  The Order risks an enormous waste of resources for the Court and litigants, because in the First Circuit, the failure to satisfy Rule 23.1 at the pleading stage is grounds for reversal, even following trial and entry of judgment.  *See Gonzalez Turul v. Rogatol Distributors, Inc.*, 951 F.2d 1 (1st Cir. 1991) (reversing judgment after trial and dismissing complaint for failure to satisfy Rule 23.1).

The Order rests on five clearly erroneous legal predicates which, if corrected, dictate dismissal.

**First,** the Order holds that "To the extent that the plaintiffs' claims rely on an *inference* that the defendant officers and directors had knowledge of the FDA's clinical hold . . . I determine that such an inference is appropriate at this stage of the litigation."  Order at 3.  The basis for this decision appears to be cases decided in the securities context where knowledge of matters concerning a company's "core business" have been imputed to officers (but not outside directors), and apparently the Court deems information concerning a clinical hold to be part of the Company's "core business" as it relates to Hemopure.  *Id.*

- As a matter of controlling Delaware law, there is no "core business" exception to Rule 23.1's requirement of particularized facts;

- Even those securities cases relied upon by this Court (inapplicable as they are to a Rule 23.1 analysis) demonstrate that, to the extent a "core business" exception exists, it applies to a company's officers and directors with management responsibilities -- not to outside directors (comprising a majority of the board here) who have no such alleged involvement with operational, day-to-day concerns, such as a clinical hold imposed by FDA; and

1

- Even if there were such an exception, and even if it could somehow be applied to outside directors removed from the daily management of the Company, the clinical hold on a single proposed clinical trial for Hemopure in an indication which, as pled, was not even intended for commercial development, is in no sense a matter involving the Company's "core business."

Critically, *five of the seven* board members at the time (Daniel P. Harrington, David N. Judelson, C. Everett Koop, Charles A. Sanders and J. Richard Crout) -- *i.e.* a supermajority -- are not alleged to have held management positions with the Company. They are "outside directors." As the District of Massachusetts has recently re-affirmed, applying governing Delaware law, these "directors are entitled to a presumption of disinterest," and allegations concerning them in "collective terminology" will not suffice to excuse demand. *Sachs v. Sprague*, 401 F. Supp. 2d 159, 164-65 (D. Mass. 2005) (quoting *In re Stratus Computer, Inc.*, Civ. A. 89-2075-Z, 1992 WL 73555, at * 8 (D. Mass. March 27, 1992)). In light of the foregoing, it is dispositive that the Complaint does not mention these five outside directors *at all,* except to name them as defendants and provide brief background information. Compl. ¶¶ 27-31.

If there is any "inference" concerning these outside directors' likelihood of liability (or lack thereof) salient from this record, and particularly the collateral SEC proceedings, it is that these directors face no likelihood of liability. Indeed, the Complaint alleges that the SEC had continued an investigation for nearly two years, culminating in filing a complaint to which this Court appears to give some weight. Notably, *after the SEC's near two-year investigation, the SEC brought no claims against these outside directors.*

**Second**, reasoning further, this Court held: "Argument over whether particular officers and directors in this case can be deemed sufficiently 'inside' to be deemed to have had knowledge is factual, and can be made at a later stage of this litigation." *Id*. at 4 (emphasis added).

2

- Both in Delaware and the First Circuit, the demand futility analysis *must* be determined for Rule 23.1 purposes based *solely* on the particularized allegations of the Complaint. Discovery is not permitted in assistance of pleading demand futility.

**Third**, the Order relies upon *McSparran*, a decision by the Northern District of Illinois, for the proposition that Delaware's two-part *Aronson* test -- instead of the one-part *Rales* test -- may be applied to determine demand futility, even in the absence of a challenged board decision. The issue of which test applies, however, was not even decided in *McSparrran* -- the court simply applied *Aronson* without considering the issue.  In any event, Delaware law dictates that *Rales* applies here.

**Fourth,** the Order applies Delaware's *Aronson* test incorrectly.  The Order holds that the Plaintiffs' "claim" that Defendants concealed knowledge of the clinical hold and thereby "subjected themselves to *potential* personal liability and removed the protective cloak of the business judgment rule."  Order at 5 (emphasis added).

- There is a wall of Delaware authority holding unequivocally that the "mere threat of personal liability" is patently insufficient -- instead, the Plaintiffs must satisfy a far more difficult standard: a "substantial likelihood of personal liability."  The Complaint does not begin to meet that standard here.

**Fifth,** to the extent that this Court's decision relies in any measure upon allegations cut and pasted from the SEC's complaint, it departs from reasoning in United States Supreme Court precedent.  *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 125 (1989).

