1

Case 1:04-cv-10177-NG    Document 49-2    Filed 04/13/2006    Page 1 of 10

Westlaw.

Not Reported in A.2d                                                                                              Page 1
Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)
**(Cite as: 1996 WL 535405 (Del.Ch.))**

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.
Mitchell I. BENEROFE and Ronald J. Oleck, Plaintiffs,
v.
Jung Woong CHA, Chang Kim, Donald Winstead, and Inorganic Coatings, Inc., Defendants.
**C.A. No. 14614.**

Submitted: July 30, 1996.
Decided: Sept. 12, 1996.

Norman M. Monhait, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, (Anthony L. Tersigni, and Paul K. Feldman, of Meyers Tersigni Feldman & Gray, of counsel), New York City, for Plaintiffs.

Judith Nichols Renzulli, and Robert J. Valihura, Jr., of Duane, Morris & Heckscher, Wilmington, for Defendants Jung Woong Cha, Chang Kim and Donald Winstead.

*MEMORANDUM OPINION*

CHANDLER, Vice Chancellor.

*1 Plaintiffs Mitchell I. Benerofe ("Benerofe") and Ronald J. Oleck ("Oleck" and collectively with Benerofe "Plaintiffs") own common shares of defendant Inorganic Coatings, Inc. ("ICI"), a Delaware corporation. On October 12, 1995, Plaintiffs brought this action individually on behalf of themselves, derivatively for the benefit of ICI, and as representatives of class A and B shareholders, against the current directors of ICI, Jung Woong Cha ("Cha"), Chang Kim ("Kim"), and Donald Winstead ("Winstead," and collectively with Kim and Cha "Defendants"). Plaintiffs allege that Defendants are liable for actions taken in connection with ICI's distribution arrangements.

Defendants moved to dismiss the complaint on the grounds that (1) Plaintiffs failed to make a pre-suit demand on ICI's board of directors as required by Chancery Court Rule 23.1, and (2) the complaint fails to state a claim upon which relief can be granted. In addition, Defendants moved to dismiss this case pursuant to Chancery Court Rules 12(b)(2), (4), and (5) for lack of personal jurisdiction over Defendants as well as insufficiency of process and service of process.

This is my decision on the motions to dismiss. Because the second-filed motion contains a jurisdictional question, I will address it first.

I. BACKGROUND AND ALLEGATIONS
Plaintiffs' complaint, which the Court will accept as true for purposes of this motion, provides the following factual background and allegations. While ICI is a Delaware corporation, it maintains its principal office in Malvern, Pennsylvania. ICI processes and sells zinc silicate coatings and owns a license to manufacture a coating which protects steel against corrosion for decades.

Since its formation in 1982, ICI has operated at a loss. For example, for the eight month period ending August 31, 1994, ICI incurred a net loss of $185,780, as well as a negative cash flow from operating activities of $144,420.

Before 1994, ICI sold its products primarily in the United States, Europe and Canada. To boost its financial position, in 1992, ICI hired a consulting firm to seek either a Korean distributor or a Korean joint venture partner for ICI. As a result of the consultant's solicitation in late 1994, ICI entered into a Stock Purchase Agreement ("Purchase

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Agreement") with Kun Sul Painting Industries Co., Ltd. ("KSP"), a South Korean corporation engaged in painting applications, paint sales, and coatings engineering in the Republic of Korea. ICI anticipated that this arrangement would provide ICI with additional financing to enable ICI to settle its overdue obligations and fund continuing operations.

Before effectuating the terms of the Purchase Agreement, ICI had issued and outstanding 5,267,025 shares of Class A common stock and 516,200 shares of Class B common stock. The holders of Class A and Class B common stock are entitled to one vote per share.

The Purchase Agreement called for ICI to sell KSP 8.5 million shares of newly authorized Class C common stock for $2.6 million and to provide the Class C common stockholder one vote per share. Since the Purchase Agreement gave KSP control over 59% of the issued and outstanding shares of all classes of ICI stock, KSP gained voting control of ICI.

