**2**

*1992 Del. Ch. LEXIS 133, \**

**CANAL CAPITAL** CORPORATION, derivatively by Daniel Klein as Trustee for Sonar Radio Corp. Profit Sharing Plan, Plaintiff, v. RAYMOND FRENCH, ASHER B. EDELMAN, GERALD N. AGRANOFF, DANIEL R. KAIL, BURTON LEHMAN, CLARK R. MANDIGO, MICHAEL E. SCHULTZ, and DWIGHT D. SUTHERLAND, Defendants. and **CANAL CAPITAL** CORPORATION, a Delaware Corporation, Nominal Defendant.

Civil Action No. 11,764

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

1992 Del. Ch. LEXIS 133

March 5, 1992, Submitted
July 2, 1992, Decided

**NOTICE:** THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Defendants, a corporation and its eight directors, filed a motion to dismiss the derivative action filed by plaintiff, a stockholder of the corporation, charging the directors with breach of fiduciary duty, for failure to state a claim and/or failure to satisfy the demand requirements of Del. Chancery Ct. R. 23.1.

**OVERVIEW:** The complaint alleged that one director, who was the corporation's majority stockholder, and his fellow directors breached their duties of care and loyalty by entering into investment advisory contracts with companies controlled by the majority stockholder. Under these contracts, the majority stockholder's company received 25 percent of the gains realized on the corporation's investments. The court held the directors did not breach their duty of care by delegating the task of managing the corporation's investments to an outside company. They retained control over the outside company in that they were free to cancel the contract at any time. The directors' failure to cancel the investment advisory contracts after the corporation incurred losses was a valid exercise of their business judgment. The stockholder failed to state a claim for waste because he failed to show that no person of ordinary, sound business judgment would deem these contracts worth what the corporation had paid. The breach of the duty of loyalty claim failed because the stockholder did not comply with the demand requirements of Del. Chancery Ct. R. 23.1 or show that a demand would be an exercise in futility.

**OUTCOME:** The court granted the directors' motion to dismiss and dismissed the stockholder's complaint.

**CORE TERMS:** advisory, duty, business judgment, stockholder, breached, waste, cancel, reasonable doubt, duty of loyalty, delegate, investment portfolio, excessive, stock, non-delegation, managerial, securities trading, duty of care, high risk, arbitrage, takeover, loyalty, entitled to receive, general principle, valid exercise, particularized, disinterest, delegation, delegated, illusory, managing

**LexisNexis(R) Headnotes**

Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities

HN1⊕ It is settled law that directors may not delegate to others those duties that are at the heart of the management of the corporation.

Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities

HN2⊕ A director breaches his fiduciary duty of due care if he abdicates his managerial duties. The term "management," as used in this context, relates to supervision, direction and control. The details of the business may be delegated to inferior officers, agents and employees.

Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities

HN3⊕ An informed decision by a director to delegate a task is as much an exercise of business judgment as any other. The realities of modern corporate life are such that directors cannot be expected to manage the day-to-day activities of a company. This is recognized by the provisions of Del. Code Ann. tit. 8, § 141(a) that the business and affairs of a Delaware corporation are managed by or under the direction of its board. In setting its agenda as to the matters in which it will be directly involved, and those it will delegate, a board's decisions in those areas are entitled to equal consideration as exercises of business judgment.

Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities

HN4⊕ In order to state a claim for waste, plaintiff must allege facts which, if true, indicate that, what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth what the corporation has paid.

Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Actions Against Corporations
Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities

HN5⊕ In testing the sufficiency of a complaint for purposes of Del. Chancery Ct. R. 23.1, the court must determine, (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.

Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Actions Against Corporations
Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities

HN6⊕ A director is interested, for purposes of the demand analysis under Del. Chancery Ct. R. 23.1, whenever divided loyalties are present, or a director either has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders.

Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities

HN7⊕ The business judgment rule will protect the board's decision unless a majority of the board was interested or disabled by a lack of independence.

