**9**

**Westlaw.**

Not Reported in N.E.2d                                                                                                          Page 1
Not Reported in N.E.2d, 17 Mass.L.Rptr. 673, 2004 WL 1431059 (Mass.Super.)
**(Cite as: 2004 WL 1431059 (Mass.Super.))**

C
Superior Court of Massachusetts.
SOUTH SHORE GASTRONINTEROLOGY UA 6/6/1980 FBO Harold Jacob, Nancy R. Jacob TTEE
v.
Richard F. SELDEN et al. [FN1]

FN1. Jonathan S. Leff; Walter Gilbert; Wayne P. Yetter; Rodman W. Moorehead, III; James E. Thomas; William R. Miller; and Transkaryotic Therapies, Inc.

No. 032630BLS.

May 7, 2004.

*MEMORANDUM AND ORDER ON MOTION TO DISMISS*

ALLAN VAN GESTEL, Justice of the Superior Court.

*1 This matter is before the Court on the defendants' motion pursuant to Mass.R.Civ.P. Rule 12(b)(6) and Rule 23.1 to dismiss the Verified Amended Derivative Complaint (the "complaint"). The grounds for the motion are that the complaint does not comply with Rule 23.1, because the plaintiff failed to make a pre-suit demand upon the board of directors, and because the plaintiff has failed to allege with particularity sufficient grounds to excuse its failure to make such demand. Additionally, the defendants move for dismissal on grounds that the complaint fails to state a claim, and because its claims for damages are premature.

*BACKGROUND*
Transkaryotic Therapies, Inc. ("TKT") is a Delaware corporation headquartered in Cambridge, Massachusetts. TKT is a biopharmaceutical company that develops products for the treatment of rare diseases.

The plaintiff purports to be a TKT shareholder and has brought this derivative suit against members of TKT's board of directors and its former president and chief executive officer. The essence of the complaint is that six members of TKT's board of directors and its former president and chief executive officer breached fiduciary duties by causing or allowing TKT to issue material false and misleading public statements concerning the status of TKT's Food and Drug Administration ("FDA") application for its drug Replagal, and failing to correct misleading public statements.

Further, the defendants are charged with grossly mis-managing TKT's response to the January 2, 2001, FDA letter hereafter described.

On January 2, 2001, TKT received a "complete review letter" from the FDA regarding TKT's Biologics Licensing Application ("BLA"). TKT had submitted the BLA to the FDA in 2000, seeking approval to market Replagal in the United States. TKT issued a press release disclosing the complete review letter on January 3, 2001. The press release stated that the FDA did not approve the application and that the FDA asked for further explanation and additional data.

The language appearing in the FDA letter included the following: "Our review finds that the information and data submitted are inadequate for final approval action at this time based on the deficiencies outlined below." There followed 52 numbered paragraphs setting forth deficiencies, all detailed over 15 pages of single-spaced type.

Approximately two years later, on January 14, 2003, an FDA Advisory Committee Panel (the "Panel") convened to consider the BLA, and decided not to recommend approval of Replagal.

The plaintiff contends that TKT expressed optimism about the prospects for approval of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                 Page 2
Not Reported in N.E.2d, 17 Mass.L.Rptr. 673, 2004 WL 1431059 (Mass.Super.)
**(Cite as: 2004 WL 1431059 (Mass.Super.))**

Replagal in various public statements, including press releases, SEC filings, interviews, conference calls, and investor and analyst meetings, during the two-year period between the complete review letter and the Panel recommendation, even though TKT allegedly knew that the drug's prospects for approval were poor.

Three months after the January 14, 2003 Panel meeting, the plaintiff filed this derivative action. The suit was not preceded by any demand, written or oral, that the board take any particular action with respect to the plaintiff's allegations. Instead, the plaintiff asserts that any demand upon the members of the board would have been a "futile and useless act."

*2 Six of the seven present directors of TKT are outside directors. [FN2] The only director who is not an outside director is Michael J. Astrue, TKT's chief executive office. Mr. Astrue is not named as a defendant and no allegations are made challenging his status. Dr. Richard F. Selden is a named defendant. He is TKT's former chief executive officer. Dr. Selden resigned his position as an officer and as a director of TKT on February 11, 2003.

> FN2. This information is taken from public filings with the SEC. Its use here is appropriate. See, e.g., *Harhen v. Brown,* 431 Mass. 838, 840 (2000).

The complaint itself is lengthy and detailed, with allegations contained in 95 numbered paragraphs, covering over 32 pages.

### DISCUSSION

Given TKT's status as a Delaware corporation much of the argument for and against the motion to dismiss cites to Delaware law. The law of the state of incorporation provides the circumstances under which a pre-suit demand would be futile. *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95 (1991). Thus, this Court will begin with some general principles of Delaware law that apply here.

The focus, principally, is on the issue of the absence and alleged futility of making a presuit demand.

