**12**

**Westlaw.**

Not Reported in F.Supp.                                                                                                Page 1

Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)

**(Cite as: 1992 WL 73555 (D.Mass.))**

▷ Only the Westlaw citation is currently available.

United States District Court, D. Massachusetts.
In Re STRATUS COMPUTER, INC.
SECURITIES LITIGATION, Defendant.
CIV. A. 89-2075-Z.

March 27, 1992.
Recommendations on Motions to Dismiss Dec. 10, 1991.

Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, Mass., for plaintiffs.

Maynard Mohan Kirpalani, Parker, Coulter, Daley & White, Boston, Mass., for defendant Stratus Computer, Inc.

Peter M. Saparoff, Palmer & Dodge, Helen A. Robichaud, Gaston & Snow, Boston, Mass., for defendants Status Computer, Inc., William E. Foster and Gary Haroian.

Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom, Boston, for defendants William H. Thompson, Robert E. Donahue and Robert A. Freiburghouse.

Peter J. MacDonald, Hale & Dorr, Boston, Mass., for defendants Alexander V. D'Arbeloff, Robert M. Morrill, Paul J. Ferri, Gardner C. Hendrie and J. Burgess Jamieson.

ZOBEL, District Judge.

*1 The Objection to the recommendation pertaining to Counts I, II and IV are overruled. Plaintiff does not object to the recommendation pertaining to Count III. The Court accepts the Magistrate Judge's findings and recommendations and allows the motion to dismiss. The complaint shall be dismissed as to all defendants. Donald Oldham having never been served, the complaints against him is dismissed for failure to make service.

*FINDINGS AND RECOMMENDATIONS ON DEFENDANTS MOTIONS TO DISMISS*

ALEXANDER, United States Magistrate Judge.

These motions have been referred to this Court by Order of Reference. The defendants move to dismiss each count of the plaintiffs' Consolidated Amended Complaint on a various grounds. The factual background is culled from the allegations of the complaint, which the Court takes as true for the purposes of the motions to dismiss under Fed.R.Civ.P. 12(b)(6). *See Lessler v. Little,* 857 F.2d 866, 867 (1st Cir.1988), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989) (citations omitted). This Court will not dismiss a count for failure to state a claim unless "it appears beyond doubt that [plaintiffs] can prove no set of facts [that] would entitle [them] to relief." *Id.* (citations omitted).

FACTUAL BACKGROUND
*Plaintiffs*

Plaintiff Laurel Catania purchased 500 shares of stock in the defendant Stratus Computer, Inc. (Stratus) on August 23, 1989. Plaintiff Stephen DelGrasso purchased 200 shares of Stratus stock on August 18, 1989. Plaintiff John Garabidian purchased 200 shares of Stratus stock on August 28, 1989. Plaintiff Bruce Wilhelmy purchased 1,000 shares of Stratus stock on September 15, 1989. Plaintiff Elliot Shwartz purchased 100 shares of Stratus stock on August 9, 1989. These plaintiffs bring suit on behalf of themselves and a class of all who purchased shares of Stratus stock between July 25, 1989, and September 19, 1989. Plaintiff Steven D. Bergman brings his action as a derivative suit on behalf of Stratus.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                               Page 2
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)
**(Cite as: 1992 WL 73555 (D.Mass.))**

*Defendants*

Stratus is a Massachusetts corporation. It manufactures and sells fault tolerant computer systems, used in automatic teller machine networks and securities trading systems, among other applications. Defendant William E. Foster is President, Chief Executive Officer and Chairman of the Board of Stratus. Defendant Gary E. Haroian is Senior Vice President of Finance and Administration, Chief Financial Officer and Treasurer. Defendant Robert Freiburghouse is Senior Vice President of Engineering. Defendant Robert Donahue is Vice President and Controller. Defendant William H. Thompson is Senior Vice President of Marketing. Defendant J. Donald Oldham is Vice President. Defendants Alexander V. D'Arbeloff, Robert M. Morrill, Paul J. Ferri, Gardner C. Hendrie and J. Burgess Jamieson are directors of Stratus.

*Facts*

Stratus has been a highly successful company in the computer industry. Stratus sells its products both internationally and domestically. The domestic channels for its sales are under distribution agreements with IBM Corporation (IBM) and Olivetti & Co., S.P.A. (Olivetti). In 1988, the sales to IBM accrued to 32% of Stratus's revenues, while the sales to Olivetti made up 8% of revenues.

