# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE BIOPURE CORPORATION | ) | **Master Docket No. 1:04-cv-10177-NG** |
| DERIVATIVE LITIGATION | ) | **(Consolidated Derivative Action)** |
|  | ) |  |
|  | ) | **Assigned to: Judge J. Nancy Gertner** |
|  | ) |  |
| _____ | ) | **Magistrate Judge Alexander** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION
OF ISSUES FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292**

Jeffrey P. Fink (*pro hac vice*)
Caroline A. Schnurer
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: 619/525-3990

Douglas S. Johnston, Jr. (*pro hac vice*)
George E. Barrett (*pro hac vice*)
Timothy L. Miles (*pro hac vice*)
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue, North
Nashville, TN 37201
Telephone: 615/244-2202

Plaintiffs' Co-Lead Counsel

Mary T. Sullivan, BBO #487130
SEGAL ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA 02108
Telephone: 617/742-0208

Plaintiffs' Liaison Counsel

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................................1

II.     ARGUMENT ..................................................................................................................3

        A.      The Onerous Standard for Reconsideration and Its Very Limited Scope...............3

        B.      Defendants' Motion is Procedurally Defective and They are Not Entitled
                to Reconsideration as They Have Simply Rehashed Arguments Already
                Made and Rejected....................................................................................................5

        C.      Even if Defendants' Motion Was Not Procedurally Defective and They
                Had a Valid Basis for Reconsideration -- Which They Do Not -- Their
                Motion Should Nonetheless Be Denied .....................................................................6

                1.      It Was Not a Clear Error of Law to Afford Plaintiff the Reasonable
                        Inference from the Facts Plead that the Outside Directors Had
                        Knowledge of the Clinical Hold .....................................................................6

                2.      Defendants' Argument Concerning Whether the Outside Directors
                        Were "Inside" for Rule 23.1 Purposes is Meritless....................................10

                3.      The Court Did Not Commit a Clear Error of Law by Applying the
                        *Aronson* Test ...............................................................................................10

                4.      Defendants' Argument on a "Potential" Versus a "Substantial"
                        Likelihood Is a Non-Starter and Irrelevant .................................................12

                5.      Defendants' Argument on the SEC Allegations Is Irrelevant ....................13

        D.      Defendants Have Not Met the Burden for an Interlocutory Appeal Under
                28 U.S.C. §1292........................................................................................................13

III.    CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Angres v. Smallworldwide PLC*,
    94 F. Supp. 2d 1167 (D. Colo. 2000) ............................................................................. 9

*Benerofe v. Cha*,
    No. 14614, 1996 WL 535405 (Del. Ch. Sept. 12, 1996) ................................................. 13

*Cement-Lock v. Gas Tech. Ins.*,
    No. 05 C 0018, 2005 WL 2420374 (N.D. Ill. Sept. 30, 2005) ......................................... 11

*Cochran v. Quest Software, Inc.*,
    328 F.3d 1 (1st Cir. 2003) ............................................................................................ 3, 5

*Cosmas v. Hassett*,
    886 F.2d 8 (2nd Cir.1989) ............................................................................................... 9

*Davis v. Lehane*,
    89 F. Supp. 2d 142 (D. Mass. 2000) ....................................................................... *passim*

*Epstein v. Itron, Inc.*,
    993 F. Supp. 1314 (E.D. Wash. 1998) ............................................................................. 9

*Gonzalez Turul v. Rogatol Distrib., Inc.*,
    951 F.2d 1 (1st Cir. 1991) ......................................................................................... 10, 14

*In re Abbott Labs. Derivative S'holders Litig.*,
    325 F.3d 795 (7th Cir.2001) .......................................................................................... 11

*In re Aetna Secs. Litig.*,
    34 F. Supp. 2d 935 (E.D. Pa. 1999) ................................................................................. 9

*In re Ancor Commc'ns, Inc.*,
    22 F. Supp. 2d 999 (D. Minn. 1998) ............................................................................... 9

*In re Baxter Int'l S'holders Litig.*,
    654 A.2d 1268 (Del. Ch. 1995) ....................................................................................... 7

*In re Biopure Corp. Derivative Litig.*,
    No. 04-10177-NG, 2006 WL 775186 (D. Mass. Mar. 28, 2006) ............................. *passim*

*In re Cendant Corp. Derivative Action Litigation*,
    189 F.R.D. 117 (D.N.J. 1999) ........................................................................................ 11

*In re Clark-Franklin-Kingston Press, Inc.*,
    No. 90-11231 WF, 1993 WL 160580 (D. Mass. Apr. 21, 1993) ..................................... 13

*In re New Seabury Co. Ltd. P'ship*,
    No. 03-10745-DPW, 2004 WL 422728 (D. Mass. Mar. 5, 2004) ...................................... 3

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
    859 F.2d 1007 (1st Cir.1988) ........................................................................................... 14

*In re Symbol Techs. Secs. Litig.*,
    762 F. Supp. 510 (E.D.N.Y. 1991) .................................................................................... 7

