UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | Master Docket No. 1:04-cv-10177 (NG) |
| IN RE BIOPURE CORPORATION, ) | |
| DERIVATIVE LITIGATION ) | Assigned to Judge J. Nancy Gertner |
| ) | |
| ) | Magistrate Judge Alexander |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE SPECIAL LITIGATION COMMITTEE OF BIOPURE CORPORATION FOR A
STAY OF PROCEEDINGS UNTIL SEPTEMBER 1, 2006 TO PERMIT THE
SPECIAL LITIGATION COMMITTEE TO COMPLETE ITS INVESTIGATION**

<u>Introduction</u>

The Special Litigation Committee of Biopure's Board of Directors ("Biopure SLC"), respectfully submits this Memorandum of Law in support of its Motion to stay these proceedings ("Derivative Action") until September 1, 2006.

Under Delaware law, a Delaware corporation may appoint an independent disinterested SLC to exercise the corporation's business judgment either to pursue or seek dismissal of a derivative action. The Board of directors of Biopure met on May 1, 2002 and, as authorized by Delaware law and by principles and procedures established by the Delaware cases, including the decision of the Delaware Supreme Court in *Zapata Corp. v. Maldonado*, 430 A2d 770 (Del. 1981), the Board voted to form the Biopure SLC and appointed Directors Guido Neels and Jay B. Pieper, two outside directors, to serve as the Biopure SLC. The Board delegated the following authority to the committee:

> the Special Litigation Committee is authorized to exercise all lawful authority of the Board of Directors in determining what actions, if any, should, in the best interests of the Company, be taken with respect to the above-referenced Derivative Action and any similar suits that have been or may be filed on the Company's behalf.

Board Resolution (attached as Ex. A). Under Delaware law, the Committee has "all of the powers and authority of the board of directors." 8 Del. C. § 141(c)(1)

Messrs. Neels and Pieper are independent and disinterested. They are not defendants in this action and were not directors during the time period relevant to the allegations in the Derivative Action. Mr. Neels retired in 2005 as chief operating officer of Guident Corporation. Mr. Pieper is Vice President for Corporate Development and Treasury Affairs for Partners Healthcare System, Inc., the parent of MGH and Brigham & Women's Hospital.

Following the May 1 vote, Biopure SLC retained its own independent counsel, John A.D. Gilmore, Esq. and Ted Altman, Esq., of the law firm of DLA Piper Rudnick Gray Cary, US LLP, to help conduct their investigation which has already begun.

The Biopure SLC seeks to stay these proceedings to allow it to conduct an objective and thorough investigation of the allegations of the allegations in the Derivative Action without the distraction and costs that would occur if the litigation proceeds at the same time. The stay will not prejudice any party, and in the event the action proceeds, will permit the coordination between discovery in this action and the class action. (*In re Biopure Corporation Securities Litigation,* 1:03-cv-12628-NG).

The Biopure SLC's Motion also requests the Court to schedule a status conference for as soon after September 1, 2006 as the Court's calendar permits for the consideration of further proceedings in this action in view of the recommendations of the Biopure SLC.

## **Argument**

### **ALL PROCEEDINGS SHOULD BE STAYED PENDING THE BIOPURE SLC'S INVESTIGATION AND REPORT.**

This Court should stay this litigation until September 1 to permit the Biopure SLC to undertake and complete an objective investigation of the allegations in the Derivative Action and

~BOST1:419593.v1
12136/1-6

to determine what actions should be taken, in the best interests of the Corporation, with respect to the Derivative Action.

