## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BIOPURE CORPORATION<br>DERIVATIVE LITIGATION | )  Master Docket No.1:04-cv-10177 NG<br>)  (Consolidated Derivative Action)<br>)<br>)  Assigned to: Judge J. Nancy Gertner<br>)<br>)  Magistrate Judge Alexander |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY

### I.    INTRODUCTION

Plaintiffs[1] hereby move to disqualify the law firm of Bingham McCutchen LLP ("Defense Counsel") from continuing to simultaneously represent both nominal defendant Biopure Corporation ("Biopure" or the "Company") and the Individual Defendants (collectively "Defendants").[2]  Defense Counsel's dual representation is a conflict of interest which clearly has manifested itself in failing to act in the best interests of Biopure.  This conflict is even more apparent at this stage of the litigation because Plaintiffs have successfully defeated Defendants' motion to dismiss and asserted their standing to proceed with this litigation.  Nonetheless, Defense Counsel has refused to relinquish dual representation even though Biopure's interests are now even more aligned with Plaintiffs and clearly adverse to the Individual Defendants' interests.  Accordingly, because Plaintiffs bring this action on behalf of Biopure and for the benefit of Biopure, Plaintiffs are compelled to bring the instant motion and request the disqualification of Defense Counsel from continuing to represent both Biopure and the Individual Defendants in the instant matter.

---

[1]  "Plaintiffs" refers to John and Laurie Parrott and Rich Reinisch.

[2]  "Individual Defendants" includes Thomas A. Moore, Carl W. Rausch, David N. Judelson, Charles A. Sanders, C. Everett Koop, Daniel P. Harrington, J. Richard Crout, Jane Kober and Howard Richman.  Defense Counsel, however, does not represent officer defendant Howard Richman.

## II.    SUMMARY OF PROCEDURAL AND SUBSTANTIVE FACTS

On January 26, 2004, plaintiffs John and Laurie Parrott filed their verified shareholder derivative action on behalf of Biopure.  On January 29, 2004, Rich Reinisch filed his verified shareholder derivative action on behalf of Biopure.  On May 14, 2004, the court consolidated these two shareholder derivative actions.  On July 14, 2004, Plaintiffs filed their Verified Consolidated Amended Shareholder Derivative Complaint ("Complaint") wherein they allege that the Individual Defendants caused Biopure to issue false and misleading statements pertaining to its flagship product Hemopure®, an investigational human blood substitute used for the treatment of acutely anemic surgical patients.  ¶1.[3]  Hemopure's® approval by the United States Food and Drug Administration ("FDA") was crucial to Biopure's investors and thus, Biopure's survival in the biotechnology market. ¶¶1-3.  As early as March 2003, however, the FDA informed Defendants that it had serious "safety concerns" for Hemopure® arising out of adverse event data from the Company's Phase III orthopedic surgery trial submitted with the Company's Biologic License Application.  ¶¶6, 34.  The Defendants knew that public knowledge of this information would be the death knell for Biopure as it not only jeopardized the approval of Hemopure®, but at the very least, would also delay the first commercial distribution of Hemopure® beyond Defendants' publicly disclosed target date of mid-2003.  *Ibid.* To maintain Biopure's rising stock price, Defendants suppressed the FDA's "safety concerns" and continued to tout publicly the progress of Hemopure®.  ¶¶35, 37-38.  Prompted by an inquiry by the Securities and Exchange Commission on December 22, 2003, however, Defendants were forced to admit, in part, after the close of the market on December 24, 2003, Christmas Eve, that the FDA had expressed "safety concerns" with Hemopure® and as a result, placed all trauma trials on clinical

---

[3]   All references to "¶" or "¶¶" pertain to Plaintiffs' Complaint.

hold. ¶¶7, 42. Defendants' revelations caused Biopure stock to lose over 90% of the Company's market value during the Relevant Period. ¶¶1, 45.

