Westlaw.

Not Reported in F.Supp.2d                                                                                   Page 1
Not Reported in F.Supp.2d, 2000 WL 1708173 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
In re BANK OF NEW YORK DERIVATIVE LITIGATION
No. 99CIV.9977(DC), 99CIV.10616(DC).

Nov. 14, 2000.

Milberg Weiss Bershad Hynes & Lerach LLP, By Melvyn I. Weiss, Esq. , Richard H. Weiss, Esq., New York, Morris and Morris, By Karen L. Morris, Esq., Irving Morris, Esq., Wilmington, DE, Co-Lead Counsel for Plaintiffs.
Sullivan & Cromwell, By John L. Warden, Esq., Richard H. Klapper, Esq., Bruce E. Clark, Esq., Marc De Leeuw, Esq., New York, for Defendants.

MEMORANDUM & ORDER
CHIN, D.J.
**\*1** In these consolidated derivative actions brought on behalf of shareholders of the nominal defendants Bank of New York Company, Inc. (the "Company") and its wholly-owned subsidiary, the Bank of New York (the "Bank"), plaintiffs contend that the individual defendants, nineteen former or current officers and directors of the nominal defendants, breached their fiduciary duties to the shareholders by wrongfully permitting the Bank to aggressively expand its correspondent banking business in Russia. Plaintiffs charge that the individual defendants directly participated in, or knowingly or recklessly permitted the Bank to participate in, money laundering or other illegal activity with customers, including members of organized crime.

Defendants move to dismiss the Amended Verified Shareholder Derivative Complaint (the "Amended Complaint") on the grounds that plaintiffs failed to make a demand on the Board of Directors of either the Company or the Bank prior to filing suit, as required by section 626(a) of the New York Business Corporation Law. Alternatively, noting that the Boards of the Company and the Bank have formed a Special Litigation Committee (the "SLC") to investigate the shareholder derivative claims, defendants move for a stay of this action pending the investigation. Defendants advise that if the SLC determines that the derivative claims lack merit, they will ask this Court to dismiss the action.

For the reasons that follow, both prongs of the motion are denied.

DISCUSSION

A. *The Motion To Dismiss*

1. *Applicable Law*

The parties agree that New York law governs. Under New York law, because derivative claims against a corporation's officers and directors belong to the corporation itself, section 626 of the Business Corporation Law requires a shareholder to first demand that the corporation initiate the lawsuit itself. *See generally* Marx v. Akers, 644 N.Y.S.2d 121, 123-24 (1996). The requirement of a demand on the board is excused, however, if the demand would be futile. *Id.; see* N.Y. Bus. Corp. Law § 626(c) (McKinney 1986).

In *Marx,* the Court set forth New York's "approach" to demand futility:
a demand would be futile if a complaint alleges with particularity that (1) a majority of the directors are interested in the transaction, or (2) the directors failed to inform themselves to a degree reasonably necessary about the transaction, or (3) the directors failed to exercise their business judgment in approving the transaction.

644 N.Y.S.2d at 126. As defendants point out, demand futility is not sufficiently alleged "merely" by naming a majority of the directors as defendants with "conclusory allegations of wrongdoing or control by wrongdoers." *Id.* at 127 (quoting Barr v. Wackman, 368 N.Y.S.2d 497, 506 (1975)). Instead, as section 626(c) specifically requires, the complaint "shall set forth with particularity the ... reasons for not making" a demand.

2. *Application*

**\*2** Here, the Amended Complaint alleges demand futility with the requisite particularity. Indeed, the Amended Complaint devotes approximately five pages to explaining why a demand on the boards of the nominal defendants would

Not Reported in F.Supp.2d                                                                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 1708173 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

have been futile. (Am.Compl.¶¶ 190-201). In addition to the five pages devoted specifically to demand futility, the Amended Complaint contains numerous other specific allegations addressing the individual defendants' involvement and/or failures.

