Not Reported in A.2d                                                                                                                    Page 1
Not Reported in A.2d, 1983 WL 20284 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.
POMPEO
v.
HEFNER, et al.
LEWIS
v.
HEFNER, et al.
**CIV. A. Nos. 6806, 6872.**

Submitted March 14, 1983.
Decided March 23, 1983.

Jeffrey S. Goddess, Saul, Ewing, Remick & Saul, Wilmington.

Robert K. Payson, Potter, Anderson & Corroon, Wilmington.

A. Gilchrist Sparks, III, Morris, Nichols, Arsht & Tunnell, Wilmington.

BROWN, Chancellor.

***1** In these two companion derivative suits initiated on behalf of Playboy Enterprises, Inc., a special Litigation Committee has been appointed by the board of directors of the corporation to investigate the allegations of the two complaints and to take action to move the Court to dismiss the suits should the investigation appear to warrant it in the opinion of the Litigation Committee. In so doing the board of Playboy has opted to take advantage of the new procedures developed by our Supreme Court in *Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 799 (1981).

The Litigation Committee is a committee of one, comprised of David B. Heller, a new and unaffiliated director found "not unacceptable" by the Securities and Exchange Commission. Mr. Heller was elected as a director by the Playboy shareholders on November 9, 1982 and was dubbed as the special Litigation Committee on the same day with final and unfettered authority to determine whether or not the continued prosecution of the two derivative actions would be in the best interests of Playboy. On December 1, 1982 Mr. Heller engaged David S. Ruder, Dean of the Northwestern University School of Law, as special counsel to assist him in his efforts. On December 15, 1982 the corporation, through its counsel in these actions, moved for a stay of discovery by the plaintiff through May 15, 1983 in order to allow a reasonable time for the Litigation Committee to complete its task.

Plaintiffs have opposed this application contending that the sought-after stay is too long, that under the circumstances no stay is warranted at all, and that at the very least plaintiffs' counsel should be permitted from this point onward to sit in on portions of the investigation and review the documents and information being reviewed by the Litigation Committee in the interests of moving matters along.

The plaintiff Lewis argues that no stay is appropriate here because the defendant Hefner owns 67% of the outstanding stock of Playboy. Because of this Lewis argues that there is no way that Mr. Heller, as a committee of one, can be independent since (a) he could not have been elected as a director without the vote of Mr. Hefner, the primary defendant in the suits, and (b) he can be removed as a director at any time by Mr. Hefner, as majority shareholder, under Delaware law.

While this may be true, it forms no basis to deny Playboy of the *Zapata* advantage of utilizing the litigation committee approach. This is because, coming at this point, the challenge to Mr. Heller's independence is premature. Under *Zapata* a board of directors retains a degree of control over the fate of a derivative action even where it is disqualified from acting directly because of alleged conflicts of interest set forth in the derivative actions pleadings. *Zapata* starts with the assumed premise that the board, or a majority of it, is tainted by an alleged self-interest. This naturally gives rise to immediate common-sense suspicion as to the true independence of a new or untainted director who is appointed by the board as an independent committee to investigate the worthiness of the charges of wrongdoing made against the members of the appointing board. *Joy v. North,* Fed.Sec.L.Rep., p. 2011 (2nd Cir., 1982).

***2** Under *Zapata,* however, the independence of the litigation committee does not take on critical significance until such time as the committee moves this Court to dismiss the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

derivative action based on the findings of its investigation. At that point, under *Zapata,* it becomes the function of this Court to pass on the good faith and independence of the litigation committee together with the reasonableness of the basis for its dismissal recommendation. Should the litigation committee not recommend a dismissal, presumably its independence becomes a moot question insofar as the derivative plaintiff is concerned.

