UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | Master Docket No. 1:04-cv-10177 (NG) |
| ) | |
| IN RE BIOPURE CORPORATION, ) | Assigned to Judge J. Nancy Gertner |
| DERIVATIVE LITIGATION ) | |
| ) | Magistrate Judge Alexander |
| ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| ) | |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL

## Introduction

Plaintiffs seek to disqualify Bingham McCutchen LLP ("Bingham") as counsel for nominal defendant Biopure Corporation ("Biopure" or the "Company"), as Bingham also represents the Individual Defendants[1] (collectively, the "Defendants"). Plaintiffs' request to disqualify Bingham from jointly representing Biopure and the Individual Defendants at this early stage in the litigation is without basis in law or fact and accordingly, should be denied.

As case law and governing rules of professional conduct make clear, a law firm's dual representation of a company and individual defendants in a derivative action is typical, and generally proper. Such dual representation may become potentially problematic, but only when there is an <u>existing</u> conflict of interest. At that time, absent extraordinary circumstances, it is up to the attorney and the client to sort out that conflict. In fact, courts have deemed adversary motions to disqualify counsel as a strongly disfavored litigation tactic typically employed for harassment purposes alone. Here, the plaintiffs have identified <u>no</u> existing conflict, but rather, base their motion to disqualify counsel -- an attempt to interject themselves into Defendants' and

---

[1] The Individual Defendants are David N. Judelson, Charles A. Sanders, C. Everett Koop, Daniel P. Harrington, J. Richard Crout, Howard Richman, Thomas A. Moore and Carl W. Rausch. Howard Richman is also represented by separate counsel.

their selected counsel's attorney-client relationship -- on mere hypotheticals of events that might occur in the future.

Presently, these proceedings are effectively stayed pending the Court's decision on the Biopure Special Litigation Committee's ("Biopure SLC") Motion to Stay (the SLC is represented by separate counsel), filed to permit the SLC a reasonable time to investigate the claims asserted and determine whether the litigation is in the best interests of the Company in its business judgment. At the conclusion of that investigation, the SLC may decide that the litigation is adverse to the Company's best interests and move to dismiss the Complaint, mooting these proceedings and the Plaintiffs' Motion. In the interim, by agreement with the plaintiffs, no Defendant is required to answer the Complaint until the Motion to Stay is decided. Accordingly, no action in this litigation is currently due to be taken by any of the Defendants, and depending on the outcome of the SLC's investigation and Court's ruling regarding the same, there may never be any further action required.

In sum, there is no conflict in Bingham's dual representation at the present time. At most, there _could_ be the _potential_ for conflict at some point in the future. Plaintiffs' tactical motion based on a "what if" scenario should be denied.

## Background

### 1.    The Parties, the Complaint, and Defendants' Counsel.

The plaintiffs are allegedly shareholders of Biopure, on behalf of which they purport to bring this action. On January 26, 2004, plaintiffs John and Laurie Parrot (the "Parrots") filed a verified shareholder derivative complaint (the "Initial Complaint"), against David N. Judelson, Charles A. Sanders, C. Everett Koop, Daniel P. Harrington, J. Richard Crout, Thomas A. Moore, Carl W. Rausch, and nominal defendant Biopure. The Initial Complaint set forth five counts, alleging breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. An additional count of breach of fiduciary duty for insider selling and misappropriation of information was alleged against Defendant Rausch. The Parrotts sought

monetary damages and equitable and injunctive relief. Each of the Defendants named in the Initial Complaint retained Bingham as their respective counsel.

Several additional derivative complaints were soon thereafter filed by other alleged shareholders, and on May 14, 2004, the Court consolidated all of the pending derivative actions into one action, the Consolidated Derivative Action. On July 14, 2004, the plaintiffs filed a Verified Consolidated Amended Complaint containing the same allegations and requesting the same relief. On March 30, 2006, the plaintiffs filed a Verified Consolidated Second Amended Complaint alleging additional facts taken from the Securities and Exchange Commission's ("SEC") Complaint ("SEC Complaint"). Plaintiffs added Howard Richman as a defendant in the Second Amended Complaint, and Dr. Richman retained his own counsel with the law firm Edwards Angell Palmer & Dodge LLP. Although Dr. Richman has his own counsel, Bingham has served as Dr. Richman's co-counsel, and has thus filed pleadings on his behalf in this Derivative Action.

