

Not Reported in A.2d                                                                                          Page 1
Not Reported in A.2d, 1990 WL 135932 (Del.Ch.), 16 Del. J. Corp. L. 1561
**(Cite as: Not Reported in A.2d)**

C

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
Dana M. SCOTT
v.
NEW DRUG SERVICES, INC., Bernard Cabana, Michael P. Adams, and William Schary.
**CIV. A. No. 11336.**

Submitted: Aug. 28, 1990.
Decided: Sept. 6, 1990.

**\*\*1562** David L. Finger, Richards, Layton & Finger, Wilmington.
Aubrey B. Lank, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington.
ALLEN, Chancellor.
**\*1** It appears that in early 1988, plaintiff, Dr. Dana Scott, and defendants, Drs. Bernard Cabana, Michael Adams, and William Schary agreed to form a new company to assist drug manufacturers in applying for approval from the U.S. Food and Drug Administration for new drugs. The parties arranged for an attorney at Baker & Hostetler in Washington, D.C., Eric Stoer, to assist them in incorporating a closely-held Subchapter S corporation, New Drug Services, Inc. ("NDS"). The union was short-lived. By early 1989, the principals had fallen into disagreement among themselves. In December 1989, Cabana, Adams, and Schary decided that the friction between Adams and Scott had become so pronounced as to warrant action by the board of directors. At a December 1989 **\*\*1563** board meeting, despite the existence of an employment contract, Scott was terminated as president of NDS.

Scott promptly brought suit on behalf of himself as well as on behalf of the corporation. In this lawsuit, Scott alleges, among other things that the NDS board of directors has breached duties of fairness and candor to him as a minority shareholder by ousting him from his executive position and by preventing NDS from paying Scott his fair share of the corporate profits; that the members of the board have committed waste in paying themselves exorbitant bonuses; that NDS has breached its employment contract with him; and that NDS has breached a covenant of good faith and fair dealing.

Defendants answer that NDS has not breached the employment contract because Scott was not satisfactorily performing under the contract and that Scott has no standing to assert the derivative claims because he is no longer a shareholder of NDS.[FN1]

Currently pending is a motion to disqualify Eric Stoer, the Baker & Hostetler firm, and Mr. Stoer's current firm from representing the corporation or the individual defendants in this action. Three grounds are asserted: (1) Stoer has a conflict of interest resulting from, among other acts, his participation in the incorporation process, including the drafting of Scott's employment agreement, and his participation in the December board meeting at which Scott was terminated; (2) given Stoer's role in drafting the incorporation documents, his testimony will be necessary to their interpretation; and (3) Stoer should not be permitted to represent both the corporation and director defendants in a derivative action because of potential conflict of interest between those persons.

Defendants respond that Stoer has no conflict of interest because throughout his association with NDS he was representing Dr. Cabana, never the corporation or the other principals, and he advised all the parties of this fact. They contend that he is not a necessary witness because it is not the interpretation of Scott's employment agreement that is at issue, but rather his performance under the contract. They also assert that even though derivative claims are purportedly involved, the interests of the corporation and the director defendants are, in this case, perfectly aligned.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                  Page 2

Not Reported in A.2d, 1990 WL 135932 (Del.Ch.), 16 Del. J. Corp. L. 1561
**(Cite as: Not Reported in A.2d)**

**\*\*1564** I.

**\*2** The parties actively contest most of the facts in this case, but there are some facts upon which the parties seem to agree. In 1988, Dr. Cabana, President of International Drug Company ("IDR"), a Maryland corporation, approached Drs. Schary, Adams, and Scott, then employed at the DuPont Corporation, to inquire about their interest in leaving DuPont to work instead for IDR. For various reasons, Schary, Adams, and Scott declined Cabana's offer of employment with IDR. The parties did agree, however, to form NDS as a joint venture. NDS was to be a Subchapter S corporation that would guide drug manufacturers through the maze of bureaucracy leading to FDA approval for new drugs.

In March 1988, in connection with the formation of NDS, the parties consulted Stoer who drafted NDS's corporate documents, including the Shareholders' Agreement, the employment contracts of Scott as president and Adams as vice president of NDS, and the Cabana and Schary Consulting Agreements. For his services, Stoer was paid, after the incorporation of NDS, by a check from NDS. At this time, Scott did not seek any separate counsel.

In early 1989, Scott, Adams, and Schary consulted another attorney, Mike Perna of the Pennsylvania firm of Rigler & Perna, about a dispute that NDS was having with Cabana's corporation IDR. The dispute was settled, however, after Perna talked to Stoer, who represented Cabana and IDR.

Stoer also attended occasional NDS board meetings, including the December 28, 1989 board meeting at which Scott was terminated.

The parties, however, disagree on a host of material facts. Of critical importance, the director defendant insist that at their meetings with Stoer about the incorporation of NDS, Stoer advised Adams, Schary, and Scott that he was representing only Cabana and that the others should seek separate, independent counsel. Scott denies ever having been so informed.

