UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE BIOPURE CORPORATION DERIVATIVE LITIGATION ) ) ) ) ) ) ) | Master Docket No. 1:04-cv-10177 (NG)<br><br>Assigned to Judge Nancy Gertner<br><br>Magistrate Judge Alexander |

## DECLARATION OF GUIDO J. NEELS

GUIDO J. NEELS declares as follows:

1. My name is Guido J. Neels. I am a Director of Biopure Corporation ("Biopure").

2. I was Chief Operating Officer of Guidant Corporation from July 2004 until retiring in November 2005. I am a venture partner at Pearl Street Venture Partners and a partner in Essex Woodlands Health Ventures. I am a member of the boards of the following companies: LeMaitre Vascular; WMR Biomedical; Radiant Medical; Nellix, Inc.; Oraya Therapeutics; and EndGenitor.

3. I joined Biopure's Board of Directors in August 2005. I have never been an employee of Biopure.[1] Prior to joining the Board of Biopure, I did not know any of the individual Defendants in this action. I was asked about joining the Board by Zafires Zafirelis, Chief Executive Officer of Biopure, who is not a Defendant in this action and was not Chief Executive at the time of the events giving rise to this litigation. My acquaintance with Mr. Zafirelis was through medical conference that we attended. I agreed; I stood for election; and I joined the Board.

---

[1] My son-in-law, Todd Wood, worked for an investment bank. After I joined the Board of Biopure, I put Mr. Zafirelis in touch with him to discuss financing possibilities for Biopure. Later, Mr. Zaferlis told me that Biopure was going to offer Todd Wood a job and, in February 2007, the Company engaged him to function as Director of Business Development on a consulting basis. I understand that this position may convert into employment and that the consulting fee is $12,917 per month.

4.     Apart from sitting on the Board with those Directors still on the Board, I have not formed any social or business relationships with any of the Defendants.

5.     On May 1, 2006, the Biopure Board created the Committee and appointed me and fellow Director, Jay Pieper, to serve on it. Mr. Pieper and I both joined the Biopure Board after the events alleged in the Derivative Complaint. The Board resolution creating the Committee is attached to Mr. Pieper's Declaration.

6.     The Committee retained independent counsel to assist in the investigation of the claims and allegations in this case. After interviewing two different law firms, the Committee selected DLA Piper US LLP ("DLA Piper") to serve as counsel. DLA Piper's team was led by John A.D. Gilmore and Theodore Altman, lawyers experienced in securities litigation and the standards of conduct required for directors and officers under Delaware law.

7.     At the Committee's request, Counsel undertook an extensive review of the claims and allegations set forth in the Derivative Complaint. Counsel devoted over 1,000 hours to the investigation. Counsel interviewed numerous individuals, including all of the Defendants in this action, except one, who was in poor health, considered a large number of documents, and reviewed the record associated with the investigation by the United States Securities and Exchange Commission, which included transcripts of testimony taken from twenty witnesses (including all of the Defendants) and tens of thousands of pages of documents. Counsel also interviewed Biopure's current CEO, Mr. Zafirelis, and Mr. Hutt, a former chief counsel of and expert on the FDA. The Committee personally heard presentations from counsel for both the Plaintiffs and the Defendants.

8.     Counsel periodically reported to the Committee through telephone conferences and in-person meetings on the progress of their work and responded to questions from the Committee.

9.     Through this process, the Committee reached conclusions about whether it was in the best interests of Biopure to pursue this litigation. At the Committee's request, Counsel

undertook to prepare a report on the investigation and the Committee's conclusions ("Report"). Counsel consulted with Jay Pieper and me as they prepared the Report.

10.   For the reasons set forth in the final Report, the Committee concluded that the detriments of pursuing the litigation outweigh any benefits that might be achieved. A true copy of the Report is attached to Jay B. Pieper's Declaration as **Exhibit B**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June __, 2007.

_____
Guido J. Neels

BOST1\473382.2

3