LEXSEE 1997 DEL. CH. LEXIS 55

H.F. Ahmanson & Company v. Great Western Financial Corp., et. al.

Civil Action No. 15650

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

1997 Del. Ch. LEXIS 55

April 24, 1997, Date Submitted
April 25, 1997, Decided

**DISPOSITION:** [*1] Defendant's motion to dismiss Count V granted to the extent that the claim is the basis for pre-meeting injunctive relief. Defendants' motion to dismiss Count IV denied.

**COUNSEL:** Jesse A. Finkelstein, Esquire, Raymond J. DiCamillo, Esquire, Richards, Layton & Finger, Wilmington, DE.

Rodman Ward, Jr., Esquire, Marc B. Tucker, Esquire, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

**JUDGES:** JACK B. JACOBS, VICE-CHANCELLOR

**OPINION BY:** JACK B. JACOBS

**OPINION**

Pending is a motion of the defendants, Great Western Financial Corporation ("Great Western") and its directors, to dismiss Counts IV and V of the Second Amended Complaint filed by the plaintiff, H.F. Ahmanson & Company ("Ahmanson"). That motion is a small piece of an initial round of skirmishes in a hotly contested effort by Ahmanson to acquire control of Great Western, whose board opposes Ahmanson's acquisition proposal.

I.

To understand what is truly at stake on this motion, a recitation of the background facts leading to this point is helpful. In response to Ahmanson's takeover proposal, Great Western's board caused Great Western to enter into a "white knight" merger agreement with Washington Mutual, Inc. ("Washington Mutual"). To [*2] date no shareholders' meeting has been scheduled or noticed to vote on that merger agreement.

Great Western's response to Ahmanson's acquisition proposal triggered a series of moves and countermoves, all of which are relevant background. In February, Ahmanson announced that it would wage a proxy contest to elect three of its designees to the Great Western board at the annual meeting that had been scheduled for April 22, 1994. The Great Western board thereupon canceled the April 22 annual meeting, and Ahmanson then solicited the written consents of Great Western shareholders to amend the by-laws requiring the annual meeting to be held no later than May 6, 1997. Ahmanson submitted those consents to Great Western, claiming that the by-law amendment proposal had been passed by the requisite number of votes. [1]

> 1   That consent solicitation was also contested. Apparently there have been revocations of certain of the consents, and proxies were submitted in opposition to the proposal. In any event, Great Western submitted all of the proxies and consents to The Corporation Trust Company for an official vote count. As of this writing there has been no official certification of the outcome of that vote. Other than as background, the by-law amendment that is the subject of this controversy is not implicated by, nor is it a subject of, the pending motion.

[*3] Sometime after the Great Western board canceled the April 22, 1997 annual meeting, it rescheduled that meeting for June 13, 1997. Ahmanson contends that the board did that to evade the effect of Ahmanson's by-law proposal mandating May 6 as the

annual meeting date.

These events triggered a series of efforts by Ahmanson to conduct expedited discovery, efforts that were the subject of two separate office conferences.

In the first conference, Ahmanson's motion for expedited discovery was denied, because (i) the sole claim in Ahmanson's complaint was a count under 8 *Del.C.* § 225, which was not cognizable because no election of directors had yet occurred, and (ii) Ahmanson's basis for claiming irreparable harm that might justify scheduling an injunction proceeding (and expedited discovery in connection therewith), was speculative. That is, Ahmanson argued that its opportunity to elect directors to the Great Western board could be frustrated if Great Western scheduled a special meeting to consider the Washington Mutual merger either before June 13, or so shortly thereafter that it might unfairly influence the shareholder vote on the election of directors. The Court found that claim [*4] of harm to be speculative, since no shareholders' meeting to consider the Washington Mutual merger had been scheduled, and if and when that occurred, there would then exist a concrete, nonspeculative basis to consider any application for injunctive relief and expedited discovery.

By the time of the second conference, Ahmanson had amended its complaint twice. Once again seeking expedited discovery, Ahmanson relied on a different theory of irreparable harm requiring expedited proceedings. The new theory ran as follows: Great Western already has in place a by-law (Section 2) which provides:

> If any annual meeting shall not be held on the day designated. . .thereafter the Board shall cause a special meeting of the stockholders to be held as soon as practicable for the election of directors.

