LEXSEE 2000 DEL. CH. LEXIS 175

**In re Best Lock Corp. Shareholder Litig.**

**Consol. Civil Action No. 16281**

**COURT OF CHANCERY OF DELAWARE, SUSSEX**

**2000 Del. Ch. LEXIS 175**

**November 14, 2000, Submitted**
**December 18, 2000, Decided**

**SUBSEQUENT HISTORY:** [*1] Released for Publication by the Court January 12, 2001.

**COUNSEL:** R. Bruce McNew, Taylor & McNew LLP, Greenville, DE.

Bruce L. Silverstein, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

A. Gilchrist Sparks, III, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** WILLIAM B. CHANDLER, III, CHANCELLOR.

**OPINION BY:** WILLIAM B. CHANDLER

**OPINION**

This is my decision on plaintiffs' motion to compel production of documents in the consolidated action against defendants Best Lock Corporation ("Best") and related companies and individuals that arose out of the three interrelated freeze-out mergers consummated on March 23, 1998 (the "freeze-out mergers"). [1] For simplicity's sake, I will respond to each of plaintiffs' fourteen demands (demands A-N) in the order in which plaintiffs present them.

1 The actions consolidated herein are *Wood v. Frank E. Best, Inc.,* Del. Ch., C.A. No. 16281, 1999 Del. Ch. LEXIS 141 (the fiduciary duty class action) and *Mitchell v. Russell C. Best,* Del. Ch., C.A. No. 18203 (the appraisal action).

Plaintiffs [*2] first demand, Demand A, asks this Court to compel defendants to confirm whether they have made complete production of the documents they purportedly have agreed to produce responsive to Request Nos. 1, 3, 4, 5, 15, 18, 21 and 45. [2] The documents which defendants have agreed to produce are those nonprivileged documents responsive to these requests. Plaintiffs emphasize that they would like defendants to produce notes taken at board meetings, if such notes exist, as well as documents relating to the Genesis Group ("Genesis"), called for in Request Nos. 4 and 56.

2 Pls.' Br. on Mot. to Compel Produc. of Docs., at 4 [hereinafter Pls.' Br.]. For a list of Pls.' Reqs., see Pls.' First Req. for Produc. of Docs., excerpted in Pls.' Br., at Ex. A, at 5-10.

With regard to each of these requests, defendants must make complete production and, if plaintiffs believe full production has not been made, confirm this fact to the plaintiffs by stating that all non-privileged documents that exist to the defendants' knowledge [*3] have been produced pursuant to these eight requests. These requests, which include board minutes and notes, documents from and to financial advisors, SEC filings, stock ledgers, directors' and financial advisors' communications, and the articles of the corporation, are well within the normal scope of discovery and should be produced or, if they do not exist, confirmed as to this fact. Thus, if notes were taken at the meetings, produce them if they are not privileged. If notes were not taken, confirm this fact.

As to documents relating to Genesis, defendants argue that such documents are not responsive to Request 4, which asks for "all documents supplied by the Best Companies and/or their officers or directors to any financial/investment bankers...," [3] since Genesis did not

provide investment banking advice but rather insurance-related services. Defendants also argue that they did not produce documents in response to Request No. 56, which specifically asks for documents relating to communication between Best and Genesis, because there has been no showing as to why these communications with Genesis are reasonably calculated to lead to the discovery of admissible evidence. Although [*4] defendants may be correct as to Request No. 4, I do not find defendant's argument with regard to Request No. 56 persuasive. Genesis signed a confidentiality agreement with Best in October of 1997. The agreement states that Genesis "may receive certain non-public information regarding the [Best] Companies" in connection with the possible engagement of their services. [4] It is possible that information relating to such communications between Genesis and Best may lead to the discovery of admissible evidence. Such evidence may not prove to be ultimately admissible. At this stage in the proceedings, however, it need only be reasonably calculated to lead to admissible evidence. Since this agreement was signed during the same period Best was considering a cash-out transaction, [5] production of this evidence does seem reasonably calculated to lead to admissible evidence.

    3  Pls.' First Req. for Produc. of Docs., excerpted in Pls.' Br., at Ex. A, at 6.
    4  Pls.' Reply, at 3.
    5  *See* Consol. Compl., at 37-38.

