LEXSEE 2006 DEL. CH. LEXIS 82

**Diane Romero v. Robert E. Dowdell, et al.**

Civil Action No. 1398-N

**COURT OF CHANCERY OF DELAWARE, NEW CASTLE**

2006 Del. Ch. LEXIS 82

**April 20, 2006, Submitted
April 28, 2006, Decided**

**NOTICE:**

[*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**COUNSEL:** Jessica Zeldin, Esquire, Rosenthal Monhait Gross & Goddess, P.A., Wilmington, Delaware.

Arthur L. Dent, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware.

**JUDGES:** Donald F. Parsons, Jr., Vice Chancellor.

**OPINION BY:** Donald F. Parsons, Jr.

**OPINION**

Plaintiff moves this Court for an order stripping certain documents of their "Highly Confidential" designation and unsealing the Amended Derivative Complaint. For the reasons set forth below, the Court grants Plaintiff's motion.

**I. BACKGROUND**

In early 2004, Plaintiff Diane Romero sought inspection of certain books and records of nominal defendant Career Education Corp. ("CEC") pursuant to Section 220 of the Delaware General Corporation Law. [1] In August 2004, Romero and CEC entered into a Confidentiality Agreement (the "Agreement") to govern the treatment of CEC's production. [2] The Agreement allows CEC to designate material as either "Confidential" or "Highly Confidential." [3] Paragraph six of the Agreement allows Romero to use anything provided by CEC in a subsequent derivative action, but requires any pleading containing [*2] Confidential or Highly Confidential material to be filed under seal pursuant to Court of Chancery Rule 5(g). [4] Paragraph twelve provides a mechanism by which Romero may challenge CEC's designation of material as Confidential or Highly Confidential. [5] Finally, the parties agreed that "the provisions of [paragraph twelve] are not intended to shift the burden of establishing confidentiality." [6]

[1]

  Aff. of Eric L. Zagar in Support of Pl.'s Mot. to Unseal the Am. Derivative Compl. ("Zagar Aff.") P 2.

[2]

  Zagar Aff. Ex. A ("Confidentiality Agreement"); *see also Romero v. Career Educ. Corp.*, 2005 Del. Ch. LEXIS 112, *4, No. 793-N (Del. Ch. July 19, 2005).

[3]

  Confidentiality Agreement P 2. The Agreement defines "Confidential Material" as "proprietary or sensitive business, financial, operational, or personal

information subject to a legally protected right of privacy." *Id.* P 7.A. The Agreement defines "Highly Confidential Material" as "highly sensitive proprietary, financial or trade secret information, the disclosure of which could cause competitive disadvantage to the Company." *Id.* P 8.A.

[*3]

4

*Id.* P 6.

5

*Id.* P 12 ("The stockholder can object to the designation of any Material as Confidential or Highly Confidential and after making a good faith effort to resolve any such objection, may move promptly for an order vacating or modifying the designation.").

6

*Id.* The Court interprets this clause of paragraph twelve as a reference to Rule 5(g)(2), which places the burden of establishing confidentiality, *i.e.*, the right to file a document under seal, on the party seeking such treatment.

CEC subsequently provided Romero with some of the documents she requested. Believing CEC's production was inadequate, Romero brought suit in this Court pursuant to Section 220 in November 2004. [7] CEC moved to dismiss Romero's Section 220 complaint for failure to state a claim, but the Court denied that motion on July 19, 2005. [8] Meanwhile, in June 2005, Romero filed this derivative action. On October 12, 2005, Romero filed an Amended Derivative Complaint. Pursuant to the terms of the Agreement, and with the Court's permission, Romero filed both the [*4] original complaint and the subsequent Amended Derivative Complaint under seal. The latter document is the currently operative pleading and the document Romero seeks to unseal.

7

*Romero*, 2005 Del. Ch. LEXIS 112, *4, No. 793-N.

