

Not Reported in A.2d                                                                                                                                   Page 1
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205
**(Cite as: Not Reported in A.2d, 1984 WL 8274, 9 Del. J. Corp. L. 205)**

KAPLAN v. WYATT
Del.Ch. 1984

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.
KAPLAN
v.
WYATT
No. 6361

January 18, 1984

Following a report by the Special Litigation Committee formed by Coastal Corporation to investigate plaintiffs' claims in a shareholders derivative suit, the committee moved for dismissal of the action. Plaintiffs moved for limited discovery in order to make a record on the motion, requesting, among other things, each and every document reviewed or relied upon by the committee in formulating its report. The court of chancery, per Chancellor Brown, denied all but a limited portion of the discovery request, as the court considered the request overly broad and unwarranted since the plaintiffs could allege no specific facts to support the general allegations of wrongdoing set forth in their complaint. The court found this void of particulars in the plaintiffs' case most damaging to their motion in light of the Litigation Committee's lengthy and detailed report setting forth numerous findings, as well as the factual basis it relied upon in reaching its conclusion.

In addition, plaintiffs sought to revoke the *pro hac vice* admission of Texas counsel for the defendant, based on the attorney's conduct in secretly tape recording a conversation with the New York counsel for the plaintiffs, during a previous derivative action on the same facts tried in the federal courts in New York.

**[1] Corporations 101** 🗝️**213**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k213 k. Trial and Judgment. Most Cited Cases

When ruling on a motion to dismiss a derivative action filed by a Special Litigation Committee, the court will inquire into the independence and good faith of the committee and reasonableness of the bases for its conclusions. Limited discovery may be permitted at the court's discretion to facilitate this inquiry. However, the purpose of any discovery at this stage is to aid the court in evaluating the motion to dismiss more so than to aid the plaintiff in developing facts to support the merits of his case.

**[2] Corporations 101** 🗝️**212**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k212 k. Evidence. Most Cited Cases

Where a Special Litigation Committee, in moving for dismissal of a stockholders derivative suit, files a lengthy and detailed report setting forth numerous findings as well as the factual basis relied upon in reaching its conclusion, the total production of all documents reviewed and relied upon by the committee in compiling its report is not necessary to the stockholder's right to challenge the good faith of the committee or reasonableness of the basis for its conclusions; particularly when the stockholders have set forth no particulars in their complaint of any specific misconduct by the defendants in support of their general changes of wrongdoing.

**[3] Corporations 101** 🗝️**212**

101 Corporations
    101IX Members and Stockholders
        101IX(C) Suing or Defending on Behalf of Corporation
            101k212 k. Evidence. Most Cited Cases

A plaintiff seeking limited discovery in order to oppose a motion by a Special Litigation Committee to dismiss a stockholder's derivative suit should have the opportunity to depose the committee members

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10177-NG    Document 100-5    Filed 05/12/2008    Page 2 of 7

Not Reported in A.2d                                                                                  Page 2
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205
**(Cite as: Not Reported in A.2d, 1984 WL 8274, 9 Del. J. Corp. L. 205)**

concerning the good faith of its efforts and reasonableness of its conclusions. When the committee files a lengthy and detailed report setting forth its findings and the factual basis for its conclusion, the report itself, together with any knowledge the plaintiff may have supporting the allegations of the complaint, provides a reasonable basis to enable plaintiff to proceed with those depositions.

**[4] Attorney and Client 45 38**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k38 k. Character and Conduct. Most Cited Cases

It is unethical for an attorney in the course of his practice to record a conversation without informing all parties to that conversation.

**[5] Attorney and Client 45 38**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k38 k. Character and Conduct. Most Cited Cases

When a meeting of counsel is directed to be held by a federal judge with regard to a case pending before him, it is reprehensible for one attorney to secretly tape record another in the course of each representing his respective client, regardless of the circumstances which are said to justify it.

