UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE BIOPURE CORPORATION | ) | Master Docket No. 1:04-cv-10177-NG |
| DERIVATIVE LITIGATION | ) | (Consolidated Derivative Action) |
| | ) | |
| | ) | Assigned to: Judge J. Nancy Gertner |
| | ) | |
| _____ | ) | Magistrate Judge Alexander |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL**

**TABLE OF CONTENTS**

I.  PRELIMINARY ISSUES……………………………………………………………………1

II. DISCOVERY STANDARD……………………………………………………………….2

III. THE DISCOVERY SOUGHT IS RELEVANT…………………………………………..2

IV. CLAIMS OF PRIVILEGE ARE WAIVED………………………………………………4

V.  CONCLUSION…………………………………………………………………………...6

## **TABLE OF AUTHORITIES**

**Cases**

Hasan v. Cleveland Realty Investors,
   729 F.2d 372 (6th Cir. 1984) ............................................................................................... 3

In re Grand Jury Subpoena,
   274 F.3d 563 (1st Cir. 2001)................................................................................................ 5

Peller v. The Southern Co.,
   707 F.Supp. 525 (N.D. Ga. 1988) ....................................................................................... 3

Public Service Co. of New Hampshire v. Portland Natural Gas, et al.,
   218 F.R.D. 361 (N.H. 2003) ................................................................................................ 5

Strougo v. Padegs,
   27 F.Supp. 2d 442 (S.D.N.Y. 1998)..................................................................................... 2

Zapata Corp. v. Maldonado,
   430 A.2d 779 (Del. 1981) .................................................................................................... 2

**I.     PRELIMINARY ISSUES**

Two matters raised in Defendants' Opposition to Plaintiffs' Motion to Compel can be dealt with quickly and succinctly.

First, Defendants' gratuitously declare that Plaintiffs did not raise any discovery issue for twenty-one months after Defendants' responses were provided. This is incorrect. First, by letter to Defendants' counsel dated October 24, 2006, Plaintiffs' counsel requested opposing counsel's availability for a "meet and confer to discuss any outstanding discovery" issues. [See attached Exhibit A]. Second, in a June 28, 2007 letter, Plaintiffs' counsel directly raised the issue of the requested Board minutes, even explaining the relevance of the request. [See attached Exhibit B]. While it is true that discovery discussions were not continuously conducted, the reason is simple: the parties agreed to focus their attention on settlement because if those efforts were successful any procedural issues such as discovery disputes would, more likely than not, be rendered moot. The parties did focus on settlement, engaging in protracted discussions both before and after the court ordered mediation. Only when it became apparent that those discussions would not bear fruit did the parties return to the issues that had been suspended.

Second, without really arguing the point, the Defendants repeatedly refer to the "highly confidential" nature of the sought-after board minutes. In this case, the parties long ago entered into an agreement resulting in entry of a confidentiality order (Docket Entry No. 68 and electronic endorsement dated July 10, 2006). The provisions of that order should provide all the protection desired by Defendants.

1

## II. DISCOVERY STANDARD

Defendants misconstrue Plaintiffs' cite to the standards of Rule 26, Federal Rules of Civil Procedure. In this matter, the scope of discovery has already been determined by Court Order (electronic order dated June 19, 2006). In that order the Court provided, among other things, that Plaintiffs would be "permitted to conduct discovery on the question of the SLC members' disinterestedness and independence."

Applying the provisions of Rule 26(b)(1) Federal Rules of Civil Procedure to the discovery expressly allowed by the Court, one reaches the unremarkable conclusion that Plaintiffs' may obtain any discovery that is relevant to the Special Litigation Committee's ("SLC") disinterestedness or independence or which is reasonably calculated to lead to admissible evidence regarding those subjects.

There is nothing about this straight forward application of discovery rules to the Court's designation of the permissible scope of discovery that in any way contradicts, or even implicates, the holding in Zapata Corp. v. Maldonado, 430 A.2d 779 (Del. 1981).

## III. THE DISCOVERY SOUGHT IS RELEVANT

Here, as Plaintiffs have previously pointed out, both members of the SLC sat on the Biopure Board for months during the pendency of the Defendants' Motion to Dismiss. During that period at least one of those SLC members, Mr. Pieper, signed a publicly filed form which declared that the instant litigation was "without merit."

Defendants' reliance on Strougo v. Padegs, 27 F.Supp. 2d 442 (S.D.N.Y. 1998) is misplaced. For starters this District Court case from New York has no precedential value in this matter. Second, while the Strougo court did hold that the fact that an SLC member had been named as a defendant and, in that capacity, moved to dismiss was not evidence of a lack of

2

independence, that Court failed to cite a single case in which any other court had reached a similar conclusion.  Nor have the defendants, despite a decade having passed since <u>Strougo</u> was decided.

Third, Plaintiffs here are seeking documents relevant to at least one SLC member's signed endorsement of a clear statement before he was named to the SLC regarding the lack of any merit to the derivative Plaintiffs' claims.  This statement is <u>not</u> limited, as the Defendants here imply, merely to the legal sufficiency of the complaint, but clearly declares they have no merit.  Even if this statement were open to some "interpretation," that fact not only does not foreclose discovery on the issue but, in fact, underscores the relevance of such discovery.

The Board minutes are relevant for other reasons.  A number of courts have recognized that there exists a structural bias inherent in special litigation committees which favors the defendant directors.  *See* e.g. <u>Hasan v. Cleveland Realty Investors</u>, 729 F.2d 372, 377 (6th Cir. 1984).