Accordingly, Defendants respectfully request that this Court reconsider and vacate its Order and dismiss the Complaint, with prejudice.[1]  If the Court is not so inclined, however, Defendants request in the alternative that the Court amend its Order and certify that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

---

[1]  A district court may grant a motion for reconsideration when the movant demonstrates an intervening change in the law, the discovery of new evidence not previously available, or a clear error of law in the first order. *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000) (citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4478, at 789-90 (1981)).  As explained herein, the Order rests on several clear errors of law.

termination of the litigation." 28 U.S.C. § 1292(b).[2] Permitting an interlocutory appeal in these circumstances is not only proper, it is wise. The prosecution of this case based on a complaint that will be dismissed on appeal, even if there somehow were a trial and judgment, will waste an enormous degree of both the parties' and the Court's resources.

## I.    THE ORDER IMPERMISSIBLY RELIES UPON AN INFERENCE THAT THE OUTSIDE DIRECTORS HAD KNOWLEDGE OF THE CLINICAL HOLD AND BREACHED THEIR DUTIES WHILE IN POSSESSION OF THAT KNOWLEDGE

In its Order, this Court held that the outside director defendants' knowledge of the clinical hold may be inferred because the clinical hold allegedly concerned Biopure's "core business." Such an inference is not permitted in a demand futility analysis under Fed. R. Civ. P. 23.1 and by governing Delaware law. Furthermore, in the securities cases that have discussed such an inference under the Private Securities Litigation Reform Act ("PSLRA"), even those cases have not applied it to *outside directors* with no involvement in the day-to-day affairs of the Company. Finally, the clinical hold here, on a single proposed clinical trial for Hemopure in an indication that, as pled, was not even intended for commercial development, was not so critical to the Company to come within the (inapplicable) "core business" exception.

### A.    Director Knowledge May Not Be Inferred From Corporate Positions For Demand Futility Purposes Absent Particularized Allegations Of Fact Demonstrating The Means By Which Such Knowledge Is Acquired

The Order erroneously imports into Rule 23.1 jurisprudence a concept (itself of questionable viability) employed in limited circumstances in securities fraud class actions. That concept -- that a court may infer knowledge of high ranking officers concerning matters pertaining to the "core business" of the company -- has no applicability in a Rule 23.1 analysis.

---

[2]  The Massachusetts District Court has agreed with other circuits and stated that "[a] controlling question of law . . . is one that is 'serious to the conduct of the litigation, either practically or legally.'" *In re Lupron Mktg. & Sales Practices Litig.*, 313 F. Supp. 2d 8 (D. Mass. 2004) (citing *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974))). Other circuits have found that a question of law is controlling if its incorrect disposition would require reversal of a final judgment. *See, e.g., Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (1974), cert. denied 419 U.S. 885 (1974) (finding "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal").

4

To the extent the "core business" basis for inferring knowledge is viable at all in the securities context, it is a rule which permits plaintiffs to plead a "strong inference" of scienter in satisfaction of the PSLRA.  Rule 23.1 requirements are not concerned with merely a strong inference of scienter, as the rule is not one of technical pleading requirements, but rather, concerns the substantive rights of the board of directors to direct the affairs of the Company. *Heit v. Baird*, 567 F.2d 1157, 1162 n.6 (1st Cir. 1977).  Accordingly, the law of Delaware under Rule 23.1 -- which this Court must follow[3] -- simply "does not permit the conclusion that a defendant knew of certain facts involving an organization merely because the defendant had a position of responsibility within that organization."  *Metro Communications Corp. BVI v. Advanced MobileComm Technologies, Inc.*, 854 A.2d 121 (Del. Ch. 2004) (noting the same rule in the securities context).  Rather, the derivative Plaintiffs must plead specific particularized facts demonstrating both that a majority of the directors had knowledge of the clinical hold, and how, on the basis of that knowledge, the directors face a substantial likelihood of personal liability for breach of fiduciary duty and are thus incapacitated from considering demand.[4]

    Delaware case law is dispositive.  In *Rattner v. Bidzos,* No. Civ. A. 19700 2003 WL 22284323 (Del. Ch. Sept. 30, 2003), the derivative plaintiffs alleged that the company's board failed in its oversight of accounting, resulting in disclosure of misleading financial statements. The plaintiffs named directors who were members of the company's audit committee as defendants.  In a sense, the company's accounting is the "core business" of the audit committee, and if Delaware law recognized an exception to pleading knowledge when "core business" is concerned, the complaint in *Rattner* would have easily passed muster with respect to knowledge

---

[3]  *See Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 98-99 (1991) (state law of incorporation governs substantive demand requirement).