*2 In connection with the Purchase Agreement, ICI and KSP entered into a stockholders' agreement ("Shareholders' Agreement"). This agreement designated as third-party beneficiaries the holders of ICI's Class A and Class B common stock. [FN1] The Shareholders' Agreement provided the third-party beneficiaries certain contractual rights and benefits, including either the opportunity to sell their stock in the public market if ICI established such a market, or the option to put their shares to ICI in two stages. Each of these rights are contingent upon, or more favorable if, ICI's revenues reach certain levels in the future.

> FN1. The Shareholders' Agreement also designated as beneficiaries holders of Class C common stock issued as part of the finder's fee paid incident to the Purchase Agreement.

In order to pay the purchase price for shares put to the company, ICI agreed to establish a collateral account into which it would place 50% of its net profits. Via the Shareholders' Agreement, ICI gave the third-party beneficiaries a security interest in the account. ICI agreed that if it fails to fund the Collateral Account or uses the funds improperly, then the beneficiaries will receive a security interest in all of ICI's assets. Moreover, KSP agreed to guarantee the put payment. However, if ICI's annual gross revenues fall below a certain level, then KSP's guarantee becomes void.

Notably, the Purchase Agreement provides KSP the right to designate a majority of ICI's board of directors. However, if KSP fails to honor its guarantee of the put payments, this failure activates the right of holders of Class A and Class B stock, instead of KSP, to elect a majority of the board.

On or about November 29, 1994, ICI's shareholders approved the Purchase Agreement. Then in December of 1994, KSP designated its nominees, Cha and Kim, to the ICI board pursuant to the Shareholders' Agreement. In addition to serving as members of ICI's board, Cha is KSP's president and Kim is ICI's president. Plaintiffs allege that Kim serves in his position at KSP's sufferance.

Thus, the current board consists of Kim and Cha as well as a third individual, Winstead. Winstead accepted a position on the ICI board of directors prior to KSP's installation of Kim and Cha.

In their complaint, Plaintiffs allege that Cha and Kim have caused, with Winstead's acquiescence, ICI to sell most of its products to KSP for approximately $7 per gallon while KSP resells these products in Korea for prices ranging from $23-$28 per gallon. Moreover, Plaintiffs assert that ICI previously sold these products to other distributors for approximately $17 per gallon. Thus, derivatively on behalf of ICI, Plaintiffs contend that the current distribution arrangement is depriving ICI of revenue. Because, Plaintiffs assert, ICI could sell its products for higher prices to third-party purchasers, Defendants are wasting ICI's assets. In an additional derivative claim, Plaintiffs allege that KSP is selling ICI's products for a large mark-up, taking this opportunity for itself and depriving ICI of its opportunity to sell its products

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                             Page 3
Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)
**(Cite as: 1996 WL 535405 (Del.Ch.))**

in Korea. By taking these actions, Plaintiffs contend, Defendants have breached their fiduciary duties of due care, loyalty and good faith to ICI and its shareholders.

*3 Plaintiffs did not make a demand on ICI's board to investigate these matters prior to asserting these derivative claims. Plaintiffs allege that making a demand on ICI's board with respect to these claims would be futile because:
  A. waste of ICI's assets cannot constitute good faith business judgment; and
  B. a majority of ICI's directors are designees of KSP, the principal beneficiary of the wrongs alleged, are officers and employees of either KSP or ICI and they therefore cannot exercise disinterested and independent judgment on behalf of ICI.
Amended Complaint ¶ 18.

In their class claim, Plaintiffs allege that because the third-party benefits provided by the Shareholders' Agreement depend on ICI's achieving certain revenue levels, the distribution arrangement is depriving Class A and Class B common stockholders of those potential benefits. Importantly, Plaintiffs do not allege that the current board negotiated this distribution arrangement or that a contract governs this arrangement. Rather, Plaintiffs simply allege that Defendants' actions, or refusal to act, have injured the class.

In addition to injunctive relief, Plaintiffs seek to recover damages sustained as a result of Defendants' breaches. Plaintiffs also seek a judgment declaring void KSP's right under the Shareholders' Agreement to elect a majority of ICI's board of directors and directing a new election of ICI directors at which KSP will not be entitled to vote its Class C stock.