**COUNSEL:** [*1]

Pamela S. Tikellis, Esquire, James C. Strum, Esquire and Edward Seglias, Esquire of GREENFIELD & CHIMICLES, Wilmington, Delaware, Attorneys for Plaintiff.

Lawrence C. Ashby, Esquire and Keith R. Sattesahn, Esquire of ASHBY & GEDDES, Wilmington, Delaware; Of Counsel, Irwin J. Sugarman, Esquire, Chaye Zuckerman Shapot, Esquire of SCHULTE ROTH & ZABEL, New York, New York, Attorneys for Defendants.

**JUDGES:** BERGER

**OPINIONBY:** BERGER

**OPINION: MEMORANDUM OPINION**

BERGER, Vice Chancellor

Plaintiff, a stockholder of **Canal Capital** Corporation ("Canal"), brought this derivative action charging the directors of Canal with breach of fiduciary duty. Defendants, in addition to Canal, are the company's eight directors: Raymond French ("French"), Asher B. Edelman ("Edelman"), Gerald N. Agranoff ("Agranoff"), Daniel R. Kail ("Kail"), Burton Lehman ("Lehman"), Clark R. Mandigo ("Mandigo"), Michael E. Schultz ("Schultz") and Dwight D. Sutherland ("Sutherland"). The complaint alleges that Edelman, the beneficial owner of 52% of Canal's stock, and his fellow directors breached their duties of care and loyalty by entering into, and later failing to cancel, investment advisory contracts with two companies controlled by Edelman. **[*2]** This is the decision on defendants' motion to dismiss for failure to state a claim and/or failure to satisfy the demand requirements of Chancery Court Rule 23.1. For the reasons that follow, defendants' motion will be granted.

The facts, as alleged in the complaint, may be summarized as follows. Canal is a Delaware corporation engaged in real estate leasing, securities trading and arbitrage, and antiquities dealing. Edelman, in addition to being Canal's majority stockholder, is Vice Chairman of the Board. French is Canal's President and Chief Executive Officer, and Kail is the Executive Vice President. All of the remaining directors have ties to Edelman through other businesses and companies he controls. Agranoff is a general partner of Asco Partners and Plaza Securities Company. Edelman is the controlling general partner of both businesses. Lehman, Schultz and Sutherland are directors of Intelogic Trace, Inc. ("Intelogic") and Mandigo, in addition to being a director, is the President and Chief Executive Officer of Intelogic. Edelman controls that company as well. Finally, Mandigo and Sutherland are directors of another corporation controlled by Edelman, Datapoint Corporation ("Datapoint"). **[*3]**

As noted at the outset, Edelman controls A. B. Edelman Management Co., Inc. ("Edelman Management") and Arbitrage Securities Co. ("Arbitrage"), the two companies retained by Canal to perform investment services. Under the terms of the investment contract between Canal and Edelman Management, n1 complete authority over Canal's investment portfolio is assumed by Edelman Management while the risk of loss remains with Canal. Edelman Management receives 25% of the gains realized on Canal's investments. Canal reserves the right, at its option, to cancel the contract upon notice.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 The current contract is held by Edelman Management. Prior to October 24, 1988, Canal contracted for the same services with Arbitrage. For simplicity, I will refer to only Edelman Management, as the terms of the contracts apparently are the same.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Canal's investment portfolio includes many high risk securities because its trading activities focus on takeover ventures. As a result of Canal's high risk portfolio, the company has suffered significant **[*4]** losses on its investments. For example, in 1989 Canal suffered a net loss of over $ 2 million on securities transactions. In addition, defendants allegedly attempted to cover up other losses from securities trading by improperly designating the transactions as long-term investments, which are not updated to reflect current market value.

From these facts, plaintiff charges that director defendants breached their fiduciary duties of loyalty and due care. First, the complaint alleges that Edelman benefitted from the investment advisory contract at the expense of Canal's other stockholders. His company, Edelman Management, received excessive advisory fees and, through Edelman Management's control over Canal's investment choices, Edelman was able to advance his personal takeover strategy with the help of Canal's funds. Second, defendant directors permitted Canal to invest in high risk securities and failed to cancel the contract with Edelman Management after those risky investments resulted in losses. In so doing, plaintiff claims that defendants breached their duty of care. Finally, without any elaboration or explanation, the complaint alleges that defendant directors mismanaged the **[*5]** company's affairs and wasted its assets.