A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation ... The existence and exercise of this power carries with it certain fundamental fiduciary obligations to the corporation and its shareholders ... Moreover, a stockholder is not powerless to challenge director action which results in harm to the corporation. The machinery of corporate democracy and the derivative suit are potent tools to redress the conduct of a torpid or unfaithful management. The derivative action developed in equity to enable shareholders to sue in the corporation's name where those in control of the company refused to assert a claim belonging to it. The nature of the action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it.

By its very nature the derivative action impinges on the managerial freedom of directors. Hence, the demand requirement of Chancery Rule 23.1 exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits. Thus, by promoting this form of alternate dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations.

*Aronson v. Lewis,* 473 A.2d 805, 811-12 (Del.Supr.1984).

In determining demand futility the Court "must make two inquiries, one into the independence and disinterestedness of the directors and the other into the substantive nature of the challenged transaction and the board's approval thereof." *Id.* at 814.

To satisfy [the] requirement [of alleging with particularity the reasons for the plaintiff's failure to demand action from the board], the "stockholder plaintiff[ ] must overcome the powerful presumptions of the business judgment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d    Page 3
Not Reported in N.E.2d, 17 Mass.L.Rptr. 673, 2004 WL 1431059 (Mass.Super.)
**(Cite as: 2004 WL 1431059 (Mass.Super.))**

rule" by alleging sufficient particularized facts to support an inference that demand is excused because the board is "*incapable* of exercising its power and authority to pursue the derivative claims directly." In *Aronson v. Lewis,* we held that a demand on the board is excused only if the complaint contains particularized factual allegations raising a reasonable doubt that either: (1) "the directors are disinterested and independent" or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

*3 *White v. Panic,* 783 A.2d 543, 551 (Del.Supr.2001).

However, the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors, although in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.

*Aronson, supra,* 473 A.2d at 815.

"The question of independence flows from an analysis of the factual allegations pertaining to the influences upon the directors' performance of their duties generally, and more specifically in respect to the challenged transaction." *Pogostin v. Rice,* 480 A .2d 619, 624 (Del.Supr.1984). In the complaint in this case, there are no allegations that create a reasonable doubt that the directors are disinterested and independent. "[I]n the demand-futile context a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling.' " *Aronson, supra,* 473 A.2d at 816.

The Court looks next at the question of whether a reasonable doubt is created that the challenged transactions were otherwise than the product of valid exercises of business judgment.

The challenged transactions relate to: (1) TKT's actions taken, or not taken, in response to the FDA's January 2, 2001, "complete review letter" regarding TKT's Biologics Licensing Application; and (2) TKT's press releases and other public statements concerning the status of TKT's FDA application for its drug Replagal, and failing to correct misleading public statements about that status. The allegations of what particular members of the board did, or did not do, fail to meet the "heightened pleading standard of particularity ." See, e.g., *Guttman v. Huang,* 823 A.2d 492, 500 (Del.Ch.2003).

[There] is a very large--though not insurmountable--burden on stockholders who believe they should pursue the remedy of a derivative suit instead of selling their stock or seeking to reform or oust these directors from office.

Delaware has pleading rules and an extensive judicial gloss on those rules that must be met in order for a stockholder to pursue a derivative remedy. Sound policy supports these rules, as we have noted. This Complaint, which is a blunderbuss of a mostly conclusory pleading, does not meet that burden, and it was properly dismissed.

*Brehm v. Eisner,* 746 A.2d 244, 267 (Del.Supr.2000).

Similarly here, a reading of the complaint, however lengthy, does not provide a "reasonable doubt" that any activities by the directors, individually or as a group, were otherwise than the product of a valid exercise of business judgment. [FN3]

> FN3. If the test was whether "there is a *reasonable inference* that the business judgment rule is not applicable," [emphasis added], as applied below in *Aronson* by the Vice Chancellor, this Court may well have reached a different conclusion. But the Vice Chancellor was specifically overruled on that issue by the Delaware Supreme Court. See *Aronson,* 473 A.2d at 814.

The Court does not assess in any way the other contentions by the defendants in support of their motion to dismiss.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                               Page 4
Not Reported in N.E.2d, 17 Mass.L.Rptr. 673, 2004 WL 1431059 (Mass.Super.)
**(Cite as: 2004 WL 1431059 (Mass.Super.))**

*4 As a result of the foregoing analysis of Delaware law, this Court concludes that the Verified Amended Derivative Complaint must be dismissed. Further, the Court accepts the Delaware Supreme Court's reasoning that such dismissal ought to be without leave to further amend. See *White, supra,* 783 A.2d at 555.

### ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss the Verified Amended Derivative Complaint (Paper # 21) is *ALLOWED,* without leave to amend. Final judgment shall enter accordingly.

Not Reported in N.E.2d, 17 Mass.L.Rptr. 673, 2004 WL 1431059 (Mass.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.