*2 Since 1982, Stratus has grown annually from 40% to 50%. In the April 3, 1989, edition of *Business Week,* defendant Foster predicted 30% growth for the third quarter of 1989. In a Letter to Shareholders in the Annual Report for the fiscal year ended January 1, 1989, which was disseminated in late March of 1989, defendant Foster expressed confidence and optimism in Stratus's performance and growth. The statement mentioned historical increases in growth and emphasized the unique aspects of Stratus, as well as its relationship with IBM, as attributes. The statement discussed efforts to build sales through product development. The statement highlighted the telecommunications industry, declaring that Stratus expected to exceed the projected industry growth rate of 25%, due to its unique attributes. The statement recounted past international growth, and expressed the expectation that the same international growth rate would continue in 1989. The statement represented that Stratus's "products are in greater demand than ever before," and asserted as "fact" that Stratus was "positioned to achieve even greater long term success." *Consolidated Amended Complaint* ¶ 36. On March 27, 1989, Prudential-Bache Securities, Inc. issued a report quoting defendant Haroian as stating that "the company feels that a 40%-60% [annual growth] is sustainable for the long term." *Id.* ¶ 37.

As growth had continued in the first quarter, defendant Foster made statements to the *Origin Universal News Service* on April 25, 1989, and to *The Boston Globe* on April 26, 1989, discussing that growth. He emphasized Stratus's international performance, noting that it offset softness in the domestic market. He stated that "we remain confident in our continued growth both domestically and internationally." *Id.* ¶ 38.

Stratus's Form 10-Q for the quarter ended April 2, 1989, depicted an increase in net revenues of 41%. The defendants attributed the increase to "the growth in the marketplace" and "the rapidly growing customer base." Financial analysts stated that the first quarter results concurred with their projections.

On May 2, 1989, defendant Foster represented to *The Boston Globe* that domestic sales had slowed, but that the strength of Stratus's other markets was such that there would be no overall slowing down.
On May 15, 1989, *Computer World* reported Stratus's growth in the Pacific Rim, noting that Stratus expected the same growth in 1989.

In a July 29, 1989, press release announcing earnings for the second quarter of 1989, Foster emphasized those aspects that had contributed to the growth, noting an increase in customer accounts, both domestically and internationally. The plaintiffs contend that this statement, coupled with projections of a 30% increase in earnings, was materially misleading, because Stratus knew or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)
**(Cite as: 1992 WL 73555 (D.Mass.))**

recklessly disregarded indications that a decrease in the domestic market would make the overall business outlook inaccurate.

*3 Revenues and income for the second quarter and for the six months of the first two quarters of 1989 increased by greater than 30%. On August 4, *Value Line* estimated that Stratus's 1989 sales would reflect a 34% increase over 1988 sales. It noted a 25% rate of growth in the United States, stating that sales through IBM were expanding at a rate of approximately 45%.

The complaint alleges that, during the class period, Stratus was in contact with professional participants in the stock market and that the individual defendants periodically provided information to analysts at meetings. Stratus confirmed the reasonableness of the analysts' estimates for 1989, at these meetings, including at a meeting on September 12, 1989, at Cowen & Co., in New York City. On September 17, 1989, *The New York Times* estimated revenues at $360 million for the year.
By late July of 1989, the complaint alleges, the defendants knew or recklessly disregarded that projected levels of sales were not attainable.

On September 18, 1989, the defendants announced that revenues and earnings for the third quarter would not meet expectations, due to weakness in the domestic market. They indicated a 20% to 25% rate of growth in the short term. Dow Jones, *Business Week* and *McGraw Hill News* reported this information. *Value Line* reduced its earnings estimates for 1989. The price of Stratus's stock fell from $33- 1/2 on September 15, 1989 to $26. Third quarter earnings ultimately released on October 20, 1989, indicated an increase in earnings of only 12%, due to a weak domestic market.

Plaintiffs allege that the directors made several sales of Stratus stock with material knowledge of the decline in growth. Defendant Oldham sold 2,825 shares on September 5 and 14. Defendant Thompson sold 3,000 shares on August 25. Defendant Donahue sold 1,807 shares on August 24. Defendant Freiburghouse sold 28,938 shares on August 1 and 30,000 shares on May 12.

ANALYSIS
*Count I*

Count I alleges that the defendants made materially misleading statements that would create the impression that Stratus was growing at a 30% rate, when the defendants knew or recklessly disregarded indications that such a growth rate was not attainable. Count I claims that these misleading statements, made with knowledge of their falsity or reckless disregard for the truth, violated sections 10(b) and 20 of the Securities and Exchange Act, as well as Rule 10b-5, promulgated by the Securities and Exchange Commission. Stratus and each of the individual defendants, except defendant Oldham move to dismiss this count. Their primary contention is that the count fails to satisfy the pleading requirements of Rule 9(b).

According to Rule 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The First Circuit has identified three purposes behind this rule:

*4 (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations.