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ...................................................................................................... 7

*McGillicuddy v. Clements*,
    746 F.2d 76 (1st Cir. 1984) .......................................................................................... 2, 14

*McSparran v. Larson*,
    No. 04 C 0041, 2006 WL 250698 (N.D. Ill. Jan. 27, 2006) ...................................... 11, 12

*Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc.*,
    899 F.2d 119 (1st Cir. 1990) ............................................................................................. 4

*Pavelic & LeFlore v. Marvel Entm't Group*,
    493 U.S. 120 (1989) ......................................................................................................... 13

*Rattner v. Bidzos*,
    No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ............................................... 8

*Rivera-Garcia v. Ana G. Mendez Univ. Sys.*,
    359 F. Supp. 2d 58 (D. P.R. 2005) ................................................................................. 4, 5

*S. Shore Gastrointerology v. Selden*,
    No. 032630BLS, 2004 WL 1431059 (Mass. Super. May 7, 2004) .................................... 7

*Sandoval Diaz v. Sandoval Orozco*,
    No. 01-1022 (JAG/GAG), 2005 WL 1501672 (D. P.R. June 24, 2005) ............................ 4

*Servants of Paraclete v. Does*,
    204 F.3d 1005 (1st Cir. 2000) ........................................................................................... 4

*Stanton v. Metro Corp.*,
    438 F.3d 119 (1st Cir. 2006) ............................................................................................. 6

*Vermont Pure Holdings Ltd. v. Nestle Waters N. Am., Inc.*,
    No. 03-11465 DPW, 2006 WL 839486
    (D. Mass. Mar. 28, 2006) .................................................................................................. 3

*Villanueva-Mendez v. Nieves Vazquez*,
    360 F. Supp. 2d 320 (D. P.R. 2005) ......................................................................... 3, 5, 6

*White v. Panic*,
  783 A.2d 543 (Del. 2001) ................................................................................................... 7

## STATUTES

28 U.S.C. §1292(b) ................................................................................................................. 13

## I.    INTRODUCTION

Plaintiffs respectfully submit this memorandum in opposition to Defendants' Motion for Reconsideration or, in the Alternative, Certification of Issues for Interlocutory Appeal Pursuant to 28 U.S.C. §1292 of this Court's opinion and order granting Plaintiffs' motion to amend and denying Defendants' motion to dismiss reported at *In re Biopure Corp. Derivative Litig.*, No. 04-10177-NG, 2006 WL 775186 (D. Mass. Mar. 28, 2006).  In the First Circuit and in this District, motions for reconsideration of interlocutory orders are highly disfavored, an extraordinary remedy, rarely granted and the party seeking reconsideration faces an onerous burden. As set forth in detail below, Defendants' motion is utterly without any merit whatsoever and should be summarily denied on multiple grounds.

First, the merits of the motion should not even be considered because Defendants have not met any of the very limited circumstances warranting consideration. This case has been pending for over two years and, in connection with the previous motions to dismiss and to amend, the parties, after assented-to motions to exceed the page limits under the local rules, spent 117 pages thoroughly addressing each and every conceivable legal and factual argument relevant to this litigation.  Defendants expended 61 pages advancing their arguments and the Court held oral argument in connection therewith. Unhappy with this Court's decision, Defendants may not, as their own case law makes clear and as they have done here, use a motion for reconsideration to "simply rehash[] the arguments set forth in [their] former [motion]. ***This is not enough to merit reconsideration***." *Davis v. Lehane*, 89 F. Supp. 2d 142, 148 (D. Mass. 2000)[1]; Defendants' Memorandum of Law in Support of Motion for Reconsideration or, in the Alternative, Certification of Issues for Interlocutory Appeal Pursuant to 28 U.S.C. §1292 ("Defs.' Mem.") at 3 n.1.  Because this is exactly what Defendants have done here, their motion is procedurally defective, they are not entitled to reconsideration and the Court should summarily deny the motion without getting to the merits.

---

[1]  Unless otherwise noted, all emphasis has been added and all internal citations omitted.

Second, even if reconsideration was procedurally appropriate (which it clearly is not), the motion should be denied nonetheless because Defendants have not met and cannot come close to meeting the onerous and heavy burden on a motion for reconsideration in this Circuit of demonstrating that this Court committed a clear error of law. As then Chief Judge Young pointed out in *Davis*, because of the need for finality, when faced with a motion for reconsideration, "'courts should be loathe'" to reconsider an interlocutory order and should not do so "'in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."'" 89 F. Supp. 2d at 147. Thus, the movant "'must set forth facts or law of a ***strongly convincing nature*** to induce the court to reverse [its] prior decision.'" *Id.* at 149. Defendants have not come close to meeting this burden.