1.    **The general rule under Delaware law is that a stay must be granted when a special litigation committee is formed.**

As a general rule, the governing law of Delaware requires that a derivative action be stayed pending the investigation of an SLC.[1] *See, e.g., In re Oracle Corp. Derivative Litigation,* 808 A.2d 1206, 1211 (Del. Ch. 2002) ("this court has acknowledged its duty to stay derivative actions at the instance of a special litigation committee …"); *Katell v. Morgan Stanley Group,* 1993 WL 390525, *4 (Del. Ch. Sept. 27, 1993) ("Because I find that the Partnership's creation of a special litigation committee complies with the Partnership Agreement and that the Committee does not conclusively lack independence, Delaware law requires that all proceedings must be stayed pending the Committee's investigation."); *Kaplan,* 484 A.2d at 510 ("It is a foregone conclusion that such a stay must be granted."); *Abbey v. Computer & Communications Technology Corp.,* 457 A.2d 368, 375 (Del. Ch. 1983).[2]

---

[1]  Because Biopure is a Delaware corporation, the law of Delaware governs the appointment and conduct of a special litigation committee. *See In re Oracle Corp. Derivative Litigation,* 808 A.2d 1206, 1212 (Del. Ch. 2002) ("The deference Delaware law pays to the special litigation committee process is a matter of our state's substantive, not procedural, law"). Thus, the issue of whether this Derivative Action should be stayed is governed by Delaware law. *See id.* at 1215-16 ("[T]he law governing the circumstances in which a board's ability to control corporate litigation is substantive and not procedural. This substantive law includes *Zapata* and the cases that implement its teachings."); *see also Kamen,* 500 U.S. at 96-97 (1991) (corporate law allocating power between board of directors and stockholders over the procession of derivative actions is substantive, and not merely procedural, in nature); *Draper v. Gardner Defined Plan Trust,* 625 A.2d 859, 865 n. 9 (Del. 1993) (law of demand excusal is substantive, not procedural, and citing several other cases to that effect); *Abrams v. Koether,* 766 F. Supp. 237, 248 n. 13 (D.N.J. 1991) (applying Delaware law to determine whether a plaintiff may take discovery of a Delaware corporation relating to demand futility while a Rule 23.1 motion was pending).

[2]  The fact that Defendants moved to dismiss the case on demand futility grounds before forming the SLC is insignificant. *See, e.g., Struogo on behalf of the Brazil v. Padegs,* 986 F. Supp. 812 (S.D.N.Y. 1997) (granting motion for stay of three months pending SLC investigation despite the fact that SLC was formed <u>after</u> defendants unsuccessfully moved to dismiss derivative claims).

- 3 -

The reason for the stay is to allow the SLC to conduct and investigate without the distraction and costs that would occur if the litigation proceeds at the same time. *See Abbey*, 457 A.2d at 375.  In *Abbey*, the Court reasoned:

> If *Zapata* is to be meaningful, then it would seem that such an independent committee, once appointed, should be afforded a reasonable time to carry out its function. It would likewise seem reasonable to hold normal discovery and other matters in abeyance during this interval. If a derivative plaintiff were to be permitted to depose corporate officers and directors and to demand production of corporate documents, etc. at the same time that a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation to permit the suit to go forward, the very justification for the creating of the litigation committee in the first place might well be subverted.

*Id.*; *see also Kaplan v. Wyatt*, 484 A.2d at 510 ("It is a foregone conclusion that such a stay must be granted.  Otherwise, the entire rationale of *Zapata*, *i.e.*, the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance, collapses.").[3]

The Biopure SLC will be interviewing witnesses with knowledge about the allegations in the Derivative Action.  The Biopure SLC will also require assistance of employees of Biopure company and Biopure's counsel to obtain information and documents.  It would be disruptive to the work of the Biopure SLC if these people were at the same time having to respond to discovery and other activities in this case.