Notwithstanding such potent allegations, Defense Counsel, on behalf of Biopure and the Individual Defendants, filed a Motion to Dismiss Plaintiffs' Complaint on the grounds that Plaintiffs failed to: (i) particularly plead demand futility; and (ii) adequately allege their causes of action. Plaintiffs opposed Defendants' motion and Defendants subsequently responded to Plaintiffs' Opposition. Thereafter, Plaintiffs filed a motion to cite to supplemental authority and Defendants responded thereto. On March 28, 2006, the court denied Defendants' motion to dismiss and granted Plaintiffs leave to amend. Consequently, on March 30, 2006, Plaintiffs filed their Second Amended Consolidated Derivative Complaint.

Despite the court's finding that demand would have been futile upon Biopure's Board of Directors (the "Board") and thus, that Plaintiffs were entitled to pursue this litigation on behalf of Biopure, on April 13, 2006 Defense Counsel purportedly on behalf of Biopure and the Individual Defendants filed a motion for reconsideration of the court's March 28, 2006 Order and in the alternative, requested certification of issues for an interlocutory appeal pursuant to 28 U.S.C. §1292. Plaintiffs opposed Defendants' motion for reconsideration. On May 1, 2006, the court denied Defendants' request for reconsideration. On that same day, Defense Counsel disclosed that a purported special litigation committee ("SLC") had been formed by Biopure's Board to purportedly investigate the allegations in Plaintiffs' Complaint. The SLC, as well as Biopure, currently seeks to stay this derivative litigation pending the SLC investigation.

3

## III.    ARGUMENT

### A.    The Massachusetts Rules of Professional Conduct

The district of Massachusetts has chosen to adopt the Massachusetts Rules of Professional Conduct ("MRPC"), which are based on the American Bar Association's Model Rules of Professional Conduct ("Model Rules").  *See Welch v. Paicos*, 26 F. Supp. 2d 244, 246-47 (D. Mass. 1998); *Stern v. Sup. Jud. Ct. for the Commonwealth of Mass.*, 16 F. Supp. 2d 88, 89 (D. Mass. 1998). Rules 1.7 and 1.13 of the MRPC and their respective commentaries address conflicts of interest in client representation.  Specifically, Rule 1.7 which is entitled "Conflict of Interest: General Rule" provides, in pertinent part, as follows:

(a) *A lawyer shall not represent a client if the representation of that client will be directly adverse to another client*,[4] unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) *A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests*, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

MRPC, Rule 1.7.  The Comment to Rule 1.7 explains that 1.7(a) applies to the representation of opposing parties in litigation and 1.7(b) applies to the simultaneous representation of parties whose interests may conflict, such as co-plaintiffs or co-defendants.  *See* MRPC, Rule 1.7, Comment [7].

---

[4]  All emphasis is deemed added or omitted unless otherwise stated.

4

Because Biopure is not only a nominal defendant, but also a real party in interest plaintiff, Rule 1.7 subsections (a) and (b) are both applicable to the current analysis. Here, not only is Defense Counsel's representation of the Individual Defendants adverse to Biopure, but it also materially limits Defense Counsel's ability to act simultaneously in Biopure's best interests. This is especially true at this stage of the litigation because the court has denied Defendants' motion to dismiss and found that Plaintiffs have standing to prosecute this action on behalf of Biopure. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 658 (N.D. Tex. 1978).

For example, in *Clark*, the plaintiffs sought disqualification of counsel representing both the company and defendant directors in a shareholder derivative action. Although the *Clark* court denied plaintiffs' motion, the *Clark* court's reasoning provides instructive guidance for the current matter as evidence below:

> I find that there is no conflict of interest requiring disqualification in the narrow instance when one law firm represents a derivatively sued corporation and its individually sued directors and the law firm initially files a motion to dismiss on behalf of its clients, does not otherwise participate in the lawsuit, and withdraws from representation of either the corporation or the individual directors when either the motions to dismiss are overruled or when it becomes necessary to actively participate in the defense of the corporation and the individual directors.... Once that determination is made, or once it becomes necessary for active participation in the defense of the directors, then new counsel must be sought, because the potential for conflict has increased to the point where it outweighs the rights of the individual directors to select counsel.