Tracking the applicable language from *Marx,* the Amended Complaint alleges, for example, that, in approving certain actions by the Bank, at least eleven of the individual defendants "failed to fully inform themselves to the extent reasonably appropriate under the circumstances." (Am.Compl.¶ 193). See *Marx,* 644 N .Y.S.2d at 128 ("Demand is excused because of futility when a complaint alleges with particularity that the [directors] did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances."). Moreover, the Amended Complaint does not stop there, but provides detailed allegations. For example, it charges that the individual defendants "ignored the clear risks of doing substantial wire transfer and other similar business with Russian correspondent banks," "failed to adopt reasonable internal controls and independent monitoring systems over [the Bank's] wire transfer business," and "ignored repeated specific warnings that [the Bank's] system of internal controls over its wire transfer business was a sham and that [the Bank] was aiding or participating in its customers' illegal banking activity." (Am.Compl.¶ 191).

In addition, the Amended Complaint provides numerous specific examples of publicly available and other information that plaintiffs contend should have put the individual defendants on notice, had they been acting with the diligence required of officers and directors of a bank, that the Bank was being exposed to unacceptable risks. (*See, e.g., id.* at ¶¶ 9, 74, 78, 139, 141, 164, 197, 199). *See, e.g., Miller v. Schreyer,* 683 N.Y.S.2d 51, 55 (1st Dep't 1999) (adhering to decision that demand was futile on basis that complaint alleged that corporate directors had unreasonably failed to inform themselves, when complaint alleged that "illegal purpose of the transactions, their magnitude and duration, [and] their timing" should have brought matter to attention of "senior management even on a rudimentary audit," and noting that it was not "naive to consider it futile to expect the directors to launch a vigorous investigation well after the facts have come to light") (applying New York law but considering Delaware law as well). The Amended Complaint alleges that one of the officer defendants directly participated in illegal schemes and that other individual defendants "approved the restructuring of [the Bank's] European Division, the creation of an Eastern European Division, and/or [the Bank's] subsequent rapid and unchecked expansion into the Russian banking market," in the process "ignor[ing] multiple, specific warnings ... that the Russian banking system was being infiltrated by organized crime." (*Id.* at ¶¶ 192, 193). See *In re Oxford Health Plans, Inc. Sec. Litig.,* 192 F.R.D. 111, 114-15 (S.D.N.Y.2000) ("In numerous cases where liability is based upon a failure to supervise and monitor, and to keep adequate supervisory controls in place, demand futility is ordinarily found, especially where the failure involves a scheme of significant magnitude and duration which went undiscovered by the directors.") (applying Delaware law).

**\*3** Accordingly, I hold that the Amended Complaint alleges with sufficient "particularity" the reasons plaintiffs did not make a demand upon the boards. The motion to dismiss is denied.

B. *The Motion For A Stay*

1. *Applicable Law*

In shareholder derivative cases, the New York courts have held that where a demand on the board of directors is excused on grounds of futility, the board may delegate the decision of whether to pursue the claims to a committee of disinterested, independent directors. *See, e.g., Auerbach v. Bennett,* 419 N.Y.S.2d 920, 927 (1979); *see also Strougo v. Bassini,* 112 F.Supp.2d 355, 361 (S .D.N.Y.2000) ("A special litigation committee has the power to terminate a derivative action to the extent allowed by the state of incorporation.") (applying Maryland law). In *Auerbach,* the New York State Court of Appeals held that the "substantive aspects" of a special litigation committee's decision to terminate a shareholder derivative suit are "beyond judicial inquiry under the business judgment doctrine," and that therefore courts may inquire only as to the "disinterested independence of the members of [the] committee and as to the appropriateness and sufficiency of the investigative procedures

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 1708173 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

chosen and pursued." *Id.* at 922. *See generally Kamen v. Kemper Fin. Serv., Inc.,* 500 U.S. 90, 102 (1991) (discussing New York law on special litigation committees).