I recognize the point that the plaintiff Lewis is attempting to make. He is saying that if it is apparent from the outset that the litigation committee is not independent, then we are all wasting a lot of time in holding up the progress of the derivative suit brought to benefit the corporation and its shareholders while the committee purportedly conducts an investigation. But the premise for this argument is that where those charged with wrongdoing are the ones who select the person to investigate the charges against them, that person, thus owing his position and authority to those whose activities he is charged to investigate, can never be truly independent. Yet this was the situation in *Zapata,* and the Supreme Court held that the independence of the litigation committee is to be tested by this Court when and in the event that the committee moves this Court to dismiss the case on the basis of its internal investigation.

Plaintiff Lewis is asking that this determination be made in advance of any finding and recommendation by the Litigation Committee here. As such, the application is premature as I understand the meaning of *Zapata.* The only difference between this situation and that in *Zapata* is that the defendant Hefner, in addition to being one of the defendant directors, is also the majority shareholder. Thus, he can arguably remove Heller as a director at any time without cause, which presumably the interested board could not do itself in *Zapata*. This, however, is simply an additional evidentiary factor to be considered in the event that Heller's independence is put into issue by a motion of the Litigation Committee to dismiss the suit. There is nothing of record to indicate that Mr. Hefner has done anything to influence the activities of the Litigation Committee and I cannot conclude that his majority shareholder status gives rise to a conclusive presumption that his mere existence does so. His majority shareholder status is certainly an element to consider when and if the issue arises under the *Zapata* procedure. However, it is not of itself a dispositive factor at this point such as, in practical effect, would serve to deprive Playboy's board in advance of the power to utilize the *Zapata* procedure.

As to the request of the plaintiffs to take discovery pending the investigation, or to at least participate in the investigation of the Litigation Committee, I think the decision is controlled by *Abbey v. Computer & Communications Technology Corp.,* Del.Ch., --- A.2d ---- (1983). In *Abbey* it was held that under *Zapata* the right of the derivative plaintiff to proceed with his suit must be placed in abeyance in deference to the underlying and ultimate power of the board of directors to control the fortunes of the corporation. Under *Zapata,* in a "member disqualification" situation this control is exercised through the independent litigation committee as the arm of the board of directors. But in this fashion, the control power of the board is still predominant over any right of the derivative shareholder plaintiff to act on behalf of the corporation. If this recognition of superior authority and control is to be honored, then the derivative plaintiff must wait, at least for a reasonable time. Consistent with this concept is the thought that the derivative plaintiff should not be permitted to intermeddle or act coextensively with the independent arm of the board of directors along the way.

**\*3** The benefit which the plaintiffs seek here is to save them time in the long run in their efforts to benefit the corporation. But the purpose of the *Zapata* procedure, as I understand it, is to benefit the board of directors-to give a board something it did not have heretofore-so as to retain for those elected to manage the affairs of the corporation the right in the first instance to pass upon that which is in the best interests of the corporation and its shareholders. The intended benefit thus being in recognition of the superior power of the board in the first instance, I see no basis for permitting a shareholder plaintiff to participate in the functions and deliberations of the legally appointed representative of the board in the process of exercising that superior power. Thus, I think all discovery by the plaintiff must be continued to be held in abeyance here.

Finally, as to the duration of the stay sought by Playboy, five months is indeed a lengthy period. However, the allega-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                    Page 3
Not Reported in A.2d, 1983 WL 20284 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

tions of the complaints essentially charge mismanagement with regard to the loss of Playboy's gaming licenses and the sale of its gaming operations in Great Britain as well as with certain aspects of its gaming license applications in Atlantic City. Those matters do not involve isolated incidents. Mr. Heller's affidavit indicates that there are thousands of pages of testimony given by more than 170 witnesses before regulatory bodies to be considered, together with more than 500 exhibits offered during the course of such proceedings.

As noted in *Abbey,* the length of the stay of discovery to be granted in all such situations as this is necessarily related to the nature and complexity of the derivative cause of action asserted. Under the circumstances argued here, I am persuaded that a stay through May 15, 1983 is appropriate. I do think, however, that this is the maximum period that should be allowed for the purpose of the investigation and report of the Litigation Committee.

An appropriate form of order may be submitted.

Del.Ch.,1983.
Pompeo v. Hefner
Not Reported in A.2d, 1983 WL 20284 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.