### 2. Defendants Moved To Dismiss The Derivative Action Primarily On The Basis That Plaintiffs Failed To Satisfy The Demand Futility Requirement.

Before filing the Initial Complaint, the plaintiffs made no demand on Biopure for curative action. Instead, the plaintiffs assert in all of the Complaints that a demand would have been futile because the defendants who were the subject of the Initial Complaint and Amended Complaints were interested parties. On September 27, 2004, Defendants moved to dismiss the Derivative Action primarily on the basis that plaintiffs failed to satisfy the demand futility requirement under Rule 23.1 (*i.e.*, to preserve the right of the Board to decide whether to pursue the litigation). Defendants also argued that plaintiffs failed to state a claim as a matter of law under Rule 9(b) and Rule 12(b)(6). On March 28, 2006, the Court denied Defendants' motion to dismiss the Derivative Action.

### 3. Biopure's Board Appointed The SLC, The SLC Moved To Stay The Proceedings Pending Its Investigation, And Plaintiffs Assented To Extending The Time For Defendants To Answer.

In response to the several derivative lawsuits that were consolidated into the present action and, in particular, the Court's recent decision on Defendants' motion to dismiss (concluding that demand need not be made on Biopure's Board of Directors), Biopure's Board[2] held a meeting on May 1, 2006. At this meeting, the Board voted to form the Biopure SLC and appointed Directors Neels and Pieper, two outside directors who were not on the Board during the time giving rise to the allegations of the Complaint, who are not named as defendants, and who are otherwise unquestionably independent and disinterested, to serve as the Biopure SLC. The Biopure SLC has retained full authority to act on behalf of the Company in deciding how to proceed with this litigation. Further, the Biopure SLC has retained its own independent counsel, John A.D. Gilmore, Esq., of the law firm of DLA Piper Rudnick Gray Cary, US LLP.

On May 11, 2006, understanding that the SLC would soon be filing a motion to stay the proceedings pending the SLC's investigation, Plaintiffs agreed to extend the Defendants' time to answer based on the SLC's then-forthcoming motion to stay. The Court granted the Motion on May 12, 2006. On May 23, 2006, the Biopure SLC filed a Motion to Stay Proceedings Until September 1, 2006. That Motion is currently pending before the Court.

### Argument

### PLAINTIFFS' PREMATURE MOTION TO DISQUALIFY SHOULD BE DENIED

#### A. Motions To Disqualify Are Disfavored Litigation Tactics

Courts in this Circuit view motions to disqualify counsel with heightened suspicion, recognizing that such motions are often "made for tactical, not substantive, reasons and will most likely cause delay in the litigation." *Moss v. TACC Int'l Corp.*, 776 F. Supp. 622, 624 (D. Mass. 1991); *see also Rizzo v. Sears Roebuck & Co.*, 127 F. R, D. 423, 424-25 (D. Mass. 1989) (noting

---

[2] Biopure's Board consists of the following members: Zafiris G. Zafirelis (not a defendant here), David N. Judelson, Charles A. Sanders, Daniel P. Harrington, C. Everett Koop, Guido J. Neels (not a defendant here), and Jay B. Pieper (also not a defendant here). The four directors who are named as defendants are all outside directors.

that Courts "proceed with deliberate caution" because, in part, "[w]hen disqualification occurs after employment has begun, it temporarily (and possibly permanently) disables the litigant in his effort to ... mount a defense"). In general, courts in this Circuit are "reluctant to disqualify attorneys because of the severe consequences of a disqualification." *Moss.*, 776 F. Supp. at 624. "This reluctance stems from the fact that disqualification has an immediate adverse effect on the client by separating him from the counsel of his choice." *Id.* (internal quotation and citation omitted).