Scott contends that Stoer was paid out of NDS funds, a portion of which was contributed by him. The defendants deny that NDS actually paid Stoer. They maintain that Cabana actually put up all the capital funds for NDS and that, as a matter of convenience, Cabana paid Stoer out of NDS funds. The defendants deny that Scott made any capital contributions to NDS, saying that Scott was reimbursed for any monies he may have advanced the new corporation. Scott counters that this "reimbursement" was not really **\*\*1565** a repayment of his capital contribution, but rather, payment for services rendered. He also denies Cabana's contribution to NDS was intended as capital, but says rather, the money Cabana contributed to NDS (via IDR) was the first payment on a subcontract with IDR.

Defendants point to the fact that Scott consulted Rigler & Perna as evidence that Scott was aware that Stoer was representing Cabana. Scott, on the other hand, argues that Perna advised Adams, Schary, and Scott of Stoer's conflict of interest but says that he didn't make a big issue of that at the time because the matter in that case was settled.

**\*3** Scott contends that at the December 28, 1989 board meeting he consulted Stoer and confided in Stoer his plans, strategies and alternatives should he be terminated. Stoer denies any confidential conversations with Scott occurred at that meeting.

While each party argues that these factual differences are irrelevant and that each is entitled to prevail on this motion, I am unable to agree. I conclude that it is necessary to take evidence in order to determine disputed facts relevant to the question whether trial counsel should be disqualified in this instance. I see no reason at this point, however, to disqualify Stoer based on any alleged necessity of calling him as a witness or based on the fact that his firm would be representing both the corporation and the director defendants.

II.

This court is aware of the gravity of disqualification. Disqualification of counsel forces

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                         Page 3

Not Reported in A.2d, 1990 WL 135932 (Del.Ch.), 16 Del. J. Corp. L. 1561
**(Cite as: Not Reported in A.2d)**

the client to relinquish counsel of its choice and to obtain new counsel, which implies added cost and possible time delays. Similarly, the disqualified lawyer and his firm may suffer embarrassment and financial loss as a result. *See* G. Hazard, *The Law of Lawyering* 177 (1989). Yet, the important need that the legal professions' standards of ethical conduct be maintained requires that, in appropriate instances, a court before whom a matter is being litigated must act to disqualify an attorney. That action must never be taken lightly, but neither can it be shirked out of feelings of solicitude.

Turning first to the question of disqualification on the ground that counsel is a likely witness, I note that in order to succeed on such a motion, plaintiff must establish that there is a reasonable probability that Mr. Stoer will be a "necessary" witness **1566** in this litigation.[FN2] *See Cannon Airways v. Franklin Holdings, Corp.,* 669 F.Supp. 96, 99 (D.Del.1987); *Brady v. Delaware Trust Co.,* Del.Ch., C.A. No. 8827, Allen, C. (Sept. 14, 1988). To be "necessary" for purposes of disqualification, the attorney's testimony cannot be merely cumulative. *See Cannon Airways,* 669 F.2d at 102.

It does not appear likely at this point that Mr. Stoer's testimony will be "necessary" within the meaning of Rule 3.7 and any corresponding motion to disqualify Mr. Stoer on that basis is, therefore, premature. Plaintiff argues that, as the lawyer who drafted the documents that are the subject of this litigation, his testimony will be necessary to resolve questions of intent and interpretation. It is not clear, however, that this case involves questions of intent or interpretation of the employment contract. Even assuming, as plaintiff alleges, that the parties intended Dr. Scott's employment agreement to be a lifetime employment contract, this aspect of the case may turn on Scott's performance under the contract. If Scott did not perform under the contract, as defendants allege, then the corporation may be relieved of its obligations under the contract, even if it were a lifetime employment contract. Defendants' assertion that it is performance, not interpretation, that is at issue in this case, seems plausible. In that event, Stoer's testimony would be unnecessary.

*4 Further, even if questions of intent or interpretation arise, there is no evidence at this stage of the litigation that Stoer's testimony would be anything more than cumulative. There are still three other principals, Cabana, Adams, and Schary, who are competent to testify as to the parties' intent under the contracts in question. Should matters appear to be different at a later time, the motion may be renewed.

The propriety of joint representation of both the corporation and the director defendants in a derivative action is question on **1567** which courts here are divided. In *Otis & Co. v. Pennsylvania R. Co.,* 57 F.Supp. 680 (E.D.Pa.1944), *aff'd* 155 F.2d 522 (3d Cir.1946) (per curiam), the court found that dual representation was permissible, at least in the absence of "any allegation of breach of confidence or trust" by a party to the attorney-client relationship. 57 F.Supp. at 684.