By rescheduling the annual meeting for June 13 (Ahmanson argued), the defendants violated that by-law in two respects: by not calling a special (as distinguished from a rescheduled annual) meeting, and by not scheduling that meeting "as soon as practicable," which would be May 6, 1997 or shortly thereafter. Ahmanson claimed that this by-law violation (which is the subject of Count IV) [*5] constitutes a basis for injunctive relief and expedited discovery not only in its own right, but also because (as alleged in Count V) it represents a manipulation of the corporate machinery resulting in the unlawful entrenchment of the current board.

To these arguments Great Western responded that there was no basis for any claim of irreparable harm that would justify triggering the injunction machinery to move backward, for a relatively short period, the date of a shareholders meeting to elect directors, where there was no claim or showing that the delayed vote would in any way impair the shareholders' right or ability to elect a new board. The only articulated basis for irreparable harm, Great Western contended, was the five week delay between Ahmanson's preferred meeting date (May 6) and the rescheduled annual meeting date (June 13). That short delay, without more (Great Western contends), is not a legally cognizable basis to claim irreparable harm. Indeed, Great Western argued, to the extent Counts IV and V are claims for injunctive relief, they were dismissible on that ground. Ahmanson disagreed.

At that conference the Court was, and continues to be, skeptical of Ahmanson's [*6] continued effort to invoke this Court's injunctive processes, with the dislocations and burdens that would entail, to move the shareholders' meeting backward by five weeks or less, where: (i) there was no claim of tangible harm that would result from the delay, (ii) no independent shareholder was complaining of the five week delay, (iii) Ahmanson's counsel, when pressed, conceded that Ahmanson's *primary* concern was that the shareholders' meeting to consider the merger might be scheduled ahead of, or too closely after, the meeting to elect directors--a scenario that has yet to occur, and (iv) if and when a shareholders' meeting to vote on the merger is scheduled, that would trigger a second preliminary injunction proceeding. Thus, it appeared that Ahmanson was pressing the Court to expend its limited resources on what might be an unnecessary or duplicative injunction proceeding that would serve primarily Ahmanson's individual strategic interests as a bidder, as distinguished from the interests of Great Western's shareholders generally.

Despite its skepticism, the Court informed counsel that it would consider scheduling an injunction proceeding, but only if Ahmanson demonstrated [*7] that Counts IV and V stated legally cognizable claims for injunctive relief. That determination led to the briefing and argument on the defendants' motion to dismiss Counts IV and V. Having inflicted this lengthy

background upon the reader of this Opinion, the Court now turns to that motion.

II.

I address the two challenged Counts in reverse order. In Count V, Ahmanson claims that the postponement of the annual meeting was an unlawful manipulation of the corporate machinery that will result in the entrenchment of Great Western's current board of directors, in violation of the fiduciary duties owed by defendants to Great Western's stockholders. Notably, Ahmanson does not allege, even in conclusory terms, that the acts complained of threaten it with irreparable harm. Nor does it allege any facts from which irreparable harm could be inferred, except that the annual meeting is being delayed for five weeks. While the facts alleged in Count V may be sufficient to support post-meeting relief of some kind, they do not support a legally sufficient claim for pre-meeting injunctive relief.

For Ahmanson to prevail, it must demonstrate that the delay in the scheduling of an annual meeting, without [*8] more, constitutes cognizable irreparable harm. Ahmanson cites no authority for that position, and on this extremely narrow proposition the case law appears to hold to the contrary. The cases that have addressed this point appear consistent with the view that the delay must adversely threaten the exercise of the shareholders' right to vote in some tangible way. *See Kidsco v. Dinsmore,* Del. Ch., 674 A.2d 483, *aff'd*, Del. Supr., 670 A.2d 1338 (1995); *Stahl v. Apple Bancorp,* Del. Ch., 579 A.2d 1115 (1990); *Sarabyn v. Jessco, Inc.,* Del. Ch., C.A. No. 607, Hartnett, V.C. (Sept. 20, 1978). Because Count V alleges only a delay, without more, it is legally deficient.

Accordingly, the defendants' motion to dismiss Count V will be granted to the extent that the claim in that Count is asserted as the basis for pre-meeting injunctive relief.

Count IV stands on a different footing, because it rests not upon concepts of fiduciary duty but upon the language of Section 2 of Great Western's by-laws, which mandate the scheduling of a special meeting "as soon as practicable" after the date designated for the annual meeting. Again, Ahmanson does not allege irreparable harm in connection [*9] with this Count. It argues that the violation of the by-law, without more, is sufficient to support a claim for coercive relief that would enforce the command of that by-law. As a purely legal matter, Ahmanson is, in my view, correct.