[*5] Plaintiffs' second demand, Demand B, asks this Court to compel defendants to produce all documents relating to the freeze-out mergers that were submitted to any federal, state, or governmental agency in accordance with Request No. 6. Defendants have produced only those documents submitted to the SEC and the Delaware Secretary of State. While plaintiffs assert that defendants have not fully complied with their request, defendants state that while other government filings were made by Best, they have produced all of those made *"specific"* to the mergers. Request No. 6 asks for those documents *"concerning* the mergers submitted by the Best Companies to any federal, state, or local governmental agency." [6] If by "specific" the defendants mean "concerning," they have indeed complied with this request. If it is the case, however, that defendants withheld documents *concerning* but not *specific to* these mergers, defendants must now produce them.

Demand C asks this Court to compel defendants to "explain their ambiguous limitation" in response to Request Nos. 7, 9, 10, and 42. Defendants agreed to produce documents for each of these responses, adding that documents will be produced [*6] only for "each of the Best companies as a whole." Plaintiffs demand that defendants explain exactly what the phrase "as a whole" means. Defendants answer that this phrase was "a more precise manner of stating that they were producing exactly what was requested - corporate-level documents as opposed to documents that pertained to some smaller business unit." [7] Plaintiffs' accept this definition, making the demand moot, but note that they should not have needed to bring a motion to compel in order to receive this definition from defendants.

    6  Pls.' First Req. for Produc. of Docs., excerpted in Pls.' Br. at Ex. A, at 6.
    7  Defs.' Answer, at 16.

Demand D asks this Court to compel defendants to produce all documents relating to actual or potential loans in excess of $ 1 million in accordance with Requests Nos. 12 and 13. Defendants have agreed to produce those documents submitted in connection with potential loans in excess of $ 5 million, as opposed to $ 1 million. Defendants argue that this $ 5 million [*7] limitation is "reasonable in light of the fact that $ 5,000,000 was significantly less than 5% of the Best Companies' revenues in the year before the mergers." [8] Defendants also state that reducing the limitation to $ 1 million would produce no additional documents and is, therefore, moot. As with the last demand, plaintiffs concede, but note that "it should not have been necessary for plaintiffs to file the Motion to obtain defendants' cooperation in the discovery process." [9]

    8  Defs.' Answer, at 16.
    9  Pls.' Reply, at 8.

Demand E asks this Court to compel defendants to identify what documents, if any, responsive to Request Nos. 14, 19 and 23, they have withheld from production. Request No. 14 asks for production of "all loan or lease agreements to which the Best Companies were parties..." [10] Defendants objected to this request on grounds of undue burden and relevance to the extent that "it seeks production of lease agreements with customers in lieu of sales or loans or lease agreements relating [*8] to miscellaneous vehicles, office equipment and small equipment." [11] Request No. 19 asks for "all documents constituting or memorializing any communications

between the Best Companies, or any of their officers and directors, and any shareholder in any of the Best Companies." [12] Defendants object to this on grounds of overbreadth, relevance, and undue burden. Request No. 23 asks for "all documents concerning the market(s) for the products of the Best Companies." [13] Defendants object to this request on grounds of overbreadth, relevance, and undue burden. They also state that they "interpret this request to be limited to seeking production of general product market research and analysis." [14] Plaintiffs make the same response to each of defendants' objections. They state that "all [they] seek is the simple courtesy of a requested explanation." [15] Plaintiffs do not respond to defendants' specific objections or limitations.

    10    Pls.' First Req. for Produc. of Docs., excerpted in Pls.' Br. at Ex. A, at 7.
    11    Defs.' Resps. and Objections to Pls.' First Req. for Produc. of Docs., excerpted in Motion to Compel at Ex. E, at 8.
[*9]
    12    pls.' First Req. for Produc. of Docs., excerpted in Pls.' Br. at Ex. A, at 7.
    13    Pls.' Br. at 8.
    14    Defs.' Resps. and Objections to Pls.' First Req. for Produc. of Docs., excerpted in Pls.' Br. at Ex. E, at 11.
    15    Pls.' Answer, at 9.