8

2005 Del. Ch. LEXIS 112 at *9. On November 4, 2005, the Court denied CEC's Motion for Reargument of the Court's July 19 Memorandum Opinion. *Romero v. Career Educ. Corp.*, 2005 Del. Ch. LEXIS 172, No. 793-N, slip op. (Del. Ch. Nov. 4, 2005).

The Amended Derivative Complaint relies in part on minutes of CEC Audit Committee meetings provided to Romero and marked "Highly Confidential." [9] The copies provided to Romero are heavily redacted. Romero asks this Court to strip these documents of their "Highly Confidential" designation pursuant to paragraph twelve of the Agreement.

9

Zagar Aff. Ex. B.

**II. PROCEEDINGS IN OTHER COURTS**

[*5] In the two months preceding Romero's initial request for inspection, a number of federal securities class actions were filed against CEC. These actions were consolidated in the U.S. District Court for the Northern District of Illinois and captioned *Taubenfeld v. Career Education Corp.* [10] Discovery in *Taubenfeld*, which is now captioned *In re Career Education Corp. Securities Litigation*, remains stayed pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA" 11). [12] CEC has twice moved for dismissal of the putative class's complaint in *In re Career Education Corp.* and the

court has twice granted that motion. [13] In its most recent opinion, the court gave the putative class one more opportunity to amend its complaint. [14] As of April 20, 2006, the class had yet to file its amended complaint.

10

    2005 U.S. Dist. LEXIS 5564, 2005 WL 350339 (N.D. Ill. Feb. 11, 2005); *see also Romero*, 2005 Del. Ch. LEXIS 112, *4, No. 793-N.

11

    15 U.S.C. § 78u-4(b)(3)(B) (2006) ("In any private action arising under this title [15 U.S.C. §§ 78a-78nn], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.").

[*6]

12

    *In re Career Educ. Corp. Securities Litig.*, 2006 U.S. Dist. LEXIS 25252, 2006 WL 999988 (N.D. Ill. Mar. 28, 2006).

13

    *Id.; Taubenfeld*, 2005 U.S. Dist. LEXIS 5564, 2005 WL 350339.

14

    2006 U.S. Dist. LEXIS 25252 at *34 n.14.

In addition to *In re Career Education Corp.*, a derivative action involving similar allegations and captioned *McSparran v. Larson* is proceeding in the U.S. District Court for the Northern District of Illinois. [15] On January 27, 2006, that court denied the individual defendants' motion to dismiss. [16] Presumably, then, the parties have begun discovery in the *McSparran* case.

15

    2006 U.S. Dist. LEXIS 3787, 2006 WL 250698 (N.D. Ill. Jan. 27, 2006). Two other derivative actions remain stayed in deference to *McSparran. See, e.g., Nicholas v. Dowdell*, No. 819-N (Del. Ch. Mar. 17, 2005) (order staying proceedings).

16

    *Id.*

### III. ANALYSIS

#### A. The Applicable Legal Standard

[*7] Romero argues that the legal standard applicable to this dispute is the "good cause" standard found in Rule 5(g). This Court repeatedly has held that good cause exists pursuant to Rule 5(g) to seal documents containing (1) trade secrets, (2) third-party confidential material or (3) nonpublic financial information. [17] All other documents are "deemed available for public disclosure." [18]

17

    *One Sky Inc. v. Katz*, 2005 Del. Ch. LEXIS 72, 2005 WL 1300767, at *1 (Del. Ch. May 12, 2005) (quoting *Fitzgerald v. Cantor*, 2001 Del. Ch. LEXIS 48, at *8 (Del. Ch. Apr. 17, 2001)); *In re Walt Disney Co. Derivative Litig.*, 2004 WL 368938, at *1 (Del. Ch.

Feb. 24, 2004); *Stone v. Ritter*, 2005 Del. Ch. LEXIS 146 *5, No. 1570-N (Del. Ch. Sept. 26, 2005).

18

*One Sky Inc.*, 2005 Del. Ch. LEXIS 72, 2005 WL 1300767, at *1.