**[6] Attorney and Client 45 36(1)**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k36 Jurisdiction of Courts
                45k36(1) k. In General. Most Cited Cases

Where a party seeks a motion to revoke the admission *pro hac vice* of opposing counsel based on conduct engaged by him in another jurisdiction and in another case, the court will grant such a motion only where the acts of the attorney are contemptuous of the court or where they adversely affect the conduct of the trial. Otherwise, the matter should be left to the disciplinary machinery of the home state of the attorney.

**[7] Attorney and Client 45 10**

45 Attorney and Client
    45I The Office of Attorney
        45I(A) Admission to Practice
            45k10 k. Admission of Practitioners in Different Jurisdiction. Most Cited Cases

In ruling on a motion to revoke the admission of counsel to a proceeding *pro hac vice* based on the allegation of unethical conduct, the court will balance the need of the litigants to be represented by the counsel or their choice against the inherent right of the court to assure the ethical conduct of the attorneys who appear before it. In such deliberations, it would be inappropriate for a court to take such action against an attorney when his professional record is otherwise unblemished, the conduct complained of took place in another jurisdiction, and when the results of his conduct can be handled so as not to adversely affect the further course of the present proceedings.

**[8] Evidence 157 359(5)**

157 Evidence
    157X Documentary Evidence
        157X(C) Private Writings and Publications
            157k359 Photographs and Other Pictures; Sound Records and Pictures
                157k359(5) k. Sound Records in General. Most Cited Cases

Where an attorney secretly tapes his conversations with opposing counsel, in the course of each representing his respective client, any transcript made therefrom shall not be used or relied on by any party for any purpose connected to the proceedings.

**\*\*207** Irving Morris, Esquire, of Morris and Rosenthal, Wilmington, Delaware, and Melvyn Weiss, Esquire, of Milberg, Weiss, Bershad, Specthrie & Lerach, New York, New York, for plaintiff.

Henry N. Herndon, Jr., Esquire, and Clark W. Furlow, Esquire, of Morris, James, Hitchens & Williams, Wilmington, Delaware, for the Special Litigation Committee.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d Page 3
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205
**(Cite as: Not Reported in A.2d, 1984 WL 8274, 9 Del. J. Corp. L. 205)**

Roderick R. McKelvie, Esquire, of Ashby, McKelvie & Geddes, Wilmington, Delaware, and Robert E. Walls, Esquire, Houston, Texas, for defendant The Coastal Corporation.

BROWN, *Chancellor*

**\*1** Two motions are pending in this matter. First, pursuant to the format created by *Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779 (1981) this derivative action has advanced to the phase wherein the Special Litigation Committee (hereafter 'the Committee') has investigated plaintiffs's claims, filed its report and moved for dismissal of the action, thus prompting the plaintiff to move for limited discovery **\*\*208** so as to make his record on the motion. This motion for limited discovery is before the Court for decision.

Secondly, plaintiff has moved to revoke the *pro hac vice* admissions of Texas counsel for the defendant, The Coastal Corporation (hereafter 'Coastal'), the basis being that the attorney, Robert E. Walls, concealed a tape recorder on his person and secretly taped a conversation with Melvyn I. Weiss and his partner, New York counsel for the plaintiff in this action. I deal with these motions as follows.

I

Predictably, the plaintiff's motion for 'limited' discovery with regard to the Committee's motion to dismiss actually seeks production of documents which would appear to cover all aspects of the plaintiff's case, and then some. He seeks the production of each and every document reviewed or relied upon by the Committee in formulating its report and, in addition, he seeks all documents relating to any business relations between Coastal and any company or business with which either of the two members of the Committee were ever affiliated. Moreover, he wants all documents bearing upon the manner in which the law firm and the accounting firm which assisted the Committee were selected, plus documents showing the fees paid to these firms and the time expended by them. In all, plaintiff seeks the production of documents in 54 separate categories. Once this production is completed, plaintiff would propose to take the depositions of the members of the Committee as well as the depositions of all members of the law firm retained by the Committee who assisted in the investigation.