While the majority of court decisions have rejected structural bias, <u>by itself</u>, as sufficient for a finding that the SLC lacks independence, that inherent bias should be considered in reviewing the actions and decisions of the Special Litigation Committee members.  *See* e.g. <u>Peller v. The Southern Co.</u>, 707 F.Supp. 525, 527 (N.D. Ga. 1988).

The minutes of meetings of a Board which includes one or more members of the SLC provide a unique opportunity to observe unvarnished the workings of its members, including their interactions with each other.  It is hard to imagine any documents which could be more revealing and thus more relevant, as to independence than board minutes.

**IV.     CLAIMS OF PRIVILEGE ARE WAIVED**

The Defendants here claim that they should not be required to turn over even redacted documents because any relevant material contained in them would be privileged.  However, in the nearly two years since the Defendants provided their responses and objections to Plaintiffs' requests Defendants have not included any of the Board minutes in a privilege log.  [See Defendants' privilege log attached as Exhibit C].  Thus any claim of privilege is waived. Burlington Northern and Sante Fe Railway Company vs. U.S. District Court of the District of Montana, 408 F.3d 1142 (9th Cir. 2005).

In Burlington the court was considering a writ of mandamus requested by Burlington to overturn the District Court order to produce certain documents for which Burlington claimed privilege.  The Court examined the interplay between Federal Rules of Civil Procedure 26 (b) (5) and 34, noting that "[t]he purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Burlington 1148, 1149.

The Court there held that boilerplate objections inserted in a Rule 34 response were not sufficient to properly assert privilege.  Id. at 1149.  Rather, the party must produce a privilege log.  The Court declined to use the 30 day period provided in Rule 34 as a bright line, but instead determined that trial courts must make a case-by-case determination taking into consideration the following factors:

> [t]he degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

4

Id. at 1149.

The Court also said:

These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process.  They should not be applied as a mechanistic determination of whether the information is provided in a particular format.  Finally, the application of these factors shall be subject to any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders.

Id. at 1149.

Applying these factors, the Court found that Burlington had waived its claim of privilege by failing to provide a privilege log for five months after the Rule 34 time limit.[1]

This case is far more egregious.  The Defendants, in response to Reguest #6 asking for Board minutes from and after October 12, 2004 first supplied boilerplate objections, including for privilege, but also stated "…Defendants will produce non-privileged, non-protected copies of the minutes of the Board since October 12, 2004 concerning the formation, composition or independence of the SLC." (*emphasis added*).

Defendants produced Board minutes from only one meeting: May 1, 2006, when the SLC was formed.  Defendants have argued since that they only needed to produce those concerning the "formation and composition" of the SLC, ignoring their own declaration that they would provide minutes touching on "independence."

However, Defendants have never in the twenty-one months since serving their responses included any Board minutes in their privilege log, even after the July 28, 2007 letter expressly requesting Defendants to revisit the issue.

---

[1]   See also In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001); but see contra: Public Service Co. of New Hampshire v. Portland Natural Gas, et al., 218 F.R.D. 361 (N.H. 2003) (failure to timely produce privilege log does not waive claim of privilege asserted in response to discovery).

5

By any application of the <u>Burlington</u> factors this is sufficient to waive the claim of privilege as to these Board minutes.

## V.     CONCLUSION

The issue before the Court is whether the Defendants should be required to turn over a small, discrete portion of the minutes of the Board of Directors.  Those minutes are reasonably limited to the period following the appointment to the Board of the first of the two members who later were appointed to the SLC.  There is absolutely nothing burdensome about producing these documents.  Plaintiffs have presented solid reasons as to why these particular documents are relevant to the critical issues of the SLC members' disinterestedness and independence.

Finally, given the Defendants' utter failure to include any of the Board minutes in its privilege log at any time during the twenty-one months following its responses to Plaintiffs' First Request for Production of Documents Regarding Independence and Disinterestedness of SLC, any such claim of privilege is deemed waived.

Accordingly, Plaintiffs respectfully request the Court to order Defendants to produce within ten (10) days all minutes of the Biopure Board of Directors from and after October 12, 2004.

| | |
|---|---|
| DATED: May 16, 2008 | Respectfully submitted: |

/s/ George E. Barrett
Douglas S. Johnston, Jr. (*pro hac vice*)
George E. Barrett (*pro hac vice*)
Timothy L. Miles (*pro hac vice*)
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue, North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
djohnston@barrettjohnston.com
gbarrett@barrettjohnston.com
tmiles@barrettjohnston.com

Jeffrey P. Fink
Caroline A. Schnurer
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Plaintiffs' Co-Lead Counsel

Mary T. Sullivan, BBO #487130
SEGAL ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA 02108
Telephone: (617) 742-0208
Facsimile: (617) 742-2187

Plaintiffs' Liaison Counsel

James G. Stranch
BRANSTETTER, KILGORE,
 STRANCH & JENNINGS
227 Second Avenue North
Nashville, TN 37201
Telephone: (615) 254-8801
Facsimile: (615) 255-5419

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of May, 2008, a true copy of the foregoing document was filed through the ECF system and will be electronically sent to the registered participants and attorneys of record listed below:

Jeffrey P. Fink
Caroline A. Schnurer
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Mary T. Sullivan
Segal Roitman LLP
111 Devonshire Street, 5th Floor
Boston, MA 02109

James G. Stranch
BRANSTETTER, KILGORE,
  STRANCH & JENNINGS
227 Second Avenue North
Nashville, TN 37201
Telephone: (615) 254-8801
Facsimile: (615) 255-5419

Robert A. Buhlman
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110

Bruce E. Falby
DLA Piper Rudnick Gray Cary US LLP
33 Arch Street
26th Floor
Boston, MA 02110-1447

/s/ George E. Barrett
GEORGE E. BARRETT