[4]  Indeed, even in *McSparran v. Larson*, No. 04 C 0041, 04 C 4778 2006 WL 250698 (N.D. Ill. Jan. 27, 2006), relied upon by this Court, the defendants' knowledge was purportedly pled because the complaint "detail[ed] company policy that should have brought CEC's false accounting to the attention of the defendants, quotes from news articles, court filings, and analyst reports that discussed allegations of false accounting, and names two defendants who supposedly received comparisons of accurate information versus the inaccurate information that was provided to the public and the federal government."  *Id.* at * 5.

of these audit committee members.  To the contrary, the court in *Rattner* dismissed the complaint in the absence of particularized facts concerning the means by which the directors would have acquired such knowledge:  "[C]onspicuously absent from any of the Amended Complaint's allegations are particularized facts regarding the Company's internal financial controls during the Relevant Period, notably the actions and practices of VeriSign's audit committee."  *Id.* at * 12. The court continued:

> Rattner never notes the accounting procedures employed by the Company or the Board's involvement in VeriSign's financial recording and reporting systems.  The only information one can snare from the Amended Complaint is that there exists a body of rules regarding the accuracy of recording and reporting financial information which may have been violated.  Equally as important, I am unable, from the face of the Amended Complaint, to determine what role, if any, the Board or its members played in the internal processes of collecting and disseminating financial information.  The most I can safely admit knowledge of is that Compton, Chenevich and Kriens were members of the Audit Committee during the Relevant Period and, thus, that the Company had an Audit Committee.

*Id.* at *13.

Indeed, even the "exception" relied upon by the Court, derived from securities cases, imposes similar requirements for drawing conclusions regarding knowledge, requiring particularized allegations of the internal processes at the company that would have led to the directors acquiring knowledge of any given fact.  In *In re Bio-Technology Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 584 (D.N.J. 2005), for instance, the court ruled that an inference of scienter concerning matters of "core business" still requires particularized facts concerning the internal mechanisms that would have caused directors to acquire such knowledge:

> [A]t least one court in this District has held that "knowledge may be imputed to individual defendants when the disclosures involve the company's core business.' . . . *imputation of scienter should be sharply limited to instances where the Complaint alleges that "a specific corporate policy . . . required a particular officer to be responsible for certain information.'"*  Where the complaint fails to allege why a defendant's position necessarily entails a particular duty or why a specific corporate policy requires the defendant to have responsibility for

6

particular press releases or SEC filings, allegations concerning group-published information should be rejected for failing to plead scienter with particularity.

*Id.* at 620-21 (emphasis added).

Here, not a single fact is pled concerning the outside directors' roles with respect to the development of clinical trials and correspondence with the FDA, nor about the outside directors' roles in disseminating information regarding the same. [5]

In the same vein, the Delaware Supreme Court has demonstrated the requisite level of particularized facts necessary in the demand futility context. In *White v. Panic,* 783 A.2d 543, 552-553 (Del. 2001) a newsmagazine reported that the board of a pharmaceuticals firm settled numerous sexual harassment claims arising out of the conduct of the firm's founder and chief executive officer, Panic, and that the corporation loaned him an enormous sum to satisfy a paternity obligation. With respect to knowledge of the board concerning Panic's alleged misconduct, the Delaware Supreme Court held as follows:

> To support the allegation that the defendant directors were aware that Panic had actually engaged in the alleged misconduct, the complaint quotes ICN director Norman Barker as saying: "The problem with Panic is he can't keep it in his pants." Although Barker's comment implies some level of knowledge of Panic's sexual activity, the comment cannot by itself support a reasonable inference that Barker or any of the other directors were aware that Panic had, in fact, harassed female ICN employees or engaged in other conduct for which ICN could be held liable.

---

[5]  The Plaintiffs cannot complain that the standard of Rule 23.1 is too burdensome by requiring particularized facts. Delaware courts consistently have admonished derivative plaintiffs to gather information to confront the particularized pleading requirements of Rule 23.1 through the books and records provisions of Del. Code Ann. tit. 8, § 220 (as the Plaintiffs have failed to attempt here) and take no pity on plaintiffs who have failed to heed that advice. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1056-57 (Del. Supr. 2004) ("Both this Court and the Court of Chancery have continually advised plaintiffs who seek to plead facts establishing demand futility that the plaintiffs might successfully have used a Section 220 books and records inspection to uncover such facts."); *Rattner*, 2003 WL 22284323, *14 (Delaware courts "have consistently advised would-be derivative plaintiffs to utilize the 'tools at hand' before filing complaints."); *Guttman*, 823 A.2d at 499 (Del. Ch. 2003) (same). Here too the Plaintiffs have not bothered to "proceed deliberately and to use the books and records device to gather the materials necessary to prepare a solid complaint." *See Guttman*, 823 A.2d at 499. Plaintiffs' failure to assert particularized facts is an "ultimately fatal defect" to the Plaintiff's entire Complaint. *See id*. at 504; *Rattner*, 2003 WL 22284323 at *14.