In January of 1995, Defendants submitted their brief in support of their motion to dismiss for failure to state a claim and failure to make demand on the board. To rebut certain contentions contained within the Defendants' brief, Plaintiffs amended two paragraphs of their complaint on February 23, 1996. First, Plaintiffs amended paragraph nine to include the allegation that KSP installed Kim, who serves as President of ICI at KSP's sufferance. Amended Complaint ¶ 9. Secondly, Plaintiffs added to the demand-futility paragraph an assertion that a majority of ICI's directors are KSP's designees, and the allegation that those directors are also "officers and employees of either KSP or ICI." Amended Complaint ¶ 18. Thus, Plaintiffs claim that a majority of the directors are interested and not independent, and that demand on the board is excused. Amended Complaint ¶ 18.

Purportedly in response to the amended complaint, on March 8, 1996, Defendants filed a second motion to dismiss pursuant to Court of Chancery Rule 12(b)(2), (4), and (5). Defendants allege that the Delaware Directors Consent Statute, 10 *Del.C.* § 3114, by which Plaintiffs served process, does not provide the Court with personal jurisdiction over Defendants in the present case.

II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTIONS
A. *Standard of Review*

Generally, a plaintiff does not have the burden to plead in its complaint facts establishing a court's personal jurisdiction over defendant. *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.,* Del.Ch., 593 A.2d 535, 538 (1991). However, if the defendant moves to dismiss the complaint for lack of personal jurisdiction, then plaintiff bears the burden of establishing personal jurisdiction over the defendants. *Newspan, Inc. v. Hearthstone Funding Corp.,* Del.Ch., C.A. No. 13304, Allen, C. (May 10, 1994), Mem.Op. at 3. When ruling on a 12(b)(2) motion, the Court must decide, as a matter of fact, whether the defendant had enough connection with the state so that it does not offend traditional notions of fair play and justice for the Court to exercise jurisdiction over a defendant. *Hart Holding Co. Inc.,* Del.Ch., 593 A.2d at 538 (1991). If facts alleged in the complaint are insufficient to establish personal jurisdiction over defendants, then the trial court may allow the plaintiff to complete discovery in order to establish jurisdiction over defendant as long as plaintiff's claim of personal jurisdiction is not frivolous. *Hart Holding Co. Inc.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 4
Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)
**(Cite as: 1996 WL 535405 (Del.Ch.))**

Del.Ch., 593 A.2d at 541. If necessary, the trial court may hold an evidentiary hearing or decide the matter based on affidavits. When deciding a jurisdictional motion based upon affidavits, the court requires that plaintiff establish only a prima facie case. *Hart Holding Co. Inc.,* Del.Ch., 593 A.2d at 538. If, however, the court decides the motion after hearing testimony, plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Id.* The trial court is vested with a certain discretion in shaping the procedure by which a motion under Rule 12(b)(2) is resolved. *Id.*

B. *Contentions of the Parties*

**\*4** Defendants note that each of Plaintiffs' claims is based upon their allegation that ICI is selling most of its production to KSP at unreasonably low prices. Defendants stress that Plaintiffs did not allege that Defendants negotiated, considered or approved the challenged distribution arrangement. Defendants suggest that Plaintiffs are intentionally vague on these factual matters because ICI entered the distribution arrangement prior to the current board taking office. Apparently, Defendants believe that a director cannot be liable for failing to breach or renegotiate a previously entered contract.