The duty of care claims, as explained in plaintiff's brief, are based on the general principle of non-delegation. That principle begins with the premise that directors are responsible for managing the business and affairs of the corporation. Paramount Communications, Inc. v. Time, Inc., Del. Supr., 571 A.2d 1140, 1150 (1990), citing 8 Del. C. § 141(a). Here, plaintiff charges that director defendants breached their duty of due care by failing to manage Canal's investment portfolio and, instead, contracting out that responsibility to Edelman Management. Since securities trading composes a substantial part of Canal's business, plaintiff argues that defendant directors must retain control over investment decisions and are liable for their failure to do so.

I find this claim to be without merit. *HN1*It is settled law that directors may not delegate to others those duties that are "at the heart of the management of the corporation." Chapin v. Benwood Foundation, Inc., Del. Ch., 402 A.2d 1205, 1210 (1979), aff'd, Del. Supr., 415 A.2d 1068 (1980). See also Fletcher Cyc. Corp. § 496, **[*6]** p. 588-589 (Perm. Ed. 1990); 8 Del. C. § 141(a). The so-called duty of non-delegation has been addressed under several different factual scenarios. See e.g., Rosenblatt v. Getty Oil Co., Del. Supr., 493 A.2d 929, 943 (1985) (holding that the duty was not breached where oil company had petroleum engineering firm prepare economic valuations of the company's reserves that would be binding on the company in future merger negotiations and stating that "it is important to note why the delegation was made, and what task was actually delegated."); Clarke Memorial College v. Monaghan Land Co., Del. Ch., 257 A.2d 234 (1969) (finding the duty breached where directors authorized two officers to determine whether sale of substantially all of the corporation's assets should proceed and, if so, upon what terms); Lehrman v. Cohen, Del. Supr., 222 A.2d 800 (1966) (delegation of directors' managerial duties, when effected by stockholder action instead of board action, is valid); Adams v. Clearance Corp., Del. Supr., 121 A.2d 302 (1956) (finding no per se breach where board deposited into a voting trust shares of **[*7]** a controlled subsidiary corporation notwithstanding the fact that the shares were the sole substantial asset of the corporation.)

The general principle upon which the rule is based has been stated as follows:

This Court cannot give legal sanction to agreements which have the effect of removing from directors in a very substantial way their duty to use their own best judgment on management

matters.

Chapin at 1211, quoting Abercrombie v. Davies, Del. Ch., 123 A.2d 893, 899 (1956), rev'd. on other grounds, Del. Supr., 130 A.2d 338 (1957) (emphasis added). Abercrombie involved an "agents' agreement" by which certain stockholder defendants of American Independent Oil Company agreed to relinquish to director defendants the sole and exclusive voting power of the stock covered by the agreement. The votes were always to be exercised as a unit by the agents. If any agent voted against the rest of the group, the agreement provided that the parties would have him removed and replaced. If seven of the eight agents could not agree how to vote the stock, the binding decision of a disinterested arbitrator would determine how the votes were [*8] to be cast. The agreement was irrevocable unless at least seven of the agents agreed otherwise.

The Court found that the agreement constituted an illegal restraint on the directors' action in violation of 8 Del. C. § 141:

Because it tends to limit in a substantial way the freedom of director decisions on matters of management policy it violates the duty of each director to exercise his own best judgments on matters coming before the board . . . . a director-agent might here feel bound to honor a decision rendered under the agreement even though it was contrary to his own best judgment.

Id. at 899. Such an arrangement would "substantially encroach on the duty of directors to exercise independent judgment." Id. at 900.