*New England Data Services., Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir.1987). Because the danger of strike suits is great in cases alleging securities fraud, this circuit will construe Rule 9(b) strictly in that context. *Id.* at 288; *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991).

Under Rule 9(b), while the pleadings need not prove the case, they "must 'specif[y] ... the time, place and content of .. [each] alleged false representation.' " *Konstantinakos v. Federal Deposit Ins. Corp.,* 719 F.Supp. 35, 38 (D.Mass.1989) (quoting *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 229 (1st Cir.1980)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)

**(Cite as: 1992 WL 73555 (D.Mass.))**

). The First Circuit has stated that Rule 9(b) "requires specification of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty,* 633 F.2d at 228, *quoted in New England Data Services,* 829 F.2d at 288. The pleadings, however, must provide a minimal foundation of indicia as to the misleading qualities of the statements. *See id.* (pleadings failed to satisfy Rule 9(b), because "the complaint does not explain what was misleading about any of the challenged statements"); *Wittenberg v. Continental Real Estate Partners, LTD-74A,* 478 F.Supp. 504, 508 (D.Mass.1979) (complaint must "state how each statement amounted to a misrepresentation.") (citation omitted), *aff'd per curiam,* 625 F.2d 5 (1st Cir.1980). The First Circuit has recently stated that the complaint must include "factual allegations that would support a reasonable inference that adverse circumstances existed ... and were known and deliberately disregarded by defendants." *Romani,* 929 F.2d at 878. "The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Id.* (citing *Wayne Investment v. Gulf Oil Corp.,* 739 F.2d 11, 13-14 (1st Cir.1984); *New England Data Services,* 829 F.2d at 288); *see also In re Healthco International, Inc.,* Civil Action No. 91-10710-MA, Memorandum and Order at 14 n. 9 (D.Mass. Nov. 7, 1991). Thus, the complaint may not rest on mere allegations and conclusions, *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985) ; nor may it be so groundless in fact that it proceeds only on mere "information and belief." *See Driscoll v. Landmark Bank for Sav.,* 758 F.Supp. 48, 51 (D.Mass.1991) (citing *Wayne,* 739 F.2d at 14).

The complaint alleges statements attributable to the nominal defendant Stratus and defendants Foster and Haroian that are sufficiently specific to satisfy the time, place and content requirements. As to defendants Donahue, Freiburghouse and Thompson, however, the complaint does not allege anything except vague connections by virtue of their positions. Merely being a director or officer is not ground for imposition of liability under § 10(b). *Loan v. Federal Deposit Ins. Corp.,* 717 F.Supp. 964, 968 (D.Mass.1989). Rule 9(b) requires specification of which defendants are accused of performing what acts. *Hayduk,* 775 F.2d at 443; *Loan,* 717 F.Supp. at 968 ("[w]here multiple defendants are involved, each person's role in the alleged fraud must be particularized in order to satisfy Rule 9(b)"); *see also Konstantinakos,* 719 F.Supp. at 39 (complaint dismissed, *inter alia,* because there were no allegations as to the roles of each individual defendant). On this basis, alone, this Court should dismiss Count I as to defendants Donahue, Freiburghouse and Thompson.

*5 As to the other defendants, while the statements alleged to be fraudulent are set out in the complaint according to the time, place and content requirements, they do not meet the standard recently set by the First Circuit in *Romani.* Beyond the time, place and content requirement, the complaint must allege adverse circumstances that were known and disregarded. *Romani,* 929 F.2d at 878. The plaintiffs, here, do not state any facts that would serve as a starting point on which to build a case of knowing or reckless disregard of adverse circumstances. [FN1] Rather, the complaint is alleged on mere "information and belief." The First Circuit has circumscribed the use of this manner of pleading fraud in the most explicit terms. [FN2]

As Magistrate Judge Ponsor recently noted in a similar case:

The allegations of fraud here are so generic that [they] could have been drafted by any competent practitioner generally familiar with securities fraud case law, without any independent knowledge of defendants' conduct, simply by collating language from leading cases with excerpts from defendants' ... 10-Q forms, annual reports and press releases.

*Wilkes v. Heritage Bancorp, Inc.,* 1990 WL 263612 (D.Mass.1990). Courts in this district have repeatedly dismissed complaints that merely quote company statements or predictions as supporting facts for fraud. *See, e.g., Driscoll,* 758 F.Supp. 48; *Akerman v. Bankworcester Corp.,* 751 F.Supp. 11 (D.Mass.1990); *Loan,* 717 F.Supp. at 967. Such an exiguous body of factual support will not pass

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                       Page 5
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)

**(Cite as: 1992 WL 73555 (D.Mass.))**

muster. Count I fails to meet the requirements of Rule 9(b).