Finally, Defendants have not met their heavy burden of demonstrating that this Court should take the extraordinary step of granting interlocutory certification pursuant to 28 U.S.C §1292. Interlocutory appeals are granted only in **"*exceptional circumstances*"** and only where the appeal presents "***difficult and pivotal questions of law not settled controlling authority***." *McGillicuddy v. Clements*, 746 F.2d 76, 77 n.1 (1st Cir. 1984). There are no exceptional circumstances which warrant immediate appellate review. Further, there are no difficult or pivotal questions of law which are not settled by controlling authority as evidenced by the Court's decision which was supported by clear, controlling authority. Defendants have not satisfied their burden to show that this Court should grant interlocutory certification.

In sum, Defendants simply disagree with this Court's decision and are venting their frustration by rehashing arguments already made. This is not a basis for reconsideration. Furthermore, even if Defendants had presented a valid basis for this Court to invoke one of the narrowly limited exceptions to reconsideration, Defendants have failed to meet their onerous burden on demonstrating this Court committed a clear error of law. For the reasons explained below and based on the entire record in this case, Defendants' motion should be denied in its entirety.

## II.    ARGUMENT

### A.    The Onerous Standard for Reconsideration and Its Very Limited Scope

Because of the need for finality, motions for reconsideration of an interlocutory order are highly disfavored, an extraordinary remedy, rarely granted and the party seeking reconsideration faces an onerous burden. *See*, *e.g.*, *Villanueva-Mendez v. Nieves Vazquez*, 360 F. Supp. 2d 320, 324 (D. P.R. 2005) (noting that "in the interest of finality" motions for reconsideration are "'***extraordinary remedies*** which should be used sparingly'" and are "'***typically denied***'").  Indeed, as Judge Young pointed out in *Davis*:

> A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment. ... ***The Supreme Court, however, has admonished that "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice*.'"**

89 F. Supp. 2d at 147.

> Moreover, as the First Circuit recently made clear:

> Litigation is not a game of hopscotch. It is generally accepted that a party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling. This principle has deep prudential roots. Litigants normally must frame the issues in a case before the trial court rules. After that point, a litigant should not be allowed to switch from theory to theory like a bee in search of honey. ***Against this backdrop, the district court scarcely can be said to have abused its discretion in refusing to reconsider its decision based on the plaintiff's newly raised argument*.**

*Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003).

Therefore, "a court should grant a motion for reconsideration of an interlocutory order ***only*** when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a ***clear error of law*** in the first order." *Davis*, 89 F. Supp. 2d at 147.  *See also Vermont Pure Holdings Ltd. v. Nestle Waters N. Am., Inc.*, No. 03-11465 DPW, 2006 WL 839486, at *3 (D. Mass. Mar. 28, 2006) (same); *In re New Seabury Co. Ltd. P'ship*, No. 03-10745-DPW, 2004 WL 422728, at *4 (D. Mass. Mar. 5, 2004) (same).

Moreover, "[t]hese exceptions are 'narrowly configured and seldom invoked.'" *Ibid.* Thus, there are numerous circumstances under which a motion for reconsideration may not be invoked. For example, a party may not use "'the motion for reconsideration ... [as] an opportunity for a party to improve upon his arguments or try out new arguments; nor is it properly a forum for a party to vent his dissatisfaction with the Court[].'" *Davis*, 89 F. Supp. 2d at 149. Nor may a party "simply rehash[] the arguments set forth in the former [motion]. ***This is not enough for reconsideration***." *Id.* at 148. Indeed, the First Circuit has made it clear that a motion for reconsideration "does not allow the losing party to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." *Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990). *See also Rivera-Garcia v. Ana G. Mendez Univ. Sys.*, 359 F. Supp. 2d 58, 60 (D. P.R. 2005) ("the Court established [in *Nat'l Metal*] that a motion for reconsideration was not a means for a losing party to rehash arguments previously considered and rejected"). *See also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (1st Cir. 2000) (holding that "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law," but is ***not appropriate*** as a "vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments[] or supporting facts which were available at the time of the original motion").

Furthermore, even when a party sets for a proper basis for reconsideration (which Defendants have not done here) and asserts, as here, that the Court made a clear error of law, the movant faces an exacting and onerous burden in seeking reversal on the merits. The movant "'must set forth facts or law of a ***strongly convincing nature*** to induce the court to reverse [its] prior decision.'" *Davis*, 89 F. Supp. 2d at 149. Thus, "[a] motion for reconsideration should be granted ***only*** if the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Sandoval Diaz v. Sandoval Orozco*, No. 01-1022 (JAG/GAG), 2005 WL 1501672, at *2 (D. P.R. June 24, 2005).

4

### B.    Defendants' Motion is Procedurally Defective and They are Not Entitled to Reconsideration as They Have Simply Rehashed Arguments Already Made and Rejected

Through their prior briefing on the motions to dismiss and to amend, Defendants had 61pages to make their arguments in addition to oral argument.  Without question, every single argument advanced in their motion for reconsideration was addressed by the parties and considered by the Court.  In their instant motion, Defendants rehash the following issues: (1) the inference concerning the outside directors and their presumption of disinterest; (2) the applicable pleading standard under Rule 23.1 including issues that are questions of fact; (3) the proper demand futility standard under Delaware law; (4) the potential or substantial likelihood of liability of Defendants; and (5) the Securities and Exchange Commission ("SEC") allegations.