Moreover, if plaintiffs are allowed to proceed with discovery while the Biopure SLC is doing its work, Biopure, whose interests are paramount in a derivative action, may end up

---

[3]  The burden is upon the party opposing the stay to demonstrate that the case presents an exception to the general rule.  *See, e.g.*, *In re Oracle Corp. Derivative Litigation*, 808 A.2d at 1211 n.16 ("It is true that in one Delaware case, a member of this court permitted derivative plaintiffs to take discovery on the merits while a special litigation committee was undertaking its investigation.  That case, however, is the type of exception to general practice that tends to prove the rule."); *Struogo on behalf of the Brazil v. Padegs*, 986 F. Supp. 812, 815 (S.D.N.Y. 1997) ("[S]ince Struogo accepts the proposition that a stay should generally be granted for a reasonable time, there is no showing here that the instant case should be an exception to the general rule.").

~BOST1:419593.v1
12136/1-6

incurring unnecessary costs, which would happen if discovery was allowed to proceed and if the Biopure SLC, following its investigation, determines to seek the dismissal of the Derivative Action and the Court accepts that determination.

### 2. Plaintiffs will suffer no prejudice from a 90-day stay.

The plaintiffs will suffer no prejudice from granting a stay until September 1, 2006 for several reasons. First, the claims brought in this case are the Company's claims, not the plaintiffs' claims -- they belong to the corporation, the claimed injury was to the corporation, and any damages are to be recovered by the corporation. As the Biopure SLC is acting on behalf of the Company, plaintiffs cannot seriously argue that they would be harmed by a temporary stay of proceedings when the purpose of the stay is to allow the Company (on behalf of which plaintiffs purport to act) to investigate the allegations.

Second, a stay until September 1, 2006 will put the Derivative Action discovery schedule in line with the discovery schedule in the Class Action, which the parties have already agreed should be coordinated. In the Class Action if the Derivative Action proceeds, this Court bifurcated class-certification discovery and merits discovery such that merits discovery will not begin until the class-certification proceedings are completed and the Court's certification decision is rendered. Class-certification briefing is scheduled to end in late-July 2006, and a hearing will take place at some point thereafter. Thus, merits discovery in the Class Action will almost certainly begin no sooner than in September 2006. Plaintiffs in the Derivative Action will, therefore, suffer no prejudice as a result of the requested stay, as discovery in this case would in all likelihood start no sooner than when the requested stay would expire.

### 3. A Stay Until September 1, 2006 is a reasonable period of time for a stay of these proceedings.

There is no set length of time or consensus as to the length of a stay for an SLC investigation. What is clear is that the SLC's right to investigate and report its recommendation

---

Here, there is nothing exceptional to justify denying the company's request for a stay of 90 days pending the SLC's investigation and report.

must take priority over "any entitlement of the plaintiff to go forward with the pending action." *See Abbey*, 457 A.2d at 376. The *Abbey* court noted that the duration of a stay necessarily depends upon the particular facts and circumstances of any given case and is left to the discretion of the court. *See id.* It is not uncommon for a court to allow anywhere from five months to ten months for an SLC to conduct and report its investigation. *See, e.g., Charal Investment Co., Inc. v. Rockefeller*, 1995 WL 684869 (Del. Ch. Nov. 7, 1995) (more than ten months of investigation in complex case); *Kaplan v. Wyatt*, 1984 WL 8274 (Del Ch. Jan. 18, 1984) (seven month investigation); *Pompeo v. Hefner*, 1983 WL 20284, *3 (Del. Ch. March 23, 1983) (five month investigation).

Here, to discharge its investigative function, the SLC expects, barring unforeseen obstacles in its investigation, that a stay of this action until September 1, 2006 will suffice. To examine these issues fully will require interviews of a large number of witnesses and the review of scores of documents, including some highly technical in nature.

## Conclusion

For the foregoing reasons, the Biopure SLC requests a stay of all proceedings herein until September 1, 2006.

Respectfully Submitted,

SPECIAL LITIGATION COMMITTEE TO
BIOPURE CORPORATION

By its attorneys,

/s/ John A.D. Gilmore
John A.D. Gilmore (BBO #552755)
DLA PIPER RUDNICK GRAY CARY US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

DATED:  May 23, 2006