*Clark*, 79 F.R.D. at 661. Here, Defendants' motion to dismiss was denied. Thus, pursuant to *Clark*, new counsel ***must*** be sought.

In addition, Rule 1.13 which is entitled "Organization as Client" provides, in pertinent part, as follows:

5

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

\* \* \*

(e) *A lawyer representing an organization may also represent any of its directors, officers,* employees, members, shareholders, or other constituents, *subject to the provisions of Rule 1.7.*

MRPC, Rule 1.13.  The Comment to Rule 1.13 acknowledges the conflict involved in dual representation in the context of a shareholder derivative action and thus, merits particular attention.

The Comment provides, in pertinent part, as follows:

The Entity as the Client

[1] *An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders and other constituents*. Officers, directors, employees and shareholders are the constituents of the corporate organizational client.

\* \* \*

Clarifying the Lawyer's Role

[7] *There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation*.

\* \* \*

Dual Representation

[9] Paragraph (e) recognizes that a lawyer for an organization may also represent a principal officer or major shareholder.

*Derivative Actions*

[10] Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. Members of unincorporated associations have

6

essentially the same right. Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.

[11] *The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 governs who should represent the directors and the organization.*

*See* MRPC, Rule 1.13, Comment.

Here, Plaintiffs do allege "serious charges of wrongdoing by those in control of the

organization...." *See* MRPC, Rule 1.13, Comment [11]. Thus, a conflict may, and in fact has, arisen

between Defense Counsel's duty to represent Biopure and their duty to represent the Individual

Defendants. Nonetheless, Defense Counsel have not withdrawn as counsel and instead support the

continued delay of this litigation which only serves to benefit the Individual Defendants, not

Biopure. As discussed below, applicable legal authority clearly requires this court to disqualify

Defense Counsel from its dual representation.

### B.   There Is an Inherent Conflict of Interest in Defense Counsel's Dual Representation

Plaintiffs bring this shareholder derivative action **on behalf of** and **for the benefit of** nominal

defendant Biopure, which is effectively a real party in interest and consequently "stands to receive

a substantial benefit if the plaintiffs/shareholders are successful." *Musheno v. Gensemer*, 897 F.

Supp. 833, 835 (M.D. Pa. 1995). Thus, Biopure's interests naturally are aligned with Plaintiffs'

interests and adverse to the Individual Defendants' interests. Accordingly, Defense Counsel's

representation of both Biopure and the Individual Defendants in this shareholder derivative action

7

creates an inherent conflict of interest. *Heim v. Signcraft Screenprint Inc.*, 2001 WL 1018228, at *2

n.3 (N.D. Ill. 2001) (recognizing a conflict of interest in the dual representation of a company and

individual defendants who are members of the board of such company).  Notwithstanding this

inherent conflict, Defense Counsel continues to represent Biopure and the Individual Defendants in

this derivative litigation.

**C.    Defense Counsel's Dual Representation of Biopure and the Individual Defendants Is Impermissible**

There is little to no authority in this district, let alone the First Circuit, which provides

guidance on the subject of dual representation in the context of shareholder derivative litigation.

Thus, Plaintiffs, and this court, must look to other districts and circuits which have analyzed and

addressed this legal and ethical issue.  In doing so, the court will find that case law clearly supports

Plaintiffs' motion to disqualify Defense Counsel from dual representation.

There is clear jurisprudence which dictates that in the context of shareholder derivative

litigation it is impermissible for an attorney to engage in the dual representation of a corporation and

its directors.  *See Lewis v. Shaffer Stores Co.*, 218 F. Supp 238, 239 (S.D.N.Y. 1963) (finding that

the corporation should retain independent counsel from the individual defendants due to adverse

interests among the defendants); *Messing v. FDI, Inc.*, 439 F. Supp. 776, 782 (D.N.J. 1977)

(explaining that in the context of a derivative action, the interests of the corporation and the director

defendants "will almost always be diverse" and thus the corporation should retain independent

counsel); *Schmidt v. Magnetic Head Corp.*, 101 A.D. 2d 268, 280 (1984) (disqualifying attorneys

from representing both corporation and directors in a shareholder derivative action because the

corporation and directors had adverse interests); *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1188