Courts have discretion to stay discovery of a derivative suit pending a special litigation committee's decision on whether the corporation should pursue the claims against the officers and directors. *See, e.g., Strougos v. Padegs,* 986 F.Supp. 812, 815 (S.D.N.Y.1997) (observing that "courts normally grant a stay of proceedings for a reasonable period to permit an SLC to complete its investigation"); *Lichtenberg v. Zinn,* 663 N.Y.S.2d 452, 454 (3d Dep't 1997) (holding trial court did not abuse its discretion in refusing director defendants' request to limit discovery pending special litigation committee's report).

2. *Application*

Defendants' request for a stay in this case is denied, for the following reasons.

First, this case has already been pending for more than a year, and a stay of the case at this juncture will only delay matters. Early on in the case the parties agreed to delay formal discovery as they engaged in informal discovery, joint investigation, and "exploration" of the issues. Defendants could have created the SLC a year ago, but waited until September 12, 2000 to do so. The delay weighs against staying these proceedings now.

Second, discovery is proceeding in the parallel state action, *Katz v. Renyi,* No. 604465/99, pending in the Supreme Court, New York County. This fact weighs against staying the proceedings in the instant case.

Third, substantial questions exist as to whether the members of the SLC are truly independent and disinterested. Although three directors were originally appointed, one has already resigned because of a potential conflict of interest. The remaining two members are named defendants in this case and both began serving as board members, according to plaintiffs, prior to the commencement of these lawsuits. The members of the SLC have joined in the instant motion, in which they and the other defendants have strenuously denied any wrongdoing; it is difficult to imagine that the SLC will reach any conclusion other than that the complaint lacks merit and therefore should be withdrawn. *See Auerbach,* 419 N.Y.S.2d at 927 (special litigation committee must be composed of independent directors who "possess a disinterested independence and do not stand in a dual relation which prevents an unprejudicial exercise of judgment").[FN1] Accordingly, further delay for the SLC to investigate matter is not warranted.

> FN1. As the Second Circuit has observed:
> The reality is ... that special litigation committees created to evaluate the merits of certain litigation are appointed by the defendants to that litigation. It is not cynical to expect that such committees will tend to view derivative actions against the other directors with skepticism. Indeed, if the involved directors expected any result other than a recommendation of termination at least as to them, they would probably never establish the committee.
> *Joy v. North,* 692 F.2d 880, 888 (2d Cir.1982) (applying Connecticut law).

CONCLUSION

**\*4** Defendants' motion to dismiss is denied, as is their alternative request for a stay of these proceedings.

SO ORDERED.

S.D.N.Y.,2000.
In re Bank of New York Derivative Litigation
Not Reported in F.Supp.2d, 2000 WL 1708173 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2001 WL 34766607 (Trial Motion, Memorandum and Affidavit) Affidavit of Marc De Leeuw (Oct. 16, 2001)
• 2001 WL 34766610 (Trial Motion, Memorandum and Affidavit) Affidavit of Lance Croffoot-Suede (Oct. 16, 2001)
• 2001 WL 34766601 (Trial Motion, Memorandum and Affidavit) Declaration and Verification of A. Norman Drucker (Sep. 01, 2001)
• 2001 WL 34766603 (Trial Motion, Memorandum and Affidavit) Declaration of Edward J. and Mildred Kaliski (Sep. 01, 2001)
• 2001 WL 34766599 (Trial Motion, Memorandum and Af-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 4
Not Reported in F.Supp.2d, 2000 WL 1708173 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

fidavit) Affidavit of Lance Croffoot-Suede in Support of Defendants' Galitzine's and Kotov's Motion to Dismiss the Amended Complaint (Aug. 31, 2001)

• [2000 WL 34501242](#) (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss the Amended Complaint Or, in the Alternative, to Stay the Action (Oct. 27, 2000)

• [2000 WL 34501040](#) (Trial Pleading) Amended Verified Shareholder Derivative Complaint (Sep. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.