Similarly, the Massachusetts Rules of Professional Conduct ("MRPC") caution against judicial action when opposing counsel attempts to insert themselves into another party's attorney-client relationship by moving to disqualify the attorneys that his adversaries have selected. That is because "[r]esolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation." MRPC 1.7, comment 15. Only when "the conflict is such as clearly to call in question the fair and efficient administration of justice" may opposing counsel properly raise the question. *Id.* Any such objection, however, "should be viewed with caution ... for it can be misused as a technique of harassment." *Id. See also Appeal of Infotechnology*, 582 A.2d 215, 221-22 (Del. 1990) ("Absent misconduct which taints the proceeding, there is no independent right of counsel to challenge another lawyer's alleged breach of the Rules outside of a disciplinary proceeding. Likewise, the trial courts have no jurisdiction to entertain such applications except as noted above.").

Notably, governing rules of professional conduct recognize that, in derivative actions, dual representation is permitted. MRPC 1.13(e) provides that "[a] lawyer representing an organization may also represent any of its officers, directors, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7."

Here, as set forth below, the absence of any sufficient legal or factual basis for Plaintiffs' Motion at this stage of the litigation makes transparent its purpose -- to disrupt Defendants' relationship with counsel for tactical advantage.

B.  **The Prevailing Practice In Massachusetts And Delaware
    Is That Dual Representation Is Permitted In Derivative Actions.**

Although there does not appear to be any state or federal case in Massachusetts specifically addressing a motion to disqualify counsel for the defendants in a shareholder derivative action, the prevailing practice in Massachusetts and in the First Circuit is that the same counsel may represent both the corporation and its accused officers or directors. *See, e.g., Gonzalez Turul v. Rogatol Distributors, Inc.*, 951 F.2d 1 (1st Cir. 1991) (single attorney represented individual and corporate defendants in derivative action); *Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86, 87 (1st Cir. 1988) (same); *Sugarman v. Sugarman*, 797 F.2d 3, 5 (1st Cir. 1986) (same).[3]  Indeed, in some of those cases the allegations against the individual defendants included serious charges of wrongdoing, including self-dealing. *See Sugarman*, 797 F.2d at 7 (majority shareholder, president and CEO charged with freezing out minority interests); *Marquis Theatre*, 846 F.2d at 87-88 (defendant charged with depriving company of any profits by self-dealing involving other companies owned by defendant).

Similarly, as in Massachusetts and the First Circuit, permitting joint representation of corporate and individual defendants appears to be settled practice in Delaware. In *Scott v. New Drug Svcs., Inc.*, C.A. No. 11336, 1990 WL 135932 (Del. Ch. Sept. 6, 1990), attached hereto as Exhibit B, a derivative action involving claims for corporate waste and breaches of the duties of fairness and candor, the court rejected the plaintiff's motion to disqualify a single law firm from representing both the individual and nominal corporate defendants. The court determined that, because the claims did not allege fraud or "breach of confidence or trust," it would be "unreasonable and wastefully expensive to require separate counsel to represent the corporate and individual defendants ... [when] the corporation will remain a neutral party whose counsel is

---

[3] *See also Chesterton v. Chesterton*, No. 89-2854, 1990 WL 150066, *1 (D. Mass. Oct. 2, 1990) (single attorney represented individual and corporate defendants in derivative action) (attached hereto as Exhibit A); *Demoulas v. Demoulas Super Markets, Inc.*, 428 Mass. 555 (Mass. 1998) (single law firm represented both individual defendants and nominal corporate defendant in derivative action); *Crowley v. Communications for Hosps., Inc.*, 30 Mass. App. Ct. 751, *rev. denied*, 410 Mass. 1104 (1991) (same); *Aliberti v. Green*, 6 Mass. App. Ct. 41 (1978) (same).

generally unable to alter the outcome of the litigation." *Id*. at *4. (internal quotation marks and citation omitted). Notably, the plaintiffs here do not allege fraud. *See* Plaintiffs' Mem. at 10 ("Here, Plaintiffs do not allege fraud.").