On the other hand, there is substantial support for the idea that the corporation and the shareholders should retain separate counsel in derivative lawsuit where the underlying claim sounds in fraud (as opposed to negligence) and where the corporation takes "an active role" in the litigation. *See Messing v. FDI, Inc.,* 439 F.Supp. 776, 781-82 (D.N.J.1977); *Cannon v. U.S. Acoustics, Corp.,* 398 F.Supp. 209, 213 (N.D.Ill.1975) *aff'd* 532 F.2d 1118 (7th Cir.1976); *Clark v. Lomas & Nettleton Fin. Corp.,* 79 F.R.D. 658 (1978); *see also* Op. 842, 15 Record B.A.C.N.Y. (1960) (corporation should obtain separate counsel whenever the corporation elects to pursue an "active role"); Note, *Independent Representation for Corporate Defendants in Derivative Suits,* 74 Yale L.J. 524 (1965) (corporation should always be separately represented in derivative suits).

While, in theory, separate representation may be the better practice (and might be expected to enhance the credibility of any position taken by the corporation), I am mindful that it may be " unreasonable and wastefully expensive to require separate counsel to represent the corporate and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                    Page 4

Not Reported in A.2d, 1990 WL 135932 (Del.Ch.), 16 Del. J. Corp. L. 1561
**(Cite as: Not Reported in A.2d)**

individual defendants ... [when] the corporation will remain a neutral party whose counsel is generally unable to alter the outcome of the litigation." 74 Yale L.J. at 530. Consequently, I am not persuaded that separate representation is mandated in all situations.

What circumstances will require separate representation is obviously a question that is highly fact-specific. Counsel (and a court required to pass upon a disqualification motion) must attempt to assess the likelihood that the corporation will be required, or it will be in its interest, to take an active part in the litigation. It does not appear at this time that the corporation will be required or it will be in its interest to take an active role in this litigation. Therefore, I will decline to grant the disqualification sought on this ground at this time.

I turn then to the last ground asserted as requiring disqualification, the alleged disloyalty involved in suing a former client. This question turns on the requirement contained in Rule 1.9 of the Delaware Lawyers Rules of Professional Conduct:

**\*5 \*\*1568** *A lawyer who has formerly represented a client* in a matter shall not thereafter:

(a) represent another person in the *same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless that former client consents after consultation

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known. (Emphasis added).

A lawyer should be disqualified based on a conflict of interest where there has previously been a lawyer-client relationship *and* such relationship is " substantially related" to the subject matter of the current lawsuit *or* by reason of a prior professional relationship the lawyer has acquired confidential information relevant in the later suit. G. Hazard,

*supra* at 176-176.2; *see also* Model Rule 1.9 of the Delaware Lawyers Rules of Professional Conduct.

In this instance, the parties assert materially different views of the relevant facts. That fact makes it impossible to establish, absent an evidentiary hearing, whether a lawyer-client relationship existed or whether confidential information substantially related to this matter was disclosed. Even assuming, as plaintiff argues, that the putative client's reasonable belief as to whether an attorney was acting as his lawyer is the governing standard relating to the existence of a former representation, it is apparent that the taking of evidence will be necessary under the circumstances here. Whether or not a lawyer in fact disclaimed representing the putative client would certainly affect the reasonableness of any belief the putative client may hold in the existence of a lawyer-client relationship.

It is also disputed whether confidential information was disclosed to Mr. Stoer by Dr. Scott of a kind and in circumstances that would disable him from this representation.

For the foregoing reasons, I will deny the motion to disqualify based on the allegation that Mr. Stoer is likely to be a "necessary" witness and based on any purported conflict of interest between the corporation and the directors defendants. Pending further proceedings, I will reserve judgment whether Mr. Stoer must be disqualified based on any former attorney-client relationship with Mr. Scott. The parties should confer and attempt to stipulate what **\*\*1569** contested facts (in addition to the claim that Mr. Stoer told plaintiff that he did not represent him and when and the reasonableness of any contrary belief of Mr. Scott's) they may seek to have determined at this time. Discovery should be available in connection with the necessary hearing. Once the parties are ready for a hearing, we can confer by telephone for scheduling purposes.

> FN1. The defendants argue that the termination of Scott as president triggered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                       Page 5

Not Reported in A.2d, 1990 WL 135932 (Del.Ch.), 16 Del. J. Corp. L. 1561
**(Cite as: Not Reported in A.2d)**

a buy-sell provision in the Stock Agreement, and NDS thereafter repurchased Scott's shares.

FN2. Rule 3.7 of the Delaware Lawyers Rules of Professional Conduct provided in pertinent part:
(a) A lawyer shall not act as an advocate at a trial in which the lawyer *is likely to be a necessary witness* except where....
(3) disqualification of the lawyer would work substantial hardship on the client
(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9. (Emphasis added).

Del.Ch.,1990.
Scott v. New Drug Services, Inc.
Not Reported in A.2d, 1990 WL 135932 (Del.Ch.), 16 Del. J. Corp. L. 1561

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.