The irreparable harm claimed in Count IV is not solely to the corporation's electoral process. It encompasses harm to the corporation's governance process as well. Where the shareholders or the directors, by adopting a by-law, command the performance of a certain act, to hold that coercive relief cannot be had to enforce that command would violate basic concepts of corporate governance. It is the defendants' burden to establish the legal correctness of their position that a board's disregard of its own by-law is not remediable by coercive relief absent a showing of tangible harm apart from the violation. The defendants have made no such demonstration. They cite no authority which so holds, and the one relevant Delaware decision they do cite, *Richman v. DeVal Aerodynamics, Inc.,* Del. Ch., 40 Del. Ch. 389, 183 A.2d 569 (1972), implicitly holds the opposite. In *Richman* this Court granted a mandatory injunction enforcing a by-law that compelled the [*10] corporation to call a special meeting of stockholders.

Accordingly, the defendants' motion to dismiss is denied as to Count IV. But to say that does not, unfortunately, dispose of the problems which led to this motion in the first place. Predictably, Ahmanson will now be asking this Court to schedule a preliminary injunction motion to enforce Section 2 of Great Western's by-laws, and to grant it expedited discovery in connection therewith. Although this Court's denial of the dismissal motion leaves Ahmanson free to seek such relief, that does not eliminate the practical problems inherent in scheduling such a proceeding, as discussed in Part I above. For the guidance of the parties, and to avoid yet another lengthy conference, the Court has set forth some ground rules as to where and how the Court and the parties will go from here.

III.

Although Ahmanson has stated a claim upon which injunctive relief could be predicated, that fact alone does not compel the Court to schedule a hearing on the type of injunction that Ahmanson seeks. Clearly the Court retains the discretion not to schedule a hearing if the facts so warrant. The question thus becomes, what course of action makes sense [*11] in these circumstances? Several facts inform a prudent exercise of this Court's discretion.

First, in my opinion, Ahmanson is seeking to move

the June 13 meeting date backward primarily to serve its individual interests as a bidder. No one representing the interests of the unaffiliated shareholders has come forward to claim a need for a Court-ordered meeting before June 13, 1997. Indeed, at the oral argument, the sole concern expressed by counsel who represent the shareholder class in several related actions, was that the defendants might schedule a meeting on the Washington Mutual merger before the shareholders could exercise an uninfluenced vote to elect directors. But that scenario (which would justify scheduling an expedited injunctive proceeding) is not yet (but soon may be) before the Court. These circumstances would counsel against scheduling a preliminary injunction proceeding at this stage.

Second, the countervailing consideration is that the defendants apparently have disregarded their own by-law, and (if the allegations of the complaint are correct) the right of Great Western's shareholders to have the corporation's by laws observed. For this Court not to act in these [*12] circumstances might be misread as judicial indifference to such conduct. That circumstance should, at the least, obligate the Great Western board to account for its acts.

Third, notwithstanding the above, it would make little sense to schedule a proceeding of the kind Ahmanson desires if the objective facts show that it would be impracticable to hold a special shareholders meeting to elect directors at any point significantly in advance of June 13. At this stage the facts bearing on that issue are not known, but prudence suggests that they should be before the defendants are subjected to a full-blown injunctive proceeding.

Having considered these factors, the Court has determined not to schedule an injunction hearing at this time, but to permit limited expedited discovery that would inform the Court and the parties whether injunctive relief would be efficacious, while at the same time fully protecting Ahmanson's procedural rights. Accordingly:

1. Within three working days, the defendants shall serve and file affidavit(s) setting forth facts that show (a) the reasons why the Great Western board postponed the annual meeting to June 13, 1997 and (b) what is the earliest practicable [*13] date before June 13, if any, on which to hold a shareholders' meeting to elect directors, and the reasons why. On or before the submission of that affidavit, the defendants shall also produce all documents, including board minutes and any relevant "back-up" materials, relating to those two issues.

2. The plaintiffs may take the deposition of the affiant(s) shortly after the submission of the affidavit and the documents described above. The deposition examination shall be limited to the issues set forth in Paragraph 1.

3. Promptly thereafter, the parties shall report to the Court, in writing, what the record discloses with respect to whether it is practicable to hold a shareholders' meeting to elect directors on any date significantly before June 13, 1997. Based upon that report, the Court will determine whether to schedule an injunction proceeding and if so, on what schedule.

IT IS SO ORDERED.

Jack B. Jacobs