With regard to Request No. 14, defendants have adequately responded. They placed a reasonable limitation on the request to exclude leases related to miscellaneous vehicles, office equipment and small equipment. Since plaintiffs did not specifically argue that this limitation is unacceptable and it appears to me to effectively narrow the request so as to prevent undue burden, I find that defendants have fully complied with this request. With regard to Request No. 19, defendants have given this Court no specific reason why the request for all communications between Best and its shareholders is overbroad, not likely to lead to admissible evidence, or unduly burdensome. In the absence of such an explanation, I will direct defendants to comply with this request, or indicate (if it is the case) that such communications do not exist. As to Request [*10] No. 23, I am not entirely certain what defendants mean by "general" product market research and analysis. This limitation seems to exclude "specific" product market research and analysis that may be properly discoverable. As to this request, I ask defendants either to define this

limitation in greater detail or to produce all documents requested in the original request. If defendants choose the explanation alternative, plaintiffs must tell me if they find it unacceptable.

Part F asks this Court to compel defendants to produce all documents reflecting communications that occurred at meetings between representatives of Piper Jaffray and Russell and/or Mariea Best. In their response to the original Request No. 20, defendants placed a limitation that they would produce only such documents that were "prepared at or for" such meetings. Plaintiffs believed that this limitation excluded properly discoverable documents and asked for any such additional documents in this motion. Defendants answered that the issue is moot because they "have not located any additional documents that would be produced in response to the 'clarification' that have not already been produced." [16] Once again, plaintiffs [*11] concede, but again note that "it should not have been necessary for plaintiffs to file the Motion to obtain defendants' cooperation in the discovery process." [17]

    16    Defs.' Answer, at 18.
    17    Pls.' Reply, at 10.

Demand G asks this Court to compel defendants to produce documents reflecting all of the compensation received by Russell or Maria Best in accordance with Request No. 5. Defendant has thus far only agreed to produce SEC filings responsive to this request. Plaintiff ask that defendants produce all additional documents or, in the alternative, represent that neither Russell nor Mariea Best has received any compensation that is not disclosed in the SEC filings. Defendants respond that the SEC filings fully represent all compensation Russell or Mariea Best earned in their capacities as an executive or director. They further argue that plaintiffs have no right to learn about such additional compensation, noting that the claims set forth in the Consolidated Complaint do not include any premised upon [*12] excessive compensation. Plaintiffs point out in their answer that Russell or Mariea Best may have earned additional compensation other than in their capacities as an executive or director. They also disagree with defendants' legal argument that plaintiffs have no right to learn about such additional compensation. They believe this information is relevant in three contexts: (1) the payments may constitute a breach of fiduciary duty that may be valued in connection with the "fair price" prong of the

"entire fairness" case, as well as in the appraisal action; (2) payments may bear on credibility; and (3) payments may be relevant in determining future cash flows.

Although evidence of the alleged additional compensation may not ultimately be admissible for any of these purposes, its future admissibility is not the standard by which its discoverability is measured. It need only be reasonably calculated to lead to admissible evidence. As these documents appear relevant, or reasonably calculated to lead to admissible evidence, I direct the defendants to produce such documents, if they exist, evidencing additional payments to Russell or Mariea Best, whether or not it was in their capacities [*13] as executives or directors.

Demand H asks this Court to compel defendants to produce documents that would reflect third-party interest in one or more of the Best companies and/or their substantial assets in accordance with Request No. 28. Defendants object to this request on two main theories. First, they argue that the price a third-party would be willing to pay to acquire Best is not relevant in a statutory appraisal action because the information is post-merger. I find this argument unpersuasive not only for the reason that the evidence need only be reasonably calculated to lead to admissible evidence (not *per se* admissible), but also because this is an action for breach of fiduciary duty in connection with a freeze-out merger. Whether the information, if it exists, is admissible in the pending appraisal action, is an issue for another day.

Defendants' second argument is that the request should be denied because it is not relevant to plaintiffs' *Revlon* claim, but, even if it was relevant, it still must be denied because plaintiffs do not have a valid *Revlon* claim (in effect, they ask the Court to rule on this claim before allowing discovery). Again, I am not persuaded [*14] by defendants' arguments. As an initial matter, it is not inappropriate for the plaintiffs to take discovery on this issue before the Court has decided the validity of the plaintiffs' *Revlon* claim. That is not an unusual occurrence in this Court. Moreover, information about third-party offers even as early as 1993 is still reasonably calculated to lead to admissible evidence since such offers might bear on the value of Best in 1995 and 1997, the period in which the Bests allegedly lost control of the companies. If this evidence proves to be irrelevant, it will be excluded at trial. At this point, however, it remains reasonably calculated to lead to admissible evidence and,

therefore, defendants must produce it.