CEC responds with a barrage of arguments for other standards. First, it argues that Plaintiff's motion is a pretext to avoid dismissal of its derivative claims for want of standing. [*8] In essence, then, CEC asks the Court to sidestep the confidentiality issue and deny Plaintiff's motion as futile or because Plaintiff brought it for an improper purpose. Second, CEC contends that the heavily redacted minutes, and the information drawn therefrom in the Amended Derivative Complaint, are "intrinsically confidential" as Vice Chancellor Lamb defined that term in *Disney v. Walt Disney Co.* [19] Third, CEC argues that both the information contained in the Amended Derivative Complaint and the underlying documents are confidential pursuant to the PSLRA. Fourth, CEC argues that equity favors confidentiality in the circumstances of this case.

19

2005 Del. Ch. LEXIS 94, No. 234-N, slip op. (Del. Ch. June 20, 2005) (Opinion on Remand).

Romero is correct that the proper standard is the good cause standard found in Rule 5(g). In fact, this dispute is on all fours with this Court's recent decision in *Stone v. Ritter.* [20] In *Stone*, the plaintiffs obtained books and records from the corporate defendant subject to [*9] a confidentiality agreement they entered into in connection with a Section 220 demand they had made. After the plaintiffs filed a derivative complaint under seal relying in part on documents produced by the corporate defendant pursuant to the parties' confidentiality agreement, the Court ordered the defendants to "show cause . . . as to why the sealed portions of the complaint should not be publicly disclosed." [21] The defendants argued, citing *Disney*, that disclosure of the excerpts of board minutes in the plaintiffs' complaint would have a chilling effect on board deliberations. In rejecting that argument, the Chancellor noted that *Disney* arose in the context of a Section 220 action, while, as here, *Stone* involved a derivative action "in which stockholder plaintiffs assert derivative claims based on information obtained using the tools at hand' under § 220." [22]

20

2005 Del. Ch. LEXIS 146, No. 1570-N, slip op.

21

2005 Del. Ch. LEXIS 146 at *1.

22

2005 Del. Ch. LEXIS 146, *4-5, No. 1570-N.

The Chancellor then [*10] explained the difference between *Disney* and *Stone* (and between *Disney* and this case) and set out the applicable standard:

> As Vice Chancellor Lamb recognized in the *Disney* decision, there is a reasonable expectation that confidential information produced in the books and records context will be treated as confidential unless and until disclosed in the course of litigation or pursuant to some other legal requirement. That is precisely the situation here. The information obtained in the books and records context is being used affirmatively in this derivative action. Reasonable expectations of confidentiality with respect to documents produced in a § 220 action do not continue unabated in the context of litigation. The test now is under Court of Chancery Rule 5(g) and the Court must determine whether good cause exists for the complaint and other related documents to continue to be filed under seal. [23]

2006 Del. Ch. LEXIS 82, *10

Accordingly, this Court must determine whether good cause exists to continue to seal the Amended Derivative Complaint and related documents, "balancing the interests of companies in protecting proprietary commercial, trade secret or other confidential information [*11] against the legitimate interests of the public in litigation filed in the courts, as well as stockholder interests in monitoring how directors of Delaware corporations perform their managerial duties." 24

23

2005 Del. Ch. LEXIS 94 at *15.

24

2005 Del. Ch. LEXIS 94 at *15.

**B. The Sealing of the Amended Derivative Complaint**

Having reviewed all 76 paragraphs of the 40 page Amended Derivative Complaint, the Court finds no basis for continuing to seal any portion of it. The vast majority of the allegations in it are drawn from publicly available documents. 25 Further, none of the paragraphs in the Amended Derivative Complaint contains trade secrets, third-party confidential information or nonpublic financial information. The only paragraphs in the Amended Derivative Complaint even drawn from nonpublic information appear to the Court to be paragraphs 22 through 27. The information contained in these paragraphs does not justify sealing the entire document or even these paragraphs. At most, those paragraphs reveal when [*12] members of CEC's Audit Committee learned of certain problems at CEC, when the Audit Committee held meetings, who else besides certain board members attended these meetings and, in a very general way, what the board members discussed at these meetings. 26 None of these details comprises trade secrets, third-party confidential information or nonpublic financial information. In addition, at least some of the information is simply historical in nature.