The breadth of this 'limited' discovery sought by the plaintiff is no doubt influenced by the fact that the Committee, assisted by the New York law firm of Brown, Wood, Ivey, Mitchell & Petty ('Brown, Wood') and the accounting firm of Ernst & Whinney, is said to have investigated the allegations of the complaint over a period of seven months during which time either its members or its attorneys interviewed 140 people, examined hundreds or perhaps thousands of documents and traveled to London, Bermuda and various cities in the United States. Moreover, the Committee went on to investigate related matters beyond those alleged in the complaint. The result of its investigation is a 156-page report, supplemented by appendixes and affidavits, in which the Committee finds the charges in the complaint to be wholly without foundation.

Plaintiff contends that his production demands are narrowly drawn and addressed in the main to specific aspects of the report. And indeed, **\*\*209** this may be true as far as it goes. But the fact is that because the report is so comprehensive in its coverage of the things alleged and of matters related to things alleged in the complaint, the discovery sought by the plaintiff necessarily covers the entire spectrum of the plaintiff's case, and perhaps more.

[1]**\*2** The decision in *Zapata* makes clear that the function of the Court in addressing a motion to dismiss a derivative action brought on by a special litigation committee is to inquire into the independence and good faith of the committee and reasonableness of the bases for its conclusion that the derivative action should be dismissed. Limited discovery may be permitted by the Court, in its discretion, to facilitate its inquiries into this limited area. *Zapata Corp. v. Maldonado, supra,* at 430 A.2d 788. Thus, the purpose of any discovery at this stage is to aid the Court in evaluating the motion to dismiss under the aforesaid guidelines more so than to aid the plaintiff in developing facts which would support the merits of his case. It is within the scope of these confines that the plaintiff, through limited discovery, is to be given 'the opportunity to make a record on the motion.' Thus sayeth *Zapata* as I read it.

Measured against this standard I agree with the defendants that what the plaintiff is seeking by his discovery request is not so much an opportunity to assist the Court in its inquiries into the independence,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10177-NG    Document 100-5    Filed 05/12/2008    Page 4 of 7

Not Reported in A.2d    Page 4
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205
**(Cite as: Not Reported in A.2d, 1984 WL 8274, 9 Del. J. Corp. L. 205)**

good faith and reasonableness of the Committee as it is an opportunity to assist the plaintiff in his effort to find something-anything-to which he can point in support of his complaint. I say this because to date plaintiff has neither alleged any specific facts in his complaint nor came forward with any specific fact to support the general allegations of wrongdoing set forth in the complaint. Nor, with the exception of the inferences contained in one document, has the plaintiff given the Committee any indication of any specific acts of wrongdoing which he feels it should have investigated despite the repeated requests of the Committee that he do so.

In short, the Committee, in a rather staggering expenditure of time and money, has purported to investigate any and all things even remotely connected with the general allegations of wrongdoing set forth in the complaint without the benefit of any meaningful input from the plaintiff along the way as to any specific instances into which it should have been looking, and it has found nothing which would appear to support a derivative action on behalf of the corporation. Now, the plaintiff would like to have full discovery of everything which the Committee has done and found, he says, in order to test whether the Committee has acted independently, reasonably and in good faith in ***210** reaching its conclusions. Plaintiff, from his perspective, may well feel that he needs all of this. For my part, however, I do not.

Plaintiff argues first of all that there are seven serious impediments to the acceptance of the asserted good faith and independence of the Committee. Among these is the charge that neither the Brown, Wood firm nor Ernst & Whinney are independent since they have both been sued as defendants in prior litigation brought by the present counsel for the plaintiff. Thus, the implication is that the law firm and the accounting firm are out to get revenge on plaintiff's lawyers and, accordingly, their advice to the Committee is probably tainted by this bias.

*3 Plaintiff also charges that one of the two Committee members is not independent because of previous business dealings with Coastal. He also attacks the credibility of certain persons interviewed by the Committee for various stated reasons. And he attributes bad faith to the Committee because it failed to disclose that it had received a transcript of the surreptitious tape recording made of plaintiff's counsel by Walls.