*Id*. at 548. [6]

White v. Panic illustrates plainly that board position alone cannot substitute for particularized facts demonstrating knowledge, even with respect to matters that clearly "must have been" within the board's knowledge.  In *White v. Panic*, *the board* allegedly settled sexual harassment cases against Panic, commented on Panic's behavior, and authorized loans of near $3.5 million to settle the cases.  While not a part of the company's "core business," the matter of Panic's alleged sexual misconduct was unquestionably pled as the subject of board deliberation. Yet those facts could not support even a "reasonable inference" of knowledge about the misconduct itself.  Rather, particularized facts were required.[7]

Even if the directors here somehow could be saddled with knowledge of the clinical hold based upon mere inferences drawn from their director roles -- and they may not -- such an inference is patently insufficient to plead demand futility.  Mere knowledge that FDA placed a clinical trial on clinical hold does not amount to a breach of fiduciary duty for failure to disclose the clinical hold.  The Plaintiffs' claim here, if a claim at all, must be for breach of a fiduciary duty of disclosure based on *Malone v. Brincat,* 722 A.2d 5 (Del. 1998) -- Delaware does not

---

[6]  That a derivative plaintiff may not simply infer knowledge of improprieties by a director is a concept wholly endorsed by Massachusetts federal courts sitting in diversity and Massachusetts state courts, applying Delaware law.  In *Caviness v. Evans*, 229 F.R.D. 354 (D. Mass. 2005), for instance,  Judge Tauro rejected a demand futility argument concerning the imputation of knowledge to an audit committee member of accounting improprieties based simply on the member's audit committee membership.  *Id*. at 359-60.  In addition to *Rattner*, the Court relied on *In re Xcel Energy, Inc.*, 222 F.R.D. 603, 607 (D. Minn. 2004) (looking to Delaware law for guidance and holding that generalized statements that Audit Committee members "knew or should have known" of false statements did "not constitute facts pleaded with particularity") and *In re Sonus Networks, Inc. Derivative Litig.*, No. 040753, 2004 WL 2341395, at *1, *4 (Mass. Super. Ct. Sept. 27, 2004) (finding that "generalized allegations reflecting poor supervision over financial statements" by members of the Audit Committee and other directors did not excuse pre-suit demand).

[7]  Similarly, in *In re Baxter International Shareholders Litigation*, 654 A.2d 1268 (Del Ch. 1995), the court dismissed a derivative complaint alleging that the board breached its duties when employees of the company had essentially defrauded a significant customer, the Veterans Administration ("VA").  The plaintiffs alleged that the VA had communicated the wrongdoing to the company, that the company responded in writing saying that the acts would cease, but that the wrongdoing continued thereafter.  The court dismissed that case holding that "[a]ssuming, further, that the improper practice continued, without an allegation that wrongdoing was admitted or proven, the complaint does not plead with particularity what obvious danger signs were ignored or what additional measures the directors should have taken."

recognize a claim based simply on violation of the securities laws. *Id.* *Malone* permits a claim for breach of the duty of disclosure where directors "*knowingly disseminate false information that results in corporate injury . . .*" *Id.* at 9 (emphasis added). Accordingly, "knowledge" is merely the first element of a *Malone* claim. *See Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 130 (Del. Ch. 2004) (holding "[b]ecause those defendants did not act with *scienter* during that period, the fiduciary duty claims against them under *Malone* for their disclosure-related conduct before they learned of the bribery will be dismissed").[8]

But the Complaint must go much farther than merely alleging knowledge of information on the part of the directors. Under *Malone,* the Plaintiffs must allege that they "knowingly disseminated false information." There is not a single fact alleged demonstrating that the outside directors knowingly disseminated false information. While the Plaintiffs may disagree with the Company's conclusion, a mere disagreement about disclosure obligations -- even if the Company was wrong -- is a far cry from particularized allegations showing that the board *knowingly disseminated false information* or was *grossly negligent* in carrying out its responsibilities.[9]

---

[8] *Rattner* is again, particularly instructive as to the level of detail required. The court held that the directors' alleged knowledge of corporate wrongdoing could not be based upon their mere status as directors or their signing SEC filings. *See id.* (finding lack of particularized allegations where "[a]bsent from the allegations of the Complaint are the *precise roles* that the Director Defendants played at the Company and the information that would have come to their attention in those roles") (citation, internal quotation marks and modifications omitted). Rather, the plaintiff must "allege with particularity what information the directors know and *how they acquired such knowledge.*" *Rattner* at *10, n.53 (emphasis added). That information appears *nowhere* in the Complaint, and that deficiency alone requires dismissal under Rule 23.1.