Plaintiffs served Defendants pursuant to 10 *Del.C.* § 3114 (the "Directors Consent Statute") which provides a basis for personal jurisdiction over non-resident Defendants only if Defendants have violated a duty that they owe as directors of a Delaware corporation. Defendants correctly cite to *Instituto Bancario Italiano v. Hunter Eng'g Co.,* Del.Supr., 449 A.2d 210 (1982), *Hana Ranch, Inc. v. Lent,* Del.Ch., 424 A.2d 28 (1980), and *Katz v. Halperin,* Del.Ch., C.A. 13811, Steele, V.C. (Feb. 5, 1996) for the proposition the Director Consent Statute does not confer jurisdiction on the Court if the non-resident director's acts are not performed in his capacity as a director of a Delaware corporation. Defendants assert that since they did not negotiate, consider, approve or ratify this contract, they may not be held accountable for selling the products for unreasonably low prices. Thus, Defendants conclude, Defendants are not subject to service of process pursuant to Section 3114, and the Court may not assert personal jurisdiction over them.

C. *Analysis*

Defendants misconceive Plaintiffs' allegations. Plaintiffs do not base their contentions on the approval, negotiation or ratification of a contract. Rather, Plaintiffs assert that Defendants currently are causing ICI to sell its products at an unnecessarily and wastefully low price. Plaintiffs' allegations are based upon the Defendants' current action, rather than on an action taken by the previous board. Thus, Plaintiffs' complaint implicates the Defendants' duties as directors of a Delaware corporation to not waste corporate assets. Defendants offer nothing to contradict Plaintiffs' specific, well-plead factual assertion as to the price KSP is paying for ICI's products or the price at which KSP is reselling its products. "A conscious decision to refrain from acting may [or may not be] ... a valid exercise of business judgment." *Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 813 (1984). Accordingly, Defendants are subject to service of process pursuant to Section 3114, and this Court may assert personal jurisdiction over them based upon the allegations in the complaint. Because Plaintiffs' complaint, itself, establishes a prima facie case that Defendants are subject to the jurisdiction of this Court, and Defendants do not dispute these specific allegations, I need not refer to any evidence outside of the pleadings.

**\*5** Defendants emphasize the parties' disagreement as to whether and which board authorized the distribution arrangement. However, the complaint does not contain any reference to such matters and Plaintiffs do not rely on an allegation that the current board authorized a contract to establish that Defendants are amenable to suit. Thus, this factual issue is irrelevant to the instant motion and, instead, goes to the merits of the case.

At this stage of the litigation, Plaintiffs have satisfied their burden to plead facts establishing the Defendants' amenability to suit sufficiently to survive Defendants' motion to dismiss for lack of personal jurisdiction. Plaintiffs have alleged that Defendants breached their duties owed as directors

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                     Page 5
Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)

**(Cite as: 1996 WL 535405 (Del.Ch.))**

of a Delaware corporation by selling the corporation's products at wastefully low prices. Accordingly, I deny Defendants' motion to dismiss for lack of personal jurisdiction.

### III. MOTION TO DISMISS FOR FAILURE TO MAKE A DEMAND ON THE BOARD

Plaintiffs' answering brief clarifies that their complaint intended to assert derivative claims on behalf of ICI for: (1) waste; (2) corporate opportunity; and (3) breach of duty of care, good faith and loyalty. Court of Chancery Rule 23.1 governs derivative actions by shareholders. Rule 23.1 requires shareholder-plaintiffs who assert derivative claims to seek redress from the board of directors before filing suit or to demonstrate that the Court should excuse them from demanding redress because making such a demand would have been futile. Ct.Ch. Rule 23.1.

Plaintiffs did not demand redress from the board prior to filing this suit. Instead, the demand-futility paragraph of Plaintiffs' amended complaint alleges two bases on which this Court should excuse Plaintiffs from making a demand on ICI's board:
 A. waste of ICI's assets cannot constitute good faith business judgment; and
 B. a majority of ICI's directors are designees of KSP, the principal beneficiary of the wrongs alleged, are officers and employees of either KSP [the majority shareholders] or ICI [the corporation on behalf of which Plaintiffs brought the complaint] and they therefore cannot exercise disinterested and independent judgment on behalf of ICI.
Amended Complaint ¶ 18. Based upon these two assertions, Plaintiffs argue that demand on the board would have been futile. Defendants move to dismiss these derivative claims, arguing that Plaintiffs should have demanded redress from the board prior to filing this suit.