Thus, HN2⬆a director breaches his fiduciary duty of due care if he abdicates his managerial duties. The term "management," as used in this context, "relates to supervision, direction and control. The details of the business [may be] delegated to inferior officers, agents and employees." Cahall v. Lofland, Del. Ch., 114 A. 224, 229 (1921). In Rosenblatt v. Getty Oil Co., 493 A.2d at 943, the Delaware Supreme Court [*9] recognized that directors' decisions to delegate responsibility are valid exercises of business judgment:
    HN3⬆
An informed decision to delegate a task is as much an exercise of business judgment as any other. The realities of modern corporate life are such that directors cannot be expected to manage the day-to-day activities of a company. This is recognized by the provisions of 8 Del. C. § 141(a) that the business and affairs of a Delaware corporation are managed "by or under the direction" of its board. In setting its agenda as to the matters in which it will be directly involved, and those it will delegate, a board's decisions in those areas are entitled to equal consideration as exercises of business judgment. [Citations omitted].

Here, Canal's directors decided that Edelman Management should handle the task of managing the company's investments. They retained ultimate control over Edelman Management in that they were free to cancel the contract at any time. Under these circumstances, assuming that the Canal board exercised due care in making its decision to enter into the Edelman Management contract, there is no basis for a claim that defendant directors abdicated their managerial [*10] responsibilities in violation of their fiduciary duty of due care.

The other due care claim is based upon the failure to cancel the investment advisory contract after Canal incurrred losses on its investment portfolio. Plaintiff apparently believes that defendant directors were required to cancel the contract as soon as the company suffered a loss. That is not the law. Directors' business judgment will not be second-guessed by the Court or stockholders who may hold different views as to the appropriateness of continuing an investment advisory contract under the facts alleged here. A loss in one year may be more than offset by gains in other years, and the decision to continue with Edelman Management's investment strategy is appropriately left to Canal's directors.

Plaintiff's waste claim fares no better than his duty of care claim. *HN4*In order to state a claim for waste, plaintiff must allege facts which, if true, indicate that, "what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth what the corporation has paid." Saxe v. Brady, Del. Ch., 184 A.2d 602, 610 (1962). Plaintiff attacks the [*11] investment advisory contract as constituting a waste of corporate assets because the 25% fee is excessive and because the benefits of the contract are illusory.

The complaint contains no factual support for the conclusory allegation that the fee is excessive. Moreover, even if a 25% fee is higher than that charged by other firms it does not necessarily follow that the investment advisory contract constitutes a waste of assets. The Edelman Management fee would have to be so high relative to fees charged by others that it could not be justified by a rational person. There is simply nothing in this complaint to suggest that such a discrepancy exists.

Plaintiff's theory that the investment advisory contract is illusory is based upon his contention that Canal employees could be performing the same services provided by Edelman Management. To the extent that plaintiff is complaining about Canal's failure to provide these services "in-house," he is merely restating the non-delegation claim already found to be deficient. On the other hand, plaintiff may be arguing that Canal employees are being paid but are performing no services because Edelman Management is doing their job. If this is [*12] plaintiff's theory, his complaint contains no facts to support it. Accordingly, the waste claim must be dismissed for failure to state a claim.

The remaining claim, for breach of the duty of loyalty, must be dismissed for failure to comply with the demand requirements of Chancery Court Rule 23.1. Plaintiff alleges that Edelman breached his duty of loyalty by entering into the investment advisory contract in order to benefit himself as the controlling owner of Edelman Management. The contract allegedly benefits Edelman in at least two ways: (1) Edelman's company receives excessive fees for its investment services; and (2) Edelman is able to use Canal's funds to advance his own interest in various takeover ventures. Four other Canal directors -- Agranoff, French, Schultz and Sutherland -- allegedly breached their duty of loyalty by directly or indirectly participating in or benefitting from Edelman's investment strategies.

While it is not at all clear that the complaint adequately states a claim for breach of the duty of loyalty, if it does, the complaint must also allege with particularity why the failure to make a pre-suit demand is excused. Chancery Court Rule 23.1; Levine v. Smith, Del. Supr., 591 A.2d 194 (1991). [*13] *HN5*In testing the sufficiency of a complaint for purposes of Rule 23.1, the Court must determine, "(1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." Levine v. Smith, 591 A.2d at 205. Plaintiff argues that his complaint satisfies either prong of the demand futility test. I disagree.