*Count II*

Count II alleges that the defendants Donahue, Freiburghouse, Oldham and Thompson traded Stratus stock on inside information, in contravention of sections 10(b) and 20(A)(a) of the Securities and Exchange Act and Rule 10b-5. Defendants Donahue, Freiburghouse and Thompson move this Court to dismiss Count II.

The defendants first contend that the Court should dismiss Count II for failure to comply with Rule 9(b). This Court finds persuasive the defendants' argument that Rule 9(b) is applicable. In *Hayduk*, the First Circuit indicated that Rule 9(b) applies in any case where " '*fraud lies at the core of the action.*' " *Hayduk*, 775 F.2d at 443 (quoting *Lopez v. Bulova Watch Co., Inc.*, 582 F.Supp. 755, 766 (D.R.I.1984)) (emphasis in original). The plaintiff is essentially arguing that the defendants engaged in a conspiracy to defraud. As Rule 10b-5 states, it is unlawful:

(c) To engage in any act, practice, or course of business which operates or would operate as a *fraud or deceit* upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (emphasis added). As one court noted, "Congress ... amended the Exchange Act to expressly provide a private right of action for contemporaneous buyers and sellers asserting *claims of fraud committed through insider trading.*" *Elysian Federal Savings Bank v. First Interregional Equity Corp.*, 713 F.Supp. 737 (D.N.J.1989). Thus, it would appear that insider trading claims demand application of Rule 9(b).

*6 Having determined that Rule 9(b) applies, Count II should be dismissed against defendants Donahue, Freiburghouse and Thompson for the same reasons as Count I. [FN3] The factual allegations simply do not make reference to them, except to identify their status. There is no allegation as to what information they knew but did not disclose.

Defendants Donahue, Freiburghouse and Thompson also argue for dismissal on the grounds that none of the plaintiffs traded securities "contemporaneously" with them, as required under the Securities and Exchange Act. *See* 15 U.S.C. § 78t-1(a). Judge McNaught has ruled out an interpretation of "contemporaneous" that would include purchases by the plaintiffs *before* the defendants. *Backman v. Polaroid Corp.*, 540 F.Supp. 667, 670 (D.Mass.1982); *see also Abelson v. Strong*, 644 F.Supp. 524, 527 (D.Mass.1986) (allegations that plaintiffs purchased "during the period of market manipulation" were not sufficient to confer standing on plaintiffs to bring insider trading suit). He also refused to include within that term purchases that occurred four days (two trading days) after a defendant's sale. *Backman*, 540 F.Supp. at 671. The facts of that case would bar all claims except plaintiff Garibidian's claim against defendant Thompson, as Garibidian purchased within three days (one trading day) of Thompson's sale. The defendants argue persuasively, however, that the logic of Judge McNaught's decision requires an interpretation of "contemporaneous" to mean "same day." [FN4] Under such an interpretation, none of the plaintiffs would have standing to bring the class suit under Count II.

*Count III*

Count III is a more cursory version of Count I, alleging that the defendants other than the derivative director defendants engaged in negligent misrepresentation by refusing to exercise reasonable care in the statements they made. This assertion appears to relate back to the allegations that the defendants acted in reckless disregard of indications that earnings would decrease. What these indications were is not clear. Count III is even less particular than Count I. The defendants move to dismiss it.

This district has clearly held that Rule 9(b) applies to claims of negligent misrepresentation. *Howard v. Cycare Systems, Inc.*, 128 F.R.D. 159 (D.Mass.1989); *Morgan v. Financial Planning*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                   Page 6
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)
**(Cite as: 1992 WL 73555 (D.Mass.))**

*Advisors,* 701 F.Supp. 923 (D.Mass.1988); *Flier v. Billingsley,* 1988 WL 92465 (D.Mass.1988). The same rule against pleadings on "information and belief" and the same policy against allowing "strike suits" apply to negligent misrepresentation claims as apply to outright claims of fraud. *Howard,* 128 F.R.D. at 162 (quoting *Wayne,* 739 F.2d at 13-14); *Simcox v. San Juan Shipyard, Inc.,* 754 F.2d 430, 439 (1st Cir.1985). Furthermore, without the duties imposed by the securities laws, it is unclear upon what this claim is based. The factual statements appear to have been true when made, and the other statements are "statements of opinion [or] of conditions to exist in the future," which are not actionable under Massachusetts law. *Morgan,* 701 F.Supp. at 927 (quoting *Pepsi Cola Metropolitan Bottling Co. v. Pleasure Island, Inc.,* 345 F.2d 617, 622 (1st Cir.1965)). Massachusetts law, moreover, generally imposes a requirement of privity in order to bring a claim of negligent misrepresentation. *Capitol Indemnity Corp. v. Freedom House Development Corp.,* 487 F.Supp. 839, 842 (D.Mass.1980). It is unclear how the plaintiffs in this case could meet that requirement, given that they are merely purchasers on a public stock exchange. *See, e.g., In re Consumers Power Company Securities Litigation,* 105 F.R.D. 583, 596-98 (E.D.Mich.1985) (stock purchasers lacked privity and, thus, could not sue for negligent misrepresentation). Thus, Count III should be dismissed.