Suffice to say, each and every one of these issues was thoroughly addressed by the parties in their 117 pages of briefing on the previous motions, including Defendants in their 61 pages.  Moreover, their arguments were additionally addressed in oral argument on the motions.  Because Defendants are simply rehashing arguments previously made, they are not entitled to reconsideration.  *See generally* Defendants' Motion to Dismiss the Verified Consolidated Amended Shareholder Derivative Complaint (Docket No. 20); Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Verified Consolidated Amended Shareholder Derivative Complaint (Docket No. 28); Defendants' and Howard Richman's Opposition to Plaintiffs' Motion for Leave to Amend (Docket No. 32).  *See also Does*, 204 F.3d at 1012; *Nat'l Metal*, 899 F.2d at 123; *Rivera-Garcia*, 359 F. Supp. 2d at 60; *Davis*, 89 F. Supp. 2d at 149.  Moreover, and while it is certainly not the case, even if some of these arguments were new (which they clearly are not), Defendants may not now raise them for the first time on reconsideration.  *Cochran*, 328 F.3d at 11; *Nat'l Metal*, 899 F.2d at 123.   In short, Defendants simply disagree with the Court's decision and are now venting their frustration and rearguing that which was already considered hoping to get a second bite at the apple.  This is not a valid basis for reconsideration.   Accordingly, Defendants' motion should be summarily denied as procedurally defective without consideration of the merits.  *Villanueva-Mendez*, 360 F. Supp. 2d

at 325 ("To the extent that the motion for reconsideration merely requests the Court to revisit Plaintiffs' previous allegations, all of which were carefully considered by the Court prior to its issuance of its Opinion & Order, the request should be refused.").

C.    **Even if Defendants' Motion Was Not Procedurally Defective and They Had a Valid Basis for Reconsideration -- Which They Do Not -- Their Motion Should Nonetheless Be Denied**

Even if Defendants' motion was not procedurally defective and they had articulated a valid basis for reconsideration, their motion should still be denied. While Defendants may not agree with the Court's conclusions in its well-reasoned and published opinion, this is not a basis for reconsideration. *Villanueva-Mendez*, 360 F. Supp. 2d at 326 ("A motion for reconsideration is not the means to simply raise a point of disagreement between the court and the litigant."). Here, the only argument Defendants advance (albeit erroneously) is that this Court committed clear errors of law. This contention is simply meritless. As noted above, on this issue Defendants "'must set forth facts or law of a ***strongly convincing nature*** to induce the court to reverse [its] prior decision.'" *Davis*, 89 F. Supp. 2d at 149. Defendants have not come close to doing so. As demonstrated below and for all the reasons previously set forth, this Court unquestionably did not commit clear errors of law on the issues that Defendants have rehashed here.

1.    **It Was Not a Clear Error of Law to Afford Plaintiff the Reasonable Inference from the Facts Plead that the Outside Directors Had Knowledge of the Clinical Hold**

Defendants' argument that it was a clear error of law to afford Plaintiffs a reasonable inference at this stage of the litigation concerning the outside directors' knowledge of the Food and Drug Administration ("FDA") clinical hold is not well-taken. *See Biopure*, 2006 WL 775186, at *2. It is well-settled in this Circuit that in deciding a motion to dismiss, the court ***must*** "accept as true the well-pleaded factual allegations of the complaint, ***drawing all reasonable inferences in favor of the non-moving party***." *Stanton v. Metro Corp.*, 438 F.3d 119, 123 (1st Cir. 2006). Moreover, in deciding a motion to dismiss a derivative action,

Delaware law is, of course, in accord.  *White v. Panic*, 783 A.2d 543, 549 (Del. 2001) ("At the motion to dismiss stage of the litigation, '[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged ...'").[2]  Thus, it certainly cannot be said this Court committed a clear error of law by affording Plaintiffs this reasonable inference from the well-pled facts in the complaint.

Indeed, directly on point is *In re Symbol Techs. Secs. Litig.*, 762 F. Supp. 510, 515 (E.D.N.Y. 1991), in which a federal court applying Delaware law on this exact issue held:

> [T]he complaint in this action charges the **outside directors with knowledge of information which is central to the usual and necessary management of the corporation's business affairs**, not the deceptive practices of insiders. Second, the issue presented herein **is whether the directors, by virtue of their fiduciary status, can be charged with such knowledge for purposes of establishing demand futility, not to establish liability at trial. At least for this purpose the inference should be allowed because the precise extent of each director's knowledge, along with information about when and how he received it, is peculiarly within the possession of the defendants and cannot be known to plaintiff prior to discovery**.