8

(N. D. Cal. 1993) (explaining that dual representation of corporate and individual defendants in a shareholder derivative suit is impermissible); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993) (independent counsel for corporate and individual defendants should be retained if the "line is blurred between duties of care and loyalty" or if there are allegations, in part, of fraud, intention misconduct or self-dealing); *Musheno*, 897 F. Supp. at 838 (finding "where the potential for conflict is great, the better approach is to require the corporation to retain independent counsel"). *See also Yablonski v. United Mine Workers of Am.*, 448 F.2d 1175, 1181-82 (D.C. Cir. 1971), *cert. denied*, 406 U.S. 906 (1972) (explaining that separate counsel should be appointed for a corporation in a derivative action); *Forrest v. Baeza*, 58 Cal. App. 4th 65, 74 (1997) (explaining that "'[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one'" and "[c]urrent case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud.") (citations omitted).[5]

These courts as well as others, however, often diverge on why dual representation is impermissible. These divisions typically arise from the nature of the allegations. For example, in *Otis & Co. v. Pa. R.R. Co.*, 57 F. Supp. 680, 684 (E.D. Pa. 1944), *aff'd* 155 F.2d 522 (3d Cir. 1946), the district court implied that an allegation of "breach of confidence or trust" by a party to the attorney-client relationship would be sufficient to require independent representation of a corporation and individual defendants in a derivative lawsuit. The *Otis* court found that dual representation of

---

[5] *See also Messing*, 439 F. Supp. at 781 (citing to the Association of the Bar of New York Committee on Ethics Op. 842, 15 Record N.Y.C.B.A. (1960) (even though conflicts of interest are inherent in derivative cases "the corporation should obtain independent counsel whenever the corporation elects to take an active role in the litigation")).

a corporation and its directors was proper because plaintiff alleged breach of fiduciary duty and not "allegation of any breach of confidence or trust." *Ibid. See also Bell Atlantic*, 2 F.3d at 1317 (explaining that "in cases where the line is blurred between duties of care and loyalty, the better practice is to obtain separate counsel for individual and corporate defendants"). Here, Plaintiffs allege that the Individual Defendants not only breached their duty of care, but also their duties of loyalty and good faith. ¶¶65(e), 72, 96.[6] Specifically, the Individual Defendants knew of the adverse information concerning Hemopure® and the Company's communications with the FDA but did not disclose the same during the Relevant Period. ¶¶16, 42, 44, 65(a). The Individual Defendants' repeated dissemination of false and misleading information and material misrepresentations arising from their failure to disclose material information undisputably implicates the duties of loyalty and good faith. ¶¶5, 7, 15, 33-41, 44, 46, 72, 96. *See Malone v. Brincat*, 722 A.2d 5, 10-11 (Del. 1998). Because Plaintiffs allege breaches of the fiduciary duties of loyalty and good faith by the Individual Defendants, Biopure should retain independent counsel.

Other cases find that independent counsel is required when plaintiffs' allege or self-dealing. *See Bell Atlantic*, 2 F.3d at 1317 ("We have no hesitation in holding that - except in patently frivolous cases - allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel."); *Musheno*, 897 F. Supp. at 838 (same); *Forrest,* 58 Cal. App. 4th at 74 (same). Here, Plaintiffs do not allege fraud. Plaintiffs, however, do allege that defendant Rausch engaged in self-dealing when he disposed of 246,574 shares of his personally held Biopure stock for proceeds

---

[6]  Plaintiffs in *Bell Atlantic*, unlike here, "alleged only mismanagement, a breach of the fiduciary duty of care" not their "*duty of loyalty* which requires a director to act in good faith and in the honest belief that the action taken is in the corporation's best interests." *Bell Atlantic,* 2 F.3d at 1316 (citation omitted).

of $1,596,900 while in possession of adverse, material information.  ¶¶23, 65(a)(i).  In addition, Plaintiffs allege that the Board knew of the adverse material information concerning the FDA's communications and safety concerns pertaining to Hemopure® but deemed such information immaterial and consciously chose not to act and not to disclose such material information.  ¶¶16, 42, 44.  This conscious inaction is evidence of the Individual Defendants' intentional misconduct. Clearly in these circumstances, Biopure's interests are adverse to the Individual Defendants. Because Plaintiffs allege self-dealing and intentional misconduct, *Bell Atlantic*, *Musheno* and *Forrest* support Plaintiffs' argument that it is impermissible for Defense Counsel to represent both Biopure and the Individual Defendants.