### C. To Disqualify Counsel, Plaintiffs Must Show -- By Clear And Convincing Evidence -- An Actual Existing Conflict.

To disqualify counsel, courts have required that an actual – not a mere potential – conflict exist, and the conflict must be shown by clear and convincing evidence. *Appeal of Infotechnology*, 582 A.2d 215, 221-22 (Del. 1990) ("[T]he burden [is] on the non-client litigant to prove <u>the existence of a conflict</u> and to show by <u>clear and convincing evidence</u> exactly how that conflict will affect the fair and efficient administration of justice") (emphasis added); *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 658, 661 (N.D. Tex. 1978) ("[U]nless it can be shown that an <u>actual conflict exists</u> or that certain confidences are being jeopardized, I think the client's right to select counsel of his choice outweighs any potential conflict of interest.") (emphasis added).

As established by the comments to Rule 1.13 of the MRPC, joint representation is permissible in derivative actions except in the unique circumstances of when "a conflict *may* arise" -- a situation then governed by Rule 1.7. The comments to Rule 1.13 provide:

Derivative Actions

[10] Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. ... Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.

[11] The question can arise whether counsel for the organization may defend such an action. ... <u>Most derivative actions are a normal incident of an organization's affairs to be defended by the organization's lawyer like any other suit.</u> However, if the claim involves serious charges of wrongdoing by those in control of the organization, <u>a conflict *may arise*</u> between the lawyer's duty to the organization and the lawyer's relationship to the board. In those circumstances Rule 1.7 governs who should represent the directors and the organization.

MRPC 1.13, comments 10,11 (emphasis added).[4]

Accordingly, the MRPC does not prohibit dual representation in a derivative action except when a conflict in fact arises, the conflict cannot be reconciled with Rule 1.7, and the plaintiffs prove the same by clear and convincing evidence.[5]

### D.   **Plaintiffs Have Failed To Demonstrate Any Existing Conflict.**

Plaintiffs have not presented *any* evidence -- as they must -- to show that there is an existing actual conflict of interest in the dual representation of Biopure and the Individual Defendants. Their motion rests on assertions of hypotheticals alone, a far cry from the "clear and convincing evidence" that courts have required. *See Appeal of Infotechnology*, 582 A.2d at 221-22. For this reason alone, the plaintiffs' tactical motion should be denied.

Moreover, because this litigation is at such an early stage, the plaintiffs in fact *cannot* present such evidence. Pursuant to MRPC 1.13, comment 11, in those circumstances where "a conflict *may arise* between the lawyer's duty to the organization and the lawyer's relationship to the board," Rule 1.7 "governs who should represent the directors and the organization."[6] MRPC

---

[4] Defendants vigorously disagree that any "serious charge of wrongdoing" has been advanced with any factual (as opposed to conclusory) allegation in this litigation. The Complaint in this action asserts that the FDA had expressed "safety concerns" regarding a single proposed clinical trial for an indication the Company was not even pursuing, and the Company did not publicly disclose the same. As for the outside directors, there is not a single allegation of fact in the Complaint to support any assertion that any of them even knew of the FDA's "safety concerns" -- as evidenced by this Court's ruling on the motion to dismiss, which relied solely on a presumption that directors would have such knowledge. As for the inside directors, there is not a single allegation of fact that any such director intended to mislead anyone. Insofar as the actual allegations of the Complaint are concerned, the plaintiffs assert claims for negligence.

[5] The relevant Delaware Lawyers Rules of Professional Conduct are substantively indistinguishable from the Massachusetts rules.

[6] MRPC 1.7 provides:

> (a) A lawyer shall not represent a client if the representation of that client will be *directly adverse* to another client, unless:
>
>> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>
>> (2) each client consents after consultation.

1.13, comment 11.  Apart from the fact that Rule 1.7 vests the conflict decision with the attorney and the client -- and not an adversary -- the posture of this litigation itself precludes finding any conflict.