Demand I calls for the production of all documents respecting communications with investment advisors other than Piper Jaffray in accordance with Request No. 30. Defendants agreed to produce only such documents that concern the freeze-out mergers or their evaluation or review of a cash-out transaction. Plaintiffs find this limitation "unwarranted" since communications with investment advisors on other subjects might bear on the ultimate question of Best's fair value. Defendants [*15] object that the original request is too broad and "can only be described as an old-fashioned fishing expedition." [18] I disagree. These documents may indeed prove ultimately irrelevant and inadmissible but, at this point, they are reasonably calculated to lead to admissible evidence since there is a good possibility they may bear on the ultimate valuation issue. Moreover, as plaintiffs point out in their response, defendants do not argue it would be unduly burdensome for them to produce these records. Thus, I direct the defendants to produce these documents.

    18  Defs.' Answer, at 20.

Demands J and K ask this Court to compel defendants to produce *all* documents responsive to Request Nos. 31, 32, 33, 35, 37 and 38. These requests include production of documents concerning BLC's cost of raw materials, communications between BLC and its customers, contracts between BLC and its customers, and contemplated new products and/or renovations. These document requests are each preceded by the word "all." Defendants [*16] object to these requests on the grounds that they are overly broad, extremely burdensome and, ultimately, likely to be utterly irrelevant. For example, defendants note that BLC had well over 1000 customers during the period in question. Producing *every* contract and communication would amount to turning the company inside out and also compromising control and security procedures.

I agree with defendants that these requests are all too broad and would impose an undue burden on the defendants. Plaintiffs must narrow them where possible. For example, with regard to Requests 32 and 33, they might ask for contracts and communications of the twenty largest customers of Best as opposed to *all* customers. Similarly, they must define vague terms to both facilitate defendants' specific response to these requests and to limit the scope of the request. For example, Request Nos. 37 and 38 asks for documents

relating to potential efficiencies. I am not sure what plaintiffs mean by "efficiencies" or what kind of documents, in particular, they seek. Finally, with regard to all of these documents, plaintiffs would be well advised to revise the requests with a limiting time frame. As they are [*17] currently drafted, each of these requests is far too broad and some of the ones mentioned above also suffer from fatal vagueness. I deny the motion to compel as to these requests. Plaintiffs must narrow and define the requests if they want defendants to respond.

Demand L asks this Court to compel defendants to produce documents dated beyond March 23, 1998 (the effective date of the freeze-out mergers). Defendants refuse to produce any documents after this date. Plaintiffs argue defendant's position is untenable for two reasons. First, plaintiffs argue that they are seeking rescissory damages, which necessitates post-merger discovery. Second, plaintiffs argue that "it is well-settled that post-merger discovery is proper even in a case in which the sole issue is the value of a given corporation on the date of a merger." [19] Defendants answer that allowing post-merger discovery up to 2 and 1/2 years after the merger, as plaintiffs request, would be an extraordinary result. They argue that *Cede* requires a plaintiff to articulate a sound justification for post-merger discovery before it is allowed. [20] They also respond to plaintiffs' rescissory damages argument by stating that discovery [*18] concerning rescissory damages "should not occur, if at all until the Court first determines that rescissory damages are appropriate under the law and the facts and establishes appropriate parameters for such claims." [21]

> 19    Pls.' Br., at 18 (citing *Cede & Co. v. Technicolor, Inc.,* Del. Supr., 758 A.2d 485, 499 n.91 (2000) and *Kaye v. Pantone, Inc.,* 1981 Del. Ch. LEXIS 607, Del. Ch., C.A. No. 5466, Hartnett, V.C. (Oct. 6, 1981)).
> 20    *Cede,* 758 A.2d at 499.
> 21    Defs.' Answer, at 6.

I agree with the plaintiffs that *Cede,* in particular, as well as other cases, have relaxed significantly the limitations on discovery of post-merger evidence that *may* be admissible in certain circumstances even in appraisal cases that are statutorily limited to determining fair price at the time of the merger. [22] Moreover, the actions in these consolidated actions include a breach of fiduciary duty action (which may, ultimately, justify a rescissory damages remedy) as well as an appraisal case.