25

*See, e.g.*, Am. Derivative Compl. PP 39, 41-42, 45, 47-49, 52-54, 60-62.

26

*See, e.g.*, Am. Derivative Compl. PP 25 ("The Audit Committee held another teleconference meeting on April 14, 2003. Participating were defendants. . . . During the April 14, 2003 teleconference, defendant Ogata indicated that he called the meeting to further discuss the misconduct at Brooks. During the . . . teleconference, the Audit Committee determined that it was desirable to engage Katten to investigate further the misconduct at Brooks. . . ."), 26 ("On May 19, 2003, the Audit Committee met again to discuss the wrongdoing at Brooks. In attendance were defendants. . . . During the May 19, 2003 meeting, Ogata reviewed the results of the Katten Investigation, which confirmed that there had been widespread falsification of student records at Brooks. Ogata recommended that the Company take additional actions to address the wrongdoing at Brooks. The Audit Committee decided that other than the actions recommended by Ogata, no further action was necessary.").

[*13] Further, the disclosure of this information is not likely to chill internal deliberations of the CEC board or any of its committees. 27 In *Disney*, this Court expressed concern that the disclosure of documents "of an intrinsically confidential nature," *i.e.*, documents that "relate to private communications among or deliberations of the Company's board of directors," might chill board deliberations. 28 The information contained in paragraphs 22 through 27 of the Amended Derivative Complaint does not reflect the private communications or deliberations of the CEC Audit Committee; rather, the paragraphs detail who attended, what the board members

discussed and, in two instances, the actions the board members decided to take. More significant, however, is what the paragraphs do not reveal: the board members' back and forth discussions or weighing of the options. In fact, it is impossible to tell how the board members decided what action to take because the minutes, as redacted, do not reveal their deliberative process.

27

The Court assumes without deciding that it should consider this question in the context of derivative litigation. *Cf. Disney*, 2005 Del. Ch. LEXIS 94, *18-19, No. 234-N ("there is little doubt that those who participated in these communications had a reasonable expectation that they would remain private *unless disclosed in the course of litigation* or pursuant to some other legal requirement.") (emphasis added) (internal quotation omitted); *Disney v. Walt Disney Co.*, 857 A.2d 444, 448 (Del. Ch. 2004) ("Our law recognizes circumstances in which a stockholder is entitled to use information obtained by making a Section 220 demand in ways that will lead to public disclosure. Most notably, our law encourages stockholders to utilize Section 220 as one of the tools at hand' in conducting pre-suit investigation of suspected mismanagement or corporate waste. When such investigation reveals a good faith basis for suit, the stockholder will be able to use information covered by such a confidentiality order in formulating a complaint, and, in many cases, *that information will become publicly available in the course of that litigation, even if it is initially filed under seal.*") (emphasis added), *remanded*, No. 380, 2004 (Del. Mar. 31, 2005).

[*14]

28

*Disney*, 2005 Del. Ch. LEXIS 94, *18, No. 234-N (internal quotation omitted).

### C. The Minutes' Designation as Highly Confidential

CEC also contends that it properly designated the redacted board minutes as

Highly Confidential because the minutes refer to confidential third-party information. [29] The information contained in the minutes of the board meetings is insufficient to justify sealing them as third-party confidential information. The minutes of the April 13, 2003 meeting of the CEC Audit Committee reference nothing more than a phone call from a named employee regarding problems at one of CEC's business units. The minutes do not, as CEC contends, reveal a dispute with the employee or any matter that the employee could reasonably expect to remain confidential. Similarly, the minutes of the October 2, 2003 meeting of the Audit Committee state that "Ogata indicated that he had called the Meeting to discuss certain matters raised by a former employee of the Company at the time of his resignation from the Company." [30] The employee is not named in the minutes and no further information [*15] is provided about the employee's concerns. In fact, there has been no showing that the minutes provide information that could lead one to identify the employee. The only other item of substance contained in the minutes is the Audit Committee's decision to have legal counsel conduct an investigation concerning the matters raised by the employee. Again, CEC has not shown that this information is sufficiently confidential to warrant protection under Rule 5(g).