I note that the common thread which ties all of plaintiff's 'seven impediments' together is that they all constitute arguments as to why the Committee's motion to dismiss the suit should be denied and, in the process, they all rely in the main on facts which are already known to the plaintiff. As such, none of these contentions serve to justify the wide-ranging document production and discovery that the plaintiff seeks concerning everything that the Committee did over its seven-month investigation.

Turning then to what I feel is relevant discovery given the stage of the proceedings and the circumstances of the case, I think it sufficient that plaintiff's requests for production Nos. 2 through 5 be granted. These seek documentary information concerning the nomination of Mr. Holliday and Mr. Marshall (the two persons who comprised the Committee) as directors of Coastal as well as all documents indicating the existence of any business organizations with which Holliday and Marshall are said to have been affiliated. I think that this is fair documentary discovery with regard to the independence of the Committee.

[2] On the other hand, I do not feel that the total production of all other documents reviewed and relied upon the Committee in compiling its report is necessary to the plaintiff's right to challenge the good faith of the Committee or the reasonableness of the bases for its conclusion that the derivative action should be dismissed. Nor do I feel it warranted. In this regard I am particularly mindful of the ***211** fact that the plaintiff has set forth no particulars in his complaint of any specific misconduct by the defendant Oscar S. Wyatt or by the defendant WJS Shipping Associates, Inc. to support his general charges of wrongdoing by these defendants. Contrasted with this, the Committee has filed a lengthy and detailed report setting forth numerous findings as well as the factual basis relied upon by it in reaching each such conclusion.

The report itself discloses in detail the breadth of the Committee's investigation and the reasons for its recommendation. Plaintiff has the Committee's position and its bases therefore. There is no doubt as to where it stands on the plaintiff's charges, or why. If the plaintiff has evidentiary matter which tends to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10177-NG    Document 100-5    Filed 05/12/2008    Page 5 of 7

Not Reported in A.2d    Page 5
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205
**(Cite as: Not Reported in A.2d, 1984 WL 8274, 9 Del. J. Corp. L. 205)**

contradict the facts relied upon and disclosed by the Committee in reaching its conclusions, or facts which would tend to indicate that the Committee did not conduct its investigation in good faith, then I think that the time has come for the plaintiff to bring them forth and develop them on his own as opposed to culling through hundreds or thousands of documents previously reviewed by the Committee on the pretense of attempting to satisfy himself that the Committee has done a good faith job and that its report and recommendation are warranted based upon that which it had before it.

[3]***4** It is my feeling that the report itself, together with any knowledge the plaintiff may have supporting the allegations of the complaint, provides a reasonable basis to enable the plaintiff to depose the members of the Committee concerning the good faith of its effort and the reasonableness of its conclusions. And I feel that the plaintiff should have the opportunity to depose the Committee. But under the circumstances of this case I think that this is sufficient for my purposes with regard to the pending motion of the Committee to dismiss the suit pursuant to the procedure established by *Zapata*.

In this regard, it has been brought to my attention that Raymond Holliday, one of the two Committee members, has died since the presentation of the plaintiff's motion. In view of this unfortunate development, I shall grant leave to the plaintiff to depose Mr. Marshall and also to depose the member of the Brown, Wood firm, to be designated by the Committee, who is the most knowledgeable of the facts of its investigation and the manner in which it was conducted. Absent the death of Mr. Holliday I would not have done this and would have limited the depositions to those of Holliday and Marshall. In view of the scope of the report and the length of the Committee's investigation, however, I do not think it would be fair to limit the plaintiff to the deposition of only one person who participated in the enterprise.

**\*\*212** Counsel for the Committee may submit a form of order reflecting the result reached herein.

II

The motion to revoke the *pro hac vice* admission of Robert E. Walls as Texas counsel for Coastal presents an awkward problem. The facts applicable to the motion are these.