[9] Judge Van Gestel's decision in *South Shore Gastroninterology v. Selden*, No. 032630BLS 2004 WL 1431059 (Mass. Super. May 7, 2004), applying Delaware law to dismiss a set of allegations that is remarkably similar to those alleged here, is right on point. *South Shore* involved a derivative complaint alleging that the company, TKT, received a "complete review letter" from the FDA regarding TKT's Biologics Licensing Application to market Replagal. The FDA letter said: "Our review finds that the information and data submitted are inadequate for final approval action at this time based on the deficiencies outlined below" followed by 52 numbered paragraphs setting forth deficiencies, detailed over 15 pages of single-spaced type. The plaintiff alleged that TKT expressed optimism about the prospects for approval of Replagal in various public statements, including press releases, SEC filings, interviews, conference calls, and investor and analyst meetings even though TKT allegedly knew that the drug's prospects for approval were poor. Judge Van Gestel dismissed the complaint, holding that the "allegations of what particular members of the board did, or did not do, fail to meet the 'heightened

### B.    The "Core Business" Doctrine Has No Applicability To Outside Directors

This Court's decision to sustain the Complaint based on a mere "inference" that the outside directors were aware of the clinical hold, and apparently must have known that it should have been disclosed and chose not to, solely based on a conclusion that the matter involved the Company's "core business," cannot be reconciled with Delaware law concerning the role of directors, and in particular, the outside directors forming a majority of the board here.  The Court in *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) instructively commented on the role of directors, with large implications for the lack of basis in inferring knowledge for outside directors based on mere position:

> ***Most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention*** [*i.e.* reviewing correspondence with FDA].  ***Legally, the board itself will be required only to authorize the most significant corporate acts or transactions: mergers, changes in capital structure, fundamental changes in business, appointment and compensation of the CEO, etc.***

*Id.* at 968 (emphasis added).

The *Caremark* court's observation is consistent with Delaware statutes concerning the role of directors and officers:  "The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors . . ."  8 Del. C. § 141(a).   As construed by the Delaware courts charged with its construction, "[t]he term 'management,' as used in this context, 'relate[s] to supervision, direction and control.  [T]he details of the business [may be] delegated to inferior officers, agents and employees."  *Canal Capital Corp. v. French*, C.A. No. 11764, slip op. at 6 (Del. Ch. July 2, 1992) (quoting *Cahall v. Lofland*, 114 A. 224, 229 (Del. Ch. 1921), aff'd 118 A. 1 (Del. 1922)).  "*The realities of modern corporate life are such that directors cannot be expected to manage the day-to-day activities of a*

---

pleading standard of particularity.'"  *Id.* at *2.  The court went on to note that, "[i]f the test was whether 'there is a *reasonable inference* that the business judgment rule is not applicable,' as applied below in *Aronson* by the Vice Chancellor, this Court may well have reached a different conclusion.  But the Vice Chancellor was specifically overruled on that issue by the Delaware Supreme Court."  *Id.*, n. 3.  As in South Shore, the Plaintiffs have entirely failed to meet the heightened pleading requirements of Rule 23.1, failing to allege with any particularity whatsoever precisely what it is that the director defendants did or failed to do that constituted a breach of fiduciary duty.  There is simply no allegation that any director made any decision or took any action in bad faith about disclosure obligations.

*company.*"  *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 943 (Del. 1985) (emphasis added). Indeed, given that reality, the directors of a Delaware corporation are entitled, by statute, to rely upon information provided by management, among others:

> (e) *A member of the board of directors*, or a member of any committee designated by the board of directors, *shall, in the performance of such member's duties, be fully protected in relying in good faith upon the records of the corporation and upon such information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees*, or committees of the board of directors, *or by any other person as to matters the member reasonably believes are within such other person's professional or expert competence* and who has been selected with reasonable care by or on behalf of the corporation.

8 Del. C. § 141 (emphasis added).

Accordingly, in the ordinary course, a board of directors does not micromanage the day-to-day affairs of the company; it relies on management for information concerning the business of the company.  With these principles firmly established in Delaware law, it is difficult to see how knowledge of particular details concerning the business of the Company can be imputed to the outside directors, even if the details touched upon the Company's "core business."  Certainly no such imputation may arise to satisfy pleading a substantial likelihood of liability for "knowing dissemination of false information" or gross negligence in permitting the same to occur.  How, for instance, can the Court reasonably conclude that the outside directors here ever saw the FDA's correspondence?  Such micromanagement would be highly unusual for a board of directors.  Rather, a board would typically receive reports of information.  Perhaps that is why Delaware law requires particularized facts demonstrating what information the board received, how it received the information, and what it did with the information to sustain demand futility. *See Rattner*.  2003 WL 22284323 at *12-13.  Without a single specific allegation, this Court cannot conclude for Rule 23.1 purposes that the board committed fraud, failed to exercise appropriate business judgment, or otherwise acted improperly.