*A. Legal Standard*

The business judgment rule requires the Court to presume the directors have acted in good faith and in the honest belief that their actions served the corporation's best interest. *Grobow v. Perot,* Del.Supr., 539 A.2d 180, 187 (1988). For this Court to excuse Plaintiffs from making demand on the board, Plaintiffs must plead sufficient facts to rebut this presumption. *Id.* Thus, Plaintiffs must allege particularized facts which create a reasonable doubt that (a) the directors were disinterested and independent, [or] that (b) the challenged action was otherwise the result of a valid exercise of business judgment. *Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 814 (1984). "Hence, the Court of Chancery must make two inquiries, one into the independence and disinterestedness of the directors and the other into the substantive nature of the challenged transaction and the board's approval thereof." *Id.* at 814.

*6 If in the first line of inquiry the Plaintiffs' complaint does not sufficiently demonstrate that the directors were incapable of making an independent and disinterested judgment, then the Court will move to the second question and review the pleadings to determine if Plaintiffs' allegations are sufficiently particularized so as to rebut the presumption that the board exercised its sound business judgment in the honest belief that the action served the best interest of the company. In the second line of inquiry, the Court must "weigh the presumption of business judgment rule that attaches to a board of directors' decision against the well-pleaded facts alleged in the demand-futility complaint." *Grobow,* Del.Supr., 539 A.2d at 187.

In a motion to dismiss for failure to demonstrate that demand on the board is excused, the Court will accept well-pleaded factual allegations of the derivative complaint as true. *Rales v. Blasband,* Del.Supr., 634 A.2d 927, 931 (1993). However, the Court will accept *only* well-pleaded facts as true; it will not take as true conclusory allegations of fact or law not supported by allegations of specific fact. *Grobow,* Del.Supr., 539 A.2d at 187. "A trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences." *Grobow,* Del.Supr., 539 A.2d at 187.
In addition, "[p]laintiff must overcome the powerful presumptions of the business judgment rule before they will be permitted to pursue the derivative

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 6
Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)
**(Cite as: 1996 WL 535405 (Del.Ch.))**

claim." *Rales,* Del.Supr., 634 A.2d at 933 (citing *Aronson v. Lewis,* Del.Supr., 473 A.2d 811). The Delaware Supreme Court has refused to establish a particular "reasonable doubt" standard. Thus, the Court must employ an objective analysis to determine whether Plaintiffs' complaint contains the facts necessary to support a finding of reasonable doubt of director disinterest or independence, or proper business judgment. *Grobow,* Del.Supr., 539 A.2d at 186.

B. *Reasonable Doubt as to Disinterest*

A director is "interested" in a transaction if either that transaction will provide that director a personal financial benefit from a transaction that other shareholders do not share equally or the director stands on both sides of the transaction. *Aronson,* Del.Supr., 473 A.2d at 812. Plaintiffs do not allege that the distribution arrangement provides the directors with a personal financial benefit or that the directors stand on both sides of the transaction. Moreover, generally, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors," unless that transaction is "so egregious on its face" that a substantial likelihood of liability exists. *Aronson,* Del.Supr., 473 A.2d at 815. For example, where another court has already determined that the plaintiff has plead sufficient facts to raise a reasonable doubt that the action is a valid exercise of business judgment, that determination indicates that the potential for liability is not merely a threat, but instead may rise to a substantial likelihood. "In that case, a decision by the board to bring suit could have potentially significant financial consequences" so that they have a "disqualifying financial interest that disables them from impartially considering a response to a demand...." *Rales,* Del.Supr., 634 A.2d at 936.

*7 In the present case, no court has determined that a reasonable doubt exists as to whether the action is a valid exercise of business judgment. Accordingly, the possibility that a court will find the directors personally liable is merely a threat, rather than a substantial possibility. Accordingly, the Court will presume that a director will exercise his or her disinterested business judgment without being influenced by the threat of adverse personal consequences.