*HN6*A director is interested, for purposes of the demand analysis, "whenever divided loyalties are present, or a director either has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders." Pogostin v Rice, Del. Supr., 480 A.2d 619, 624 (1984). If the allegations in the complaint are true, there can be little question but that Edelman fits this description. Through Edelman Management he will either receive or be entitled to receive a portion of the 25% fee being paid by Canal.

The fact that one director is interested, however, [*14] does not taint the entire board. n2

There must be a reasonable doubt as to the disinterest or independence of a majority of the board. Aronson v. Lewis, Del. Supr., 473 A.2d 805 (1984). Plaintiff argues that defendants Mandigo, Kail and French, as employees of Edelman controlled companies, are beholden to Edelman and, therefore, lack independence. According to plaintiff, the same is true for defendants Lehman, Schultz and Sutherland, who are directors of Edelman controlled companies, although not employees of those companies.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 The allegation that Agranoff, French, Schultz and Sutherland somehow benefitted from the investment advisory contract is not supported by any particularized facts and, therefore, will not be considered in evaluating the possible interest of board members.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Plaintiff relies on In re NVF Co. Lit., Del. Ch., Civil Action No. 9050, Chandler, V. C. (November 21, 1989) in arguing that these various relationships establish Edelman's domination and control over a majority **[*15]** of the Canal board. NVF involved the sale of a major corporate asset to Victor Posner, who was the beneficial owner of 38% of NVF stock and was the company's President, CEO and Chairman of the Board. Posner allegedly had a substantial interest in at least fifteen other public corporations and there was a significant overlap in the board membership of NVF and these other businesses. Six board members voted on the challenged transaction. Three were related to Posner and were officers of as many as twelve other Posner companies. A fourth NVF director was an officer of the company and a director of two other Posner companies, and a fifth NVF board member was a director of fourteen other Posner companies. From these facts, the Court concluded that five of the six directors were, in effect, full-time Posner employees and found that their relationships with Posner created a reasonable doubt as to their lack of interest in a transaction benefitting Posner.

The facts in NVF are distinguishable from those presented in plaintiff's complaint. Of the eight directors on Canal's board, only three are employees of the company. The complaint contains conclusory allegations that the remaining **[*16]** five directors have business relationships with other Edelman companies. However, no factual support is provided. For example, Mandigo and three other Canal directors allegedly are directors of Intelogic. The only information provided about Intelogic is that it is a company "controlled by Edelman." Compl., P 4(j). Such a conclusory statement does not meet the pleading requirements of Chancery Court Rule 23.1. Heineman v. Datapoint Corp., Del. Ch., Civil Action No. 8873, Hartnett, V. C. (July 29, 1991) Mem. Op. at 13. Thus, whereas five of the six directors in NVF were found to be full-time Posner employees, here, only three (including Edelman) of eight could be said to be similarly situated.

The next test, under Levine, is whether the pleaded facts create a reasonable doubt that the transaction was a valid exercise of business judgment. Since the due care and waste claims have been dismissed, the only question is whether the duty of loyalty claim raises such a reasonable doubt. Based upon the foregoing analysis, I find that it does not. *HN7*The business judgment rule will protect the board's decision unless a majority of the board was interested or disabled by a lack of independence. **[*17]** Having found that the complaint fails to adequately allege such a taint, it follows that the applicability of the business judgment rule is not in doubt.

Defendants' motions to dismiss are granted. **IT IS SO ORDERED.**

Source: Legal > States Legal - U.S. > Delaware > Cases > **DE Court of Chancery Cases from 1814** ⓘ
Terms: **"canal capital"** (Edit Search | Suggest Terms for My Search) 🖉📄 -View Bingham McCutchen Results (0)
View: Full
Date/Time: Monday, April 10, 2006 - 5:16 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
🅠 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.


●'LexisNexis®

About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.