*Count IV*

*7 Count IV is a derivative suit brought by plaintiff Bergman on behalf of Stratus for breach of fiduciary duty to Stratus by the individual defendants. The defendants invoke four grounds for dismissal of this count: (1) failure to meet Rule 9(b)'s particularity requirement; (2) failure to meet Rule 8(a)'s pleading requirement; (3) failure of the plaintiff to plead with particularity the circumstances excusing demand on the corporation, as required by Rule 23.1; and (4) failure to verify the complaint, as required by Rule 23.1. Each of these grounds supports dismissal.

The defendants' first argument is that Rule 9(b) applies and that plaintiff Bergman has not complied with it. Oddly, plaintiff Bergman does not respond to this argument, but merely incorporates by reference the arguments of the other plaintiffs with regard to Rule 9(b) under the other counts of the complaint. This Court sees nothing to rebut the defendants' arguments.

Judge Keeton has stated that Rule 9(b)'s particularity requirement "extends to averments of fraud or mistake, whatever may be the theory of legal duty-- statutory, tort, contractual, or *fiduciary.* " *Shapiro v. Miami Oil Producers, Inc.,* 84 F.R.D. 234, 236 (D.Mass.1979) (emphasis added); *see also Hayduk,* 775 F.2d at 443 ("where fraud lies at the core of the action, Rule 9(b) applies"). If the breach of fiduciary duty derives from conduct that is negligent, rather than fraudulent, however, Rule 9(b) would not apply. *Shapiro,* 84 F.R.D. at 236. That the breach of fiduciary duty alleged here derives from conduct that is fraudulent, and not merely negligent, is plain from the complaint. Plaintiff Bergman claims: that each of the directors "participated in, knew of, and was on notice of the wrongful and illegal conduct" (*Consolidated Amended Complaint* ¶ 82(e)); that the directors "knowingly engaged in self-dealing from which they profited personally" (*Id.* ¶ 82(f)); and that the defendants' conduct violated their fiduciary duties of candor and loyalty "requir[ing] them to disseminate truthful information" (*Id.* ¶ 83). The derivative count plainly asserts the sort of claim for which Rule 9(b) contemplates the application of its particularity requirement.

Having determined that Rule 9(b) applies, it is immediately apparent that Count IV does not comply with the rule. The allegations are vague and amorphous. It is not at all clear which defendants are alleged to have performed what specific acts that would constitute a violation of fiduciary duty. *See Hurley v. Federal Deposit Ins. Corp.,* 719 F.Supp. 27, 31 (D.Mass.1989) ("Where multiple defendants are involved, each defendant's role in the fraud must be particularized.... This requirement serves to place each defendant on notice of what role he is alleged to have played in the fraud.") (citations omitted); *Margaret Hall*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 7
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)
**(Cite as: 1992 WL 73555 (D.Mass.))**

*Foundation, Inc. v. Atlantic Financial Management, Inc.,* 572 F.Supp. 1475, 1481 (D.Mass.1983) ("In a securities fraud case ..., it is clear that the complaint should 'particularize as to each ... of the defendants the activities for which the plaintiff seeks to hold them accountable.' ") (quoting *Lerman v. ITB Management Corp.,* 58 F.R.D. 153, 156 (D.Mass.1973)). Count IV only discusses the defendants in collective terminology, making no reference to any particular act of any individual defendant.

*8 Beyond the vague allegations of participation, implication, knowledge and dissemination there is no reference to adverse circumstances that would provide a foundation upon which to build these charges. While the charges seem to stem from Counts I through III, five of the six directors sued under Count IV are in no way implicated in Counts I through III. It is, thus, by no means clear whom plaintiff Bergman alleges to have done what. Not only does Count IV fail to provide the defendants with the notice requisite to the preparation of meaningful responses, but the danger of holding the individual defendants *in terrorem* and subjecting them to a frivolous suit that might likely injure their reputations is high. *See New England Data Services,* 829 F.2d at 289; *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539, 552 (1975), *reh'g denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975). Thus, Count IV warrants dismissal under Rule 9(b).