Thus, Defendants' argument that an inference of knowledge "has no applicability in a Rule 23.1 analysis" (Defs.' Mem. at 4) and that "such an inference is patently insufficient to plead demand futility" is clearly erroneous.  *Id.* at 8. [3]

---

[2]  Defendants cite to *White v. Panic* to show "the requisite level of particularized facts necessary in the demand futility context" (Defs.' Mem. at 7) and to illustrate "that board position alone cannot substitute for particularized facts demonstrating knowledge." *Id.* at 8.  As admitted by Defendants, the knowledge at issue in *White* concerned the chief executive officer's sexual harassment and not information pertaining to the company's core business.  Moreover, Plaintiffs agree that an off-handed remark by one director concerning the chief executive officer's propensities does not "support … a 'reasonable inference'" that the entire board of directors had knowledge of the officer's sexual harassment.  *Ibid.*  Unlike *White*, Defendants here admit that they knew of the FDA's communications and safety concerns regarding Hemopure®, Biopure Corporation's ("Biopure" or the "Company") core business, but deemed such information immaterial and continued to tout the Company's primary product.

[3]  Defendants improperly cite to *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), *In re Baxter Int'l S'holders Litig.*, 654 A.2d 1268 (Del. Ch. 1995) and *S. Shore Gastroninterology v. Selden*, No. 032630BLS, 2004 WL 1431059 (Mass. Super. May 7, 2004) in an attempt to once again argue that Plaintiffs have failed to meet the heightened pleading standard of particularly for demand futility.  *See* Defs.' Mem. at 8 n.6, 9 n.9.  As previously discussed, the Court already found that Plaintiffs had met the requisite pleading requirements and thus, resurrecting this argument in the instant motion is improper.

In addition, Defendants' arguments concerning "core business" and whether the clinical hold constituted the Company's core business are also clearly erroneous.[4] Here, Plaintiffs plainly pled that Biopure does primarily one thing - it makes Hemopure®, which is the Company's flagship product. ¶3.[5] *See also* Defs.' Mem. at 12 (conceding "Hemopure® is the Company's primary product"). Biopure's value is primarily (if not solely) determined by the prospects of getting Hemopure® approved for human use. ¶3. Accordingly, all information and communications concerning Hemopure® relates to the "core business." Thus, under well-established First Circuit and Delaware pleading jurisprudence and considering *Symbol Tech.*, directly on point, it was certainly not a clear error of law to afford Plaintiffs' this reasonable inference flowing from well-pled facts.

Moreover, Plaintiffs allege that as early as March 2003 the FDA informed Defendants that it had serious "safety concerns" for Hemopure® arising out of adverse event data from the Company's Phase III orthopedic surgery trial submitted with the Company's Biologic License Application ("BLA"). ¶¶6, 34. Defendants even admitted knowledge of the FDA's communications and safety concerns regarding Hemopure®, but deemed such information immaterial and continued to tout publicly the progress of Hemopure®. ¶¶7, 42. Only after being prompted by an inquiry by the SEC did Defendants admit, in part, that the FDA had expressed

---

[4] Defendants cite to *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) to support their argument that Delaware law does not recognize a "core business" exception to plead knowledge. Defs.' Mem. at 5-6. The facts in *Rattner*, however, do not lend themselves to a "core business" exception despite Defendants' twisted attempt to argue that if Delaware recognized this exception, then the *Rattner* court would have found that the audit committee members had knowledge because "the company's accounting is the 'core business' of the audit committee." *Id.* at 5. Defendants' attempted analogy fails. Here, it is undisputed that Hemopure® is Biopure's primary product, *i.e.*, core business, and thus, of great importance to the Company. Drawing all reasonable inferences in favor of Plaintiffs, it follows that any adverse information concerning Hemopure® would have been known by the entire Board of Directors (the "Board").

[5] All paragraph ("¶_") references are to Plaintiffs' Verified Consolidated Amended Shareholder Derivative Complaint (the "Complaint") unless otherwise noted.

"safety concerns" with Hemopure® and as a result, placed all trauma trials on clinical hold. *Id.* Thus, the Defendants were on notice that FDA approval of the BLA, which would allow the first commercial distribution, if any, of Hemopure® in the United States, was in serious jeopardy and would be delayed beyond Defendants' mid-2003 target date. ¶¶6, 34. Clearly, the FDA's denial of approval of the BLA would have a serious financial impact on Biopure. This is precisely the type of information which should be known by the Board in order to properly execute its duties and cannot be characterized, as Defendants would like, as a mere detail which need not be shared with the Board. Accordingly, it was not clearly erroneous for the Court, "drawing all reasonable inferences in favor" of Plaintiffs to find that the outside directors had knowledge of the clinical hold.[6]

In sum, Defendants have failed to show that it was a clear error of law that the Court drew a reasonable inference of the outside directors' knowledge from the well-pled facts alleged concerning Bipoure's core business.[7]