There is, however, at least one case that finds that the "nature of the allegations against the director is but one factor that has been considered in determining the propriety of the joint representation of the corporation and the directors in a derivative action." *Messing*, 439 F. Supp. at 781.  In *Messing,* plaintiff filed a motion for disqualification because the same counsel represented both the company, two outside directors and all inside directors in plaintiff's shareholder derivative action.  *Id.* at 780.  The *Messing* plaintiff argued that there was a potential conflict in this dual representation not only between the corporation and the directors, but also between the inside and outside director defendants.  *Ibid.*  Although cognizant of legal authority relying on the nature of the allegations to evaluate conflict in representation, the *Messing* court "perceive[d] no basis for relying upon the nature of the charges against the directors for purposes of determining whether they may share counsel with the corporation.  ***Irrespective of the charges against the directors - whether it be fraud or negligence - the interests of the two groups will almost always be diverse***."  *Id.* at 782. The *Messing* court granted plaintiff's motion and stated, "[i]ndependent counsel for the corporation,

unshackled [sic] by any ties to the directors, would be in the unique position of having only the corporation's interest at stake." *Ibid.* Thus, pursuant to *Messing* and regardless of Plaintiffs' allegations, Defense Counsel should be disqualified from dual representation.

Here, Defense Counsel cannot continue to simultaneously represent Biopure and the Individual Defendants, who have been accused of intentional and improper wrongdoing which led to financial and reputational damages to Biopure, and specifically, the director defendants who have been adjudged to lack the requisite independence and disinterest to act upon any demand by Plaintiffs. Thus, Plaintiffs seek to free Biopure from being bound to the Individual Defendants whose interests are clearly adverse to the Company's interests. Moreover, clearly evidenced by Defense Counsel's announcement of the appointment of a SLC and purported belated investigation into the allegations asserted by Plaintiffs *after* Plaintiffs defeated Defendants' motion to dismiss and motion for reconsideration, Defense Counsel is not looking out for Biopure's best interests. Plaintiffs, however, refuse to let Biopure's interests fall to the wayside and intend to continue to vigorously litigate this derivative action on behalf of and for the benefit of Biopure. For these reasons, Plaintiffs request that the court disqualify Defense Counsel from dual representation of Biopure and the Individual Defendants.

## IV.    CONCLUSION

For the reasons discussed above, and for the best interests of Biopure, this court should grant Plaintiffs' motion to disqualify Defense Counsel.

DATED: May 26, 2006

                                        /s/Jeffrey P. Fink
                                        _____
                                        JEFFREY P. FINK (*pro hac vice*)
                                        BRIAN J. ROBBINS
                                        ROBBINS UMEDA & FINK, LLP
                                        610 West Ash Street, Suite 1800

12

San Diego, CA  92101
Telephone:  619/525-3990
Facsimile: 619/525-3991

GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue, North
Nashville, TN 37201
Telephone: 615/244-2202
Facsimile: 615/252-3798

Co-Lead Counsel for Plaintiffs

MARY T. SULLIVAN BBO#487130
SEGAL ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA 02108
Telephone: 617/742-0208
Facsimile: 617/742-2187

Liaison Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

13

I hereby certify that on May 26, 2006 I caused the following document:

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY

to be filed electronically with the clerk of court through ECF, and that ECF will send an e-notice of the electronic filing.

Dated: May 26, 2006                              /s/Jeffrey P. Fink
                                    _____
                                              JEFFREY P. FINK

G:\Cases\Biopure\Motions - Opps\Motion to Disqualify\Memo ISOMotiontoDisqualify.Final.wpd