Because the Defendants' obligation to answer has been suspended (with the plaintiffs' assent) pending the Court's decision on the Biopure SLC's Motion to Stay, there is no activity that could arise that could create a conflict of interest between Biopure and the Individual Defendants until the Motion to Stay is decided.  Courts have recognized the general absence of any disqualifying conflicts prior to defendants being required to answer the complaint, and beyond.  *Burger v. Health Ins. Plan of Greater New York*, 1988 WL 60267, *6 (S.D.N.Y. 1988), attached hereto as Exhibit C  ("As defendants have not filed their answers, the motion [to disqualify counsel] is premature. . . .  An attorney may represent multiple clients until an actual conflict arises."), *citing Aetna Casualty & Surety Co. v. United States*, 570 F.2d 1197, 1200-02 (4th Cir. 1978) (other internal citations omitted); *Jacuzzi v. Jacuzzi Bros., Inc.*, 243 Cal. App. 2d 1, 36 (1966) ("In general, however, prior to an adjudication that the corporation is entitled to relief against its officers, or directors, the same attorney may represent both."); *In re Consumers Power Co. Deriv. Lit.*, 132 F.R.D. 455, 479- 80 (E.D. Mich. 1990) (in the derivative suit context, an adversity of interest between the corporation and individual defendants typically does not arise unless breaches of the duty of loyalty are alleged and the case has proceeded until "after the preliminary stages"; denying motion to disqualify); *Robinson v. Snell's Limbs & Braces of New Orleans, Inc.*, 538 So. 2d 1045, 1048 (La. 1989)  (applying Model Rule 1.7 and denying motion to disqualify counsel from representing corporation and individual defendants in shareholder derivative action because there is no adversity of interest).

---

> (b) A lawyer shall not represent a client if the representation of that client may be *materially limited* by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>>
>> (2) the client consents after consultation.
>
> MRPC 1.7 (emphasis added).

Furthermore, Biopure has appointed the SLC and the SLC has retained its own independent counsel. Neither nominal defendant Biopure, nor any of the Individual Defendants, nor Bingham are involved in the SLC's independent review of the merits of this litigation, which is ongoing even as the parties await the Court's ruling on the Motion to Stay. In fact, the SLC's determination of whether to proceed with litigation may signify whose interests the corporation is most in line with. *See Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1316 (3d Cir. 1993) (where defendant's board charged a special committee along with independent counsel to investigate the shareholder plaintiffs' demands and the special committee and independent counsel found prosecution of these demands not in corporation's best interest, "[t]his suggests a relative (though not complete) convergence of individual and corporate interests in defending and settling the litigation").

If, at the conclusion of its investigation, the Biopure SLC finds no merit to the allegations, or in its business judgment otherwise chooses not to pursue litigation, a motion to dismiss will be filed with the Court. Bingham will have no input into whether the Biopure SLC decides to pursue this course, but if it were pursued, no conflict of interest between Biopure and the Individual Defendants would arise.

### E.   Plaintiffs' Cases Are Unavailing.

None of the cases relied upon by the plaintiffs are persuasive here. For instance, Plaintiffs rely heavily on the out-of-jurisdiction case *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 658 (N.D. Tex. 1978). In *Clark*, the court *denied* plaintiffs motion to disqualify where the same counsel represented the nominal corporate defendant and the individual defendants through the motion to dismiss. The plaintiffs' reliance here is on *dicta* in *Clark*, indicating that new counsel should be sought once a motion to dismiss is denied, or once it becomes necessary for active participation in litigation. The plaintiffs here simply ignore, however, that the *Clark* court went on to indicate, "[o]f course, in that situation, the court, at the request of the individual defendants, may want to consider whether they can waive the conflict[.]" *Id.* In any case, that

*dicta* does not detract from the court's reasoning that was central to its holding, and dispositive here: "unless it can be shown that an *actual conflict exists* or that certain confidences are being jeopardized, I think the client's right to select counsel of his choice outweighs any *potential* conflict of interest." *Id.* at 661 (emphasis added). Here, there is no actual conflict.