[*19] Thus, these documents may be admissible for both of these reasons. As an aside, it is not necessary for the Court to determine whether rescissory damages are appropriate under the law and the facts before such discovery can proceed. Again, however, I emphasize that I am not deciding, at this stage, whether *any* of these documents will be admissible at a trial. I hold only that they appear reasonably calculated to lead to the discovery of admissible evidence. Thus, defendants must produce them.

> 22    The Supreme Court notes in *Cede* that, "in Gonsalves I, this Court held that post-merger evidence is admissible 'to show that plans in effect at the time of the merger have born fruition.'" *Cede,* 758 A.2d at 499 (citing *Gonsolvas I v. Straight Arrow Publrs*, Del. Supr. 701 A.2d 357, 362 (1997)).

Demand M asks this Court to compel defendants to produce documents in accordance with Request No. 9. Defendants withheld these documents pursuant to a claim of accountant-client privilege. Plaintiffs state that [*20] "it is well settled that Delaware does not recognize an accountant-client privilege." [23] Defendants answer that despite this general rule in Delaware, *"Lee* [cited by plaintiffs] recognized that Delaware also follows the choice of law principles in the Restatement of Conflicts, and that the Court must determine which state has the most significant relationship under the Restatement ... A choice of law 'analysis' that can only have one answer (Delaware) is not an analysis at all." [24] They argue that since Best is an Indiana corporation, Indiana law, which grants accountant-client privilege, should apply. Plaintiffs reply that while the current Best Lock Corporation is an Indiana corporation, BLC, the company that was a party to these alleged privileged communications, was a Delaware corporation.

> 23    Pls.' Br., at 22 (citing *Lee v. Engle,* 1995 Del. Ch. LEXIS 149, Del. Ch, C.A. No. 13323, Steele, V.C. (Dec. 15, 1995) and D.R.E. 501).
> 24    Defs.' Reply, at 11-12.

Article V of the Delaware Rules of Evidence does not recognize [*21] an accountant-client privilege; nor do the federal courts. [25] Nevertheless, defendants argue that Indiana law should apply. As then Vice-Chancellor (now Justice) Steele did in *Lee* (the case on which both

parties affirmatively rely), I will weigh the four factors listed in the Restatement of Conflicts [26] to determine whether to apply law other than that of the forum state. These factors include: (1) the number and nature of the contacts that the forum state has with the parties and the transaction involved; (2) the relative materiality of the evidence that is sought to be excluded; (3) the kind of privilege involved; and (4) fairness to the parties. [27] Applying these factors to the factual record, I conclude that Delaware law applies.

>    25    *Lee* C.A. No. 13323, at 6.
>    26    The Court notes in *Lee* that "Delaware follows the Restatement's choice of law principles and the Restatement's 'most significant relationship' test. *Lee,* C.A. No. 13323, at 7 n.3.
>    27    Restatement (Second) of Conflicts, § 139(2), Comment.

[*22] First, the former BLC was a Delaware corporation. Best Lock, however, did keep its offices in Indiana. Second, defendants do not refute that these documents may be material to the plaintiffs' case. Third, this privilege is unusual, not supported in Delaware or the federal courts. Fourth, and most importantly, it is most fair to apply the law of the forum sate-Delaware-in this case for the simple reason that BLC chose Delaware as its place of incorporation. Thus, defendants must produce the documents for which it has claimed an accountant-client privilege.

Demand N asks this Court to order defendants to pay plaintiffs' the reasonable costs of bringing their motion to compel. They state that defendants' unjustifiably refused to respond to many of their requests and that their deficiencies are also unjustifiable. As this decision has made clear, defendants rightly objected on several points. They are being ordered to produce documents as a result of the motion on other points, but their conduct does not rise to the level that would prompt this Court to shift fees in a discovery dispute. Thus, I deny this aspect of the motion to compel. Although this motion, and the accompanying oral [*23] argument, have presented more jousting between counsel than is ordinarily the case in this Court, I find nothing untoward about the substantive positions of the parties, certainly nothing that would prompt me to shift fees.

Defendants will produce documents as described above and plaintiffs may resubmit certain discovery requests in accordance with this decision.

IT IS SO ORDERED.

William B. Chandler III