29

Presumably, CEC's argument also applies to paragraph 27 of the Amended Derivative Complaint, which references a letter received from a former employee of CEC. *See* Am. Derivative Compl. P 27 ("On or about September 8, 2003,

the Company and the Individual Defendants received a letter from a former registrar at Brooks (the Registrar'), containing certain additional information and allegations pertaining to regulatory compliance and falsification of student records. . . .").

30

    Zagar Aff. Ex. B. at RCEC0000005.

The other minutes [*16] of Audit Committee meetings at issue here contain information similar to that in the Amended Derivative Complaint, *i.e.*, who met when and why. Thus, the same Rule 5(g) analysis applies to those minutes.

Furthermore, the information contained in the minutes is insufficient to justify their designation as Highly Confidential under the parties' agreed upon definition of that term. Paragraph 8.A of the Agreement defines Highly Confidential Material as "highly sensitive proprietary, financial or trade secret information, the disclosure of which could cause competitive disadvantage to the Company." None of the who-met-with-who-and-when information contained in the minutes meets this definition. There is nothing even remotely related to trade secrets or financial information in the minutes. And, it is difficult to fathom how the disclosure of long-past investigations could cause competitive disadvantage to CEC.

In summary, CEC has failed to meet its burden to show good cause for continuing to seal the Amended Derivative Complaint or the minutes of certain meetings of its Audit Committee. CEC also has failed to show that the minutes even satisfy the parties' own agreed upon definition [*17] of Highly Confidential.

### D. CEC's Other Arguments

CEC's other arguments for why this Court should continue to seal the Amended Derivative Complaint merit only brief mention.

CEC.asserts that Romero lacks standing to pursue this derivative action because she did not own stock at the time(s) of the challenged conduct. This may be so, but it is irrelevant for purposes of determining whether good cause exists to keep a document from the public pursuant to Rule 5(g).

CEC next argues that the PSLRA and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") [31] bar disclosure of the Amended Derivative Complaint and the Audit Committee minutes. The PSLRA does not apply to individual or derivative suits, [32] while SLUSA merely *allows* a court to "stay discovery proceedings in any private action in a State court as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to [the PSLRA]." [33] SLUSA, like the PSLRA, does not automatically stay discovery in a state court action like this one. Rather, SLUSA allows a federal court, upon a proper showing, to stay discovery in a state court action. [*18] To date, no federal court has stayed discovery in this action.

31

    Pub. L. No. 105-353, 112 Stat. 3227 (1998).

32

    15 U.S.C. § 77p(f)(2)(B) (2006).

33

    15 U.S.C. § 77z-1(b)(4); *see also* 15 U.S.C. § 78u-4(b)(3)(D) ("Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.").

Finally, CEC's equity argument merely rehashes its standing and PSLRA/SLUSA contentions. Like those arguments, it is less than convincing, especially when the

public has a legitimate interest in litigation filed in the Delaware courts and stockholders of Delaware corporations have an interest in monitoring their directors' performance of their managerial duties.

## IV. CONCLUSION

For the reasons stated, Plaintiff Romero's motion [*19] to unseal the Amended Derivative Complaint and to strip the minutes of the Audit Committee meetings (documents numbered RCEC0000001 to RCEC0000005) of their Highly Confidential designation is GRANTED.

The Register in Chancery shall unseal the Amended Derivative Complaint forthwith.

**IT IS SO ORDERED.**

Sincerely,

/s/Donald F. Parsons, Jr.

Vice Chancellor