Prior to this action being filed in Delaware, the plaintiff first filed his derivative action in the Federal courts in New York. The defendants responded by attempting to take the deposition of both the plaintiff and his counsel, it being their feeling that the suit had been filed in the absence of any knowledge by the plaintiff and his counsel of any real facts of substance to back it up. The Federal judge refused to permit the deposition of plaintiff's counsel to be taken, but he did direct that counsel for the parties meet with each other to discuss the case.

Such a meeting was held in New York on November 20, 1980. It was attended by Mr. Weiss and his partner, Richard M. Meyer, on behalf of the plaintiff, and by Michael Lesch, counsel for the defendant Oscar S. Wyatt, and by Mr. Walls as counsel for Coastal. Without disclosing it to his fellow attorneys, Walls secretly tape recorded this meeting. He later caused a transcript of the meeting to be prepared for use by Coastal in the defense of the matter.

Subsequently, the New York action was voluntarily dismissed and this suit was filed in Delaware. At an early proceeding Mr. Walls was admitted '*pro hac vice*. Also during previous proceedings in this case Walls filed an affidavit in which he relied on statements made by Weiss during the New York meeting between counsel. That affidavit was offered to contradict statements being made by Weiss to this Court. It was not until other proceedings in this case during June 1983 that Weiss and his local associate counsel first learned that Walls had taped the November 20, 1980 meeting. At that time Walls candidly admitted to the Court that he had taped the meeting without the consent or knowledge of the others present, but he took the position that it was perfectly legal to do so both under the law of Texas, where he was admitted to practice, and under the law of New York, where the taping actually occurred. (This is based upon what to me is a rather tenuous rule of law generally applicable to criminal matters that where at least one party to a conversation consents to it being recorded, i.e., the person making the recording, it is lawful to do so even though the other parties to the conversation are unaware that the recording **\*\*213** is taking place.) Walls also indicated at the time that such recording of a conversation by an attorney was expressly permitted under a ruling of

Case 1:04-cv-10177-NG    Document 100-5    Filed 05/12/2008    Page 6 of 7

Not Reported in A.2d                                                                                                Page 6
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205
**(Cite as: Not Reported in A.2d, 1984 WL 8274, 9 Del. J. Corp. L. 205)**

the Texas Bar Association.

[4]**\*5** What we have all learned since June, however, is that there is a 1974 ruling of the American Bar Association (Formal Opinion 337) and a 1974 ruling of the New York State Bar Association which denounce the practice of a lawyer recording a conversation without the consent of the other persons present. Moreover, in 1978 the Ethics Committee of the Texas Bar Association reversed its previous position and specifically ruled that it was unethical for an attorney in the course of his practice to record a conversation without informing all parties to the conversation.

Mr. Walls now states by affidavit that he was unaware of these rulings when he made the secret recording of his meeting with Weiss, Meyer and Lesch. He further indicates that he will refrain from any similar activity in this case in the future. Nonetheless, while his mistake may have been an honest one, the fact remains that to the extent that he was acting as an attorney for Coastal at the time his conduct would appear to have been improper under the rulings of both the Texas and New York State Bar Associations as well as under the formal ruling of the American Bar Association.

[5] Personally, I have a strong aversion to any such tactics. For one attorney to secretly tape record another in the course of each representing his respective client is, to me, reprehensible regardless of the circumstances which are said to justify it. This is particularly true when it is done at a meeting of counsel directed to be held by a Federal judge with regard to a case pending before him. Were this done in a case pending before me I would not hesitate to remove out-of-state counsel on the spot. This, however, highlights the problem.

The improper conduct of Mr. Walls in secretly taping his fellow members of the Bar did not occur in this case. Rather, it occurred in the context of the New York action prior to the time that this case was ever filed. Thus, the basis for the motion to revoke Mr. Wall's admission *pro hac vice* is conduct engaged by him in another jurisdiction and in another case, albeit one between the same parties and with same basic issues. The extent to which he has done anything in this case consists of the filing of an affidavit to put before this Court factual matter which he obtained as a result of the secretly recorded conversation and, as I understand it, this was done at a time when Walls believed that he had done nothing improper by making the recording.