Indeed, even in the cases relied upon by this Court in the securities context fail to support application of the core business doctrine here.  The Order cites *In re Keyspan Corp. Securities*

11

*Litigation* and *In re Century Business Services Securities Litigation,* decisions which themselves held that the "core business" exception *was not applicable*.  With respect to the cases distinguished by *Keyspan* and *Century* that did apply the "core business" doctrine, the courts applied it with respect to *management -- i.e.* officers and directors discharging managerial responsibilities -- not mere outside directors who would have no management reason to know about the details regarding core business.  *See In re Ancor Communications, Inc., Sec. Litig.*, 22 F. Supp. 2d 999, 1004 (D. Minn. 1998) (two of the three defendants charged with knowledge were officers, not outside directors, and the third defendant was the company's founder and chairman of the board);[10] *Epstein v. Itron, Inc*., 993 F. Supp. 1314 (E.D. Wash. 1998) (applying doctrine to "the company and its key officer"); *Angres v. Smallworldwide PLC*, 94 F. Supp. 2d 1167, 1175-76 (D. Colo. 2000) (held scienter pled with respect to high-level officers imputing knowledge that would be gained given their managerial positions); *In re Aetna Securities Litigation*, 34 F. Supp. 2d 935, 953-54 (E.D. Pa. 1999) (officer defendants who occupied the top corporate positions would have been aware of merger problems).

C.    **A Clinical Hold On A Single Proposed Clinical Trial Is Not Part Of The Company's "Core Business."**

In addition to this Court's decision standing on an incorrect legal premise -- *i.e.* that for demand futility purposes, facts concerning a company's "core business" are effectively imputed to outside directors -- the decision rests on an incorrect and unpled factual *presumption* -- that the clinical hold was somehow a matter comprising Biopure's "core business."  While it is true that Hemopure is the Company's primary product, there is no basis pled, nor any that may be presumed, for assuming that the clinical hold on a single proposed protocol for the testing of Hemopure in-hospital on trauma patients was anything akin to the Company's "core business." Indeed, as alleged in the Complaint, Biopure has reported that "in-hospital trauma was not planned as an indication for commercial development and the company spent an insignificant

---

[10]  *See In re Splash Technology Holdings, Inc. Sec. Litig.*, No. C 99-00109 (SBA), 2000 WL 1727405, at *10 (N.D. Cal. Sept. 20, 2000) ("Ancor…did not have the occasion to determine whether an outside, non-chairman director…constitute[s] [a] 'corporate insider'.")

amount on the proposed trial." Compl. ¶19. No fact is pled to show that the Company devoted any significant time, money, or attention to the in-hospital trauma trial.

Moreover, a clinical hold is no more than a part of a scientific dialogue with the FDA about the clinical trial concerning data, study design, dosage and other factors relevant to the safety of the study. No facts are pled in the Complaint showing that the process of developing a clinical trial, submitting it to FDA and then engaging in a scientific dialogue about the clinical trial is anything other than a component of the day-to-day affairs of the Company and *not* part of the major decision-making that is conducted by a board of directors.

## II.    DETERMINING WHETHER THE OUTSIDE DIRECTORS WERE "INSIDE" FOR RULE 23.1 PURPOSES MUST BE MADE *NOW* BASED ON THE COMPLAINT -- NO DISCOVERY CAN CORRECT THE DEFICIENCIES

This Court appears to have made its ruling based, in part, on the oft-heard notion in decisions denying motions to dismiss that "these are issues of fact that require further development." *See* Order at 4. That principle has no application here, as a matter of black-letter law. Governing Delaware case law (as well as the law of the First Circuit) *requires* that demand futility be established *in the Complaint*.[11] If that were not the case, the very purpose of Rule 23.1, "to require resort to the body legally charged with conduct of the company's affairs before licensing suit in the company's name by persons not so charged," *Heit v. Baird*, 567 F.2d 1157, 1162 n.6 (1st Cir. 1977)), would be defeated. That principle is bedrock in the First Circuit's

---

[11] "In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility." *Beam ex rel. Martha Stewart Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1056 (Del. 2004) (citing *Rales v. Blasband*, 634 A.2d 927, 934 n.10 (Del. 1993) ("[D]erivative plaintiffs . . . are not entitled to discovery to assist their compliance with Rule 23.1"); *Levine v. Smith*, 591 A.2d 194, 209 (Del. 1991) (refusing to extend the availability of limited discovery to either demand refused cases or demand excused cases)). Accordingly, Delaware courts routinely bar plaintiffs' attempts to establish demand futility through discovery. *See, e.g.*, *Scattered Corp. v. Chicago Stock Exchange, Inc.*, 701 A.2d 70, 77 (Del. 1997) (affirming stay of discovery pending motion to dismiss: "A plaintiff's standing to sue in a derivative suit, whether based on demand-refused or demand-excused [i.e. futility], must be determined on the basis of the well-pleaded allegations of the complaint" and accordingly "plaintiffs in a derivative suit are not entitled to discovery to assist in their compliance with the particularized pleading requirement of Rule 23.1"); *Stotland v. GAF Corp.*, No. 6876, 1983 WL 21371, at * 7 (Del. Ch. Sept. 1, 1983) (citing *In Re Kauffman Mut. Fund Actions*, 479 F.2d 257 (1st Cir. 1973)) (granting motion to stay discovery pending a motion to dismiss: "[p]laintiffs are not entitled to take discovery in order to prove allegations of futility").