C. *Reasonable Doubt as to Independence*

A director is "independent" if that director is capable of making decisions for the corporation based on the merits of the subject rather than "extraneous considerations or influences." *Aronson,* 473 A.2d at 816. In the present case, Plaintiffs' demand futility complaint merely alleges that "a majority of ICI's directors are designees of KSP, the principal beneficiary of the wrongs alleged, are officers and employees of either KSP or ICI." These facts are the only facts offered in support of Plaintiffs' claim that the directors are not independent. Amended Complaint ¶ 18.

The parties focus their arguments on whether Kim, president of ICI and KSP designee on the board, is independent. Plaintiffs assert that because KSP designated Kim to ICI's board and because Kim is ICI's president and serves at KSP's pleasure, he cannot exercise independent judgment on behalf of ICI. However, the fact that the corporation has one controlling shareholder does not, as a matter of law, establish that its directors are dominated or controlled by that shareholder. To establish that a director does not maintain discretion to independently approve a transaction, Plaintiffs must demonstrate that the directors are "beholden" to the controlling shareholder because of personal or other relationships. *Id.* at 815. For example, in *Rales,* the Court found a reasonable doubt existed as to a director's independence where two employee/directors received salaries of $1 million and $300,000 respectively. In that case, the Court inferred that the directors were beholden to controlling shareholders for their significant remuneration. *Rales,* Del.Supr., 634 A.2d 927.

Even accepting Plaintiffs' allegations as true, Plaintiffs do not meet their pleading burden merely by alleging that a controlling shareholder designated a director. *Aronson,* 473 A.2d 816. Furthermore, since Plaintiffs do not allege that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Kim's position as president of ICI involves substantial remuneration which hinges solely on his relationship with KSP, the Court cannot infer that Kim's judgment is sterilized simply as a result of his relationship with KSP. The Court will not presume that this causal link exists. *Id.* at 816.

Plaintiffs' complaint does not allege that Winstead is interested or lacks the ability to make an independent judgment on Plaintiffs' claims. Nonetheless, in their reply brief, Plaintiffs suggest Winstead is interested in the transaction because he might be subjected to personal liability if the claims proceed. Answering Brief at 10 n. 1. However, as stated above, the mere threat of personal liability does not create a reasonable doubt as to whether Winstead is disinterested and independent. *Aronson,* 473 A.2d at 815. Accordingly, Plaintiffs' allegations do not raise a reasonable doubt that a majority of ICI's directors are disinterested and independent so that Rule 23.1's demand requirement should be waived. *Id.* at 812. Thus, Plaintiffs have failed to demonstrate that the Court should excuse them from demanding redress because making such a demand would have been futile.

D. *Reasonable Doubt as to Exercise of Business Judgment*

**\*8** Having determined that Plaintiffs failed to plead director interest and lack of independence sufficiently to excuse demand, I examine the complaint to determine whether it raises a reasonable doubt that the directors exercised proper business judgment in the transaction. To invoke the protection of the business judgment rule, directors must inform themselves adequately of "all material information reasonably available." *Aronson,* 473 A.2d at 812. After gathering this information, directors must act with due care as they discharge their duties and will be held accountable for acts amounting to gross negligence. *Id.*

In reviewing director action under the second prong of the *Aronson* test, the Court will not presume that the board was grossly negligent in its decision. *Id.* at 814. Rather, the Court must "weigh the presumption of business judgment rule that attaches to a board of directors' decision against the well-pleaded facts alleged in the demand-futility complaint." *Grobow,* Del.Supr., 539 A.2d at 187.

The pleading requirements required to survive a motion to dismiss for failure to state a claim are less stringent than the pleading requirements to establish demand futility. *Grobow,* Del.Supr., 539 A.2d at 187 n. 6. To allege a claim of waste sufficiently to satisfy the pleading requirements of Rule 23.1, the complaint must demonstrate particularized facts that the consideration received by the corporation was "so inadequate that no person of ordinary sound business judgment would deem it worth that which the corporation has paid." *Grobow,* 539 A.2d at 189 (citing *Saxe v. Brady,* Del.Ch., 184 A.2d 602, 610 (1962)). Thus, the issue for demand futility is whether Plaintiffs' allegations, with respect to waste, raise a reasonable doubt that the directors were grossly negligent when those facts are weighed against the presumption of the business judgment rule. *Grobow,* 539 A.2d at 187-89. The Court will not blindly accept as true all allegations and will only make reasonable inferences from Plaintiffs' pleadings. *Id.*