The defendants also argue that Count IV fails to comply even with the basic pleading requirements of Rule 8(a) and, thus, should be dismissed under Rule 12(b)(6) for failure to state a claim. Their argument on this ground is also persuasive. Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a). As the First Circuit has stated:

While a complaint need only set out 'a generalized statement of facts,' there must be enough information 'to outline the elements of the pleaders' claim.' ... More detail is required than a plaintiff's bald statement 'that he has a valid claim of some type,' and courts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened....' "

*Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 1357). The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 85 (1957).

Nowhere does Count IV charge the outside directors with any specific wrongdoing. Rather, Count IV seems to implicate them only because of their status as directors. That tenuous connection, however, is an insufficient basis for alleging a cause of action. *Cf. Konstantinakos,* 719 F.Supp. at 39 (mere status as directors is insufficient basis to support cause of action for securities fraud in which directors did not participate); *Schmid v. National Bank of Greece, S.A.,* 622 F.Supp. 704, 712 (D.Mass.1985), *aff'd,* 802 F.2d 439 (1st Cir.1986) ("An officer of a corporation does not incur personal liability for a tort committed by the corporation or by another corporate officer merely by virtue of the office which he holds in the corporation.") (citations omitted). As Judge Tauro has noted, where a complaint alleges "violation of ... fiduciary duties" without "attempt[ing] to delineate among the defendants their participation or responsibilities in the activities which are the subject of th[e] suit," it does not give the defendants the notice required of either Rule 8(a) or Rule 9(b). *Lerman,* 58 F.R.D. at 155 & n. 2 (D.Mass.1973).

*9 Yet another reason for dismissing Count IV is the failure of plaintiff Bergman to make a demand on the board of directors that the corporation bring the lawsuit. Rule 23.1 requires that, in a derivative action, the complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ..., and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1. The First Circuit has explained:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 8
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)

**(Cite as: 1992 WL 73555 (D.Mass.))**

The purpose of the demand requirement is, of course, to require resort to the body legally charged with conduct of the company's affairs before licensing suit in the company's name by persons not so charged. Given the expense of litigation and the normal presumptions running in favor of those acting for the company, this seems only reasonable.

*Heit v. Baird,* 567 F.2d 1157, 1162 n. 6 (1st Cir.1977). Thus, the particularity requirement under Rule 23.1 "is not a technical rule of pleading, but one of substantive right." *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 263 (1st Cir.1973), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973) (quoting *Bartlett v. New York, N.H. & H.R.R.,* 221 Mass. 530, 538, 109 N.E. 452, 456 (1915)).

There are two phases of the demand requirement. Not only must any reasons excusing demand satisfy the substantive state law, but Rule 23.1 imposes an independent federal requirement that such reasons be pled with particularity. *Tural v. Rogatol Distributors, Inc.,* No. 91-1472 (1st Cir. Nov. 27, 1991). In pleading the reasons excusing demand, the particularity rule requires more specificity of the complaint than mere allegations of "participation" or "acquiescence" in the challenged conduct. *Grossman v. Johnson,* 674 F.2d 115, 124 (1st Cir.1982), *cert. denied, Grossman v. Fidelity Municipal Bond Fund, Inc.,* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982), *reh'g denied,* 459 U.S. 1138, 103 S.Ct. 774, 74 L.Ed.2d 986 (1983). The factual allegations of the complaint must describe misconduct with specificity. *Heit,* 567 F.2d at 1161 (citing 3B Moore's Federal Practice ¶ 23.1.19, at 23.1-83 (Rev. ed. 1977)).

Much of the rationale behind this Court's finding that Count IV does not satisfy the Rule 9(b) particularity requirement applies *a fortiori* to the Rule 23.1 particularity requirement. In vague and conclusory fashion, Count IV asserts six reasons justifying demand futility, none of which have specific factual support in the complaint and one of which contradicts an earlier count in the complaint. According to the complaint, demand would be futile because:

(a) The acts complained of herein constitute violations of the federal securities and other federal laws and fiduciary duties owed by directors and officers and these acts are incapable of ratification;

(b) Each of the directors is implicated in the dissemination of the false and misleading statements and omissions alleged herein;

*10 (c) Each member of the Board of Directors had access to confidential financial information indicating Stratus' true and [sic] financial condition and prospects.

(d) Social, business and other relationships tie the officers and directors of Stratus to one another, and any legitimate 'independent' action by Stratus against any of the individual defendants would be impossible;

(e) Each of the current directors participated in, knew of, and was on notice of the wrongful and illegal conduct alleged herein; and

(f) Five of the six directors who comprise Stratus' board have been involved in trading in Stratus' common stock on the basis of material non-public information and will be personally liable for any wrongdoing, in that they knowingly engaged in self-dealing from which they profitted [sic] personally.

*Consolidated Amended Complaint* ¶ 82.