---

[6] Defendants argue that the cases which have applied the "core business" exception have done so with respect to officers and directors, but not outside directors. Defs.' Mem. at 12. However, Defendants cite to *In re Ancor Commc'ns, Inc.*, 22 F. Supp. 2d 999 (D. Minn. 1998), *Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998), *Angres v. Smallworldwide PLC*, 94 F. Supp. 2d 1167 (D. Colo. 2000), cases where those courts applied the "core business" exception to certain defendants who were officers and directors, but did not affirmatively conclude that the exception did not apply to outside directors. In fact, the *Epstein* court relies on *Cosmas v. Hassett*, 886 F.2d 8, 10 (2nd Cir.1989) for its application of this exception. *Cosmas* used this exception to attribute to "directors'" knowledge of recently imposed import restrictions that directly affected the company's prospective sales. *Epstein*, 886 F.2d at 10. Defendants also cite to *In re Aetna Secs. Litig.*, 34 F. Supp. 2d 935 (E.D. Pa. 1999) wherein the court found that the "group pleading doctrine," which is not at issue here, did not apply to the outside director and thus, the plaintiffs had not "adequately pled that any of the alleged misleading statements can or should be attributed to" the outside director. *Id.* at 950. The *Aetna* court did not address the relevant issue in the instant matter. None of these cases provide support for Defendants' argument that the Court's application of this exception to the facts herein was a clear error of law.

[7] Defendants falsely state that the Complaint only mentions the Outside Directors in the parties section. Defs.' Mem. at 2. *See* also Docket No. 32 at 6 (arguing that Plaintiffs fail to plead any facts concerning the outside directors with particularity). Defendants once again are incorrect. The Complaint plainly evidences that the outside directors signed multiple registration statements and prospectuses throughout 2003 making them interested in the wrongdoing. ¶¶50, 74, 99.

2.    **Defendants' Argument Concerning Whether the Outside Directors Were "Inside" for Rule 23.1 Purposes is Meritless**

This Court held that based upon "the specific claims in the Second Amended Complaint, on the threshold question of demand futility," Plaintiffs had pled that the Defendants were "interested" and thus demand was futile. *Biopure*, 2006 WL 775186, at *2. And as discussed above, this Court correctly concluded "knowledge of the clinical hold can be imputed generally to Biopure's officers and directors." *Ibid.* This should end the inquiry. Nevertheless, Defendants assert this Court somehow committed a clear error of law by holding "[a]rgument over whether the particular officer and director defendants ... were sufficiently 'inside' to be deemed to have had knowledge is factual, and can be made at a later stage of this litigation." *Id.*; Defs.' Mem. at 13-14. From a Rule 23.1 standard, this was not a clear error of law. *Symbol Tech.*, 762 F. Supp. at 515 ("[T]he precise extent of each director's knowledge, along with information about when and how he received it, is peculiarly within the possession of the defendants and cannot be known to plaintiff prior to discovery."). Nevertheless, the argument is irrelevant. This Court held that Plaintiffs met the threshold requirement of pleading demand futility. To the extent Plaintiffs may ultimately be able to prove liability on the entire issue of knowledge is, of course, not a proper basis for a motion to dismiss. Either way, the Court did not commit a clear error of law on this issue.[8]

3.    **The Court Did Not Commit a Clear Error of Law by Applying the *Aronson* Test**

The Defendants' assertion that this Court committed a "clear error of law" by applying the demand futility test of *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled in part on other*

---

[8]  Defendants' reliance on *Gonzalez Turul v. Rogatol Distrib., Inc.*, 951 F.2d 1 (1st Cir. 1991) is misplaced. The plaintiff in *Gonzalez* neither made a demand nor alleged demand futility. *Id.* at 1-2. Nonetheless, the trial court declined to dismiss the shareholder derivative action for failure to make a demand. *Ibid.* It was only on appeal that the *Gonzalez* plaintiff alleged demand futility. *Id.* at 2. The *Gonzalez* court found it was too late, reversed the judgment and dismissed the complaint without prejudice. *Id.* at 3. Unlike *Gonzalez*, Plaintiffs particularly pled demand futility and this Court found that the particularized facts in the Complaint supported Plaintiffs' allegations of demand futility.

*grounds sub nom. Brehm v. Eisner*, 746 A.2d 244 (Del. 1998) instead of *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) is both meritless and disingenuous. It is meritless given the federal courts which, as noted by this Court, have applied the *Arsonson* test to similar cases where there is a conscious failure to act.  *Biopure*, 2006 WL 775186, at *2 (citing *McSparran v. Larson*, No. 04 C 0041, 2006 WL 250698 (N.D. Ill. Jan. 27, 2006)) (applying the *Aronson* test) and *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795 (7th Cir.2001) (same).[9]  *See also In re Cendant Corp. Derivative Action Litigation*, 189 F.R.D. 117 (D.N.J. 1999) and *Cement-Lock v. Gas Tech. Ins.*, No. 05 C 0018, 2005 WL 2420374 (N.D. Ill. Sept. 30, 2005).    In addition, Defendants' argument that the Court erroneously applied *Aronson* because it relied on the *McSparran* court, which applied the *Aronson* test without "considering which test is appropriate," is not only erroneous itself, but also irrelevant.  Plaintiffs addressed both the *Aronson* and *Rales* tests in their opposition to Defendants' motion to dismiss and explained to the Court that the *Aronson* test was the applicable test.  *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Verified Consolidated Amended Shareholder Derivative Complaint (Docket No. 25) at 9-10.  Defendants, however, advocated the *Rales* test.  *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss Verified Consolidated Amended Shareholder Derivative Complaint (Docket No. 21) at 6-7.  Notwithstanding *McSparran*, this Court considered whether to apply either the *Aronson* or *Rales* test and chose *Aronson*.