Plaintiffs further rely on out-of-jurisdiction cases where the court found an adversity of interests because, unlike here, the corporation elected to take an active stance in the litigation (such as by filing a counterclaim or crossclaim). *See, e.g.*, *Schmidt v. Magnetic Head Corp.*, 101 A.D.2d 268, 279 (1984) (defendant corporation "not only answered the complaint but also asserted a counterclaim against plaintiff"); *Messing v. FDI, Inc.*, 439 F. Supp. 776, 782 (D.N.J. 1977) (holding that where corporation "has taken an active role in this litigation by asserting in its own right a cross-claim", corporation must retain independent counsel because "the directors have been accused of fraud and the corporation has elected to take an active stance in the litigation"). Here, by contrast, Biopure has not "elected to take an active stance in the litigation," and consistent with *Messing*, Biopure has appointed the Biopure SLC, granted the Biopure SLC full authority in deciding how it wishes to proceed with this litigation, and the Biopure SLC has retained its own independent counsel. Thus, any decisions to "actively participate" in the litigation going forward will be made by the Biopure SLC and its own independent counsel, not Biopure with the assistance of Bingham.

Plaintiffs' reliance upon *Yablonski v. United Mine Workers of America*, 448 F.2d 1175, 1182 (D.D.C. 1971), is also misplaced. In *Yablonski*, the court noted that in the "ordinary course" joint representation of a company and individual defendants is proper through the preliminary stages of litigation. The present case is still, of course, in the "preliminary stages" of litigation. *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1189-90 (N.D. Cal. 1993), is also inapposite because there an in-house attorney represented the corporation and the individual defendants. The court concluded that dual representation by an in-house attorney creates a conflict of interest because the in-house attorney works "on a day-to-day basis" with the

individual defendants "who control his future with the corporation." *Id.* at 1189. That issue does not exist here.

Lastly, plaintiffs cite cases involving allegations of corporate misconduct much more serious and contrary to the interests of the company than the claims at issue here. *See e.g., Musheno*, 897 F. Supp. at 835 (allegations included willful misconduct, fraud and self-dealing); *Forrest v. Baeza*, 58 Cal. App. 4th 65 (1997) (allegations that shareholder-directors of two closely held family-run corporations embezzled from the corporations).[7] Here, plaintiffs concede that they "do not allege fraud" (Plaintiffs' Mem. at 10).

## Conclusion

For the foregoing reasons, the Defendants respectfully request that Plaintiffs' Motion be denied.

## Request for Oral Argument

Pursuant to Local Rule 7.1(D), Defendants hereby request oral argument on Plaintiffs' Motion to Disqualify Counsel.

---

[7] Plaintiffs also cite *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) for the proposition that independent counsel is required when plaintiffs allege self-dealing. Although the *Bell* court, in *dicta*, held that "except in patently frivolous cases[,] allegations of directors fraud, intentional misconduct, or self-dealing require separate counsel", the *Bell* court was examining a motion to disqualify in the context of a challenge to a settlement in a derivative action. The court found that disqualification was not required where "plaintiffs have alleged only mismanagement, a breach of the fiduciary *duty of care*." *Id.* at 1316-17 (emphasis in original).

Respectfully submitted,

| | |
|---|---|
| **THOMAS A. MOORE, CARL W. RAUSCH, DAVID N. JUDELSON, CHARLES A. SANDERS, M.D., C. EVERETT KOOP, M.D., DANIEL P. HARRINGTON, J. RICHARD CROUT, M.D, HOWARD RICHMAN AND BIOPURE CORPORATION** | **HOWARD RICHMAN,** |
| By its attorneys, | By his attorneys, |
| /s/ Donald J. Savery<br>Robert A. Buhlman, BBO #554393<br>Donald J. Savery, BBO #564975<br>Michael D. Blanchard, BBO #636860<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA  02110-1726<br>(617) 951-8000 | /s/John D. Hughes<br>John D. Hughes, BBO #243660<br>Cathy A. Fleming (*pro hac vice*)<br>John J. Tumilty, BBO #560017<br>Mary P. Cormier, BBO #635756<br>Edwards Angell Palmer & Dodge LLP<br>101 Federal Street<br>Boston, MA 02110<br>617-951-2225 |

Dated: June 9, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on June 9, 2006.

/s/ Donald J. Savery  
Donald J. Savery