**\*\*214** Coastal, through its local counsel, asks that Walls be permitted to remain in the case. He is said to be the member of Coastal's house counsel staff who has the most knowledge of the matter since he has been actively involved in the proceedings for some three years now. Coastal contends that it would work an unfair hardship upon it as the client if Walls were now to be disqualified from further participation in the case. It says that this is a factor to be considered before the *pro hac vice* admission of an attorney is revoked. See *Hallman v. Sturm Ruger & Co., Inc.*, Wash.App., 639 P.2d 805 (1982); *Johnson v. Trueblood*, 629 F.2d 302 (3rd Cir. 1980).

**\*6** Moreover, Coastal argues that this Court has no authority to disqualify Walls under the present circumstances. It points out that he was in good standing as a member of the Bar in his home state of Texas at the time that he was admitted in this case, and that he remains so at present. It argues that whether or not his conduct in recording the meeting is deserving of disciplinary action is a matter to be determined by the Texas Bar Association and its highest Court, if necessary, and not by this Court, just as it would be the function of the Delaware Bar Association and the Delaware Supreme Court, and not the function of this Court, to pass upon the propriety of conduct by a Delaware lawyer committed outside of the presence of this Court.

[6] Indeed, in the absence of any Delaware precedent on the subject, Coastal asks that this Court be guided by the decision in *Hahn v. Boeing Company*, Wash.Supr., 621 P.2d 1263 (1980) in which it was held that a trial court lacks the authority to conduct what, in effect, are attorney disciplinary proceedings even though it has the authority to disqualify an attorney for unethical conduct committed in proceedings before it. In *Hahn v. Boeing Company* it was indicated that a trial court should disqualify counsel from appearing *pro hac vice* only where the acts of the attorney are contemptuous of the court or where they adversely affect the conduct of the trial. Otherwise, the decision indicates that the matter should be left to the disciplinary machinery of the home state of the attorney.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                  Page 7
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205
**(Cite as: Not Reported in A.2d, 1984 WL 8274, 9 Del. J. Corp. L. 205)**

[7] Having reflected upon the problem, and balancing the need of Coastal to be represented by counsel of its choice against the inherent right of the Court to assure the ethical conduct of the attorneys who appear before it, I am persuaded to accept the argument of Coastal and to deny the motion to disqualify Walls. Since his professional record is said to be otherwise unblemished, since the conduct complained of took place in another jurisdiction prior to the filing of this case, and **215 since I feel that the tainted product of his effort can be handled in a manner so as not to adversely affect the further course of these proceedings, I feel that it would be inappropriate for this Court to take action against Walls which might be equated by others with a finding that he had violated the Code of Professional Responsibility. That question can be passed upon by the appropriate authorities elsewhere, if necessary.

[8] At the same time, and so as to dispel any thought that the Court, by denying the motion, is putting its seal of approval upon the type of activity engaged in by Walls, it is further my conclusion that the statements made by Weiss, Meyer and Lesch at the November 20, 1980 meeting, as reduced to transcript form by Walls, shall not be used or relied upon by Coastal, or by any other party to this proceeding, for any purpose connected with this proceeding. Nor do I intend to pay any attention to excerpts from the transcript. To the extent that the right to free expression and confidentiality between counsel that should have prevailed at the aforesaid meeting can be honored and protected after the fact, it is my intention to do so, at least within the confines of the litigation in this Court.

*7 On this basis the motion of the plaintiff to rescind and revoke the *pro hac vice* admission of Mr. Walls is denied. Plaintiff may submit an appropriate form of order reflecting this decision.

Del.Ch. 1984
Kaplan v. Wyatt
Not Reported in A.2d, 1984 WL 8274 (Del.Ch.), 9 Del. J. Corp. L. 205

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.