13

Rule 23.1 jurisprudence:  "The stockholder may not plead in general terms, hoping that, *by discovery or otherwise*, he can later establish a case" that demand is futile.  *Gonzales Turul v. Rogatol Distrib., Inc.*, 951 F.2d 1, 3 (1st Cir. 1991) (emphasis added).  "If the requirement could be met otherwise, it would be meaningless."  *In re Kaufmann Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973) (citation omitted).

Indeed, the First Circuit deems strict application of Rule 23.1 to be so critical that in *Gonzales Turul v. Rogatol Distrib., Inc.*, 951 F.2d 1 (1st Cir. 1991) the court reversed and dismissed a shareholder derivative action that was tried to verdict (in plaintiff's favor), solely because the complaint failed to allege either demand or futility of demand.  The First Circuit reasoned, in logic fully applicable here, that "*[f]utility of demand will not be decided with the benefit of hindsight.*"  *Id.* at 3 (emphasis added).  Yet deciding demand futility with the benefit of hindsight is precisely what this Court's decision appears to condone.  Because the demand futility inquiry *must* be made based solely on the particularized facts in the Complaint, this Court's decision that further factual development will be necessary to determine whether the outside directors were actually "inside" is plain error.

## III.    THE LAW OF DELAWARE DICTATES THAT *RALES* APPLIES -- *MCSPARRAN* DOES NOT EVEN ADDRESS THE ISSUE

This Court applies *McSparran v. Larson*, No. 04 C 0041, 04 C 4778 2006 WL 250698 (N.D. Ill. Jan. 27, 2006) a Northern District of Illinois decision, for the proposition that the two-part *Aronson* test may be applied instead of the *Rales* test, even in the absence of a challenge to a board decision.

*McSparran did not even address the issue,* but rather applied *Aronson* without considering which test is appropriate.[12]

---

[12]    *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2003) is a decision which did hold that *Aronson* may be applied without a board decision when there are facts demonstrating that the board had long-term knowledge of continued violations of the law, and chose not to act.  Even if *Abbott* were deemed consistent with Delaware law, the reasoning of *Abbott* cannot apply to this case, for the same reasons that this Court and others have distinguished it.  *Caviness v. Evans*, 229 F.R.D. 354, 360 (D. Mass. 2005), for instance, refused to apply *Abbott* because nothing similar to the *Abbott*-board's direct knowledge of violations of the law for six years was pled.  Similarly, *Fink v. Weill*,

In any event, this Court's decision cannot be reconciled with governing Delaware law. Indeed, both District of Massachusetts and Delaware cases hold, again and again, that *Rales* applies where no board decision is challenged.  *See, e.g., Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 72 (D. Mass. 2004) ("*Rales* applies where plaintiff . . .  challenges decisions not made by the board as a whole").  *Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. May 2, 1995), involving claims of a board allegedly permitting misleading disclosures, conclusively dictates the application of *Rales*:

> The complaint also alleges that certain board members signed misleading statements on behalf of the corporation, and that all of the defendants conspired with Landa to misrepresent the value of the corporation's stock.  However, *plaintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings*.  Therefore, plaintiff must satisfy the one step test announced in *Rales* to determine that he was excused from making a demand.

*Id.* at 1354 (citation omitted; emphasis added).[13]

## IV.    THE MERE "POTENTIAL FOR PERSONAL LIABILITY" RELIED UPON BY THIS COURT IS REJECTED BY A WALL OF DELAWARE AUTHORITY

Apparently based on an application of *McSparran* instead of Delaware law, this Court then incorrectly applied Delaware's *Aronson* test, holding that the Defendants, by allegedly concealing knowledge of the clinical hold, "subjected themselves to *potential personal liability*

---

2005 WL 2298224, *3 n.6 (S.D.N.Y. Sept. 19, 2005) refused to apply *Abbott* for the same reasons as did the District of Massachusetts in *Caviness*, and went on further to state that, even if *Abbott* applied, the complaint would be dismissed because the plaintiffs failed to plead with sufficient particularity, just as the Plaintiffs here fail to plead with the requisite degree of particularity.  *In re Mutual Funds Inv. Litigation*, 384 F. Supp. 2d 873 (D. Md. 2005) also refused to apply *Abbott* because the plaintiffs had not pled particularized facts concerning the board's knowledge -- just as the Plaintiffs here allege no facts concerning knowledge for a majority of the Board.