Plaintiffs' second demand futility allegation simply states, "waste of ICI's assets cannot constitute good faith business judgment." Amended Complaint ¶ 18. Within the complaint, Plaintiffs allege Defendants committed corporate waste by allowing ICI to sell its products to KSP for less than the price ICI could obtain from third-party purchasers. Specifically, Plaintiffs allege that ICI sells its products to KSP at approximately $7 per gallon while KSP is reselling ICI's products in Korea at $23-28 per gallon. In addition, ICI previously sold these products for approximately $17 per gallon. Plaintiffs do not allege that the board used deficient procedures in allowing the distribution arrangement to continue.

Defendants argue that these conclusory allegations do not create a reasonable doubt under the second *Aronson* prong. Defendants note that Plaintiffs offered nothing to rebut the presumption that ICI's board's decision to continue to distribute its products to KSP was made in good faith, on an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                      Page 8
Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)
**(Cite as: 1996 WL 535405 (Del.Ch.))**

informed basis and for the best interest of ICI. Defendants also note that Plaintiffs do not claim that better sales opportunities are currently available.

*9 In response, Plaintiffs refer to *Avacus Partners, L.P. v. Brian,* Del.Ch., C.A. No. 11001, Allen, C. (Oct. 24, 1990) in support of their position that a reasonable doubt exists that the transactions were the product of valid business judgment. However in contrast to the present case, in *Avacus,* plaintiffs alleged that the corporation paid over ten times the fair market value for stock and notes that it purchased. Additionally, it paid 100 times the price paid a year earlier for control of a second company. *Id.* at 16. Chancellor Allen concluded that these facts raised a reasonable doubt that the transaction constituted waste because the payments involved were incredibly disproportionate. Because it created a reasonable doubt that no person of sound business judgment would have deemed it worth what the corporation paid, the Court waived Rule 23.1's demand requirement.

Weighing the facts alleged in the present case against the strong presumption of the business judgment rule, I conclude that those facts do not create a reasonable doubt that the Defendants wasted ICI's assets. While the facts alleged do allow me to infer that KSP probably is making a substantial profit on the distribution arrangement, this inference does not necessarily lead me to conclude that the price KSP pays to ICI is so inadequate that "no person of ordinary, sound business judgment would deem it" a reasonable decision. *Grobow,* Del.Supr., 539 A.2d at 189. Indeed, one can certainly imagine several legitimate reasons that the Defendants might allow the transaction to go forward. For example, perhaps KSP sells ICI's products in such a great quantity that ICI grants KSP a discount on its prices. Alternatively, perhaps ICI cannot distribute to the Korean market absent KSP's contacts so that comparing the price KSP pays to the price other third parties pay is unhelpful. Clearly, one cannot conclude based on the alleged facts that the exchange "is so one-sided that no person of sound judgment could conclude that" the consideration is adequate. *Glazer v. Zapata Corp.,* Del.Ch., C.A.

No. 12958, Allen, C. (May 14, 1993), Mem.Op. at 16. Since reasonable minds might disagree as to whether the exchange is wasteful, this Court cannot conclude that Plaintiffs have satisfied their burden pursuant to Rule 23.1 to raise a reasonable doubt that the Defendants exercised business judgment in allowing the exchange to proceed. *Glazer,* C.A. No. 12958 (May 14, 1993), at 16.

Plaintiffs have failed to allege facts which demonstrate that this Court should waive Rule 23.1 's demand requirement. First, Plaintiffs did not allege sufficient facts to create a reasonable question as to whether a majority of ICI's board could make an independent and disinterested decision on Plaintiffs' claims. Second, Plaintiffs did not plead facts sufficient in their waste claim to overcome the presumption of the business judgment rule. Accordingly, I grant Defendants' motion to dismiss the derivative claims for failure to make a demand on the board. I do not address Defendants' motion to dismiss the derivative claims for failure to state a claim.