Starting with the most egregious deviation from Rule 23.1, item (f) stands in peculiar contrast to the conspicuous absence of five of the six directors from any of the other counts of the complaint, including Count II--the count alleging insider trading. Such a mysterious and vague assertion cannot satisfy the particularity requirement. Count II, moreover, fails to state a claim or meet the particularity requirement of Rule 9(b). *See supra.* Item (a) is also suspect, as this complaint fails to allege particular conduct that would violate the federal securities laws. What other federal laws may be implicated is unclear. [FN5]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 9
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)
**(Cite as: 1992 WL 73555 (D.Mass.))**

Finally, allowing a complaint to circumvent the demand requirement through allegations as vague and conclusory as items (b) through (e) would render the demand requirement nugatory. These items, in light of the factual allegations of the complaint, cannot be understood to allege particular misconduct by the individual directors nor particular circumstances specific to each director. "[S]tripped of these conclusory allegations, the facts set forth in the complaint" fail to "make out with sufficient particularity misconduct that would excuse a demand on directors." *Heit,* 567 F.2d at 1161 (citing 3B Moore's Federal Practice ¶ 23.1.19, at 23.1-83 (Rev. ed. 1977).

These allegations are similar to the one Judge Tauro found insufficient to satisfy Rule 23.1's particularity requirement in *Lerman.* In that case, the plaintiff alleged:

Demand upon the Fund to bring this action would be futile because those in control of the Fund are alleged wrongdoers. Statutes place such decisions in the directors and control of such an action would be subject to control of the wrongdoers, preventing diligent prosecution.

*Lerman,* 58 F.Supp. at 156 (quoting Complaint ¶ 24). The allegations in the case at bar have the same degree of particularity as the allegation in *Lerman. Kauffman* and *Heit* require more than such vague and conclusory allegations. [FN6]

Yet another ground for dismissing Count IV is Rule 23.1's verification requirement. Rule 23.1 states, in part: "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... the complaint shall be verified...." Fed.R.Civ.P. 23.1. Verification is another safeguard to ensure that complaints in derivative suits are well-grounded in fact and to prevent frivolous litigation. *Smachlo v. Birkelo,* 576 F.Supp. 1439, 1442 (D.Del.1983) (citations omitted). Plaintiff Bergman contends that his verification of the first complaint should excuse verification of the Consolidated Amended Complaint. The case law, however, stands against him. *See, e.g., Federal Deposit Ins. Corp. v. Kerr,* 637 F.Supp. 828, 843 (W.D.N.C.1986) (requiring verification of Second Amended Complaint); *Stein v. Aldrich* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,473, at 92,781 (S.D.N.Y.1980) (amended complaint "must be verified by plaintiff"). In this case, verification of the Consolidated Amended Complaint might have eliminated some of the discrepancies. Thus, on any of these grounds, Count IV should be dismissed.

*Conclusion*

\*11 In light of these findings, this Court recommends that Counts I, II, III and IV be dismissed as to all defendants except defendant Oldham, who has not filed a motion to dismiss.

> FN1. The complaint offers several statements of accurate historical facts regarding past growth, products and performance. These statements place Stratus in a positive light. There are also many statements of opinion and predictions offering an optimistic prognosis on the expected rate of growth. Some of the opinions and predictions are specifically quantifiable. *See Priest v. Zayre,* Civil Action No. 86-2411-Z, Memorandum of Decision at 5 (D.Mass. May 1, 1987). Nonparty statements by the media and financial analysts bolstered this optimistic impression. While the complaint gives the times, places and contents of statements made expressing confidence in the projected rate of Stratus's growth, it does not allege quantifiable information that the defendants could have known and disregarded. *Cf. Healthco,* Civil Action No. 91-10710-MA, Memorandum and Order at 14, n. 9 ("Plaintiffs aver no facts as to how Defendants' accounting system would or should have made them aware of any concrete financial figures for the fourth quarter before ... [defendant] announced its expected losses for the fourth quarter.") Without allegations of lack of reasonable basis, knowing falsehood or recklessness

Not Reported in F.Supp.                                                                                            Page 10
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)

**(Cite as: 1992 WL 73555 (D.Mass.))**

that satisfy Rule 9(b), the predictions are not actionable. *See Kirby v. Cullinet Software, Inc.,* 721 F.Supp. 1444, 1453-54 (D.Mass.1989).
The complaint merely leaves this Court to infer adverse circumstances from the rather vague charges of insider trading (which, as will be discussed *infra* under Count II, are inadequate). Notably, however, there are no allegations of sales of stock by defendants Foster and Haroian, the only defendants to whom the plaintiffs have attributed representations that would satisfy the time, place and content requirements. Charges that some defendants sold stock, while other defendants made optimistic projections about the company, clearly will not, without a particularly pled conspiracy, satisfy Rule 9(b). *Fingar v. Prudential-Bache Securities, Inc.,* 662 F.Supp. 1119, 1124 (E.D.N.Y.1987). Here, the plaintiffs seem to plead a conspiracy by knowledge, which is inadequate. *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.1990), *cert. denied,* 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (quoting *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 497 (7th Cir.1986) ("the case 'against an aider, abettor, or conspirator may not rest on a bare inference that the defendant must have had knowledge of the facts....' ").