---

[9]  Defendants' attempt to distinguish *Abbott* by citing to *Caviness v. Evans*, 229 F.R.D. 354, 360 (D. Mass. 2005) fails in light of *McSparran*.  The *Caviness* court placed considerable emphasis on the fact that in *Abbott*, the "Audit Committee members knew of the company's noncompliance with Food and Drug Regulations" but "failed to act for **six years**."  *Caviness*, 229 F.R.D. at 360. The *Caviness* court chose not to apply *Abbott* because those facts, and in particular the six year time period, were not present in *Caviness*.  The *McSparran* court, however, found in discussing *Abbott* that "the period of time oversight failed to meet the board's obligations is not determinative." *McSparran*, 2006 WL 250698, at *5.  Indeed, in *McSparran*, the court found that the defendants' lack of oversight mirrored that in *Abbott*, even though the period of oversight in *McSparran* was less than the six year period in *Abbott*.  *Id.*  Thus, Defendants' attempt to distinguish *Abbott* fails.

More to the point, Defendants' argument is completely disingenuous given that Defendants themselves admit in their moving papers that under the facts here there is no real difference in the two tests. Defs.' Mem. at 15 n.13 ("Accordingly, in this case, the application of *Aronson* would nonetheless begin with and end **with the same inquiry as** ***Rales***."). How can the Defendants argue with a straight face this Court committed a "clear error of law" by applying one test instead of the other when they themselves admit there is no difference between the two? They cannot. This Court found Plaintiffs had adequately pled that the Defendants were interested, *Biopure*, 2006 WL 775186, at *2, which satisfied both the *Aronson* and *Rales* tests. Clearly then this Court did not commit a clear error of law by applying the *Aronson* test which is implicitly conceded by Defendants.

### 4. Defendants' Argument on a "Potential" Versus a "Substantial" Likelihood Is a Non-Starter and Irrelevant

Defendants' argument that it was "plain error to rule that 'potential personal liability' satisfies either *Rales* or *Aronson*" is simply another attempt to rehash their contention that Plaintiffs "have ***not*** pleaded facts to show a 'substantial likelihood' of personal liability" for a majority of the Board. Defs.' Mem. at 16. The Defendants, however, already made this argument and lost.[10] Moreover, the Court's statement which the Defendants excise from the Order provides: "plaintiffs here claim that a majority of the defendants ... subjected themselves to potential personal liability." *Biopure*, 2006 WL 775186, at *2. Defendants' concentration on the word "potential" is irrelevant because Plaintiffs actually pled that Defendants faced a "substantial likelihood of liability" and those allegations are what the Court based its ruling upon. *See* Docket No. 25 at 14-17. Defendants' argument teeters on pure semantics. In fact, Defendants'

---

[10] Moreover, Defendants incorrectly argue that the Court improperly applied the *Aronson* test "based on an application of *McSparran* instead of Delaware law." Defs.' Mem. at 15. The Court clearly explains that it is "[a]pplying the *Aronson* test to the present case." *Biopure*, 2006 WL 775186, at *2. Even if the Court looked to *McSparran*, the *McSparran* court applied Delaware law and found that defendants faced a substantial likelihood of liability. *McSparran*, 2006 WL 250698, at *4-*5.

own authority states demand may be futile when the "*potential* for liability is not merely a threat, but instead *may* rise to a substantial likelihood.'" Defs.' Mem. at 16 (citing *Benerofe v. Cha*, No. 14614, 1996 WL 535405, at \*6 (Del. Ch. Sept. 12, 1996)). The focus is not on the potential for liability, but instead whether such potential liability is a mere threat or rises to a substantial likelihood. As this Court has ruled, Plaintiffs have sufficiently pled the Defendants' personal liability.