[13]    Moreover, even if *Aronson* somehow applied, the Delaware courts have recognized that "the differences between the *Rales* and the *Aronson* tests in the circumstances of this case are only subtly different" in application." *Guttman*, 833 A.2d at 500.  As recognized in *Guttman*, where a majority of the board is sued, the "singular inquiry [of *Rales*] makes germane all of the concerns relevant to both the first and second prongs of *Aronson*." *Id.* at 501.  This is because prong two of *Aronson* looks into, in essence, whether there is a "substantial basis for the suit," *id.*, analytically the same creature as the *Rales* analysis concerning interestedness arising from potential liability -- whether there is a substantial likelihood the directors face personal liability.  Accordingly, in this case, the application of *Aronson* would nonetheless begin and end with the same inquiry as *Rales*.

15

and removed the protective cloak of the business judgment rule." Order at 5.

There is a wall of authority holding unequivocally that the "mere threat of personal liability" is patently insufficient. Indeed, *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) itself holds that "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors . . . ." Instead, the Plaintiffs must satisfy a far more difficult standard -- a "substantial likelihood" of personal liability. *See Guttman,* 823 A.2d at 500-01; *Rattner*, 2003 WL 22284323, at *12; *Seminaris,* 662 A.2d at 1354.; *In re Baxter Int'l., Inc. Shareholders Litig.*, Del. Ch., 654 A.2d 1268, 1269 (1995) (quoting *Rales v. Blasband*, 634 A.2d at 936) (directors who are sued for failure to oversee subordinates have a disabling interest for pre-suit demand purposes when "the potential for liability is not a mere threat but instead may rise to a substantial likelihood"); *David B. Shaev Profit Sharing Account v. Armstrong*, No. Civ.A. 1449-N  2006 WL 391931 *4 (Del. Ch. Feb. 13, 2006) (requiring particular facts demonstrating "whether a majority of directors face a substantial likelihood of personal liability"); *Benerofe v. Cha*, NO. 14614 1996 WL 535405 *6 (Del. Ch. Sept. 12, 1996) (may excuse demand where "potential for liability is not merely a threat, but instead may rise to a substantial likelihood").[14]

It was plain error to rule that "potential personal liability" satisfies either *Rales* or *Aronson*. Moreover, plaintiffs have *not* pleaded facts to show a "substantial likelihood" of personal liability by at least the five outside directors. The Complaint must be dismissed.

## V.    THE SUPREME COURT PRECLUDES CONSIDERATION OF CUT-AND-PASTE ALLEGATIONS FROM THE SEC'S COMPLAINT

To the extent that this Court's decision relies in any measure upon allegations cut and pasted from the SEC's complaint, it conflicts with reasoning in United States Supreme Court and First Circuit precedent.

---

[14]    The *Rales* decision itself is useful to determining what constitutes a "substantial likelihood" of personal liability.  In *Rales*, another court had already effectively concluded that the defendants were liable.  "Such determination indicates that the potential for liability is not 'a mere threat' but instead may rise to 'a substantial likelihood.'"  634 A.2d at 936.  There is nothing pled here that approaches the necessary showing made in *Rales*.

16

In *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 125 (1989), the Court held that an attorney signing a pleading represents that not only is the filed paper factually and legally responsible, but that he personally applied his own judgment. The Court stated, "[t]he signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible." *Id.* at 125. If the Supreme Court will not allow another member of the same firm to conduct a reasonable inquiry for purposes of submitting a pleading that satisfies the Federal Rules of Civil Procedure, how can Plaintiffs here rely upon the investigation conducted by an attorney that is not even affiliated with the same firm, in this case the SEC?

This Court reasoned, however, that *Pavelic* and other decisions cited in Defendants' opposition to the motion to amend were inapposite, because the Plaintiffs here "conducted their own investigation and filed a complaint" prior to incorporating the SEC's later-filed allegations. Order at 2. Respectfully, there is no indication in Rule 11 nor in *Pavelic* to the effect that copy-cat allegations are permissible to supplement a previous pleading. The fact of the matter remains that these Plaintiffs did not independently investigate the SEC's allegations, and both the United States Supreme Court and the Congress (through Rule 11) have determined that the allegations are therefore not viable. *See also Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31, 36 (1st Cir. 2005) ("plaintiffs cannot sidestep their neglect to offer evidence in this case by asking the court to rule on the basis of the record in another case.").

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court reconsider its Order or certify the Order for interlocutory appeal.

17

Respectfully submitted,

**THOMAS A. MOORE, CARL W. RAUSCH, DAVID N. JUDELSON, CHARLES A. SANDERS, M.D., C. EVERETT KOOP, M.D., DANIEL P. HARRINGTON, J. RICHARD CROUT, M.D, JANE KOBER, HOWARD RICHMAN AND BIOPURE CORPORATION**

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Donald J. Savery, BBO #564975
Michael D. Blanchard, BBO #636860
Lawrence T. Stanley, Jr. BBO # 657381
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated: April 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on April 13, 2006.

/s/Michael D Blanchard
Michael D. Blanchard

18