### IV. MOTION TO DISMISS CLASS CLAIMS
*10 Plaintiffs' second claim purports to bring a class action on behalf of the holders of Class A and Class B common stock (the "Class") against Defendants for breach of the Shareholders' Agreement and breach of fiduciary duty. Plaintiffs assert that Defendants' actions are depriving members of the Class of their rights as third-party beneficiaries of the Shareholders' Agreement because those rights are tied to ICI's artificially low gross revenues.

Courts distinguish between derivative claims and individual claims by determining whether the alleged wrongdoing caused the plaintiff injury directly and specially. To attain standing to bring a class action, Plaintiffs must allege "more than an injury resulting from a wrong to the corporation." *Kramer v. Western Pacific Indus., Inc.,* Del.Supr., 546 A.2d 348, 351 (1988).

A plaintiff alleges a special injury where plaintiff's injury involves a contract right or where his injury is distinct from that suffered by all stockholders.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                     Page 9
Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)
**(Cite as: 1996 WL 535405 (Del.Ch.))**

*Lipton v. News Int'l, Plc,* Del.Supr., 514 A.2d 1075, 1078 (1986). However, a "shareholder who suffers an injury peculiar to itself should be able to maintain an individual action, even though the corporation also suffers an injury from the same wrong." *Lipton,* Del.Supr., 514 A.2d at 1079.

Defendants argue that the Court should classify Plaintiffs' Class claims as "derivative" claims, and then dismiss these claims along with the other derivative claims for failure to make a demand on the board. Defendants correctly note that a claim for "waste" is derivative, rather than individual in nature. *Kramer,* Del.Supr., 546 A.2d at 353. Since Plaintiffs base their Class claims for breach of contract and breach of fiduciary duty upon the same factual allegations as their waste claim, Defendants argue that these claims are derivative rather than individual.

In response, Plaintiffs argue that their rights under the Shareholders' Agreement are contractual rights that are individual in nature, rather than derivative. Plaintiffs contend that they need not make demand on the board prior to asserting that claim against Defendants. Plaintiffs do not argue that the claim for breach of fiduciary duty is individual in nature.

Plaintiffs' Class claim alleges that the waste of corporate assets is depriving the Class of their rights under the Shareholders' Agreement. Although this claim does involve some of the same factual allegations as the waste claim, this Class claim goes further. The Shareholders' Agreement gave Plaintiffs a contractual right to put their stock to ICI, contingent on ICI reaching specified revenue goals. By alleging that Defendants allowed ICI to sell its products to KSP at an unreasonably low price, Plaintiffs allege a direct injury because the challenged transactions directly affects the Class members' ability to gain the benefit of the contract. While the corporation is injured by waste of its assets, unlike Plaintiffs, it is not a beneficiary of the contract. If a shareholder suffers a special injury, that shareholder may maintain an individual action, "even though the corporation also suffers an injury from the same wrong." *Lipton,* Del.Supr., 514 A.2d at 1079. Thus, Plaintiffs have asserted an individual contract claim in addition to their derivative claims, and may maintain that individual contract claim as a Class action.

V. CONCLUSION

*11 Plaintiffs' complaint alleges facts sufficient to establish that Defendants are amenable to suit in Delaware via the Directors Consent Statute. Plaintiffs' complaint does not, however, demonstrate that this Court should waive Rule 23.1's requirement that shareholders exhaust their corporate remedies prior to filing a derivative suit. Hence, I dismiss Plaintiffs' derivative claims. Nonetheless, Plaintiffs may amend the amended complaint within 30 days of this Opinion to add nonconclusory factual allegations that would establish that demand is futile and enable the complaint to survive a Rule 23.1 challenge. *Lewis v. Honeywell Inc.,* Del.Ch., C.A. No. 8651, Jacobs, V.C. (July 28, 1987), Mem.Op. at 11. Plaintiffs also may proceed with their Class claim.

IT IS SO ORDERED.

Not Reported in A.2d, 1996 WL 535405 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.