FN2. *Romani,* 929 F.2d at 828 ("Where allegations of fraud are ... based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief."); *Hayduk,* 775 F.2d at 444 ("Without supporting facts regarding the circumstances surrounding the formation of the conspiracy to defraud plaintiffs or plaintiffs' basis for believing that a conspiracy existed for the purpose of defrauding them, the allegation becomes a conclusional accusation of the sort that is proscribed by Rule 9(b)."); *Wayne,* 739 F.2d at 14 (complaint may not proceed on mere "information and belief" without some independent factual basis for alleging fraud--"even when the fraud relates to matters peculiarly within the knowledge of the opposing party"); *see also Driscoll,* 758 F.Supp. at 51 ("Allegations in the form of mere conclusions, accusations, or speculation are not sufficient to meet Rule 9(b)'s particularity requirement without supporting facts surrounding the scheme to defraud or a basis for believing such a scheme existed.") (citing *Hayduk,* 775 F.2d at 444; *Wayne,* 739 F.2d at 14). As Judge Caffrey has stated: "Rule 9(b) does not require the plaintiff to present specific evidence; however, the plaintiff must identify some facts or circumstances to support the allegations of fraud...." *Id.* at 52.

FN3. This Court has not received a motion from defendant Oldham.

FN4. As Judge McNaught noted, the rationale for limiting recovery to those who traded during the same period of insider trading is that " '[n]on-contemporaneous traders do not require the special protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading with someone who has superior access to information.' " *Id.* at 670 (quoting *Fridrich v. Bradford,* 542 F.2d 307, 326-27 (6th Cir.1976) (Celebrezze, concurring)); *see also Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 94-95 (2d Cir.1981) (same). Judge Skinner cited *Backman* and *Wilson* with approval in *Abelson,* 644 F.2d at 527. In a more open-ended violation, such as large scale "tipping," this rationale would not apply, and the rule might be less restrictive. *See Backman,* 540 F.Supp. at 670 n. 1.

FN5. Item (a) would also encounter difficulties in the substantive prong of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)  
**(Cite as: 1992 WL 73555 (D.Mass.))**

Page 11

demand analysis. The assertion that the defendants violated federal statutes is an insufficient basis for excusing demand, at least under federal law. *Lewis v. Sporck,* 612 F.Supp. 1316, 1322-23 (N.D.Cal.1985). Nor does it matter that the directors would essentially have to sue themselves. *Id.*

FN6. Insofar as five of the six defendants are not named in the count alleging insider trading and insofar as that count does not pass muster, the substantive prong of the demand requirement also poses a major difficulty. The complaint fails to implicate a majority of the directors in wrongdoing. *See Datz v. Keller,* 347 Mass. 766, 196 N.E.2d 922, 923 (1964) (dismissing complaint for insufficiently making "allegations of fact that both a majority of the directors and the holders of a majority stock interest are in the group of wrongdoers, or under their control"), *cited in Houle v. Low,* 407 Mass. 810, 813 n. 3, 556 N.E.2d 51, 53 n. 3 (1990); *accord Jackson v. Stuhlfire,* 28 Mass.App.Ct. 924, 926, 547 N.E.2d 1146, 1148 (1990); *see also Hayden v. Perfection Cooler Co.,* 227 Mass. 589, 593, 116 N.E. 871, 873 (1917) (derivative plaintiff must make "specific allegations that the majority of the directors were wilfully disregardful of the interests of the corporation"). The language of these cases indicates that Massachusetts law would only excuse demand for harm caused to the corporation by a majority of the directors. Here, the complaint fails to allege conduct beyond "mere approval of corporate action, absent self-interest or other indication of bias." *Kauffman,* 479 F.2d at 264; *see also Heit,* 567 F.2d at 1162 ("As the complaint fails to set forth facts showing that a majority of the directors ... engaged in a facially improper transaction, we hold that the failure of the plaintiff to make a demand on the directors before commencing this suit was unexcused, and dismissal of the case for noncompliance with Rule 23.1 was proper."); *Lewis v. Graves,* 701 F.2d 245, 248 (2d Cir.1983) ( "absent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile").

Not Reported in F.Supp., 1992 WL 73555 (D.Mass.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.