### 5.   Defendants' Argument on the SEC Allegations Is Irrelevant

Defendants' final argument on the incorporated allegations from the SEC complaint is wholly irrelevant because this Court has already analyzed *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 125 (1989), which Defendants cite to, and determined that "plaintiffs in this case conducted their own investigation and filed an initial complaint that made *substantial allegations against the defendants*" and that the SEC complaint was not the "'primary factual basis'" of Plaintiffs' allegations. *Biopure*, 2006 WL 775186, at \*1. Thus, clearly the Court did not commit a clear error of law by holding Plaintiffs had already plead substantial allegations and the SEC incorporated allegations were simply "a supplemental source of information." *Ibid.*

### D.   Defendants Have Not Met the Burden for an Interlocutory Appeal Under 28 U.S.C. §1292

The Defendants have not met and cannot meet their heavy burden for interlocutory appeal under 28 U.S.C. §1292 by demonstrating this Court opinion involves "a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. §1292(b). As courts in this District have noted, "[b]ecause appeals of interlocutory orders result in piecemeal litigation, causing delay, the party seeking interlocutory appeal bears the *heavy burden* of persuading the court that *exceptional circumstance*s warrant "'departure from the basic policy of postponing appellate review until after entry of a final judgment."'" *In re Clark-Franklin-Kingston Press, Inc.*, No. 90-11231 WF, 1993 WL 160580, at \*2 (D. Mass. Apr. 21, 1993).

Indeed, the First Circuit has stated that "interlocutory certification under 28 U.S.C. §1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more ***difficult and pivotal questions of law not settled by controlling authority***." *McGillicuddy*, 746 F.2d at 77 n.1.  And as further explained by the First Circuit, only rare cases that are few and far between will qualify for interlocutory certification:

> ***Only rare cases will qualify for the statutory anodyne***; indeed, it is apodictic in this circuit that interlocutory certification of this sort 'should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority .... ***we continue to believe that the instances where section 1292(b) may appropriately be utilized will, realistically, be few and far between***.

*In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir.1988).

Finally, apparently in support of interlocutory certification, Defendants cite to *Gonzalez*, for the proposition that this Court's order risks an enormous waste of resources for the Court and litigants, because in the First Circuit, the failure to satisfy Rule 23.1 at the pleading stage is grounds for reversal, even following trial and entry of judgment.  951 F.2d 1.  Tellingly, Defendants fail to acknowledge one salient fact about the *Gonzalez* case: the shareholder plaintiff there did not even plead demand futility in her complaint.  *Id.* at 3 ("In this case, Gonzalez did not even plead demand in general terms in her complaint, but instead made conclusionary arguments on appeal that demand should be excused as futile.").  Thus, the case is completely inapplicable and certainly does not support an interlocutory appeal when applied to facts of the instant case.

In sum, Defendants have not and cannot meet the exacting and heavy burden necessary for interlocutory certification.  The Court's decision did not turn on pivotal questions of unsettled law and, while Defendants may substantially disagree with the Court's decision, it clearly does not constitute a rare and exceptional "controlling question of law as to which there is substantial ground for difference of opinion" such that this Court should take the extraordinary step of

14

certification under 28 U.S.C. §1292.  Accordingly, Defendants' request for certification of an interlocutory appeal should be denied.

## III.    CONCLUSION

Based on the foregoing and entire record in this matter, Plaintiffs respectfully urge the Court to deny Defendants' motion in its entirety.

DATED: April 27, 2006                    Respectfully submitted,

                                         /s/ Jeffrey P. Fink
                                         By:    Jeffrey P. Fink

                                         ROBBINS UMEDA & FINK, LLP
                                         JEFFREY P. FINK (*pro hac vice*)
                                         CAROLINE A. SCHNURER
                                         610 West Ash Street, Suite 1800
                                         San Diego, CA 92101
                                         Telephone: 619/525-3990
                                         Facsimile: 619/525-3991
                                         jfink@ruflaw.com
                                         cschnurer@ruflaw.com

                                         DOUGLAS S. JOHNSTON, JR. (*pro hac vice*)
                                         GEORGE E. BARRETT (*pro hac vice*)
                                         TIMOTHY L. MILES (*pro hac vice*)
                                         BARRETT, JOHNSTON & PARSLEY
                                         217 Second Avenue, North
                                         Nashville, TN 37201
                                         Telephone: 615/244-2202
                                         Facsimile: 615/252-3798
                                         djohnston@barrettjohnston.com
                                         gbarrett@barrettjohnston.com
                                         tmiles@barrettjohnston.com

                                         Plaintiffs' Co-Lead Counsel

                                         MARY T. SULLIVAN, BBO #487130
                                         SEGAL ROITMAN & COLEMAN
                                         11 Beacon Street, Suite 500
                                         Boston, MA 02108
                                         Telephone: 617/742-0208
                                         Facsimile: 617/742-2187
                                         msullivan@segalroitman.com

Plaintiffs' Liaison Counsel

JAMES G. STRANCH
BRANSTETTER, KILGORE, STRANCH &
JENNINGS
227 Second Avenue North
Nashville, TN 37201
Telephone: 615/254-8801
Facsimile: 615/255-5419

Plaintiffs' Counsel

## CERTIFICATE OF SERVICE

I hereby certify a true and exact copy of the foregoing has been served on all Filing Users through the Court's Electronic Filing System on this the 27th day of April, 2006.


/s/ Jeffrey P. Fink
Jeffrey P. Fink